**FeeDeferred, APLDIST**

# U.S. Bankruptcy Court
## District of Colorado (Denver)
## Adversary Proceeding #: 19−01211−MER

*Assigned to:* Michael E. Romero                          *Date Filed:* 08/07/19
*Lead BK Case:* 19−13565
*Lead BK Title:* Tracy Dean Stephenson
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*   12 Recovery of money/property − 547 preference
                         14 Recovery of money/property − other
                         11 Recovery of money/property − 542 turnover of property

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−

| | |
|---|---|
| **M. Stephen Peters** | represented by **Aaron J. Conrardy** |
| | 2580 W. Main Street |
| | Suite 200 |
| | Littleton, CO 80120 |
| | 303−296−1999 |
| | Fax : 303−296−7600 |
| | Email: aconrardy@wgwc−law.com |
| | *LEAD ATTORNEY* |
| | |
| | **Lindsay Riley** |
| | Wadsworth Garber Warner Conrardy, P.C. |
| | 2580 W Main Street, Suite 200 |
| | Suite 200 |
| | Littleton, CO 80120 |
| | 303−296−1999 |
| | Email: lriley@wgwc−law.com |

V.

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−

| | |
|---|---|
| **Jeffrey Mosing** | represented by **Reagan H. Gibbs** |
| | Chamberlain Hrdlicka |
| | 1200 Smith Street |
| | Ste 14th Floor |
| | Houston, TX 77002 |
| | 713−658−1818 |
| | Email: tres.gibbs@chamberlainlaw.com |
| | |
| | **Jarrod Martin** |
| | Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. |
| | 1200 Smith Street |
| | Suite 1400 |
| | Houston, TX 77002 |
| | 713−356−1280 |
| | Email: jarrod.martin@chamberlainlaw.com |

*Defendant*
────────────────────────
**Mosing Autosport, LLC**              represented **Reagan H. Gibbs**
*dba* **Mosing Motorcars**                         by (See above for address)

                                       **Jarrod Martin**
                                       n
                                       (See above for address)


*Counter–Claimant*
────────────────────────
**Jeffrey Mosing**                     represented **Jarrod Martin**
                                           by n
                                              (See above for address)


*Counter–Claimant*
────────────────────────
**Mosing Autosport, LLC**              represented **Jarrod Martin**
                                           by n
                                              (See above for address)


V.

*Counter–Defendant*
────────────────────────
**M. Stephen Peters**


*Counter–Claimant*
────────────────────────
**Jeffrey Mosing**                     represented **Jarrod Martin**
                                           by n
                                              (See above for address)


V.

*Counter–Defendant*
────────────────────────
**M. Stephen Peters**

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 08/07/2019 | | 3 | Summons Issued on Jeffrey Mosing Answer Due 09/6/2019. Government Agencies Are Allowed 35 Days From Service Of The Summons To Answer This Complaint. <u>Notice To Litigants</u> required to be served with Summons per General Procedure Order. (Conrardy, Aaron) (Entered: 08/07/2019) |
| 08/07/2019 | | 4 | Summons Issued on Mosing Autosport, LLC Answer Due 09/6/2019. Government Agencies Are Allowed 35 Days From Service Of The Summons To Answer This Complaint. <u>Notice To Litigants</u> required to be served with Summons per General Procedure Order. (Conrardy, Aaron) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/07/2019) |
| 08/07/2019 | | 5 | Summons Service Executed On: Jeffrey Mosing and Mosing Autosport, LLC on 8/7/19 Filed by Aaron J. Conrardy on behalf of M. Stephen Peters. (Conrardy, Aaron) (Entered: 08/07/2019) |
| 10/14/2019 | | 12 | Answer to Complaint, Counterclaim by Jeffrey Mosing, Mosing Autosport, LLC against M. Stephen Peters Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s)1 Complaint). (Martin, Jarrod) (Entered: 10/14/2019) |
| 01/03/2020 | | 23 | Amended Complaint Nature of Suit 12 (Recovery of Money/Property – 547 Preference) by M. Stephen Peters against Jeffrey Mosing. Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)1 Complaint). (Conrardy, Aaron) (Entered: 01/03/2020) |
| 01/17/2020 | | 24 | Motion to Dismiss Adversary Proceeding Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s):23 Amended Complaint). (Attachments: # 1 Proposed/Unsigned Order) (Martin, Jarrod) (Entered: 01/17/2020) |
| 02/07/2020 | | 29 | Response Filed by Lindsay Riley on behalf of M. Stephen Peters (related document(s):24 Motion to Dismiss Adversary Proceeding, 27 Order on Motion to Extend Time–Adversary). (Riley, Lindsay) (Entered: 02/07/2020) |
| 02/10/2020 | | 31 | Supporting Document Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)23 Amended Complaint). (Conrardy, Aaron) (Entered: 02/10/2020) |
| 02/12/2020 | | 32 | Motion For Unopposed Allowance of Reply in Support of Defendants' Motion to Dismiss Trustee's First Amended Complaint Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s):24 Motion to Dismiss Adversary Proceeding, 29 Response). (Attachments: # 1 Proposed/Unsigned Order) (Martin, Jarrod) (Entered: 02/12/2020) |
| 02/12/2020 | | 33 | Order Granting Motion (related document(s):32 Motion). (rxc) (Entered: 02/12/2020) |
| 02/21/2020 | | 35 | Reply Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s):29 Response). (Martin, Jarrod) (Entered: 02/21/2020) |
| 04/24/2020 | | 38 | Order Denying Motion to Dismiss (related document(s):24 Motion to Dismiss Adversary Proceeding). (rxc) (Entered: 04/24/2020) |
| 06/10/2020 | | 40 | Answer to Complaint, Counterclaim by Jeffrey Mosing, M. Stephen Peters against M. Stephen Peters Filed by Jarrod Martin on behalf of Jeffrey Mosing, M. Stephen Peters (related document(s)23 Amended Complaint). (Martin, Jarrod) (Entered: 06/10/2020) |
| 06/11/2020 | | 42 | Amended Answer to Complaint Filed by Jarrod Martin on behalf of Jeffrey Mosing (related document(s):23 Amended Complaint, 40 Answer to Complaint, Counterclaim). (Martin, Jarrod) (Entered: 06/11/2020) |
| 06/11/2020 | | 43 | Response to Counterclaim Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s):42 Amended Answer to Complaint). |

| | | | |
|---|---|---|---|
| | | | (Conrardy, Aaron) **Modified on 6/12/2020 (rxc).** (Entered: 06/11/2020) |
| 10/21/2020 | | 60 | Amended Motion For Summary Judgment Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G) (Martin, Jarrod). Related document(s) 57 Motion For Summary Judgment filed by Counter–Claimant Jeffrey Mosing, Defendant Jeffrey Mosing, Counter–Claimant Mosing Autosport, LLC, Defendant Mosing Autosport, LLC. **Modified on 10/22/2020 (rxc).**created linkage to 57 (Entered: 10/21/2020) |
| 10/29/2020 | | 61 | Response Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s):60 Motion for Summary Judgment). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5) (Conrardy, Aaron) (Entered: 10/29/2020) |
| 11/05/2020 | | 63 | Reply Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s):61 Response). (Martin, Jarrod) (Entered: 11/05/2020) |
| 11/12/2020 | | 64 | Response Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s):62 Motion for Summary Judgment). (Martin, Jarrod) (Entered: 11/12/2020) |
| 11/19/2020 | | 65 | Reply Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s):62 Motion for Summary Judgment). (Conrardy, Aaron) (Entered: 11/19/2020) |
| 11/25/2020 | | 67 | Order Granting Motion to Deem Cross–Motion for Summary Judgment as Timely Filed (related document(s):66 Motion). (dmu) (Entered: 11/25/2020) |
| 11/25/2020 | | 68 | Notice of Hearing RE: (related document(s)60 Motion for Summary Judgment, 62 Motion for Summary Judgment). Hearing to be held on 12/15/2020 at 01:30 PM Courtroom C for 60 and for 62. (dmu) (Entered: 11/25/2020) |
| 12/15/2020 | | 69 | Minutes of Proceeding. The Court takes the matter under advisement. (related document(s)60 Motion for Summary Judgment, 62 Motion for Summary Judgment). (klm) (Entered: 12/15/2020) |
| 03/25/2021 | | 70 | Order (related document(s):60 Motion for Summary Judgment, 62 Motion for Summary Judgment). (klm) (Entered: 03/25/2021) |
| 05/11/2021 | | 74 | Order (related document(s)1 Complaint). Hearing to be held on 7/15/2021 at 09:30 AM Courtroom C for 1. Document due by 7/1/2021 for 1. (dmu) (Entered: 05/11/2021) |
| 07/28/2021 | | 80 | Order Granting Motion To Vacate and Reschedule Trial (related document(s):1 Complaint). Trial to be held on 9/3/2021 at 09:30 AM Courtroom C for 1, . (rxc) (Entered: 07/28/2021) |
| 08/12/2021 | | 82 | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript of the ORAL ARGUMENTS ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT BEFORE THE HONORABLE MICHAEL E. ROMERO (VIA VIDEOCONFERENCE) UNITED STATES BANKRUPTCY COURT JUDGE held on 12/15/2020 has been filed. Pursuant to the policy adopted by the Judicial |

| | | | |
|---|---|---|---|
| | | | Conference, transcripts are available for inspection only at the clerk's office or may be purchased from the court transcriber for a 90 day period. (related document(s)81 Transcript). (tjv) (Entered: 08/12/2021) |
| 08/16/2021 | | 83 | Joint Pre Trial Statement Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)74 Order Setting Hearing, 80 Order on Motion to Vacate and Reschedule Hearing). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7) (Conrardy, Aaron) (Entered: 08/16/2021) |
| 08/16/2021 | | 84 | List of Witnesses and Exhibits Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)80 Order on Motion to Vacate and Reschedule Hearing). (Conrardy, Aaron) (Entered: 08/16/2021) |
| 08/16/2021 | | 85 | List of Witnesses and Exhibits Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s)80 Order on Motion to Vacate and Reschedule Hearing). (Martin, Jarrod) (Entered: 08/16/2021) |
| 08/16/2021 | | 86 | List of Witnesses and Exhibits Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s)80 Order on Motion to Vacate and Reschedule Hearing). (Martin, Jarrod) (Entered: 08/16/2021) |
| 08/18/2021 | | 87 | Motion For Leave to Amend Response to Trustee's Request for Admission No. 3 Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed/Unsigned Order) (Martin, Jarrod) (Entered: 08/18/2021) |
| 08/26/2021 | | 89 | Order Granting Motion for Leave to Amend Response to Trustee's Request for Admission (related document(s):87 Motion). (klm) (Entered: 08/26/2021) |
| 09/03/2021 | | 92 | CORRECTED Minutes of Proceeding : Trial held and concluded (related document(s)91 Minutes of Proceedings/Minute Order). (mcs) (Entered: 09/03/2021) |
| 09/27/2021 | | 97 | Support Brief or Memorandum Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)92 Minutes of Proceedings/Minute Order). (Conrardy, Aaron) (Entered: 09/27/2021) |
| 09/27/2021 | | 98 | Notice Re: Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars' Post–Trial Brief. Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC. (Martin, Jarrod) (Entered: 09/27/2021) |
| 09/27/2021 | | 99 | Notice Re: Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars' Exhibits to Post–Trial Brief. Filed by Jarrod Martin on behalf of Jeffrey Mosing, Mosing Autosport, LLC (related document(s)98 Notice). (Martin, Jarrod) (Entered: 09/27/2021) |
| 03/08/2022 | | 100 | Order (related document(s)23 Amended Complaint). (saa) (Entered: 03/08/2022) |
| 03/08/2022 | | 101 | Judgment in Favor of JEFFREY MOSING and MOSING AUTOSPORT, LLC. (related document(s)100 Generic Order). (saa) (Entered: 03/08/2022) |

| | | | |
|---|---|---|---|
| 03/15/2022 | | 102 | Notice of Appeal and Statement of Election to District Court Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)70 Order on Motion For Summary Judgment, Order on Motion For Summary Judgment, 100 Generic Order, 101 Judgment for AP Case). New Appeal Status Deadline 03/29/2022. (Conrardy, Aaron) (Entered: 03/15/2022) |
| 03/29/2022 | | 106 | Appellant Designation of Record and Statement of Issues On Appeal Civil Case # 22–CV–00642 Filed by Aaron J. Conrardy on behalf of M. Stephen Peters. Transmission of Record on Appeal Due by 04/28/2022. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Other Statement of Issues to be Presented) (Conrardy, Aaron) (Entered: 03/29/2022) |
| 03/29/2022 | | 107 | Notice of Transcript Request Filed by Aaron J. Conrardy on behalf of M. Stephen Peters (related document(s)69 Minutes of Proceedings/Minute Order, 91 Minutes of Proceedings/Minute Order). (Conrardy, Aaron) (Entered: 03/29/2022) |

# U.S. Bankruptcy Court

## District of Colorado

| | | | | |
|---|---|---|---|---|
| In re: | TRACY DEAN STEPHENSON | ) | **Case No:** 19–13565–MER | |
| | **Debtor(s)** | ) | | |
| | | ) | | |
| | M. STEPHEN PETERS | ) | **Adv. Proc. No.** 19–01211–MER | |
| | **Plaintiff** | ) | | |
| | | ) | | |
| **v.** | JEFFREY MOSING | ) | | |
| | **Defendant** | ) | | |

*SUMMONS IN AN ADVERSARY PROCEEDING*

*YOU ARE SUMMONED* and required to submit a motion or answer to complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days from the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

> *Address of Clerk*
>
> **Clerk, U.S. Bankruptcy Court**
> **District of Colorado**
> **721 19th St.**
> **Denver, CO 80202–2508**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> *Name and Address of Plaintiff's Attorney*
> **Aaron J. Conrardy**
> **2580 W. Main Street**
> **Suite 200**
> **Littleton, CO 80120**

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**



*Kenneth S. Gardner, Clerk*

Date Issued
**August 7, 2019**

# U.S. Bankruptcy Court

## District of Colorado

| | | | |
|---|---|---|---|
| In re: | TRACY DEAN STEPHENSON | ) | **Case No:** 19–13565–MER |
| | **Debtor(s)** | ) | |
| | | ) | |
| | M. STEPHEN PETERS | ) | **Adv. Proc. No.** 19–01211–MER |
| | **Plaintiff** | ) | |
| | | ) | |
| **v.** | MOSING AUTOSPORT, LLC | ) | |
| | **Defendant** | ) | |

*SUMMONS IN AN ADVERSARY PROCEEDING*

*YOU ARE SUMMONED* and required to submit a motion or answer to complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days from the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| *Address of Clerk* |
|---|
| *Clerk, U.S. Bankruptcy Court* |
| *District of Colorado* |
| *721 19th St.* |
| *Denver, CO 80202–2508* |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| *Name and Address of Plaintiff's Attorney* |
|---|
| *Aaron J. Conrardy* |
| *2580 W. Main Street* |
| *Suite 200* |
| *Littleton, CO 80120* |

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**



*Kenneth S. Gardner, Clerk*

Date Issued
**August 7, 2019**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Angela Garcia, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the Summons, Complaint, Exhibits 1-4 and Notice to Litigants was made the 7th day of August, 2019, by first-class, United States mail, postage pre-paid, addressed to:

Jeffrey Mosing
2420 W. Braker Lane
Austin, TX 78758

Jeffrey Mosing
4801 Crestway Dr.
Austin, TX 78731

Mosing Autosport, LLC
d/b/a Mosing Motorcars
c/o Jeffrey Mosing, registered agent
2420 W. Braker Lane
Austin, TX 78758

Under penalty of perjury, I declare that the foregoing is true and correct.

DATE:  August 7, 2019

_/s/ Angela Garcia_____
Paralegal

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars.** | § | |

## ANSWER AND COUNTERCLAIM

COMES NOW, Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars (collectively, "**Defendants**") by and through their undersigned attorney, and files this Answer and Counterclaim to the complaint made by M. Stephen Peters, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**"), and respectfully shows as follows:

### JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e).

**ANSWER:** Paragraph 1 of the Complaint appears to contain no allegation of fact to which a response is required by Defendants. To the extent a response is

required, Defendants deny the allegations set forth in paragraph 1, and specifically deny that the Plaintiff is entitled to the relief referenced.

2.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (K).

**ANSWER:** Paragraph 2 of the Complaint appears to contain no allegation of fact to which a response is required by Defendants. To the extent a response is required, Defendants deny the allegations set forth in paragraph 2, and specifically deny that the Plaintiff is entitled to the relief referenced.

3.     Venue in this district is proper under 28 U.S.C. § 1409(a).

**ANSWER:** Defendants admit that Venue in this district is proper. This is without prejudice to Defendants ability to withdraw the reference to federal district court.

4.     This adversary proceeding is commenced pursuant to Rule 7001(1) and (2) of the Federal Rules of Bankruptcy Procedure.

**ANSWER:** Paragraph 4 of the Complaint appears to contain no allegation of fact to which a response is required by Defendants. To the extent a response is required, Defendants deny the allegations set forth in paragraph 2, and specifically deny that the Plaintiff is entitled to the relief referenced.

5.     Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court.

**ANSWER:** At this time, Defendants do not consent to the entry of final orders and judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS

6.     Plaintiff M. Stephen Peters is the duly appointed chapter 7 trustee ("**Trustee**") of the bankruptcy estate of Tracy Dean Stephenson, Case No. 19-13565 MER.

**ANSWER:** Admitted.

7.     Defendant Jeffrey Mosing ("**Mr. Mosing**") is an individual residing in the state of Texas.

**ANSWER:** Admitted.

8.     Defendant Mosing Autosport, LLC dba Mosing Motorcars ("**Motorcars**") is a limited liability company organized under the laws of the state of Texas.

**ANSWER:** Admitted.

9.     Tracy Dean Stephenson ("**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("**Petition Date**").

**ANSWER:** Admitted.

10.     On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra SC motor vehicle, VIN CSX4501 ("**Vehicle**"). See Certificate of Title attached hereto as Exhibit 1.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint, and therefore deny the same for purposes of pleading.

11.     Debtor financed the purchase of the Vehicle with a loan from Extraco Bank
NA ("**Extraco**").  Extraco's lien was noted on the Certificate of Title. On June 2, 2016,
Extraco released its lien against the Vehicle. See Exhibit 1.

> **ANSWER:** Defendants are without knowledge or information at this time
> sufficient to form a belief as to the truth of the allegations set forth in paragraph 11
> of the Complaint, and therefore deny same for purposes of pleading.

12.     In an "Agreement" dated May 8, 2012, either Mr. Mosing or Motorcars
(together, "**Mosing Entities**") loaned Debtor $120,000. A copy of the Agreement is
attached hereto as Exhibit 2.

> **ANSWER:** Defendants deny the allegations in paragraph 12 to the extent it
> construes the transaction between Defendants and Debtor as anything but a
> purchase.

13.     The Agreement allowed Debtor to "re-acquire" the Vehicle by paying
stepped-up amounts by certain deadlines. In the Agreement, Mr. Mosing was to hold the
"Original MSO," which is, upon information and belief, the Certificate of Title, and
possession of the Vehicle until the agreed upon amount was repaid.

> **ANSWER:** Defendants deny the allegations in paragraph 13 to the extent it
> construes the transaction between Defendants and Debtor as anything but a
> purchase. Defendants admit that Mr. Mosing was to hold the "Original MSO."
> Defendants deny that the "Original MSO" is the same as a Certificate of Title.

14.    On June 5, 2019, Motorcars executed a letter stating that the $120,000 was a loan and the Vehicle was collateral for the loan. A copy of the letter is attached hereto as Exhibit 3.

**ANSWER:** The letter speaks for itself, and Defendants deny any allegations set forth in paragraph 14 that are inconsistent with the letter.

15.    Despite the Agreement and the representations made in the in June 5, 2019 letter, $120,000 was not paid to Debtor. Instead, the $120,000 was paid with a check dated May 8, 2012 from an account bearing Mr. Mosing's name and made payable to 427 Legends. A copy of the check is attached hereto as Exhibit 4.

**ANSWER:** Defendants deny that $120,000 was not paid to the Debtor. The funds were for the benefit of the Debtor, and the Debtor directed that the funds be paid to 427 Legends. Defendants deny the remaining allegations in paragraph 15.

16.    Since the check was payable to 427 Legends instead of Debtor, Debtor did not receive reasonably equivalent value for the Transfer (as defined infra).

**ANSWER:** Defendants deny the allegations in paragraph 16.

17.    In the June 5, 2019 letter, it was admitted that Debtor made no payments to the Mosing Entities and that Mr. Mosing never received the original Certificate of Title for the Vehicle.

**ANSWER:** Defendants admit that Mr. Mosing never received the original Certificate of Title for the vehicle because of the Debtor's fraud, instead receiving

---

an MSO. Defendants admit that no payments were made by the Debtor to Defendants.

18.     The Mosing Entities are currently in possession of the Vehicle.

**ANSWER:** Admit the Mosing entities are currently in possession of the vehicle and the original MSO.

19.     Pursuant to C.R.S. § 42-6-121(5), liens on motor vehicles shall be deemed perfected pursuant to C.R.S. § 42-6-120 when all necessary documents for recording the lien are received by the authorized agent and payment is tendered to note the lien.

**ANSWER:** In response to the allegations set forth in paragraph 19, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

20.     Pursuant to C.R.S. § 42-6-120, a mortgage lien against a motor vehicle is not effective as a lien against the "rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner" unless the lien is filed for public record and the fact of filing is noted on the owner's certificate of title.

**ANSWER:** In response to the allegations set forth in paragraph 20, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

21.     Pursuant to C.R.S. § 42-6-110, upon the sale of a motor vehicle, the person in whose name the vehicle is registered must execute a formal transfer of the vehicle as described in the Certificate of Title.

**ANSWER:** In response to the allegations set forth in paragraph 21, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading. Defendants do not concede that Colorado is the appropriate choice of law.

22.    C.R.S. § 42-6-109(1) unequivocally provides that "a purchaser or transferee does not acquire any right, title, or interest in and to a motor or off-highway vehicle purchased by the purchaser or transferee unless and until he or she obtains from the transferor the certificate of title duly transferred in accordance with this part 1."

**ANSWER:** In response to the allegations set forth in paragraph 22, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

23.    Trustee is in possession of the original Certificate of Title.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Complaint, and therefore deny same for purposes of pleading.

24.    The Certificate of Title does not reflect the Mosing Entities as having a security interest in the Vehicle nor does it reflect a transfer of the Vehicle by Debtor to the Mosing Entities. To the contrary, the Certificate of Title shows Debtor as the sole owner of the Vehicle and that the Vehicle is free and clear of all liens, claims and interests.

**ANSWER:** In response to paragraph 24 of the Complaint, upon information and belief Defendants believe that to the extent there is a title, it was obtained fraudulently, and therefore deny same for purposes of pleading.

25.     The purported grant of the security interest and/or transfer of an ownership interest was a transfer within the meaning of 11 U.S.C. § 101(54) ("**Transfer**").

**ANSWER:** In response to the allegations set forth in paragraph 25, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

26.     Debtor's interest in the Vehicle is property of the bankruptcy estate.

**ANSWER:** Denied.

<div align="center">

**FIRST CLAIM FOR RELIEF**
**(Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 547(b), 550(a) and 551)**

</div>

27.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 26 above as though more fully set forth in this First Claim for Relief.

**ANSWER:** Defendants incorporates and repeats its responses to paragraph 1 through 26 above as though set forth fully herein.

28.     The determination of whether the Transfer is preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

**ANSWER:** In response to the allegations set forth in paragraph 28, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

29.    The Transfer was made for the benefit of the Mosing Entities.

**ANSWER:** Admitted.

30.    The Transfer was made for or on account of an antecedent debt owed by Debtor before the Transfer was made.

**ANSWER:** Denied.

31.    The Transfer was made while Debtor was insolvent.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Complaint, and therefore deny same for purposes of pleading.

32.    The Transfer occurred immediately before the Petition Date pursuant to 11 U.S.C. § 547(e)(2)(C), and therefore was made on or within 90 days prior to the Petition Date.

**ANSWER:** Denied.

33.    The Transfer enabled the Mosing Entities to receive more than the Mosing Entities would have received in Debtor's chapter 7 case if the Transfer had not been made and the Mosing Entities had received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:** Denied.

34.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 547(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 34, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 547(b), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, the Defendant respectfully requests the Court to deny such relief.

## SECOND CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

35.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 34 above as though more fully set forth in this Second Claim for Relief.

**ANSWER:** Defendants incorporate and repeat its responses to paragraph 1 through 34 above as though set forth fully herein.

36.    Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 36, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

37.    The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 37, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

38.    Pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' security interest in the Vehicle was unperfected.

**ANSWER:** Deny. Defendants admit that the Mosing entities have not transferred the vehicle and are still in possession of the original MSO.

39.    Similarly, pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' purported ownership interest in the Vehicle was not noted on the Certificate of Title.

**ANSWER:** Defendants admit that its ownership interest was not noted on the Certificate of Title. Defendants do not admit that the Certificate of Title is authentic. In response to the remaining allegations set forth in paragraph 39, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

40.    The Mosing Entities therefore have no right, title or interest in and to the Vehicle.

**ANSWER:** Denied.

41.    As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer by virtue of its superior interest in the Vehicle.

**ANSWER:** In response to the allegations set forth in paragraph 41, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

42.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 42, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and  (c) and granting such other relief as the Court deems appropriate.

**ANSWER:**  This prayer states no claim; however, the Defendant respectfully requests the Court to deny such relief.

**THIRD CLAIM FOR RELIEF**
**(Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))**

43.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 42 above as though more fully set forth in this Third Claim for Relief.

**ANSWER:** Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 42 above as though more fully set forth in this Second Claim for Relief.

44.     Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 45, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

45.     The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 46, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

46.     Pursuant to C.R.S. § 38-8-107, the Transfer is made "when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien

otherwise than under this article that is superior to the interest of the transferee." C.R.S. § 38-8-107(1)(a)(II).

**ANSWER:** In response to the allegations set forth in paragraph 47, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

47.    If "the transfer to be perfected is not perfected before the commencement of the action . . . , the transfer is deemed made immediately before the commencement of the action." C.R.S. § 38-8-107(2).

**ANSWER:** In response to the allegations set forth in paragraph 48, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

48.    Pursuant to C.R.S. § 42-6-101, et seq., the Mosing Entities failed to perfect either a security interest or purchase interest in the Vehicle. The Transfer therefore occurred immediately before the commencement of this action and this action is therefore timely brought pursuant to C.R.S. § 38-8-110.

**ANSWER:** In response to the allegations set forth in paragraph 49, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

49.    The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining

with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that

Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts

matured.

**ANSWER:**    Defendants are without knowledge or information at this time

sufficient to form a belief as to the truth of the allegations set forth in paragraph 50

of the Complaint, and therefore deny same for purposes of pleading.

50.    The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because

Debtor received less than reasonably equivalent value in exchange for such Transfer and,

when the Transfer was made, BLR was insolvent or became insolvent as a result of the

Transfer.

**ANSWER:** Defendants are without knowledge or information at this time

sufficient to form a belief as to the truth of the allegations set forth in paragraph 51

of the Complaint, and therefore deny same for purposes of pleading.

51.    The Transfer is therefore avoidable by Trustee and may be recovered and

preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a)

and 551.

**ANSWER:** In response to the allegations set forth in paragraph 52, to the extent

such allegations constitute legal conclusions which Defendants need not admit or

deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his

favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. §

---

544(a), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§
550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, the Defendant respectfully
requests the Court to deny such relief.

### FOURTH CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(b), 550(a) and 551))

52. Trustee incorporates by this reference the allegations contained in
Paragraphs 1 through 51 above as though more fully set forth in this Fourth Claim for
Relief.

**ANSWER:** Trustee incorporates by this reference the allegations contained in
Paragraphs 1 through 52 above as though more fully set forth in this Second Claim
for Relief.

53. Pursuant to 11 U.S.C. § 544(b), Trustee may avoid any transfer of an
interest by Debtor that is voidable under applicable law by an actual unsecured creditor of
Debtor.

**ANSWER:** In response to the allegations set forth in paragraph 54, to the extent
such allegations constitute legal conclusions which Defendants need not admit or
deny, Defendants deny same for the purposes of pleading.

54. Debtor scheduled an unsecured debt owing to the Internal Revenue Service
(the "IRS") for $20,000. Upon information and belief, the tax deficiency assessment was
made in the last ten years.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint, and therefore deny same for purposes of pleading.

55.    By application of § 544(b), Trustee steps into the shoes of, and has the same powers as, the IRS.

**ANSWER:** In response to the allegations set forth in paragraph 56, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

56.    The Internal Revenue Code allows the IRS to collect outstanding tax liability from a transferee of Debtor. *See* 26 U.S.C. § 6901(a)(1)(A).

**ANSWER:** In response to the allegations set forth in paragraph 57, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

57.    To do so, the IRS must establish liability under state law.

**ANSWER:** In response to the allegations set forth in paragraph 58, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

58.    Liability under state law has been established. The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small

capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

**ANSWER:** In response to the allegations set forth in paragraph 59, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

59.    The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** In response to the allegations set forth in paragraph 60, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

60.    If the Court determines that the Transfer occurred on May 8, 2012–the date of the Agreement and the $120,000 check–or any time within ten years of a tax deficiency assessment being made, this action is timely because Trustee may avail himself of the IRS' ten-year statute of limitations. 26 U.S.C. § 6502(a); In re Behrends, 2017 WL 4513071, *8 (Bankr. D. Colo. 2017).

**ANSWER:** In response to the allegations set forth in paragraph 61, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

61.     The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 62, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 544(b), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:**   This prayer states no claim; however, the Defendant respectfully requests the Court to deny such relief.

## FIFTH CLAIM FOR RELIEF
### (Turnover of Property of the Estate – 11 U.S.C. § 542(a))

62.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 61 above as though more fully set forth in this Fifth Claim for Relief.

**ANSWER:** Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 62 above as though more fully set forth in this Second Claim for Relief.

---

ANSWER AND COUNTERCLAIM                                                                PAGE | 19

63.    11 U.S.C. § 542(a) requires an entity in possession, custody or control of property of the bankruptcy estate to "deliver to the trustee, and account for, such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate."

**ANSWER:** In response to the allegations set forth in paragraph 64, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

64.    The Mosing Entities are in possession of the Vehicle, which is property of the bankruptcy estate.

**ANSWER:** Defendants admit they are in possession of the Vehicle. Defendants deny it is property of the estate.

65.    The Vehicle is believed to be valued at more than $200,000 and is therefore not of inconsequential value or benefit to the bankruptcy estate.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint, and therefore deny same for purposes of pleading.

66.    Trustee therefore requests entry of an order compelling the Mosing Entities to turn over the Vehicle to Trustee.

**ANSWER:** In response to the allegations set forth in paragraph 67, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee requests that the Court enter judgment in his favor and against the Mosing Entities requiring delivery and turnover of the Vehicle to Trustee and granting such other relief as the Court deems appropriate.

**ANSWER:**   This prayer states no claim; however, the Defendant respectfully requests the Court to deny such relief.

<div align="center">

**AFFIRMATIVE DEFENSES**

</div>

66.     Defendants asserts affirmative defenses to the Complaint as follows:

67.     Plaintiff has failed to allege facts with sufficient specificity that, if proven, establish a prima facie case for recover under 11 U.S.C. §§ 542, 544, 547, 550, and 551 and by this failure has failed to state a claim upon which relief may be granted.

68.     To the extent Defendants received alleged transfers, such transfers were not made while the Debtor was insolvent.

69.     The Trustee is barred by the doctrine *In Pari Delicto*.

70.     Defendants are not liable to the Trustee because there is no creditor whose claim arose before or within a reasonable time after the alleged transfer was made to Defendants.

71.     Defendants are not liable to the Trustee because Debtor was not insolvent at the time the alleged transfers were made.

72.     Defendants are not liable to the Trustee because they accepted the alleged transfer in good faith

73.     Defendants are not liable to the Trustee because 427 Legends gave value to Debtor after the transfer was made.

# COUNTERCLAIM

## *Facts*

74.     Motorcars was formed in 2011 as a buyer and consignor of class automobiles. Motorcars is a Texas limited liability company that does business in Texas. Motorcars considers itself a boutique auto dealer. It is more concerned with matching the right buyer to the right classic automobile, rather than simply consummating a sale. In addition, Motorcars is an authorized replica dealer of Superformance Shelby replicas. Motorcars is located and holds a dealer license in Texas.

75.     Mr. Mosing is a resident of the State of Texas.

76.     On or about August 2009, Mr. Mosing met the Debtor in Texas, who over the next few years bought at least two cars from Motorcars in Texas. Upon information and belief, the Debtor resided in Texas during the relevant time period.

77.     In March or April 2012, Debtor approached Mr. Mosing in Texas about obtaining funds from the Defendants.  (“**Transaction**”).

78.     The Transaction was structured as a purchase. The Debtor transferred ownership of a 1965 Shelby 472 Cobra SC, VIN # CSX4501 (“**Vehicle**”) and the original MSO to Motorcars. In exchange, Mr. Mosing transferred to the Debtor $120,000. A “MSO” is a Manufacturer Statement of Origin. If you have a MSO, you cannot also have a title. In addition to the Vehicle, Mr. Mosing holds the original MSO.

79.     Defendants have continued to pay insurance premiums for the Vehicle. Since transferring the Vehicle to Defendants, the Debtor has taken no actions evidencing ownership, such as possession or the payment of insurance premiums.

80.     Debtor had one year or until May 9, 2013 to buy back the Vehicle. By failing to buy back the Vehicle, the ownership in the Vehicle vested in either of the Defendants. to repay the Loan or the Vehicle and the MSO became property of Mr. Mosing.  Defendants were unaware that the Vehicle was encumbered by a lien. This debt was not disclosed to Defendants. Defendants were unaware that the Vehicle had been encumbered in Colorado. Had Defendants known either of these facts, they would have never engaged in the Transaction.

### *Declaratory Judgment*

81.     Upon information and believe, the Vehicle, with only bare legal title in the Debtor, is subject to a purchase money constructive trust or resulting trust with equitable title in the Defendants.

82.     The Vehicle is not property of the estate as the Debtor only holds bare legal title.

83.     Section 541(a)(1) of the Bankruptcy Code generally provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a Chapter 7 case.  However, section 541 does not by itself create new legal or equitable interests in property.  Instead, property interests are created and defined by state law.  Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under § 541 of the Bankruptcy Code and the debtor is prohibited from distributing such property to its creditors.

84.    Further, 11 U.S.C. § 541(d) provides that property for which a debtor holds only bare record title is not property of the estate. And, a debtor who holds proceeds attributable to real property owned by another holds at most bare record title to such proceeds.

85.    The Transfer took place in Texas. In Texas, when one person pays, or becomes obligated to pay, the consideration for the purchase of property, but title is taken in another's name, the law implies a purchase money resulting trust.  See Tricentrol Oil Trading, Inc. v. Annesley, 809 S.W.2d 218, 220 (Tex. 1991); Nolana Dev. Ass'n v. Corsi, 682 S.W.2d 246, 250 (Tex. 1984); Leyva v. Pacheco, 358 S.W.2d 547, 550 (1962); Cohrs v. Scott, 338 S.W.2d 127, 130 (1960); Morrison v. Farmer, 213 S.W.2d 813, 814 (Tex. 1948).

86.    Under facts supporting a purchase money resulting trust, the parties are presumed to have intended that the named grantee hold title for the use and benefit of the person who is providing the consideration for the purchase.  Cohrs v. Scott, 338 S.W.2d at 130; Masterson v. Hogue, 842 S.W.2d 696, 697 (Tex. App.—Tyler 1992, no writ); Ford v. Simpson, 568 S.W.2d 468, 470 (Tex. Civ. App. Waco 1978, no writ); Bell v. Smith, 532 S.W.2d 686, 684 (Tex. Civ. App.—Fort Worth 1976, no writ); Hammett v. McIntire, 365 S.W.2d 844, 847 (Tex. Civ. App. - Houston 1962, writ ref'd n.r.e.).

87.    When facts supporting a purchase money resulting trust exist, "bare legal title is in the grantee in the deed and equitable title is in the person paying the purchase price."  Hammett v. McIntire, 365 S.W.2d at 847.

88.    A constructive trust is an equitable remedy used to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.—Fort Worth 2002, no pet.); *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex. App.—Houston [1st Dist.] 1988, no writ). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex.App.—Corpus Christi 2002, pet. denied). A constructive trust exists. Defendants provided a capital loan to the Debtor. Defendants were defrauded when they were provided the "Original MSO," and the Debtor failed to disclose that: (1) the Vehicle was subject to a lien; and (2) the Debtor had already obtained title to the Vehicle in Colorado. The Vehicle is the identifiable res.

89.    Defendants seek a declaratory judgment that the estate's interest in the Vehicle is that of only bare legal title, and that equitable title vests in the Defendants subject to constructive and resulting trusts.

90.    Defendants seek no monetary relief from the bankruptcy estate, and explicitly decline to initiate the claims allowance process.

### *Prayer*

91.    For these reasons, Defendants ask for a judgment against the Trustee declaring and awarding the following:

92.    The Defendants have a constructive and/or resulting trust in the Vehicle.

93.    The Defendants are the equitable owners of the Vehicle.

---

ANSWER AND COUNTERCLAIM                                                    PAGE | 25

94. The constructive and/or resulting trust is not subject to the Trustee's strong-arm powers.

95. The Defendants request a trial by jury.

96. All other relief the Court deems just and proper.

Dated: October 14, 2019

                              Respectfully Submitted,

                              **McDowell Hetherington LLP**

                              By:  /s/ Jarrod B. Martin

                              Jarrod B. Martin
                              Texas Bar No. 24070221
                              1001 Fannin Street
                              Suite 2700
                              Houston, TX 77002
                              P: 713-337-5580
                              F: 713-337-8850
                              E: Jarrod.Martin@mhllp.com

                              ***Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars***

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 14, 2019, a true and correct copy of the foregoing Motion was served electronically on the Plaintiff and all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

                              */s/ Jarrod B. Martin*
                              Jarrod B. Martin

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff M. Stephen Peters, chapter 7 trustee, by and through his counsel, Wadsworth Garber Warner Conrardy, P.C., for his First Amended Complaint, states and alleges as follows:

## JURISDICTION AND VENUE

1.    The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e).

2.    This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (K).

3.    Venue in this district is proper under 28 U.S.C. § 1409(a).

4.    This adversary proceeding is commenced pursuant to Rule 7001(1) and (2) of the Federal Rules of Bankruptcy Procedure.

5.    Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS

6.      Plaintiff M. Stephen Peters is the duly appointed chapter 7 trustee ("Trustee") of the bankruptcy estate of Tracy Dean Stephenson, Case No. 19-13565 MER.

7.      Defendant Jeffrey Mosing ("Mr. Mosing") is an individual residing in the state of Texas.

8.      Defendant Mosing Autosport, LLC dba Mosing Motorcars ("Motorcars") is a limited liability company organized under the laws of the state of Texas.

9.      Tracy Dean Stephenson ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("Petition Date").

10.      On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra SC motor vehicle, VIN CSX4501 ("Vehicle").  *See* Certificate of Title attached hereto as Exhibit 1.

11.      Debtor financed the purchase of the Vehicle with a loan from Extraco Bank NA ("Extraco").  Extraco's lien was noted on the Certificate of Title.  On June 2, 2016, Extraco released its lien against the Vehicle.  *See* Exhibit 1.

12.      In an "Agreement" dated May 8, 2012, either Mr. Mosing or Motorcars (together, "Mosing Entities") loaned Debtor $120,000.  A copy of the Agreement is attached hereto as Exhibit 2.

13.      The Agreement allowed Debtor to "re-acquire" the Vehicle by paying stepped-up amounts by certain deadlines.  In the Agreement, Mr. Mosing was to hold the "Original MSO," which is, upon information and belief, the Certificate of Title, and possession of the Vehicle until the agreed upon amount was repaid.

14.      On June 5, 2019, Motorcars executed a letter stating that the $120,000 was a loan and the Vehicle was collateral for the loan.  A copy of the letter is attached hereto as Exhibit 3.

15.      Despite the Agreement and the representations made in the in June 5, 2019 letter, $120,000 was not paid to Debtor.  Instead, the $120,000 was paid with a check dated May 8, 2012 from an account bearing Mr. Mosing's name and made payable to 427 Legends.  A copy of the check is attached hereto as Exhibit 4.

16.      Since the check was payable to 427 Legends instead of Debtor, Debtor did not receive reasonably equivalent value for the Transfer (as defined *infra*).

17.      In the June 5, 2019 letter, it was admitted that Debtor made no payments to the Mosing Entities and that Mr. Mosing never received the original Certificate of Title for the

2

Vehicle.

18.     The Mosing Entities are currently in possession of the Vehicle.

19.     Pursuant to C.R.S. § 42-6-121(5), liens on motor vehicles shall be deemed perfected pursuant to C.R.S. § 42-6-120 when all necessary documents for recording the lien are received by the authorized agent and payment is tendered to note the lien.

20.     Pursuant to C.R.S. § 42-6-120, a mortgage lien against a motor vehicle is not effective as a lien against the "rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner" unless the lien is filed for public record and the fact of filing is noted on the owner's certificate of title.

21.     Pursuant to C.R.S. § 42-6-110, upon the sale of a motor vehicle, the person in whose name the vehicle is registered must execute a formal transfer of the vehicle as described in the Certificate of Title.

22.     C.R.S. § 42-6-109(1) unequivocally provides that "a purchaser or transferee does not acquire any right, title, or interest in and to a motor or off-highway vehicle purchased by the purchaser or transferee unless and until he or she obtains from the transferor the certificate of title duly transferred in accordance with this part 1."

23.     Trustee is in possession of the original Certificate of Title.

24.     The Certificate of Title does not reflect the Mosing Entities as having a security interest in the Vehicle nor does it reflect a transfer of the Vehicle by Debtor to the Mosing Entities. To the contrary, the Certificate of Title shows Debtor as the sole owner of the Vehicle and that the Vehicle is free and clear of all liens, claims and interests.

25.     The purported grant of the security interest and/or transfer of an ownership interest was a transfer within the meaning of 11 U.S.C. § 101(54) ("Transfer").

26.     Debtor's interest in the Vehicle is property of the bankruptcy estate.

27.     The Mosing Entities have sought to impose a constructive and/or resulting trust over the Vehicle for their benefit of the Mosing Entities (the "Equitable Trust"). Trustee disputes that an Equitable Trust exists.

### FIRST CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 547(b), 550(a) and 551)

28.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 27 above as though more fully set forth in this First Claim for Relief.

3

29.     The determination of whether the Transfer and/or Equitable Trust is preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

30.     The Transfer and/or Equitable Trust were made for the benefit of the Mosing Entities.

31.     The Transfer and/or Equitable Trust were made for or on account of an antecedent debt owed by Debtor before the Transfer and/or Equitable Trust were made.

32.     The Transfer and/or and Equitable Trust were made while Debtor was insolvent.

33.     The Transfer and/or and Equitable Trust occurred immediately before the Petition Date pursuant to 11 U.S.C. § 547(e)(2)(C), and therefore were made on or within 90 days prior to the Petition Date.

34.     The Transfer and/or and Equitable Trust enabled the Mosing Entities to receive more than the Mosing Entities would have received in Debtor's chapter 7 case if the Transfer and Equitable Trust had not been made and the Mosing Entities had received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

35.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 547(b), 550(a) and 551.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 547(b), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

36.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 35 above as though more fully set forth in this Second Claim for Relief.

37.     Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

38.     The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

39.     Pursuant to C.R.S. § 42-6-101, *et seq.*, on the Petition Date, the Mosing Entities'

4

security interest and/or Equitable Trust in the Vehicle were unperfected.

40.     Similarly, pursuant to C.R.S. § 42-6-101, *et seq.*, on the Petition Date, the Mosing Entities' purported ownership interest and/or interest via the Equitable Trust in the Vehicle were not noted on the Certificate of Title.

41.     The Mosing Entities therefore have no right, title or interest in and to the Vehicle.

42.     As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer and/or the Equitable Trust by virtue of its superior interest in the Vehicle.

43.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

44.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 43 above as though more fully set forth in this Third Claim for Relief.

45.     Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

46.     The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

47.     Pursuant to C.R.S. § 38-8-107, Transfer is made "when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this article that is superior to the interest of the transferee." C.R.S. § 38-8-107(1)(a)(II).

48.     If "the transfer to be perfected is not perfected before the commencement of the action . . . , the transfer is deemed made immediately before the commencement of the action." C.R.S. § 38-8-107(2).

49.     Pursuant to C.R.S. § 42-6-101, *et seq.*, the Mosing Entities failed to perfect either

a security interest or purchase interest in the Vehicle.  The Transfer therefore occurred immediately before the commencement of this action and this action is therefore timely brought pursuant to C.R.S. § 38-8-110.

50.     The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

51.     The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

52.     The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

## <u>FOURTH CLAIM FOR RELIEF</u>
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(b), 550(a) and 551))

53.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 52 above as though more fully set forth in this Fourth Claim for Relief.

54.     Pursuant to 11 U.S.C. § 544(b), Trustee may avoid any transfer of an interest by Debtor that is voidable under applicable law by an actual unsecured creditor of Debtor.

55.     Debtor scheduled an unsecured debt owing to the Internal Revenue Service (the "IRS") for $20,000.  Upon information and belief, the tax deficiency assessment was made in the last ten years.

56.     By application of § 544(b), Trustee steps into the shoes of, and has the same powers as, the IRS.

57.     The Internal Revenue Code allows the IRS to collect outstanding tax liability from a transferee of Debtor.  *See* 26 U.S.C. § 6901(a)(1)(A).

58.     To do so, the IRS must establish liability under state law.

6

59.     Liability under state law has been established. The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

60.     The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

61.     The Transfer and/or the Equitable Trust are avoidable pursuant to C.R.S. § 42-6-101, *et seq.*, because the Mosing Entities' security interest, ownership interest and/or Equitable Trust in the Vehicle were unperfected.

62.      If the Court determines that the Transfer occurred, or the Equitable Trust was established, on May 8, 2012–the date of the Agreement and the $120,000 check–or any time within ten years of a tax deficiency assessment being made, this action is timely because Trustee may avail himself of the IRS' ten-year statute of limitations.  26 U.S.C. § 6502(a); *In re Behrends*, 2017 WL 4513071, *8 (Bankr. D. Colo. 2017).

63.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(b), 550(a) and 551.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 544(b), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

## FIFTH CLAIM FOR RELIEF
### (Turnover of Property of the Estate – 11 U.S.C. § 542(a))

64.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 63 above as though more fully set forth in this Fifth Claim for Relief.

65.     11 U.S.C. § 542(a) requires an entity in possession, custody or control of property of the bankruptcy estate to "deliver to the trustee, and account for, such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate."

66.     The Mosing Entities are in possession of the Vehicle, which is property of the bankruptcy estate.

7

67.     The Vehicle is believed to be valued at more than $200,000 and is therefore not of inconsequential value or benefit to the bankruptcy estate.

68.     Trustee therefore requests entry of an order compelling the Mosing Entities to turn over the Vehicle to Trustee.

WHEREFORE, Trustee requests that the Court enter judgment in his favor and against the Mosing Entities requiring delivery and turnover of the Vehicle to Trustee and granting such other relief as the Court deems appropriate.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief – Determination of Interests in the Vehicle)

69.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 68 above as though more fully set forth in this Sixth Claim for Relief.

70.     Under Rule 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

71.     Trustee requests this Court to enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle and that the Mosing Parties have no lien, right, title or interest in or to the Vehicle or any part thereof.

WHEREFORE, Trustee requests that the Court enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle, that the Mosing Parties have no lien, right, title or interest in or to the Vehicle or any part thereof, and granting such other relief as the Court deems appropriate.

Dated this 3rd day of January, 2020.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
aconrardy@wgwc-law.com
*Attorneys for the Plaintiff M. Stephen Peters, chapter 7 trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2020, a true and accurate copy of the foregoing **FIRST AMENDED COMPLAINT** was served via U.S. Mail, first- class postage prepaid, or electronically through CM/ECF where indicated to the address listed below:

> Jarrod Martin
> McDowell Hetherington LLP
> 1001 Fannin, Suite 2700
> Houston, TX 77002
> jarrod.martin@mhllp.com

> _/s/ Taylor Sellars_____
> For Wadsworth Garber Warner Conrardy, P.C.
>          .

9

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars.** | § | |

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

In this adversary proceeding, Defendants Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars move to dismiss Chapter 7 Trustee M. Stephen Peters' First Amended Complaint ("**FAC**"), under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

### INTRODUCTION

This is a case about fraud and equity. Defendants were defrauded by Debtor Tracy Dean Stephenson in the purchase of a collectable sports car—a 1965 Shelby 472 Cobra SC. Mosing paid $120,000 for the Shelby Cobra he now owns. The Trustee nevertheless claims the Shelby Cobra belongs to the bankruptcy estate. This motion will show that a constructive trust arose under Texas law when Mosing purchased the Shelby Cobra from

the Debtor. As a result, the Shelby Cobra was not the property of the estate and its transfer is not avoidable under the bankruptcy code. Rule 12(b)(6) therefore requires that the Trustee's causes of action be dismissed.

## JURISDICTION AND VENUE

This adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(H), for which the Court may enter final orders. Venue is proper in the District of Colorado under 28 U.S.C. §§ 1408 and 1409.

Texas law governs this dispute. Colorado's bankruptcy courts follow the federal choice-of-law approach and apply the law of the state with the most significant relationship[1]—even at the motion-to-dismiss stage.[2] Under the most-significant-relationship test, Texas law applies. After all, the FAC (construed in the Trustee's favor) alleges all relevant facts necessary to determine which state has the strongest interest in having its laws applied. The transaction occurred in Texas,[3] the Shelby Cobra is located in Texas,[4] and the Manufacturer Statement of Origin is currently held in Texas.[5] Texas substantive law governs.

---

[1] *See In re Kaiser Steel Corp.*, 87 B.R. 154, 159 (Bankr. D. Colo. 1988) ("Pursuant to Section 6 of the Restatement (Second), together with its more particular provisions concerning the specific type of action at issue, the choice of law approach followed by Colorado is that of the 'most significant relationship' test.") (citations omitted).

[2] *See Cypress Advisors, Inc. v. Davis*, No. 16-CV-01935-MSK-MEH, 2017 WL 3116289, at *4 (D. Colo. July 21, 2017) (applying choice of law analysis at motion-to-dismiss stage); *Iskowitz v. Cessna Aircraft Co.*, No. 07-CV-00968-REB-CBS, 2009 WL 3162016, at *2 (D. Colo. Sept. 30, 2009) (same).

[3] FAC, at ¶ 7, 8, & 12.

[4] *Id.* at ¶ 18.

---

## BACKGROUND

Jeffrey Mosing formed Mosing Motorcars in 2011 as a buyer and consignor of classic automobiles. Mosing Motorcars is a Texas limited liability company that does business in Texas.[6] Mosing resides in Texas, and Mosing Motorcars is located and holds a dealer license in Texas.[7]

Around December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 472 Cobra SC, VIN # CSX4501.[8] About six months later, Debtor approached Mosing about obtaining funds from Defendants in exchange for the Shelby Cobra.[9] The parties structured the transaction as a purchase (the Trustee attached the related Agreement to the FAC).[10] The Debtor transferred ownership of the Shelby Cobra and the original Manufacturer Statement of Origin ("**MSO**") to Motorcars.[11] And in exchange, Mosing transferred $120,000 to the Debtor.[12] The Debtor never told Mosing that he financed the Shelby Cobra with a loan from Extraco Bank NA.[13] The Trustee never

---

[5] *Id*. at ¶ 13.

[6] FAC, at ¶ 8.

[7] *Id.*, at ¶ 7.

[8] *Id.*, at ¶ 10.

[9] *Id.*, at ¶ 12

[10] FAC, Exhibit 2.

[11] FAC, at ¶ 12.

[12] *Id.*, at ¶ 12–14.

[13] *Id.*, at ¶ 11.

---

alleges that Defendants had notice that Debtor already titled the Shelby Cobra in Colorado.

According to the Agreement, Debtor had one year—or until May 9, 2013—to buy back the Shelby Cobra.[14] But the Debtor did not. As a result, the ownership in the Shelby Cobra vested in either of the Defendants. That is, the Debtor made no payments to Defendants, and the MSO became Mosing's property.[15] No one alleges that Defendants were aware of either the Extraco Bank lien or the existing Colorado title.

The Trustee nonetheless sued Defendants to avoid their interest in the Shelby Cobra. The Trustee's FAC asserts claims to:

1. avoid Defendants' equitable interest in the Shelby Cobra under 11 U.S.C. §§ 547(b), 550(a), and 551;

2. avoid Defendants' interest in the Shelby Cobra under 11 U.S.C. §§ 544(a), 550(a), and 551;

3. avoid Defendants' interest in the Shelby Cobra under §§ 544(a), 550(a), and 551;

4. avoid Defendants' interest in the Shelby Cobra under §§ 544(a), 550(a), and 551;

5. turn over the Shelby Cobra as estate property under 11 U.S.C. § 542(a); and

6. declare the Trustee's ownership interest in the Shelby Cobra.[16]

---

[14] FAC, Exhibit 2.

[15] FAC, at ¶ 17.

[16] FAC at ¶¶ 28–71.

The FAC predicates Defendants' alleged liability on two assumptions: (1) that the Shelby Cobra is the property of the estate; and (2) that Defendants' equitable interest is avoidable. Yet the FAC's own allegations confirm these assumptions are wrong. The FAC must therefore be dismissed.

## RULE 12(B)(6) STANDARD

To defeat a Rule 12(b)(6) motion to dismiss, the Trustee must plead sufficient facts "to state a claim to relief that is plausible on its face."[17] A claim meets the plausibility test when the Trustee pleads factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not entitled to the assumption of truth.[18] The Court does not evaluate the Trustee's likelihood of success; instead, it only determines whether the Trustee has pleaded a legally cognizable claim—that is, whether the pleadings adequately state a claim upon which relief can be granted.[19]

The Supreme Court has a two-pronged approach for reviewing a motion to dismiss for failure to state a claim.[20] First, the court identifies the conclusions in a complaint, even if packaged as factual allegations, and (unlike true factual allegations) does not

---

[17] *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted).

[18] *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009).

[19] *Safe Streets All.*, 859 F.3d at 878.

[20] *Iqbal*, 556 U.S. at 678.

---

presume them to be true.[21] Second, the court presumes the truth of any remaining "well-pled factual allegations," and determines whether these factual allegations and their reasonable inferences plausibly support a claim for relief.[22]

Finally, a complaint must comport with the Federal Rules of Civil Procedure in connection with the specificity of its allegations. Rule 8(a), which applies to adversary proceedings under Federal Rule of Bankruptcy Procedure 7008, provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[23] "Although the rule encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[24]

## ARGUMENT AND AUTHORITIES

The Court should grant Defendants' Rule 12(b)(6) motion to dismiss because the Trustee's pleadings fail to state a valid claim against Defendants. The Trustee assumes that the Shelby Cobra is the Debtor's property and part of the bankruptcy estate. But when the Debtor failed to repay the loan on the Shelby Cobra, a constructive trust was created—meaning the Shelby Cobra is now Defendants' property. And because

---

[21] *Id.* at 679, 681.

[22] *Id.*

[23] FRCP 8(a)(2).

[24] *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 346 (2005).

constructive trusts are not avoidable under the bankruptcy code, the Trustee's FAC
should be dismissed.

**1. Because a constructive trust arose when Defendants purchased the Shelby Cobra, the Shelby Cobra is Defendants' property.**

Based on the facts alleged, Defendants have a constructive trust or equitable
interest in the Shelby Cobra and therefore own it. In the Fifth Circuit, the "imposition of a
constructive trust under state law upon a bankruptcy debtor's property generally confers
on the true owner of the property an equitable interest in the property superior to the
trustee's."[25] To establish that a constructive trust exists, Defendants must prove (1)
breach of a special trust, fiduciary relationship or actual fraud; (2) unjust enrichment of
the wrongdoer; and (3) tracing to an identifiable res.[26] Here, the FAC alleges that:
Mosing provided a capital loan to the Debtor;[27] Mosing was defrauded when he received
the original MSO, and the Debtor failed to disclose the Shelby Cobra was subject to a
lien and had already obtained title to the Shelby Cobra;[28] and the Shelby Cobra is the
identifiable res in the possession of Defendants.[29] The allegations of the FAC therefore
establish that Defendants have a constructive trust over the Shelby Cobra.

---

[25] *In re Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th Cir. 1985).

[26] *Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.—Corpus Christi 2002, pet denied).

[27] FAC, at ¶ 12.

[28] *Id.*, at ¶ 13.

[29] *Id.*, at ¶ 18.

---

Even so, the Trustee alleges that "[t]he Mosing Entities have sought to impose a constructive and/or resulting trust over the Vehicle for their benefit of the Mosing Entities (the "Equitable Trust"). Trustee disputes that an Equitable Trust exists."[30] But Bankruptcy courts recognize that constructive and resulting trusts arise in situations like what transpired here. In *Kang*, for instance, the bankruptcy court found that a resulting trust arose when the mortgage was taken under the Debtor's name but the Debtor's parents paid the down payment, made all the mortgage payments, and lived on the property.[31] The court recognized that where a transfer of property is made to one person, and another person at the time of the transfer undertakes an obligation to pay the purchase price, a resulting trust arises in favor of the latter person, unless he manifests an intention that no resulting trust should arise.[32] There were no written agreements concerning ownership of the property between the Debtor and the Debtor's parents.[33] Yet the bankruptcy court concluded that "a resulting trust arose at the time of the conveyance [of the Property]. The Estate (as successor-in-interest to the Debtors) holds legal title to the Property in a resulting trust for the Parents, who have equitable title."[34] The bankruptcy court proceeded to treat resulting trusts the same way as constructive trusts

---

[30] FAC at ¶ 3.

[31] *Id.*

[32] *In re Kang*, No. 11-36325, 2013 WL 870223, at *2 (Bankr. S.D. Tex. Mar. 6, 2013) (quoting RESTATEMENT (SECOND) OF TRUSTS § 456 (1959)).

[33] *Id.* at *1.

[34] *Id.*, at *5.

---

under the bankruptcy code. Under the same logic, the allegations in the FAC establish that Defendants hold equitable title in the Shelby Cobra via their constructive trust.

Perhaps sensing the estate's legal vulnerability, the Trustee alleges that Defendants failed to perfect the constructive trust in the Shelby Cobra. But this allegation defies common sense. Constructive trusts are, by definition, unrecorded. Indeed in *Kang*, the bankruptcy court noted that "[t]he answer turns on whether the use of § 544(a) would result in the estate benefitting from § 541(d) property the debtor never owned."[35] That is precisely what would happen here if the Court refuses to recognize the existence of the constructive trust. And that is precisely why, as the following section explains, Section 544 does not permit the Trustee to void this transfer.

## 2. Because the Shelby Cobra is Defendant's property—and not the estate's—the Trustee cannot avoid the transfer.

The Trust cannot avoid property held in a constructive trust because it does not belong to the estate. The Fifth Circuit has held that trustees may not use Section 544 strong-arm powers to avoid interests in property subject to a constructive trust:

> As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings.[36]

---

[35] *In re Kang*, 2013 WL 870223, at *7.

[36] *In re Quality Holstein Leasing*, 752 F.2d at 1013–14.

The Fifth Circuit has further held that the purpose of the strong-arm powers is not to allow the estate to benefit from property the debtor never, or no longer, owns.[37] A constructive trust arose here when the Debtor sold the Shelby Cobra to Mosing and fraudulently retained possession of the original title. Defendants paid for and now own the Shelby Cobra. Since the Debtor's conduct created the constructive trust pre-petition, the Trustee cannot use avoidance. The Debtor, and by extension the bankruptcy estate, no longer owns the Shelby Cobra. Allowing the Trustee to lay claim to the Shelby Cobra would allow the bankruptcy estate to benefit from property it no longer owns.

## CONCLUSION

The FAC predicates Defendants' alleged liability upon: (1) the Shelby Cobra being estate property; and (2) Defendants' equitable interest in the property being avoidable. Because the Shelby Cobra is not the property of the bankruptcy estate, all of the Trustee's claims fail and should be dismissed. For these reasons, Defendants Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars asks that the Court grant this motion and dismiss the Trustee's claims against Defendants.

---

[37] *See Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)*, 12 F.3d 426, 436 (5th Cir. 1994) ("Because § 541(d) excludes property subject to a constructive trust from the bankruptcy estate, we have also held that § 541(d) prevails against the trustee's strong-arm powers under § 544.").

Dated:   January 17, 2020

<div align="right">

Respectfully Submitted,

MCDOWELL HETHERINGTON LLP

By:  /s/ Jarrod B. Martin_____

Jarrod B. Martin
Texas Bar No. 24070221
Nicole E. Su
Texas Bar No. 24106476
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com

*Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct cop of the forgoing was served electronically on January 17, 2020 on counsel for the Plaintiff as follows:

Aaron J. Conrardy
aconrardy@wgwc-law.com

<div align="right">

*/s/ Lara Anne Coleman_____*
Lara Anne Coleman, Paralegal

</div>

---

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**                                    **PAGE | 11**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport, LLC** | § | |
| *dba* **Mosing Motorcars.** | § | |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

THIS MATTER having come before the Court on the Motion to Dismiss First Amended Complaint ("Motion") filed by Defendants Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars (collectively, "Defendants"), and the Court having reviewed the Motion, any responses thereto, and the arguments of counsel, hereby GRANTS the Motion. Accordingly, it is

ORDERED that the Plaintiff's First Amended Complaint is dismissed with prejudice; and it is further

ORDERED that the Clerk of Court shall close this adversary proceeding.

Dated this _____ day of _____, 2020.

BY THE COURT:

_____
**Hon. Michael E. Romero**
**Chief United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT

Plaintiff M. Stephen Peters, chapter 7 trustee ("Trustee"), by and through his undersigned counsel, Wadsworth Garber Warner Conrardy, P.C., responds in opposition to Defendants' Motion to Dismiss Trustee's First Amended Complaint. In support thereof, Trustee states as follows:

## I.    INTRODUCTION

Defendants' argument that Trustee fails to state a claim upon which relief may be granted is premised entirely on the false conclusion that the Defendants have already proven their constructive trust claim and the Vehicle is therefore not property of the bankruptcy estate. No such determination has been made by any court, no such determination may be made from Trustee's allegations in the First Amended Complaint, and such a determination is not appropriate without further discovery.

Even if the Court were to engage in the constructive trust analysis, the current record before the Court would support the conclusion that either there is no constructive trust or further discovery is required before a determination may be made.

For the reasons argued below, Defendants' Motion to Dismiss should be denied.

## II.    <u>STANDARD OF REVIEW</u>

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *In re Ghaemi*, 492 B.R. 321, 324 (Bankr. D. Colo. 2013).  Granting a Rule 12(b)(6) motion is a "harsh remedy" that should be "cautiously studied" to "effectuate the spirit of the liberal rules of pleading" and "protect the interests of justice."  *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). When reviewing a motion to dismiss, the Court must "assume as true the facts asserted in the complaint and construe the well-pleaded allegations in favor of the plaintiff." *In re Hamilton*, 186 B.R. 991, 993 (Bankr. D. Colo. 1995).  "Dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief."  *Id.*  "[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 994 (quoting *Maez v. Mountain States Tel. and Tel. Inc.,* 54 F.3d 1488 (10th Cir.1995)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Plausible" does not mean "probable," and

2

the court must still accept alleged facts as true, but the pleading must assert "more than a sheer possibility that a defendant has acted unlawfully." *Id.* It must be remembered, however, that the requirements of "plausibility" and "fair notice" neither invalidate Rule 8's "short and plain statement" rule, nor impose a heightened fact pleading standard. *See Twombly,* 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics. . . ."). The critical question is this: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "'raise[s] a right to relief above the speculative level.'" *Dias*, 567 F.3d at 1178 (quoting *Twombly*, 550 U.S. at 555).

## III.   <u>UNDISPUTED FACTS (ALLEGATIONS IN THE COMPLAINT)</u>

Trustee incorporates herein by this reference all of the allegations (and defined terms) set forth in the First Amended Complaint. As set forth above, the Court must disregard Defendants' characterizations of the factual allegations included in their Motion to Dismiss as well as their additional facts that are not included in the First Amended Complaint.

## IV.   <u>ARGUMENT</u>

Defendants' argument that the Vehicle is not property of the bankruptcy estate because a constructive trust arose for the benefit of the Defendants is fundamentally flawed in that it assumes, incorrectly, that two critical determinations have already been made: (1) that Texas law applies to the purported transfer of the Vehicle from Debtor to Defendants; and (2) that the facts establish Defendants' entitlement to a constructive trust under Texas law. Trustee will address these issues in turn below and demonstrate that resolution of the choice of law and constructive trust issues at this stage of the case is premature and improper.

3

A. **Resolution of the Choice of Law Issue is Improper and Impossible at this Stage of the Litigation.**

To address the constructive trust issue, the Court must first conclude that Texas law governs the Transfer.  Resolution of the choice of law issue at this stage of the litigation would be improper, as it requires a fact-intensive inquiry to determine which state has the most significant relationship with the transfer at issue.  *See First Nat'l Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973) (applying "most significant relationship" analysis in tort actions); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979) (applying "most significant relationship" analysis contract actions).  Weighing the evidence in this manner goes beyond the Court's charge in evaluating the Motion to Dismiss, which is a narrow determination of whether Trustee's complaint is legally sufficient to state a claim for which relief may be granted.  *See In re Ghaemi*, 492 B.R. at 324.

Even if the Court engaged in the constructive trust analysis, the allegations pled thus far are insufficient to adequately evaluate the choice of law issues raised in the Motion to Dismiss. *See Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2016 WL 7168235, at *3 (W.D. Okla. Dec. 8, 2016) (denying a motion to dismiss which sought the resolution of choice of law and stating that "[s]uch an inquiry would be better reserved for summary judgment, where the Court has the benefit of a properly developed record"); *Jones v. Lattimer*, 29 F.Supp.3d 5, 10 n. 3 (D.D.C. 2014) (concluding choice of law analysis was premature on motion to dismiss and "better suited" for resolution at summary judgment stage after record had been developed); *Speedmark Transp., Inc. v. Mui*, 778 F.Supp.2d 439, 444 (S.D.N.Y. 2011) (finding choice of law determination "premature on . . . motion to dismiss," since the record lacked necessary development for the fact-specific analysis); *Arlandson v. Hartz Mountain Corp.*, 792 F.Supp.2d 691, 699-700 (D.N.J. 2011) ("Due

4

to the factual inquiry that may be necessary to properly weigh the [choice of law] Restatement factors, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage[.]").

The facts that are relevant and necessary to the determination of which state has the most significant relationship with the Transfer have yet to be developed through discovery. For example, the parties have yet to discover where the Vehicle was located at the time the Agreement was executed, the circumstances surrounding the execution of the Agreement, including but not limited to what discussions, negotiations, and/or meetings occurred and the location of the same, where the parties were located when they executed the Agreement, the location of the account from which the Defendants loaned Debtor the $120,000, etc. These facts, and more, are relevant to the determination of which state law governs the Transfer. For these reasons, the Court should decline to engage in such fact finding at this stage of litigation and deny Defendants' Motion to Dismiss.

In the event the Court engages in the choice of law inquiry prior to discovery, the First Amended Complaint contains well-pled allegations that support a finding that Colorado has the most significant relationship with the transfer at issue in this proceeding. Those facts include: (1) the Vehicle's Certificate of Title was issued by the State of Colorado; (2) Trustee possesses the Vehicle's Certificate of Title in Colorado; (3) the bankruptcy estate is located in Colorado; and (4) the Debtor resides in Colorado.

For these reasons, a determination that Texas laws controls is premature. Alternatively, the facts pled in the First Amended Complaint support a determination that Colorado law controls.

5

**B. Resolution of the Constructive Trust Issue Requires a Fact-Intensive Inquiry that is Outside the Scope of the Motion to Dismiss.**

The determination of whether a constructive trust arose is also a fact-intensive inquiry that is premature. According to Texas law, "[a] constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). Three elements are generally required for a constructive trust to be imposed under Texas law. *Id.* The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *Id.*

"[W]hile bankruptcy law does not 'trump' state constructive trust law, bankruptcy courts should 'act very cautiously' in deciding whether to impose a constructive trust on property that otherwise would be property of the estate. *In re Balgobin*, 490 B.R. 13, 20 (Bankr. E.D.N.Y. 2013). "Thus, 'bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so,' where a party seeks to impose a constructive trust against the bankruptcy estate, at the expense of creditors of the estate." *Id.* at 21.

The First Amended Complaint does not contain factual allegations that satisfy the elements of a constructive trust. There are no allegations that Debtor and Defendants had a special or fiduciary relationship and that there was a breach of that relationship. There are no allegations of actual fraud. There are no allegations of unjust enrichment.

The facts that the Defendants rely upon do no support a constructive trust claim. Instead, Defendants attempt to mislead this Court by asserting that Trustee's First Amended Complaint alleges that "Mosing was defrauded when he received the original MSO, and the Debtor failed to disclose the [Vehicle] was subject to a lien and had already obtained title to the [Vehicle]." *Motion*

6

*to Dismiss* at p. 7.  To support that statement, Defendants cite to paragraph 13 of the First Amended

Complaint.   Paragraph 13 of the First Amended Complaint in no way contains the factual

allegations to support a constructive trust claim.  Paragraph 13 states:

> The Agreement allowed Debtor to "re-acquire" the Vehicle by paying stepped-up
> amounts by certain deadlines.  In the Agreement, Mr. Mosing was to hold the
> "Original MSO," which is, upon information and belief, the Certificate of Title, and
> possession of the Vehicle until the agreed upon amount was repaid.

First Amended Complaint at ¶ 13.

Defendants' characterization of the facts is simply misleading.

The proper approach to this case is to deny the Motion to Dismiss so that Trustee may

conduct discovery surrounding the merits of the constructive trust claim to develop a record for

the Court.  At this stage in the litigation the parties have not engaged in discovery to investigate

the parties' conduct and intent related to the Agreement, whether any conduct constituted actual

fraud, the connection, if any, of "427 Legends" and the reason for the check being made payable

thereto instead of the Debtor, whether any benefit was obtained by Debtor, whether Debtor was

unjustly enriched, etc.   These are numerous factual issues that need to be explored through

discovery and are not ripe for a legal determination in the context of a motion to dismiss.  For these

reasons, Defendants' Motion to Dismiss should be denied.

### C.  <u>The Vehicle is Property of the Estate under both Colorado and Texas Law</u>.

Out of an abundance of caution, Trustee will address an argument that the Defendants are

attempting to "back door" into the Motion to Dismiss.  Defendants appear to argue that they

obtained ownership of the Vehicle via transfer from Debtor to Defendants of the Manufacturer

Statement of Origin ("MSO").  However, Defendants' reliance on the MSO as a means to establish

transfer of title in the Vehicle enjoys no legal support.  When the manufacturer of a motor vehicle

delivers the vehicle to a dealership, it provides the dealership with an MSO.  When a vehicle is subsequently sold by the dealership, a Certificate of Title issues and the MSO is of no effect under both Colorado and Texas law.  *See* C.R.S. § 42-6-113(1) and (3); Texas Code § 501.025 and 501.027.  That is exactly what happened here.  The MSO was issued and, once the Vehicle was sold to Debtor, a Certificate of Title was issued, which Trustee possesses.

The relationship between an MSO and Certificate of Title is consistent with how title to a motor vehicle is transferred.  Colorado and Texas law unequivocally provide that a purchaser or transferee does not acquire title to a motor vehicle until the purchaser or transferee obtains the certificate of title.  C.R.S. § 42-6-109(1) and Texas Code § 501.023.  It is undisputed that the Defendants never received the Certificate of Title, the back of the Certificate of Title is not endorsed to Defendants, and Defendants did not apply for title to the Vehicle.  Defendants therefore have no ownership interest in the Vehicle.

Similarly, the Defendants do not have a lien against the Vehicle.  In Colorado, for a mortgage lien against a motor vehicle to be effective as a lien against the "rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner," the lien must be filed for public record and the fact of filing must be noted on the owner's certificate of title.  *See* C.R.S. § 42-6-120.  Texas's Certificate of Title Act likewise requires notation of the lien on the Certificate of Title to perfect a security interest in the Vehicle.  Texas Code § 501.111.  It is undisputed that the Defendants' purported lien is not noted on the Certificate of Title.

 Indeed, Defendants have made no attempt to address or explain their failure to note their purported interests on the Certificate of Title.  Applying the facts in the First Amended Complaint to either Colorado law or Texas law leads to the inescapable conclusion that the Vehicle is property

8

of the bankruptcy estate.

For these reasons, Defendants' Motion to Dismiss should be denied.

**D. If the Court Determines that One or More of the Claims are Inadequately Pled, Trustee Seeks Leave to File an Amended Complaint.**

Rule 15(a)(2) provides that the "court should freely give leave [to amend] when justice so requires." Whether to grant leave to amend is within the discretion of the Court. *See Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.* (quoting *H.E. Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993)).

Should the Court determine that additional facts are necessary to state claims for avoidable transfers, turnover of property of the estate, and declaratory relief, Trustee respectfully requests that he be allowed to conduct discovery relevant to the choice of law analysis and then to amend his Complaint to plead facts essential to that inquiry.

There is no justification for refusing to allow Trustee to amend the Complaint. The case is in its infancy. There is no delay, prejudice, bad faith or dilatory motive. Permitting the requested discovery and allowing Trustee to amend his Complaint would not be futile as the Defendants have advanced no colorable argument that Trustee's First Amended Complaint should be dismissed with prejudice. Accordingly, if the Court determines that one or more claims are not sufficiently pled, leave should be granted for Trustee to file an amended complaint.

## V.    <u>CONCLUSION</u>

For all the reasons set forth herein, the Motion to Dismiss should be summarily denied. There is no basis for Defendants' constructive trust claim based upon the four corners of the First Amended Complaint and Defendants do not dispute that Trustee's claims are adequately pled under either Rule 8(a) or Rule 9(b), as applicable. There are no grounds for dismissing any of the claims with prejudice. In the event the Court determines one or more claims are not sufficiently pled, leave should be granted under Rule 15(a)(2) to amend.

WHEREFORE, Trustee prays that the Court deny the Motion to Dismiss, or in the alternative, allow Trustee to file an amended Complaint, and for such other and further relief as the Court deems appropriate.

Dated this 7th day of February, 2020

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Lindsay S. Riley*
Aaron J. Conrardy, #40030
Lindsay S. Riley, Texas Bar #24083799
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999 / (303) 296-7600 FAX
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for Plaintiff M. Stephen Peters, chapter 7 trustee*

10

## CERTIFICATE OF SERVICE

     I do hereby certify that on the 7th day of February, 2020, I served a true and correct copy of the **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** electronically through CM/ECF or by United States mail, postage prepaid thereon, to those persons listed below:

Jarrod B. Martin
Jarrod.martin@mhllp.com

                                    */s/ Angela Garcia*                 
                                      For Wadsworth Garber Warner Conrardy

**DO NOT ACCEPT WITHOUT VERIFYING PRESENCE OF WATERMARK ON BACK**

## STATE OF COLORADO
## CERTIFICATE OF TITLE
### ****MOTOR VEHICLE****

319164

| | | | | |
|---|---|---|---|---|
| VIN | YEAR | MAKE | MODEL | BODY |
| CSX4501 | 1965 | SHE | | CV |

TITLE NUMBER
47E826370

ODOMETER
340    A

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage; WARNING
    ODOMETER DISCREPANCY

MAIL TO

EXTRACO BANK NA
PO BOX 719
GATESVILLE   TX  76528

CWT/CAP/SIZE
23

PREVIOUS TITLE
47E824155

FUEL
G

DATE PURCHASED
12/20/2011

OWNER
STEPHENSON TRAC D

DATE ACCEPTED
03/08/2012

DATE ISSUED
03/08/2012

FIRST LIENHOLDER
EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX 76528

DATE RCD
03/07/2012

FILE NUMBER
001201631

AMOUNT OF LIEN
75,000.00

LIEN EXTENDED TO     COUNTY

MATURITY DATE
03/07/2022

Signature below certifies under penalty of
perjury in the second degree the release of the
first lienholder's interest in the vehicle.

*Extraco Bank NA*
Lienholder's Name

*Sherry Mitchell  6-2-16*
Authorized Agent's Signature     Date

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED,
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE     DATE DUPLICATE ISSUED
BARBARA BROHL

H8854186

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

REV. 1/18/10

VOID IF ALTERED

69

**TRANSFER OF OWNERSHIP/BUYER(S) REQUIREMENT**- Upon the sale or transfer of a motor vehicle the owner in whose name the certificate of title is issued shall execute a formal transfer of the vehicle. Within **60 days** the buyer shall present the certificate of title together with an application for title to an authorized agent pursuant to C.R.S. 42-6-110.

**TRANSFER OF OWNERSHIP/SELLER(S) REQUIREMENT**- When the owner of a motor vehicle transfers or assigns the certificate of title to a buyer, the registration of such vehicle shall expire and the seller shall remove the license plates pursuant to C.R.S. 42-3-115.

**ODOMETER CERTIFICATION** - Federal and state law requires the seller to declare the mileage of the motor vehicle and requires the buyer to acknowledge the mileage of the motor vehicle upon transfer of ownership. The seller and buyer are required to print and sign their name to acknowledge the mileage pursuant to 49 USC 327.

**THE SELLER(S) CERTIFIES, UNDER PENALTY OF PERJURY IN THE SECOND DEGREE, THAT THE SELLER(S) SIGNATURE(S) RELEASES AND TRANSFERS INTEREST IN THE VEHICLE AND THE ODOMETER READING AND DECLARATION ARE TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE.**

**NOTICE: ANY ALTERATION OR ERASURE MAY VOID THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW**

ASSIGNMENT BY OWNER(S)

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Signature Acknowledges Odometer Reading |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | Date of Sale | Buyer's Physical Address |
| Seller's Signature | Purchase Price | Buyer's City, State, ZIP |

**THE FOLLOWING REASSIGNMENT MAY ONLY BE USED BY LICENSED DEALERS.**

1ST DEALER REASSIGNMENT

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

2ND DEALER REASSIGNMENT

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

3RD DEALER REASSIGNMENT

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

NO ADDITIONAL REASSIGNMENTS PERMITTED (last Assignee must obtain title in their name)

Agreement:

1965 Shelby 427 Cobra SC
CSX4501


May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013


Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.



Jeff Mosing

ERIC   BEVERDING
(WITNESS)

Trac Stephenson



Per the attached agreement, let it be known that on May 8th 2012, Trac Stephenson entered into an agreement with Jeff Mosing to borrow $120,000 and that Trac Stephenson put up as collateral a 1965 Shelby Cobra 427 CSX4501.

Per the attached agreement, Trac Stephenson may re-acquire said Cobra for a period of one year ending May 9th 2013 per the following:
$130,000: May 9th 2012 ~November 9th 2012
$140,000: November 10th 2012 ~February 9th 2013
$150,000: February 10th 20 13 ~May 9th 2013

And per the attached agreement, Jeff Mosing is to hold the original MSO for the 1965 Shelby Cobra 427 CSX4501 and have possession of said Cobra during the agreement period.

If the agreement is not fulfilled by the dates set for in the agreement, Jeff Mosing is to retain possession and ownership of the 1965 Shelby Cobra 427 CSX4501.

As of this day, June 5, 2019, no payments have been made from Trac Stephenson to Jeff Mosing nor has the title for the 1965 Shelby Cobra 427 CSX4501 been sent to Jeff Mosing.

**Kirk Winterrowd**
**General Manager**
**Mosing Motorcars**

DO NOT ACCEPT WITHOUT VERIFYING PRESENCE OF WATERMARK IN PAPER

319164

## STATE OF COLORADO
### CERTIFICATE OF TITLE
**\*\*\*\*MOTOR VEHICLE\*\*\*\***

| TITLE NUMBER | 47E826370 |
|---|---|

| VIN | YEAR | MAKE | MODEL | BODY | ODOMETER |
|---|---|---|---|---|---|
| CSX4501 | 1965 | SHE | | CV | 340    A |

MAIL TO

EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX 76528

CWT/CAP/SIZE
23

PREVIOUS TITLE
47E824155

FUEL
G

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage; WARNING
    ODOMETER DISCREPANCY

OWNER
STEPHENSON TRAC D

DATE PURCHASED
12/20/2011

DATE ACCEPTED
03/08/2012

DATE ISSUED
03/08/2012

---

FIRST LIENHOLDER
EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX 76528

DATE RCD
03/07/2012

FILE NUMBER
001201631

AMOUNT OF LIEN
75,000.00

LIEN EXTENDED TO    COUNTY

MATURITY DATE
03/07/2022

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.

Lienholder's Name
*Extraco Bank NA*

*Shery Mitchell*  6-2-16
Authorized Agent's Signature    Date

---

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY

MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature    Date

---

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY

MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature    Date

---

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY

MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature    Date

---

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED,
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE    DATE DUPLICATE ISSUED
BARBARA BROHL

H8854136

REV. 1/18/10

VOID IF ALTERED

4

```
427 LEGENDS INC
413 JUNIPER TRAIL
KINGSLAND TX 78639
```

May 31, 2012

Pg    1 of    2

```
*********************************************************************************
******    ******    ******    ******    ******    ******    ******
Great Texas People!
Great Texas Bank!

******    ******    ******    ******    ******    ******    ******
*********************************************************************************
```

```
Free Small Business
05/01/2012 Beginning Balance                                              152.40
           3 Deposits/Other Credits                        +        125,500.00
           10 Checks/Other Debits                          -         40,582.50
05/31/2012 Ending Balance        31 Days in Statement Period         85,069.90
--------------------------------------------------------------------------------
```

```
--------------------------- Deposits/Other Credits ---------------------------
05/07/2012 Transfer Deposit                                              500.00
           INTERNET TRANSFER FROM ACCOUNT
05/09/2012 Deposit                                                   120,000.00
05/22/2012 Incoming Wire                             65                5,000.00
           AMER BK MARBLE F 002306 WIRE TRANS
```

```
------- Checks listed in numerical order;  (*) indicates gap in sequence -------
    Check    Date          Amount         Check    Date           Amount
-----------------------------------      --------------------------------------
    2088   05/15       5,000.00           2089   05/29        5,000.00
```

```
------------------------------- Other Debits ---------------------------------
05/07/2012 ACH Payment                                                   525.00
           CASTLE ROCK BANK LOAN PFMT
05/07/2012 Overdraft Charge                                               27.50
           Item(s) Presented 05/04/2012
05/14/2012 Transfer Withdrawal                                        10,000.00
           INTERNET TRANSFER TO ACCOUNT
05/22/2012 Outgoing Wire                             65                5,000.00
           AMER BK MARBLE F 000021 WIRE TRANS
05/22/2012 Wire Fee                                                       15.00
05/23/2012 Outgoing Wire                             65                5,000.00
           AMER BK MARBLE F 000010 WIRE TRANS
05/23/2012 Wire Fee                                                       15.00
05/25/2012 Transfer Withdrawal                                        10,000.00
           INTERNET TRANSFER TO ACCOUNT
```

427 LEGENDS INC

May 31, 2012

Pg   2 of   2

|  | Total For<br>This Period | Total<br>Year-to-Date |
|---|---|---|
| Total Overdraft Fees | 27.50 | 55.00 |
| Total Return Item Fees | .00 | .00 |

------------------------------ Daily Ending Balance ----------------------------
| 05/01 | 152.40 | 05/14 | 110,099.90 | 05/23 | 100,069.90 |
| 05/07 | 99.90 | 05/15 | 105,099.90 | 05/25 | 90,069.90 |
| 05/09 | 120,099.90 | 05/22 | 105,084.90 | 05/29 | 85,069.90 |

Agreement:

1965 Shelby 427 Cobra SC
CSX4501

May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013

Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.

Jeff Mosing

Trac Stephenson

ERIC   BEVERDING
(WITNESS)





05-09-12                    $120,000.00        05-09-12                    $120,000.00

05-09-12                    $120,000.00        05-09-12                    $120,000.00

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars.** | § | |

### UNOPPOSED MOTION TO ALLOW REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT

Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars ("**Defendant**"), submits this Unopposed Motion to Allow Reply to the Response in Opposition to Defendants' Motion to Dismiss Trustee's First Amended Complaint (Docket No. 29). Undersigned counsel has conferred with Trustee's counsel and confirmed that the relief requested is unopposed.

Defendants respectfully request the Court enter an order (a) granting this Motion, (b) allowing Defendants to file a Reply to the Response in Opposition to Defendants' Motion to Dismiss Trustee's First Amended Complaint (Docket No. 29) by Friday, February 21, 2020, and (c) grant such other and further relief as the Court deems just.

Dated:  February 12, 2020

Respectfully submitted,

McDowell Hetherington LLP

By:  /s/ Jarrod B. Martin
Jarrod B. Martin
Texas Bar No. 24070221
Avi Moshenberg
Texas Bar No.  24083532
Nicole E. Su
Texas Bar No.: 24106476
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com
E: Avi.Moshenberg@mhllp.com
E: Nicole.Su@mhllp.com

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 12, 2020, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

/s/ Jarrod B. Martin
Jarrod B. Martin

## CERTIFICATE OF CONFERENCE

The undersigned certifies that they have conferred in good faith with counsel for the Trustee on February 11, 2020, and that the Trustee is unopposed to the relief sought.

/s/ Avi Moshenberg
Avi Moshenberg

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| **Debtor.** | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars.** | § | |

## ORDER GRANTING UNOPPOSED MOTION TO ALLOW REPLY

Before the Court is the Unopposed Motion to Allow Reply (the "Motion") filed by Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars ("Defendants"). The Court has reviewed the Motion and finds that the relief requested is appropriate. Accordingly, it is

ORDERED that the Motion is granted. Defendants shall have up to, and including, February 21, 2020 to file a Reply to the Response in Opposition to Defendants' Motion to Dismiss Trustee's First Amended Complaint (Docket No. 29)

DATED this _____ day of _____, 2020.

BY THE COURT:

_____
Hon. Michael E. Romero
Chief United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars.** | § | |

## ORDER GRANTING UNOPPOSED MOTION TO ALLOW REPLY

Before the Court is the Unopposed Motion to Allow Reply (the "Motion") filed by Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars ("Defendants"). The Court has reviewed the Motion and finds that the relief requested is appropriate. Accordingly, it is

ORDERED that the Motion is granted. Defendants shall have up to, and including, February 21, 2020 to file a Reply to the Response in Opposition to Defendants' Motion to Dismiss Trustee's First Amended Complaint (Docket No. 29)

DATED this 12th day of February, 2020.

BY THE COURT:

_____

Hon. Michael E. Romero
Chief United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars.** | § | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars replies to Chapter 7 Trustee M. Stephen Peters' response (Doc. 29) to Defendants' motion to dismiss the Trustee's First Amended Complaint ("**FAC**") (Doc. 24):

## REPLY

Before the Court are two legal questions that it alone is equipped to answer. The first is whether Texas law governs this dispute, and the second is whether Defendants legally own the Shelby Cobra in question. For the following reasons, the Court should hold that the answer to each is *yes* and dismiss this case.

The bottom line is this: Mosing is being dragged into a Colorado court to contest property that he unequivocally owns. If the Court determines that Texas law applies under the most-significant-relationship test, it must also find that Mosing has a constructive trust

---

on the Shelby Cobra. After all, the alleged facts show that Mosing purchased the Shelby Cobra without knowledge of any lien. He is therefore a victim of the debtor's fraud—making him the true owner of the Shelby Cobra under Texas law. This means the Trustee cannot avoid his interest in the sports car. And the Court should grant Defendants' motion to dismiss.

### 1. Under the most significant relationship test, Texas law governs.

The Trustee's response on choice of law fails to explain why this Court cannot decide this legal question now.[1] Perhaps that's because no such explanation exists. Federal courts sitting in diversity apply the forum state's choice-of-law principles; Colorado's choice-of-law rules therefore control.[2] Under those rules, the Court applies the law of the state with the most significant relationship[3]—even at the motion-to-dismiss stage.[4]

---

[1] *See Medina-Rosales v. Holder*, 778 F.3d 1140, 1143 (10th Cir. 2015) ("We review this legal, choice-of-law question de novo."); *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) ("Choice of law questions involving undisputed facts are reviewed de novo.").

[2] *See U.S. Aviation Underwriters, Inc*, 582 F.3d at 1143.

[3] *See In re Kaiser Steel Corp.*, 87 B.R. 154, 159 (Bankr. D. Colo. 1988) ("Pursuant to Section 6 of the Restatement (Second), together with its more particular provisions concerning the specific type of action at issue, the choice of law approach followed by Colorado is that of the 'most significant relationship' test.") (citations omitted).

[4] *See Cypress Advisors, Inc. v. Davis*, No. 16-CV-01935-MSK-MEH, 2017 WL 3116289, at *4 (D. Colo. July 21, 2017) (applying choice of law analysis at motion-to-dismiss stage); *Iskowitz v. Cessna Aircraft Co.*, No. 07-CV-00968-REB-CBS, 2009 WL 3162016, at *2 (D. Colo. Sept. 30, 2009) (same).

---

The Trustee's response challenges whether the Shelby Cobra transaction took place in Texas. The challenge carries no weight. Indeed, the documents the Trustee attached to the FAC spotlight Mosing's, Mosing Autosport's, and the debtor's connections to Texas:

- **Exhibit 1, the Certificate of Title in the State of Colorado.** This Certificate of Title was mailed to Extraco Bank in Gatesville, Texas, the first lienholder is listed as Extraco Bank in Gatesville, Texas, and the certificate was signed on June 2, 2016 by an agent of Extraco Bank in Gatesville, Texas.[5]

- **Exhibit 2, the Agreement between Debtor and Mosing.** The agreement states: "Jeff Mosing [who resides in Austin, Texas] to hold Original MSO & Possession of Cobra during the agreement period."[6]

- **Exhibit 3, other documents relating to the transaction.** The cover letter not only outlines the agreement between the debtor and Mosing but also shows that it was signed by Mosing Autosport's general manager, printed on Mosing Autosport letterhead, and listed with Mosing Autosport's Austin, Texas address.[7] The attached bank statement shows that a $120,000 deposit was made on May 9, 2012—the statement lists a Kingsland, Texas address with the heading: "Great Texas People! Great Texas Bank!"[8]

- **Exhibit 4, original check and deposit slip.** Jeff Mosing's $120,000 check dated May 8, 2012 lists his Austin, Texas address and the Checking Deposit slip lists American Bank of Texas as the receiving bank, located in Marble Falls, Texas.[9]

---

[5] FAC, Exhibit 1.

[6] *Id.*, Exhibit 2.

[7] *Id.*, Exhibit 3 ("2420 West Braker Lane Austin, Tx. 78758 (512) 821-9491 www.mosingmotorcars.com").

[8] *Id.*, Exhibit 3.

[9] *Id.*, Exhibit 4.

---

Because this is the motion to dismiss stage, the Court construes the facts outlined in these

exhibits to the FAC in the Trustee's favor and takes them as true.[10]

The Trustee's own exhibits demonstrate that this transaction occurred in Texas.

Further, the Shelby Cobra is located in Texas,[11] the Manufacturer Statement of Origin is

currently held in Texas,[12] and Mosing and Mosing Autosport are domiciled in Texas.[13]

Thus, under the factors that the Court considers in the most-significant-relationship test,

the undisputed facts demonstrate that this Court should apply Texas law.[14]

## 2. Under Texas law, Mosing has a constructive trust and is the true owner of the Shelby Cobra.

Mosing rightfully owns the Shelby Cobra and the Trustee cannot avoid property that

does not belong to the estate. "The essential ingredient for imposition of a constructive

trust is unjust enrichment."[15] And a constructive trust arises where the retention of the

---

[10] *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

[11] FAC at ¶ 18.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 7, 8.

[14] *See U.S. Aviation Underwriters, Inc*, 582 F.3d at 1143–44 (holding that in the analysis of most significant relationship, courts consider the following contacts: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered). S*ee also Hoiles v. Alioto*, 461 F.3d 1224, 1234 (10th Cir. 2006) (recognizing that not all factors must be met to show the most-significant-relationship, so long as most do).

[15] *In re S & A Rest. Corp.*, No. 08-41898, 2010 WL 3619779, at *9 (Bankr. E.D. Tex. Sept. 10, 201

---

property would result in the unjust enrichment of the person retaining it.[16] The Trustee's exhibits establish that Mosing paid $120,000 for the Shelby Cobra in May 2012.[17] Now the Trustee claims that Mosing, who wrote a check for the Shelby Cobra,[18] does not own the car because the debtor holds a certificate of title. This situation is exactly why the constructive-trust doctrine exists—so the debtor is not rewarded for fraudulently obtaining a certificate of title by stealing property back from the rightful owner.

The Trustee claims Defendants' characterization of the facts is misleading. In doing so, he conveniently overlooks the facts surrounding the undisputed transaction that occurred in Texas. Mosing and the debtor signed an agreement on May 8, 2012.[19] According to the agreement, the debtor had the opportunity to reacquire the Shelby Cobra between May 2012 and May 2013.[20] The debtor never paid Mosing to reacquire the car. At the time of this transaction, the debtor never informed Mosing that he had taken out a lien on the car or that he held the certificate of title.[21] The debtor never informed Mosing about the certificate of title. Mosing believed that he was the only owner of the Shelby Cobra because the debtor did not reacquire the car in 2013. Allowing the debtor to claim the

---

[16] *See id.* ("The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.").

[17] FAC, Exhibits 1–4.

[18] *Id.*, Exhibit 4.

[19] *Id.*, Exhibit 2.

[20] *Id.*

[21] *Id.*, Exhibit 1.

Shelby Cobra as estate property would amount to unjust enrichment. The elements of a
constructive trust are therefore met based on the facts alleged in the FAC and its exhibits.[22]

Given that the Shelby Cobra is not estate property, the Trustee cannot avoid the
transfer. As detailed in Defendants' motion to dismiss, the Fifth Circuit has barred trustees
from using Section 544's strong-arm powers to avoid interests in property subject to a
constructive trust.[23] That way, an estate cannot benefit from property the debtor never, or
no longer, owns.[24] A constructive trust arose here when the debtor sold the Shelby Cobra
to Mosing and fraudulently retained possession of the original title. Defendants paid for
and now own the Shelby Cobra. Since the debtor's conduct created the constructive trust
prepetition, the Trustee cannot use avoidance. The debtor (and the bankruptcy estate) no
longer owns the Shelby Cobra. Blessing the Trustee's attempt to lay claim to the Shelby
Cobra would allow the bankruptcy estate to benefit from property it no longer owns. As a
court of equity, this Court cannot allow that to be the law.

---

[22] *See Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.—Corpus Christi 2002, pet. denied)
(holding that to establish that a constructive trust exists, a party must prove (1) breach of a special
trust, fiduciary relationship or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing
to an identifiable res).

[23] *In re Quality Holstein Leasing*, 752 F.2d at 1013–14.

[24] *See Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)*, 12 F.3d 426, 436 (5th Cir.
1994) ("Because § 541(d) excludes property subject to a constructive trust from the bankruptcy
estate, we have also held that § 541(d) prevails against the trustee's strong-arm powers under
§ 544.").

---

## CONCLUSION

For these reasons, Defendants Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars ask that the Court grant its motion and dismiss the Trustee's claims against Defendants.

Dated:   February 21, 2020

Respectfully Submitted,

MCDOWELL HETHERINGTON LLP

By:  */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Avi Moshenberg
Texas Bar No.  24083532
Nicole E. Su
Texas Bar No. 24106476
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com
   Avi.Moshenberg@mhllp.com
   Nicole.Su@mhllp.com

*Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct cop of the forgoing was served electronically

on February 21, 2020 on counsel for the Plaintiff as follows:

Aaron J. Conrardy
aconrardy@wgwc-law.com

/s/ Jarrod B. Martin
Jarrod B. Martin

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: | |
| | Case No. 19-13565 MER |
| TRACY DEAN STEPHENSON, | |
| Debtor. | Chapter 7 |
| M. STEPHEN PETERS, | |
| Plaintiff. | Adv. Case No. 19-01211 MER |
| v. | |
| JEFFREY MOSING and MOSING AUTOSPORT, LLC, | |
| Defendants. | |

## ORDER

To the unfortunate transferee faced with an avoidance complaint, it may feel like the bankruptcy trustee is playing a game of "[w]hat's yours is mine and what's mine is my own."[1]  Although the Code[2] includes protections for such recipients, the avoidance powers of a bankruptcy trustee are great, to be sure.  But a trustee's avoidance powers are not unlimited.  The defendants in this case ask the Court to recognize one such limitation.

### BACKGROUND

Debtor Tracy Dean Stephenson ("**Stephenson**") filed a voluntary petition under Chapter 7 of the Code on April 29, 2019 ("**Petition Date**"). Plaintiff M. Stephen Peters ("**Peters**") is the Chapter 7 Trustee of Stephenson's bankruptcy estate.

Prior to the Petition Date, Stephenson entered into a loan agreement with Jeffrey Mosing and/or Mosing Autosport, LLC (together, the "**Mosing Defendants**") wherein the Mosing Defendants agreed to loan Stephenson

---

[1] James Joyce, *Ulysses* 555 (First Vintage International ed. 1990) (1922).

[2] Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

$120,000.  Stephenson's 1965 Shelby Cobra ("**Vehicle**") served as collateral for the loan, but the Mosing Defendants' lien was not recorded on the Vehicle's certificate of title.  The loan was not repaid by Stephenson, and the Mosing Defendants remain in possession of the Vehicle, although Peters is in possession of the certificate of title.

Peters initiated the instant proceeding seeking to avoid and recover Stephenson's purported transfer of a lien and/or ownership interest in the Vehicle pursuant to §§ 544, 547, 550, and/or 551 and an order requiring the Mosing Defendants to turnover the Vehicle pursuant to § 542.[3]  Peters later amended the Complaint to include an additional claim for declaratory relief, requesting the Court determine the estate's interest in the Vehicle is superior to the Mosing Defendants' interests therein.[4]  The Mosing Defendants seek dismissal of Peters's claims, stating the bankruptcy estate holds only bare legal title to the Vehicle as a result of a constructive trust in favor of the Mosing Defendants, and therefore the avoidance claims must fail.[5]

## ANALYSIS

### A.    Standard for Review

Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012, provides that a complaint be dismissed for "failure to state a claim upon which relief can be granted."[6]  Fed. R. Civ. P. 8(a)(2), which is incorporated by Fed. R. Bankr. P. 7008, requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."[7]  Notwithstanding the pleading standards set forth in Fed. R. Civ. P. 8(a)(2), dismissal is appropriate when plaintiff fails to "raise a right to relief above the speculative level."[8]  To plead facial plausibility, a plaintiff must set forth factual content that permits the courts to draw the reasonable

---

[3] ECF No. 1 ("**Complaint**").

[4] ECF No. 23 ("**Amended Complaint**").

[5] ECF No. 24 ("**Motion**").  *See also* ECF Nos. 29 (Peters's response) and 35 (Mosing Defendants' reply thereto).

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotations and citations omitted).

[8] *Id.*

inference that the defendant is liable.[9]  In reviewing a motion to dismiss, a court must accept the well-pleaded factual allegations in the complaint as true.[10]

## B.    Imposition of a Constructive Trust

The Mosing Defendants assert Peters's claims must fail because the estate only holds bare legal title to the Vehicle, while equitable title to the Vehicle lies with them.  Specifically, the Mosing Defendants allege Stephenson's failure to comply with the Agreement created a constructive trust in the Vehicle under Texas law.  Peters, on the other hand, disputes the applicability of Texas law and, assuming Texas law does apply, disagrees the facts alleged in the Amended Complaint establish a constructive trust.

"The analysis of choice of law issues begins with the application of the conflict of law rules of the forum state,"[11] which is Colorado in this case.  Colorado has adopted the Restatement (Second) of Conflict of Laws to resolve such issues, applying the "most significant relationship test" to determine which state's substantive laws control.[12]

To be sure, such an inquiry is necessarily fact-intensive and generally improper at this stage of litigation.[13]  While the Court agrees with the Mosing Defendants the Amended Complaint alleges facts which suggest Texas law would apply, it is possible development of the factual record in this matter would change the Court's inclination.  Moreover, the Court need not engage in a choice of law analysis if the outcome is the same.  That is, if the application of the law of either state yields the same result or if the law with respect to the implementation of constructive trusts itself is the same under

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *In re Wine*, 558 B.R. 438, 441 (Bankr. D. Colo. 2016) (quoting *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (internal citations omitted) ("[W]e accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same.").

[11] *In re Integra Realty Resources, Inc.*, 198 B.R. 352, 361 (citing *In re Kaiser Steel Corp.*, 87 B.R. 154 (Bankr. D. Colo. 1988)).

[12] *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509-10 (Colo. 2007) (en banc).

[13] *See Federal Insurance Company v. Indeck Power Equipment Company*, 2016 WL 3676803, at *2 (W.D. Okla. July 7, 2016) (citing *Jones v. Lattimer*, 29 F.Supp. 3d 5, 10 n.3 (D.D.C. 2014); *Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*, No. 3:12-CV-510, 2012 WL 6107682, at *1 (W.D.N.C. Dec. 10, 2012); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011)).

both Colorado and Texas law, a choice of law analysis is not necessary. Under either Colorado or Texas law, it is the Mosing Defendants' burden to establish the requirements of a constructive trust.[14]

Under Colorado law, "a constructive trust may be imposed . . . when property is obtained by fraud, duress, or abuse of confidential or fiduciary relationship."[15] "To warrant imposition of a constructive trust over the property of a debtor, a claimant must (1) show fraud or mistake in the debtor's acquisition of the property; and (2) be able to trace the wrongfully held property."[16] In order to establish a constructive trust under Colorado law based on fraud, the Mosing Defendants "must [first] show fraud or mistake in the debtor's acquisition of the property" and "fraud is never presumed."[17] While not specifically an element to be proven, "[u]nder Colorado law, a constructive trust is . . . applied to prevent unjust enrichment."[18]

Similarly, under Texas law a constructive trust is also used as "'an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.'"[19] If Texas law applies, the Mosing Defendants must show "1) Breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; 2) Unjust enrichment of the wrongdoer; [and] (3) Tracing to an identifiable res."[20]

Accordingly, the elements for imposition of a constructive trust, particularly as here where the Mosing Defendants are proceeding under a fraud theory, are essentially the same such that a choice of law analysis is not required. As such, the Court must examine the elements in light of the factual allegations made in the Amended Complaint.

---

[14] *See In re Foster*, 275 F.3d 924 (10th Cir. 2001) (applying Colorado law); *Matter of Southmark Corp.*, 49 F.3d 1111 (5th Cir. 1995) (applying Texas law).

[15] *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737-38 (Colo. 1991) (en banc) (citing *Page v. Clark*, 592 P.2d 792, 798 (Colo. 1979)).

[16] *Foster*, 275 F.3d at 926-27.

[17] *Id.*; *Austin v. Wysowatcky*, 511 P.2d 526, 528 (Colo. App. 1973).

[18] *Foster*, 275 F.3d at 926 (citing *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986)).

[19] *Southmark Corp.*, 49 F.3d at 1118 (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)).

[20] *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App. 2002).

The Mosing Defendants assert in the Motion "Mosing was defrauded when he received the original MSO, and the Debtor failed to disclose the Shelby Cobra was subject to a lien and had already obtained title to the Shelby Cobra."[21]  The Mosing Defendants go on to state Stephenson "fraudulently retained possession of the original title."[22]  While such facts, if true, may support the imposition of a constructive trust, the Amended Complaint, to which the Court is bound at this stage in the proceeding, contains no such allegations of fraud by Stephenson.

On its face, the Amended Complaint makes scant allegations of a loan agreement between Stephenson and the Mosing Defendants with the Vehicle serving as collateral[23] and the loan proceeds actually being paid to a third-party entity whose relationship to Stephenson is unclear.[24]  According to the Amended Complaint, the Vehicle has been in the possession of the Mosing Defendants since the loan was made,[25] and the loan was not repaid by Stephenson.[26]  The allegations of the Amended Complaint do lend to a suggestion something may have been amiss with the failed transaction between Stephenson and the Mosing Defendants.  However, a finding of fraud to support the imposition of a constructive trust is a fact-intensive inquiry generally not suitable at this early stage of litigation, and certainly not appropriate based on the allegations contained in the Amended Complaint.  The factual record must be further developed in order for the Court to appropriately weigh the evidence before it.  As such, the Court declines to dismiss Peters's claims.

## CONCLUSION

While the Court expects the parties will return on this same issue as the factual record is established, the Court determines Peters's claims may proceed at this time.

Accordingly, IT IS HEREBY ORDERED

---

[21] Motion at p. 7.

[22] *Id.* at p. 8.

[23] Amended Complaint at ¶¶ 12, 14.

[24] *Id.* at ¶ 16.

[25] *Id.* at ¶ 18.

[26] *Id.* at ¶ 17.

5

The Mosing Defendants' Motion to Dismiss is DENIED.  The Mosing
Defendants have fourteen (14) days from the date of this Order to file their
answer to the Amended Complaint.


Dated April 24, 2020                    BY THE COURT:



                                        Michael E. Romero, Chief Judge
                                        United States Bankruptcy Court

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars.** | § | |

## ANSWER TO FIRST AMENDED COMPLAINT
## AND COUNTERCLAIM

COMES NOW, Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars (collectively, "**Defendants**") by and through their undersigned attorney, and files this Answer and Counterclaim to the First Amended Complaint (ECF No. 30) made by M. Stephen Peters, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**"), and respectfully shows as follows:

### JURISDICTION AND VENUE

1.    The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e).

**ANSWER:** In response to the allegations set forth in paragraph 1, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

2.      This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (K).

**ANSWER:** In response to the allegations set forth in paragraph 2, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

3.      Venue in this district is proper under 28 U.S.C. § 1409(a).

**ANSWER:** Defendants admit that Venue in this district is proper. This is without prejudice to Defendants' ability to withdraw the reference to federal district court.

4.      This adversary proceeding is commenced pursuant to Rule 7001(1) and (2) of the Federal Rules of Bankruptcy Procedure.

**ANSWER:** In response to the allegations set forth in paragraph 4, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

5.      Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court.

**ANSWER:** At this time, Defendants do not consent to the entry of final orders and judgment by the Bankruptcy Court.

### GENERAL ALLEGATIONS

6.    Plaintiff M. Stephen Peters is the duly appointed chapter 7 trustee ("**Trustee**") of the bankruptcy estate of Tracy Dean Stephenson, Case No. 19-13565 MER.

**ANSWER:** Admitted.

7.    Defendant Jeffrey Mosing ("**Mr. Mosing**") is an individual residing in the state of Texas.

**ANSWER:** Admitted.

8.    Defendant Mosing Autosport, LLC dba Mosing Motorcars ("**Motorcars**") is a limited liability company organized under the laws of the state of Texas.

**ANSWER:** Admitted.

9.    Tracy Dean Stephenson ("**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("**Petition Date**").

**ANSWER:** Admitted.

10.    On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra SC motor vehicle, VIN CSX4501 ("**Vehicle**"). See Certificate of Title attached hereto as Exhibit 1.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 10, and therefore deny the same for purposes of pleading.

11.     Debtor financed the purchase of the Vehicle with a loan from Extraco Bank NA ("**Extraco**"). Extraco's lien was noted on the Certificate of Title. On June 2, 2016, Extraco released its lien against the Vehicle. See Exhibit 1.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 11, and therefore deny same for purposes of pleading.

12.     In an "Agreement" dated May 8, 2012, either Mr. Mosing or Motorcars (together, "**Mosing Entities**") loaned Debtor $120,000. A copy of the Agreement is attached hereto as Exhibit 2.

**ANSWER:** Defendants deny the allegations in paragraph 12 to the extent it construes the transaction between Defendants and Debtor as anything but a purchase.

13.     The Agreement allowed Debtor to "re-acquire" the Vehicle by paying stepped-up amounts by certain deadlines. In the Agreement, Mr. Mosing was to hold the "Original MSO," which is, upon information and belief, the Certificate of Title, and possession of the Vehicle until the agreed upon amount was repaid.

**ANSWER:** Defendants deny the allegations in paragraph 13 to the extent it construes the transaction between Defendants and Debtor as anything but a purchase. Defendants admit that Mr. Mosing was to hold the "Original MSO." Defendants deny that the "Original MSO" is the same as a Certificate of Title.

14.     On June 5, 2019, Motorcars executed a letter stating that the $120,000 was a loan and the Vehicle was collateral for the loan. A copy of the letter is attached hereto as Exhibit 3.

**ANSWER:** The letter speaks for itself, and Defendants deny any allegations set forth in paragraph 14 that are inconsistent with the letter.

15.     Despite the Agreement and the representations made in the in June 5, 2019 letter, $120,000 was not paid to Debtor. Instead, the $120,000 was paid with a check dated May 8, 2012 from an account bearing Mr. Mosing's name and made payable to 427 Legends. A copy of the check is attached hereto as Exhibit 4.

**ANSWER:** Defendants deny that $120,000 was not paid to the Debtor. The funds were for the benefit of the Debtor, and the Debtor directed that the funds be paid to 427 Legends. Defendants deny the remaining allegations in paragraph 15.

16.     Since the check was payable to 427 Legends instead of Debtor, Debtor did not receive reasonably equivalent value for the Transfer (as defined infra).

**ANSWER:** Defendants deny the allegations in paragraph 16.

17.     In the June 5, 2019 letter, it was admitted that Debtor made no payments to the Mosing Entities and that Mr. Mosing never received the original Certificate of Title for the Vehicle.

**ANSWER:** Defendants admit that Mr. Mosing never received the original Certificate of Title for the Vehicle because of the Debtor's fraud, instead receiving an MSO. Defendants admit that no payments were made by the Debtor to Defendants.

18.     The Mosing Entities are currently in possession of the Vehicle.

**ANSWER:** Admit the Mosing entities are currently in possession of the Vehicle and the original MSO.

19.     Pursuant to C.R.S. § 42-6-121(5), liens on motor vehicles shall be deemed perfected pursuant to C.R.S. § 42-6-120 when all necessary documents for recording the lien are received by the authorized agent and payment is tendered to note the lien.

**ANSWER:** In response to the allegations set forth in paragraph 19, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

20.     Pursuant to C.R.S. § 42-6-120, a mortgage lien against a motor vehicle is not effective as a lien against the "rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner" unless the lien is filed for public record and the fact of filing is noted on the owner's certificate of title.

**ANSWER:** In response to the allegations set forth in paragraph 20, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

21.     Pursuant to C.R.S. § 42-6-110, upon the sale of a motor vehicle, the person in whose name the vehicle is registered must execute a formal transfer of the vehicle as described in the Certificate of Title.

**ANSWER:** In response to the allegations set forth in paragraph 21, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny,

Defendants deny same for the purposes of pleading. Defendants do not concede that Colorado is the appropriate choice of law.

22.     C.R.S. § 42-6-109(1) unequivocally provides that "a purchaser or transferee does not acquire any right, title, or interest in and to a motor or off-highway vehicle purchased by the purchaser or transferee unless and until he or she obtains from the transferor the certificate of title duly transferred in accordance with this part 1."

**ANSWER:** In response to the allegations set forth in paragraph 22, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

23.     Trustee is in possession of the original Certificate of Title.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 23, and therefore deny same for purposes of pleading.

24.     The Certificate of Title does not reflect the Mosing Entities as having a security interest in the Vehicle nor does it reflect a transfer of the Vehicle by Debtor to the Mosing Entities. To the contrary, the Certificate of Title shows Debtor as the sole owner of the Vehicle and that the Vehicle is free and clear of all liens, claims and interests.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 24. Upon information and belief, Defendants believe that to the extent there is a title, it was obtained fraudulently, and therefore deny paragraph 24.

25.    The purported grant of the security interest and/or transfer of an ownership interest was a transfer within the meaning of 11 U.S.C. § 101(54) ("**Transfer**").

**ANSWER:** In response to the allegations set forth in paragraph 25, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

26.    Debtor's interest in the Vehicle is property of the bankruptcy estate.

**ANSWER:** Denied.

27.    The Mosing Entities have sought to impose a constructive and/or resulting trust over the Vehicle for their benefit of the Mosing Entities (the "Equitable Trust"). Trustee disputes that an Equitable Trust exists.

**ANSWER:** Paragraph 27 states no claim; however, Defendants respectfully request the Court deny such relief.

### FIRST CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 547(b), 550(a) and 551)

28.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 27 above as though more fully set forth in this First Claim for Relief.

**ANSWER:** Defendants incorporates and repeats its responses to paragraph 1 through 27 above as though set forth fully herein.

29.    The determination of whether the Transfer is preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

**ANSWER:** In response to the allegations set forth in paragraph 29, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

30.    The Transfer and/or Equitable Trust were made for the benefit of the Mosing Entities.

**ANSWER:** Admitted.

31.    The Transfer and/or Equitable Trust were made for or on account of an antecedent debt owned by Debtor before the Transfer and/or Equitable Trust were made.

**ANSWER:** Denied.

32.    The Transfer and/or Equitable Trust were made while Debtor was insolvent.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 32, and therefore deny same for purposes of pleading.

33.    The Transfer and/or Equitable Trust occurred immediately before the Petition Date pursuant to 11 U.S.C. § 547(e)(2)(C), and therefore was made on or within 90 days prior to the Petition Date.

**ANSWER:** Denied.

34.    The Transfer and/or Equitable Trust enabled the Mosing Entities to receive more than the Mosing Entities would have received in Debtor's chapter 7 case if the Transfer and Equitable Trust had not been made and the Mosing Entities had received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:** Denied.

35.    The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 547(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 35, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 547(b), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## SECOND CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

36.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 35 above as though more fully set forth in this Second Claim for Relief.

**ANSWER:** Defendants incorporate and repeat its responses to paragraph 1 through 35 above as though set forth fully herein.

37.     Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 37, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

38.     The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 38, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

39.     Pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' security interest and/or Equitable Trust in the Vehicle were unperfected.

**ANSWER:**     Denied. Defendants admit that the Mosing entities have not transferred the Vehicle and are still in possession of the original MSO.

40.     Similarly, pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' purported ownership interest in the Vehicle was not noted on the Certificate of Title.

**ANSWER:** Defendants admit that its ownership interest was not noted on the Certificate of Title. Defendants do not admit that the Certificate of Title is authentic. In response to the remaining allegations set forth in paragraph 40, to the extent such

---

allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

41.    The Mosing Entities therefore have no right, title or interest in and to the Vehicle.

**ANSWER:** Denied.

42.    As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer and/or the Equitable Trust by virtue of its superior interest in the Vehicle.

**ANSWER:** In response to the allegations set forth in paragraph 42, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

43.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 43, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

### THIRD CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

44.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 43 above as though more fully set forth in this Third Claim for Relief.

**ANSWER:** Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 43 above as though more fully set forth in this Third Claim for Relief.

45.    Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 45, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

46.    The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 46, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

47.    Pursuant to C.R.S. § 38-8-107, the Transfer is made "when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this article that is superior to the interest of the transferee." C.R.S. § 38-8-107(1)(a)(II).

**ANSWER:** In response to the allegations set forth in paragraph 47, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

48.    If "the transfer to be perfected is not perfected before the commencement of the action . . . , the transfer is deemed made immediately before the commencement of the action." C.R.S. § 38-8-107(2).

**ANSWER:** In response to the allegations set forth in paragraph 48, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

49.    Pursuant to C.R.S. § 42-6-101, et seq., the Mosing Entities failed to perfect either a security interest or purchase interest in the Vehicle. The Transfer therefore occurred immediately before the commencement of this action and this action is therefore timely brought pursuant to C.R.S. § 38-8-110.

**ANSWER:** In response to the allegations set forth in paragraph 49, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

50.     The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

**ANSWER:**  Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 50 of the Complaint, and therefore deny same for purposes of pleading.

51.     The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 51 of the Complaint, and therefore deny same for purposes of pleading.

52.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 52, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:**  This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## FOURTH CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(b), 550(a) and 551))

53.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 52 above as though more fully set forth in this Fourth Claim for Relief.

**ANSWER:** Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 52 above as though more fully set forth in this Fourth Claim for Relief.

---

54.    Pursuant to 11 U.S.C. § 544(b), Trustee may avoid any transfer of an interest by Debtor that is voidable under applicable law by an actual unsecured creditor of Debtor.

**ANSWER:** In response to the allegations set forth in paragraph 54, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

55.    Debtor scheduled an unsecured debt owing to the Internal Revenue Service (the "IRS") for $20,000. Upon information and belief, the tax deficiency assessment was made in the last ten years.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint, and therefore deny same for purposes of pleading.

56.    By application of § 544(b), Trustee steps into the shoes of, and has the same powers as, the IRS.

**ANSWER:** In response to the allegations set forth in paragraph 56, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

57.    The Internal Revenue Code allows the IRS to collect outstanding tax liability from a transferee of Debtor. *See* 26 U.S.C. § 6901(a)(1)(A).

**ANSWER:** In response to the allegations set forth in paragraph 57, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

58.    To do so, the IRS must establish liability under state law.

**ANSWER:** In response to the allegations set forth in paragraph 58, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

59.    Liability under state law has been established. The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

**ANSWER:** In response to the allegations set forth in paragraph 59, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

60.    The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** In response to the allegations set forth in paragraph 60, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

61.     The Transfer and/or the Equitable Trust are avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonable equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** Denied.

62.     If the Court determines that the Transfer occurred, or the Equitable Trust was established, on May 8, 2012–the date of the Agreement and the $120,000 check–or any time within ten years of a tax deficiency assessment being made, this action is timely because Trustee may avail himself of the IRS' ten-year statute of limitations. 26 U.S.C. § 6502(a); *In re Behrends*, 2017 WL 4513071, *8 (Bankr. D. Colo. 2017).

**ANSWER:** In response to the allegations set forth in paragraph 62, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

63.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 63, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 544(b), (b) recovering and preserving the avoided Transfer

and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## FIFTH CLAIM FOR RELIEF
### (Turnover of Property of the Estate – 11 U.S.C. § 542(a))

64.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 63 above as though more fully set forth in this Fifth Claim for Relief.

**ANSWER:** Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 63 above as though more fully set forth in this Fifth Claim for Relief.

65.    11 U.S.C. § 542(a) requires an entity in possession, custody or control of property of the bankruptcy estate to "deliver to the trustee, and account for, such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate."

**ANSWER:** In response to the allegations set forth in paragraph 64, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

66.    The Mosing Entities are in possession of the Vehicle, which is property of the bankruptcy estate.

**ANSWER:** Defendants admit they are in possession of the Vehicle. Defendants deny it is property of the estate.

67.    The Vehicle is believed to be valued at more than $200,000 and is therefore not of inconsequential value or benefit to the bankruptcy estate.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 67 of the Complaint, and therefore deny same for purposes of pleading.

68.    Trustee therefore requests entry of an order compelling the Mosing Entities to turn over the Vehicle to Trustee.

**ANSWER:** In response to the allegations set forth in paragraph 68, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee requests that the Court enter judgment in his favor and against the Mosing Entities requiring delivery and turnover of the Vehicle to Trustee and granting such other relief as the Court deems appropriate.

**ANSWER:**  This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief – Determination of Interests in the Vehicle)

69.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 68 above as though more fully set forth in this Sixth Claim for Relief.

**ANSWER:**   Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 68 above as though more fully set forth in this Sixth Claim for Relief.

70.    Under Rule 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

**ANSWER:** In response to the allegations set forth in paragraph 70, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

71.    Trustee requests this Court to enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle and that the Mosing Parties have no lien, title or interest in or to the Vehicle or any part thereof.

**ANSWER:** In response to the allegations set forth in paragraph 71, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee requests that the Court enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle, that

the Mosing Parties have no lien, right, title or interest in or to the Vehicle or any part thereof, and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## AFFIRMATIVE DEFENSES

72.    Defendants assert these affirmative defenses to the Complaint as follows:

73.    Plaintiff has failed to allege facts with sufficient specificity that, if proven, establish a prima facie case for recover under 11 U.S.C. §§ 542, 544, 547, 550, and 551 and by this failure has failed to state a claim upon which relief may be granted.

74.    To the extent Defendants received alleged transfers, such transfers were not made while the Debtor was insolvent.

75.    The Trustee is barred by the doctrine *In Pari Delicto*.

76.    Defendants are not liable to the Trustee because there is no creditor whose claim arose before or within a reasonable time after the alleged transfer was made to Defendants.

77.    Defendants are not liable to the Trustee because Debtor was not insolvent at the time the alleged transfers were made.

78.    Defendants are not liable to the Trustee because they accepted the alleged transfer in good faith

79.    Defendants are not liable to the Trustee because 427 Legends gave value to Debtor after the transfer was made.

# COUNTERCLAIM

## *Facts*

80.    Motorcars was formed in 2011 as a buyer and consignor of class automobiles. Motorcars is a Texas limited liability company that does business in Texas. Motorcars considers itself a boutique auto dealer. It is more concerned with matching the right buyer to the right classic automobile, rather than simply consummating a sale. In addition, Motorcars is an authorized replica dealer of Superformance Shelby replicas. Motorcars is located and holds a dealer license in Texas.

81.    Mr. Mosing is a resident of the State of Texas.

82.    On or about August 2009, Mr. Mosing met the Debtor in Texas, who over the next few years bought at least two cars from Motorcars in Texas. Upon information and belief, the Debtor resided in Texas during the relevant time period.

83.    In March or April 2012, Debtor approached Mr. Mosing in Texas about obtaining funds from the Defendants.  ("**Transaction**").

84.    The Transaction was structured as a purchase. The Debtor transferred ownership of a 1965 Shelby 472 Cobra SC, VIN # CSX4501 ("**Vehicle**") and the original MSO to Motorcars. In exchange, Mr. Mosing transferred to the Debtor $120,000. A "MSO" is a Manufacturer Statement of Origin. If you have a MSO, you cannot also have a title. In addition to the Vehicle, Mr. Mosing holds the original MSO.

85.    Defendants have continued to pay insurance premiums for the Vehicle. Since transferring the Vehicle to Defendants, the Debtor has taken no actions evidencing ownership, such as possession or the payment of insurance premiums.

86.     Debtor had one year or until May 9, 2013 to buy back the Vehicle. By failing to buy back the Vehicle, the ownership in the Vehicle vested in either of the Defendants. to repay the Loan or the Vehicle and the MSO became property of Mr. Mosing.  Defendants were unaware that the Vehicle was encumbered by a lien. This debt was not disclosed to Defendants. Defendants were unaware that the Vehicle had been encumbered in Colorado. Had Defendants known either of these facts, they would have never engaged in the Transaction.

### *Declaratory Judgment*

87.     Upon information and believe, the Vehicle, with only bare legal title in the Debtor, is subject to a purchase money constructive trust or resulting trust with equitable title in the Defendants.

88.     The Vehicle is not property of the estate as the Debtor only holds bare legal title.

89.     Section 541(a)(1) of the Bankruptcy Code generally provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a Chapter 7 case.  However, section 541 does not by itself create new legal or equitable interests in property.  Instead, property interests are created and defined by state law. Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under § 541 of the Bankruptcy Code and the debtor is prohibited from distributing such property to its creditors.

90.     Further, 11 U.S.C. § 541(d) provides that property for which a debtor holds only bare record title is not property of the estate. And, a debtor who holds proceeds attributable to real property owned by another holds at most bare record title to such proceeds.

91.     The Transfer took place in Texas. In Texas, when one person pays, or becomes obligated to pay, the consideration for the purchase of property, but title is taken in another's name, the law implies a purchase money resulting trust.  *See Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex. 1991); *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984); *Leyva v. Pacheco*, 358 S.W.2d 547, 550 (1962); *Cohrs v. Scott*, 338 S.W.2d 127, 130 (1960); *Morrison v. Farmer*, 213 S.W.2d 813, 814 (Tex. 1948).

92.     Under facts supporting a purchase money resulting trust, the parties are presumed to have intended that the named grantee hold title for the use and benefit of the person who is providing the consideration for the purchase.  *Cohrs v. Scott*, 338 S.W.2d at 130; *Masterson v. Hogue*, 842 S.W.2d 696, 697 (Tex. App.—Tyler 1992, no writ); *Ford v. Simpson*, 568 S.W.2d 468, 470 (Tex. Civ. App. Waco 1978, no writ); *Bell v. Smith*, 532 S.W.2d 686, 684 (Tex. Civ. App.—Fort Worth 1976, no writ); *Hammett v. McIntire*, 365 S.W.2d 844, 847 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.).

93.     When facts supporting a purchase money resulting trust exist, "bare legal title is in the grantee in the deed and equitable title is in the person paying the purchase price." *Hammett*, 365 S.W.2d at 847.

94.     A constructive trust is an equitable remedy used to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.—Fort Worth 2002, no pet.); *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex. App.—Houston [1st Dist.] 1988, no writ). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App.—Corpus Christi 2002, pet. denied). A constructive trust exists. Defendants provided a capital loan to the Debtor. Defendants were defrauded when they were provided the "Original MSO," and the Debtor failed to disclose that: (1) the Vehicle was subject to a lien; and (2) the Debtor had already obtained title to the Vehicle in Colorado. The Vehicle is the identifiable res.

95.     Defendants seek a declaratory judgment that the estate's interest in the Vehicle is that of only bare legal title, and that equitable title vests in the Defendants subject to constructive and resulting trusts.

96.     Defendants seek no monetary relief from the bankruptcy estate, and explicitly decline to initiate the claims allowance process.

### *Prayer*

97.     For these reasons, Defendants ask for a judgment against the Trustee declaring and awarding the following:

98.     The Defendants have a constructive and/or resulting trust in the Vehicle.

99.     The Defendants are the equitable owners of the Vehicle.

---

ANSWER AND COUNTERCLAIM                                                              PAGE | 27

100.    The constructive and/or resulting trust is not subject to the Trustee's strong-arm powers.

101.    The Defendants request a trial by jury.

102.    All other relief the Court deems just and proper.

Dated: June 10, 2020.

Respectfully Submitted,

**McDowell Hetherington LLP**

By:  /s/ Jarrod B. Martin

Jarrod B. Martin
Texas Bar No. 24070221
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com

***Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 10, 2020, a true and correct copy of the foregoing Motion was served electronically on the Plaintiff and all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | Chapter 7 |
| | § | |
| Debtor. | § | **Case No. 19-13565** |

| | | |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars.** | § | |

## AMENDED ANSWER TO
## FIRST AMENDED COMPLAINT AND COUNTERCLAIM

COMES NOW, Jeffrey Mosing and Mosing Autosport, LLC *dba* Mosing Motorcars (collectively, "**Defendants**") by and through their undersigned attorney, and files this Answer and Counterclaim to the First Amended Complaint (ECF No. 23) made by M. Stephen Peters, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**"), and respectfully shows as follows:

### JURISDICTION AND VENUE

1.    The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e).

**ANSWER:** In response to the allegations set forth in paragraph 1, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

2.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (K).

**ANSWER:** In response to the allegations set forth in paragraph 2, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

3.     Venue in this district is proper under 28 U.S.C. § 1409(a).

**ANSWER:** Defendants admit that Venue in this district is proper. This is without prejudice to Defendants' ability to withdraw the reference to federal district court.

4.     This adversary proceeding is commenced pursuant to Rule 7001(1) and (2) of the Federal Rules of Bankruptcy Procedure.

**ANSWER:** In response to the allegations set forth in paragraph 4, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

5.     Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court.

**ANSWER:** At this time, Defendants do not consent to the entry of final orders and judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS

6.     Plaintiff M. Stephen Peters is the duly appointed chapter 7 trustee ("**Trustee**") of the bankruptcy estate of Tracy Dean Stephenson, Case No. 19-13565 MER.

**ANSWER:** Admitted.

7.     Defendant Jeffrey Mosing ("**Mr. Mosing**") is an individual residing in the state of Texas.

**ANSWER:** Admitted.

8.     Defendant Mosing Autosport, LLC dba Mosing Motorcars ("**Motorcars**") is a limited liability company organized under the laws of the state of Texas.

**ANSWER:** Admitted.

9.     Tracy Dean Stephenson ("**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("**Petition Date**").

**ANSWER:** Admitted.

10.    On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra SC motor vehicle, VIN CSX4501 ("**Vehicle**"). See Certificate of Title attached hereto as Exhibit 1.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 10, and therefore deny the same for purposes of pleading.

11.    Debtor financed the purchase of the Vehicle with a loan from Extraco Bank NA ("**Extraco**"). Extraco's lien was noted on the Certificate of Title. On June 2, 2016, Extraco released its lien against the Vehicle. See Exhibit 1.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 11, and therefore deny same for purposes of pleading.

12.    In an "Agreement" dated May 8, 2012, either Mr. Mosing or Motorcars (together, "**Mosing Entities**") loaned Debtor $120,000. A copy of the Agreement is attached hereto as Exhibit 2.

**ANSWER:** Defendants deny the allegations in paragraph 12 to the extent it construes the transaction between Defendants and Debtor as anything but a purchase.

13.    The Agreement allowed Debtor to "re-acquire" the Vehicle by paying stepped-up amounts by certain deadlines. In the Agreement, Mr. Mosing was to hold the "Original MSO," which is, upon information and belief, the Certificate of Title, and possession of the Vehicle until the agreed upon amount was repaid.

**ANSWER:** Defendants deny the allegations in paragraph 13 to the extent it construes the transaction between Defendants and Debtor as anything but a purchase. Defendants admit that Mr. Mosing was to hold the "Original MSO." Defendants deny that the "Original MSO" is the same as a Certificate of Title.

14.     On June 5, 2019, Motorcars executed a letter stating that the $120,000 was a loan and the Vehicle was collateral for the loan. A copy of the letter is attached hereto as Exhibit 3.

**ANSWER:** The letter speaks for itself, and Defendants deny any allegations set forth in paragraph 14 that are inconsistent with the letter.

15.     Despite the Agreement and the representations made in the in June 5, 2019 letter, $120,000 was not paid to Debtor. Instead, the $120,000 was paid with a check dated May 8, 2012 from an account bearing Mr. Mosing's name and made payable to 427 Legends. A copy of the check is attached hereto as Exhibit 4.

**ANSWER:** Defendants deny that $120,000 was not paid to the Debtor. The funds were for the benefit of the Debtor, and the Debtor directed that the funds be paid to 427 Legends. Defendants deny the remaining allegations in paragraph 15.

16.     Since the check was payable to 427 Legends instead of Debtor, Debtor did not receive reasonably equivalent value for the Transfer (as defined infra).

**ANSWER:** Defendants deny the allegations in paragraph 16.

17.     In the June 5, 2019 letter, it was admitted that Debtor made no payments to the Mosing Entities and that Mr. Mosing never received the original Certificate of Title for the Vehicle.

**ANSWER:** Defendants admit that Mr. Mosing never received the original Certificate of Title for the Vehicle because of the Debtor's fraud, instead receiving an MSO. Defendants admit that no payments were made by the Debtor to Defendants.

18.     The Mosing Entities are currently in possession of the Vehicle.

**ANSWER:** Admit the Mosing entities are currently in possession of the Vehicle and the original MSO.

19.     Pursuant to C.R.S. § 42-6-121(5), liens on motor vehicles shall be deemed perfected pursuant to C.R.S. § 42-6-120 when all necessary documents for recording the lien are received by the authorized agent and payment is tendered to note the lien.

**ANSWER:** In response to the allegations set forth in paragraph 19, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

20.     Pursuant to C.R.S. § 42-6-120, a mortgage lien against a motor vehicle is not effective as a lien against the "rights of third persons, purchasers for value without notice, mortgagees, or creditors of the owner" unless the lien is filed for public record and the fact of filing is noted on the owner's certificate of title.

**ANSWER:** In response to the allegations set forth in paragraph 20, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

21.     Pursuant to C.R.S. § 42-6-110, upon the sale of a motor vehicle, the person in whose name the vehicle is registered must execute a formal transfer of the vehicle as described in the Certificate of Title.

**ANSWER:** In response to the allegations set forth in paragraph 21, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny,

Defendants deny same for the purposes of pleading. Defendants do not concede that Colorado is the appropriate choice of law.

22.    C.R.S. § 42-6-109(1) unequivocally provides that "a purchaser or transferee does not acquire any right, title, or interest in and to a motor or off-highway vehicle purchased by the purchaser or transferee unless and until he or she obtains from the transferor the certificate of title duly transferred in accordance with this part 1."

**ANSWER:** In response to the allegations set forth in paragraph 22, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

23.    Trustee is in possession of the original Certificate of Title.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 23, and therefore deny same for purposes of pleading.

24.    The Certificate of Title does not reflect the Mosing Entities as having a security interest in the Vehicle nor does it reflect a transfer of the Vehicle by Debtor to the Mosing Entities. To the contrary, the Certificate of Title shows Debtor as the sole owner of the Vehicle and that the Vehicle is free and clear of all liens, claims and interests.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 24. Upon information and belief, Defendants believe that to the extent there is a title, it was obtained fraudulently, and therefore deny paragraph 24.

25.    The purported grant of the security interest and/or transfer of an ownership interest was a transfer within the meaning of 11 U.S.C. § 101(54) ("**Transfer**").

**ANSWER:** In response to the allegations set forth in paragraph 25, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

26.    Debtor's interest in the Vehicle is property of the bankruptcy estate.

**ANSWER:** Denied.

27.    The Mosing Entities have sought to impose a constructive and/or resulting trust over the Vehicle for their benefit of the Mosing Entities (the "Equitable Trust"). Trustee disputes that an Equitable Trust exists.

**ANSWER:** Paragraph 27 states no claim; however, Defendants respectfully request the Court deny such relief.

## FIRST CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 547(b), 550(a) and 551)

28.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 27 above as though more fully set forth in this First Claim for Relief.

**ANSWER:** Defendants incorporates and repeats its responses to paragraph 1 through 27 above as though set forth fully herein.

29.    The determination of whether the Transfer is preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

**ANSWER:** In response to the allegations set forth in paragraph 29, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

30.    The Transfer and/or Equitable Trust were made for the benefit of the Mosing Entities.

**ANSWER:** Admitted.

31.    The Transfer and/or Equitable Trust were made for or on account of an antecedent debt owned by Debtor before the Transfer and/or Equitable Trust were made.

**ANSWER:** Denied.

32.    The Transfer and/or Equitable Trust were made while Debtor was insolvent.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 32, and therefore deny same for purposes of pleading.

33.    The Transfer and/or Equitable Trust occurred immediately before the Petition Date pursuant to 11 U.S.C. § 547(e)(2)(C), and therefore was made on or within 90 days prior to the Petition Date.

**ANSWER:** Denied.

34.    The Transfer and/or Equitable Trust enabled the Mosing Entities to receive more than the Mosing Entities would have received in Debtor's chapter 7 case if the Transfer and Equitable Trust had not been made and the Mosing Entities had received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

**ANSWER:** Denied.

35.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 547(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 35, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 547(b), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## SECOND CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

36.     Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 35 above as though more fully set forth in this Second Claim for Relief.

**ANSWER:** Defendants incorporate and repeat its responses to paragraph 1 through 35 above as though set forth fully herein.

37.    Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 37, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

38.    The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 38, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

39.    Pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' security interest and/or Equitable Trust in the Vehicle were unperfected.

**ANSWER:** Denied. Defendants admit that the Mosing entities have not transferred the Vehicle and are still in possession of the original MSO.

40.    Similarly, pursuant to C.R.S. § 42-6-101, et seq., on the Petition Date, the Mosing Entities' purported ownership interest in the Vehicle was not noted on the Certificate of Title.

**ANSWER:** Defendants admit that its ownership interest was not noted on the Certificate of Title. Defendants do not admit that the Certificate of Title is authentic. In response to the remaining allegations set forth in paragraph 40, to the extent such

allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

41.    The Mosing Entities therefore have no right, title or interest in and to the Vehicle.

**ANSWER:** Denied.

42.    As of the Petition Date, a judgment lien creditor and/or an execution lien creditor would have the right and power to avoid the Transfer and/or the Equitable Trust by virtue of its superior interest in the Vehicle.

**ANSWER:** In response to the allegations set forth in paragraph 42, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

43.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 43, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

### THIRD CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551))

44.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 43 above as though more fully set forth in this Third Claim for Relief.

**ANSWER:** Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 43 above as though more fully set forth in this Third Claim for Relief.

45.    Pursuant to 11 U.S.C. § 544(a), Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.

**ANSWER:** In response to the allegations set forth in paragraph 45, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

46.    The rights of the hypothetical interest holders described in § 544(a) are determined by reference to state law.

**ANSWER:** In response to the allegations set forth in paragraph 46, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

47.    Pursuant to C.R.S. § 38-8-107, the Transfer is made "when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this article that is superior to the interest of the transferee." C.R.S. § 38-8-107(1)(a)(II).

**ANSWER:** In response to the allegations set forth in paragraph 47, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

48.    If "the transfer to be perfected is not perfected before the commencement of the action . . . , the transfer is deemed made immediately before the commencement of the action." C.R.S. § 38-8-107(2).

**ANSWER:** In response to the allegations set forth in paragraph 48, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

49.    Pursuant to C.R.S. § 42-6-101, et seq., the Mosing Entities failed to perfect either a security interest or purchase interest in the Vehicle. The Transfer therefore occurred immediately before the commencement of this action and this action is therefore timely brought pursuant to C.R.S. § 38-8-110.

**ANSWER:** In response to the allegations set forth in paragraph 49, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

50.    The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

**ANSWER:**   Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 50 of the Complaint, and therefore deny same for purposes of pleading.

51.    The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 51 of the Complaint, and therefore deny same for purposes of pleading.

52.    The Transfer is therefore avoidable by Trustee and may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 544(a), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 52, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his favor and against the Mosing Entities (a) avoiding the Transfer pursuant to 11 U.S.C. § 544(a), (b) recovering and preserving the avoided Transfer pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:**  This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## FOURTH CLAIM FOR RELIEF
### (Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(b), 550(a) and 551))

53.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 52 above as though more fully set forth in this Fourth Claim for Relief.

**ANSWER:** Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 52 above as though more fully set forth in this Fourth Claim for Relief.

54.    Pursuant to 11 U.S.C. § 544(b), Trustee may avoid any transfer of an interest by Debtor that is voidable under applicable law by an actual unsecured creditor of Debtor.

**ANSWER:** In response to the allegations set forth in paragraph 54, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

55.    Debtor scheduled an unsecured debt owing to the Internal Revenue Service (the "IRS") for $20,000. Upon information and belief, the tax deficiency assessment was made in the last ten years.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint, and therefore deny same for purposes of pleading.

56.    By application of § 544(b), Trustee steps into the shoes of, and has the same powers as, the IRS.

**ANSWER:** In response to the allegations set forth in paragraph 56, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

57.    The Internal Revenue Code allows the IRS to collect outstanding tax liability from a transferee of Debtor. *See* 26 U.S.C. § 6901(a)(1)(A).

**ANSWER:** In response to the allegations set forth in paragraph 57, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

58.    To do so, the IRS must establish liability under state law.

**ANSWER:** In response to the allegations set forth in paragraph 58, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

59.    Liability under state law has been established. The Transfer is avoidable pursuant to C.R.S. § 38-8-105(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, Debtor was either (i) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was an unreasonably small capital; or, (ii) intended to incur, or believed that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

**ANSWER:** In response to the allegations set forth in paragraph 59, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

60.    The Transfer is avoidable pursuant to C.R.S. § 38-8-106(1)(b) because Debtor received less than reasonably equivalent value in exchange for such Transfer and, when the Transfer was made, BLR was insolvent or became insolvent as a result of the Transfer.

**ANSWER:** In response to the allegations set forth in paragraph 60, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

---

61.     The Transfer and/or the Equitable Trust are avoidable pursuant to C.R.S. §
38-8-106(1)(b) because Debtor received less than reasonable equivalent value in
exchange for such Transfer and, when the Transfer was made, BLR was insolvent or
became insolvent as a result of the Transfer.

**ANSWER:** Denied.

62.     If the Court determines that the Transfer occurred, or the Equitable Trust
was established, on May 8, 2012–the date of the Agreement and the $120,000 check–or
any time within ten years of a tax deficiency assessment being made, this action is timely
because Trustee may avail himself of the IRS' ten-year statute of limitations. 26 U.S.C. §
6502(a); *In re Behrends*, 2017 WL 4513071, *8 (Bankr. D. Colo. 2017).

**ANSWER:** In response to the allegations set forth in paragraph 62, to the extent
such allegations constitute legal conclusions which Defendants need not admit or deny,
Defendants deny same for the purposes of pleading.

63.     The Transfer and/or Equitable Trust are therefore avoidable by Trustee and
may be recovered and preserved for the benefit of the bankruptcy estate pursuant to 11
U.S.C. §§ 544(b), 550(a) and 551.

**ANSWER:** In response to the allegations set forth in paragraph 63, to the extent
such allegations constitute legal conclusions which Defendants need not admit or deny,
Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in his
favor and against the Mosing Entities (a) avoiding the Transfer and/or Equitable Trust
pursuant to 11 U.S.C. § 544(b), (b) recovering and preserving the avoided Transfer

and/or Equitable Trust pursuant to 11 U.S.C. §§ 550(a) and 551, and (c) and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## FIFTH CLAIM FOR RELIEF
### (Turnover of Property of the Estate – 11 U.S.C. § 542(a))

64.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 63 above as though more fully set forth in this Fifth Claim for Relief.

**ANSWER:** Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 63 above as though more fully set forth in this Fifth Claim for Relief.

65.    11 U.S.C. § 542(a) requires an entity in possession, custody or control of property of the bankruptcy estate to "deliver to the trustee, and account for, such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate."

**ANSWER:** In response to the allegations set forth in paragraph 64, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

66.    The Mosing Entities are in possession of the Vehicle, which is property of the bankruptcy estate.

**ANSWER:** Defendants admit they are in possession of the Vehicle. Defendants deny it is property of the estate.

67.    The Vehicle is believed to be valued at more than $200,000 and is therefore not of inconsequential value or benefit to the bankruptcy estate.

**ANSWER:** Defendants are without knowledge or information at this time sufficient to form a belief as to the truth of the allegations set forth in paragraph 67 of the Complaint, and therefore deny same for purposes of pleading.

68.    Trustee therefore requests entry of an order compelling the Mosing Entities to turn over the Vehicle to Trustee.

**ANSWER:** In response to the allegations set forth in paragraph 68, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee requests that the Court enter judgment in his favor and against the Mosing Entities requiring delivery and turnover of the Vehicle to Trustee and granting such other relief as the Court deems appropriate.

**ANSWER:**  This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief – Determination of Interests in the Vehicle)

69.    Trustee incorporates by this reference the allegations contained in Paragraphs 1 through 68 above as though more fully set forth in this Sixth Claim for Relief.

**ANSWER:**   Defendants incorporate by this reference the allegations contained in Paragraphs 1 through 68 above as though more fully set forth in this Sixth Claim for Relief.

70.    Under Rule 7001(2) and (9), a party may commence an adversary proceeding to seek a declaratory judgment determining the validity, priority and extent of interests in property.

**ANSWER:** In response to the allegations set forth in paragraph 70, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

71.    Trustee requests this Court to enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle and that the Mosing Parties have no lien, title or interest in or to the Vehicle or any part thereof.

**ANSWER:** In response to the allegations set forth in paragraph 71, to the extent such allegations constitute legal conclusions which Defendants need not admit or deny, Defendants deny same for the purposes of pleading.

WHEREFORE, Trustee requests that the Court enter a declaration that Trustee's interests in the Vehicle are superior to the Mosing Entities' interests in the Vehicle, that

the Mosing Parties have no lien, right, title or interest in or to the Vehicle or any part thereof, and granting such other relief as the Court deems appropriate.

**ANSWER:** This prayer states no claim; however, Defendants respectfully request the Court to deny such relief.

## AFFIRMATIVE DEFENSES

72.     Defendants assert these affirmative defenses to the Complaint as follows:

73.     Plaintiff has failed to allege facts with sufficient specificity that, if proven, establish a prima facie case for recover under 11 U.S.C. §§ 542, 544, 547, 550, and 551 and by this failure has failed to state a claim upon which relief may be granted.

74.     To the extent Defendants received alleged transfers, such transfers were not made while the Debtor was insolvent.

75.     The Trustee is barred by the doctrine *In Pari Delicto*.

76.     Defendants are not liable to the Trustee because there is no creditor whose claim arose before or within a reasonable time after the alleged transfer was made to Defendants.

77.     Defendants are not liable to the Trustee because Debtor was not insolvent at the time the alleged transfers were made.

78.     Defendants are not liable to the Trustee because they accepted the alleged transfer in good faith

79.     Defendants are not liable to the Trustee because 427 Legends gave value to Debtor after the transfer was made.

# COUNTERCLAIM

### *Facts*

80.    Motorcars was formed in 2011 as a buyer and consignor of class automobiles. Motorcars is a Texas limited liability company that does business in Texas. Motorcars considers itself a boutique auto dealer. It is more concerned with matching the right buyer to the right classic automobile, rather than simply consummating a sale. In addition, Motorcars is an authorized replica dealer of Superformance Shelby replicas. Motorcars is located and holds a dealer license in Texas.

81.    Mr. Mosing is a resident of the State of Texas.

82.    On or about August 2009, Mr. Mosing met the Debtor in Texas, who over the next few years bought at least two cars from Motorcars in Texas. Upon information and belief, the Debtor resided in Texas during the relevant time period.

83.    In March or April 2012, Debtor approached Mr. Mosing in Texas about obtaining funds from the Defendants.  ("**Transaction**").

84.    The Transaction was structured as a purchase. The Debtor transferred ownership of a 1965 Shelby 472 Cobra SC, VIN # CSX4501 ("**Vehicle**") and the original MSO to Motorcars. In exchange, Mr. Mosing transferred to the Debtor $120,000. A "MSO" is a Manufacturer Statement of Origin. If you have a MSO, you cannot also have a title. In addition to the Vehicle, Mr. Mosing holds the original MSO.

85.    Defendants have continued to pay insurance premiums for the Vehicle. Since transferring the Vehicle to Defendants, the Debtor has taken no actions evidencing ownership, such as possession or the payment of insurance premiums.

86.     Debtor had one year or until May 9, 2013 to buy back the Vehicle. By failing to buy back the Vehicle, the ownership in the Vehicle vested in either of the Defendants. to repay the Loan or the Vehicle and the MSO became property of Mr. Mosing.  Defendants were unaware that the Vehicle was encumbered by a lien. This debt was not disclosed to Defendants. Defendants were unaware that the Vehicle had been encumbered in Colorado. Had Defendants known either of these facts, they would have never engaged in the Transaction.

### *Declaratory Judgment*

87.     Upon information and believe, the Vehicle, with only bare legal title in the Debtor, is subject to a purchase money constructive trust or resulting trust with equitable title in the Defendants.

88.     The Vehicle is not property of the estate as the Debtor only holds bare legal title.

89.     Section 541(a)(1) of the Bankruptcy Code generally provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a Chapter 7 case.  However, section 541 does not by itself create new legal or equitable interests in property.  Instead, property interests are created and defined by state law. Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under § 541 of the Bankruptcy Code and the debtor is prohibited from distributing such property to its creditors.

---

90.     Further, 11 U.S.C. § 541(d) provides that property for which a debtor holds only bare record title is not property of the estate. And, a debtor who holds proceeds attributable to real property owned by another holds at most bare record title to such proceeds.

91.     The Transfer took place in Texas. In Texas, when one person pays, or becomes obligated to pay, the consideration for the purchase of property, but title is taken in another's name, the law implies a purchase money resulting trust.  *See Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex. 1991); *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984); *Leyva v. Pacheco*, 358 S.W.2d 547, 550 (1962); *Cohrs v. Scott*, 338 S.W.2d 127, 130 (1960); *Morrison v. Farmer*, 213 S.W.2d 813, 814 (Tex. 1948).

92.     Under facts supporting a purchase money resulting trust, the parties are presumed to have intended that the named grantee hold title for the use and benefit of the person who is providing the consideration for the purchase.  *Cohrs v. Scott*, 338 S.W.2d at 130; *Masterson v. Hogue*, 842 S.W.2d 696, 697 (Tex. App.—Tyler 1992, no writ); *Ford v. Simpson*, 568 S.W.2d 468, 470 (Tex. Civ. App. Waco 1978, no writ); *Bell v. Smith*, 532 S.W.2d 686, 684 (Tex. Civ. App.—Fort Worth 1976, no writ); *Hammett v. McIntire*, 365 S.W.2d 844, 847 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.).

93.     When facts supporting a purchase money resulting trust exist, "bare legal title is in the grantee in the deed and equitable title is in the person paying the purchase price."  *Hammett*, 365 S.W.2d at 847.

94.    A constructive trust is an equitable remedy used to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.—Fort Worth 2002, no pet.); *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex. App.—Houston [1st Dist.] 1988, no writ). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App.—Corpus Christi 2002, pet. denied). A constructive trust exists. Defendants provided a capital loan to the Debtor. Defendants were defrauded when they were provided the "Original MSO," and the Debtor failed to disclose that: (1) the Vehicle was subject to a lien; and (2) the Debtor had already obtained title to the Vehicle in Colorado. The Vehicle is the identifiable res.

95.    Defendants seek a declaratory judgment that the estate's interest in the Vehicle is that of only bare legal title, and that equitable title vests in the Defendants subject to constructive and resulting trusts.

96.    Defendants seek no monetary relief from the bankruptcy estate, and explicitly decline to initiate the claims allowance process.

### *Prayer*

97.    For these reasons, Defendants ask for a judgment against the Trustee declaring and awarding the following:

98.    The Defendants have a constructive and/or resulting trust in the Vehicle.

99.    The Defendants are the equitable owners of the Vehicle.

---

100.    The constructive and/or resulting trust is not subject to the Trustee's strong-arm powers.

101.    All other relief the Court deems just and proper.

Dated: June 11, 2020.

Respectfully Submitted,

**McDowell Hetherington LLP**

By:  /s/ Jarrod B. Martin

Jarrod B. Martin
Texas Bar No. 24070221
1001 Fannin Street
Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Jarrod.Martin@mhllp.com

***Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 11, 2020, a true and correct copy of the foregoing Motion was served electronically on the Plaintiff and all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO AMENDED COUNTERCLAIM AND AFFIRMATIVE DEFENSES

Plaintiff M. Stephen Peters, chapter 7 trustee ("Trustee"), by and through his counsel, Wadsworth Garber Warner Conrardy, P.C., hereby submits his Answer to Amended Counterclaim and Affirmative Defenses, and in support thereof states as follows:

### Response to Numbered Allegations

80.   Trustee is without sufficient information or knowledge to admit or deny the allegations of paragraph 80 of the Counterclaim and therefore denies the same.

81.   Trustee admits the allegations of paragraph 81 of the Counterclaim.

82.   Trustee is without sufficient information or knowledge to admit or deny the allegations of paragraph 82 of the Counterclaim and therefore denies the same.

83.   Trustee is without sufficient information or knowledge to admit or deny the allegations of paragraph 83 of the Counterclaim and therefore denies the same.

84.   Trustee denies the allegations of paragraph 84 of the Counterclaim.

85.   Trustee is without sufficient information or knowledge to admit or deny that

Defendants[1] have continued to pay insurance premiums for the Vehicle and therefore denies the allegation. Trustee denies the remaining allegations of paragraph 85 of the Counterclaim.

86.     Trustee denies the allegations that Debtor had one year or until May 9, 2013 to buy back the Vehicle and that Debtor's failure to do so caused the Vehicle and the MSO to become property of Defendants. Trustee is without sufficient information or belief to admit or deny the remaining allegations of paragraph 86 of the Counterclaim and therefore denies the same.

87.     Trustee denies the allegations of paragraph 87 of the Counterclaim.

88.     Trustee denies the allegations of paragraph 88 of the Counterclaim.

89.     11 U.S.C. § 541 speaks for itself. Otherwise, Trustee denies the allegations of paragraph 89 of the Counterclaim.

90.     11 U.S.C. § 541 speaks for itself. Otherwise, Trustee denies the allegations of paragraph 90 of the Counterclaim.

91.     Trustee disputes that Texas law controls. Notwithstanding, the law speaks for itself. Otherwise, Trustee denies the allegations of paragraph 91 of the Counterclaim.

92.     Trustee disputes that Texas law controls. Notwithstanding, the law speaks for itself. Otherwise, Trustee denies the allegations of paragraph 92 of the Counterclaim.

93.     Trustee disputes that Texas law controls. Notwithstanding, the law speaks for itself. Otherwise, Trustee denies the allegations of paragraph 93 of the Counterclaim.

94.     Trustee disputes that Texas law controls. Notwithstanding, the law speaks for itself. Otherwise, Trustee denies the allegations of paragraph 94 of the Counterclaim.

95.     Trustee denies the allegations of paragraph 95 of the Counterclaim.

96.     Paragraph 96 does not require a response, to the extent that it does, Trustee denies the allegations of paragraph 96 of the Counterclaim.

97.     Trustee denies the allegations of paragraph 97 of the Counterclaim.

98.     Trustee denies the allegations of paragraph 98 of the Counterclaim.

99.     Trustee denies the allegations of paragraph 99 of the Counterclaim.

100.    Trustee denies the allegations of paragraph 100 of the Counterclaim.

101.    Trustee denies the allegations of paragraph 101 of the Counterclaim.

---

[1] Unless otherwise defined herein, capitalized terms correspond the meanings ascribed to them in Counterclaim.

102.    All allegations that are not specifically admitted herein are denied.

**Affirmative Defenses**

1.    Defendants have failed to state a claim upon which relief may be granted.

2.    Defendants' recovery is barred by statute of limitations.

3.    Defendants' recovery is barred by the doctrines of equitable estoppel, laches and/or unclean hands.

4.    Trustee reserves the right to add to or amend these affirmative defenses.

WHEREFORE, Trustee prays that the Court dismiss the Counterclaims in their entirety with prejudice, award Trustee his attorney fees and costs, and grant such other relief as the Court deems just.

Dated this 11th day of June, 2020.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/ Aaron J. Conrardy
Aaron J. Conrardy, #40030
*Attorneys for Trustee*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was served electronically on June 11, 2020 to the following:

Jarrod Martin
Jarrod.martin@mhllp.com

/s/Angela Garcia
Paralegal

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO



|  |  |  |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |
| | § | |
| | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars** | § | |

---

## DEFENDANTS JEFFREY MOSING AND MOSING AUTOSPORT, LLC D/B/A MOSING MOTORCARS' <br> <u>AMENDED MOTION FOR SUMMARY JUDGMENT</u>

---

Defendants Jeffrey Mosing ("**Mosing**") and Mosing Autosport, LLC d/b/a Mosing Motorcars ("**Mosing Motorcars**" collectively, "**Defendants**") submitted their Motion for Summary Judgment on September 25, 2020 ("**Motion**").[1]  Subsequently, Counsel for Defendants and Plaintiff M. Stephen Peters, Chapter 7 Trustee ("**Trustee**") have conferred, and Trustee is unopposed to Defendants amending their Motion for clerical and stylistic reasons.  As such, Defendants submit this *Amended Motion for Summary Judgment* ("**Amended Motion**") and in support thereof states as follows:

---

[1] ECF No. 57.

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 ("**FRCP**"), Defendants move for summary judgment on their counterclaim against Plaintiff and respectively seek a declaratory judgment pursuant to 11 U.S.C. § 541 that the estate's interest in certain property is that of only bare legal title and that equitable title vested in the Defendants subject to constructive and resulting trusts. Such a finding would defeat all of the Trustee's claims and result in a take nothing judgment against the Trustee.

## JURISDICTION, VENUE, AND AUTHORITY TO ENTER FINAL ORDERS

1.     The United States Bankruptcy Court for the District of Colorado has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(H), for which the Court may enter final orders. The bases for the relief requested herein are § 541 of title 11 of the Bankruptcy Code, and Rules 7001(9) of the Federal Rules of Bankruptcy Procedure. The Court has constitutional authority to enter a final order in this matter.[2] Lastly, venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### PROCEDURAL HISTORY

2.     On August 7, 2019, Plaintiff filed an adversary proceeding against Defendants for, inter alia, claims based on avoidance, recovery, preservation, and turnover of property regarding a vintage 1965 Shelby 427 Cobra SC ("**Cobra**").[3] On October 14, 2019, Defendants timely filed their answer and counterclaim, which sought a declaratory judgment under 11

---

[2] *See Stern v. Marshall*, 564 U.S. 462 (2011).
[3] ECF No. 1.

U.S.C. § 541(a) that such property was not property of the estate.[4]  On January 3, 2020, Plaintiff filed his First Amended Complaint.[5] Defendants' Motion to Dismiss Plaintiff's First Amended Complaint was filed on January 17, 2020, and was subsequently denied by the Court on April 24, 2020.[6]  Pursuant to the Court's scheduling order, the deadline to designate experts and rebuttal exhibits was June 26, 2020 and July 24, 2020, respectively, the discovery cutoff deadline was August 28, 2020, and the deadline to file dispositive motions was September 25, 2020.[7]

### STATEMENT OF ISSUES AND BURDEN OF PROOF

- Whether the Cobra is property of the estate despite Debtor's 2012 transfer. On this issue, Trustee has the burden of proof, by a preponderance of the evidence, that property constitutes property of the estate.[8]

- Whether a genuine issue of material fact exists as to Defendants' equitable title in the Cobra. On this issue, Defendants have the burden of proof, by a preponderance of the evidence, that they have equitable title in the property.[9]

### SUMMARY OF THE ARGUMENT

3.    On May 8, 2012, Defendants paid Tracy Dean Stephenson ("**Debtor**") valuable consideration—the agreed upon contract price of $120,000.00—for the Cobra.  Debtor represented that the Cobra had not been titled and, consistent with prior practice, Defendants retained the vehicle's Manufacturer's Statement of Origin (the vehicle's "birth certificate"). Defendants have maintained possession and insurance on the Cobra ever since.  For the first time in 2019, Defendants were informed by the Plaintiff that, although they paid valuable

---

[4] ECF No. 12.
[5] ECF No. 23.
[6] ECF Nos. 24, 38.
[7] *See* ECF No. 18.
[8] *See In re Vasquez*, 581 B.R. 59, 66 (Bankr. D. Ver. 2018); *see also* Collier on Bankruptcy, ¶ 542.03.
[9] *See, e.g., In re Cadengo*, 370 B.R. 681, 694 (Bankr. S.D. Tex. 2007).

consideration for the Cobra and have it in their possession, the Cobra belongs to the bankruptcy estate.  However, under Texas law, the transaction created a constructive trust when Debtor induced Defendants to enter the Agreement without clear title.  Defendants therefore have equitable title in the Cobra, which supersedes Trustee's strong-arm power.  Accordingly, the May 8, 2012 transaction is not avoidable and the Court should enter a "take nothing" judgment against the Trustee.

### SUMMARY JUDGMENT EVIDENCE

**Exhibit A:**    Deposition of Jeffrey Mosing

**Exhibit B:**    Deposition of Tracy Dean Stephenson

**Exhibit C:**    April 19, 2012 email from Stephenson to Mosing

**Exhibit D:**    May 8, 2012 Agreement

**Exhibit E:**    Manufacturer's Statement of Origin

**Exhibit F:**    Insurance Card for Cobra

**Exhibit G:**    Payment for Cobra

### RELEVANT FACTUAL BACKGROUND

4.      Jeffrey Mosing, originally from Lafayette Louisiana, moved to Austin, Texas in 2006.[10]

5.      With the dream to have his own business where he could buy and sell cars as a dealer, Mosing started Mosing Motorcars in 2011.[11]

6.      Since then, he has served as the sole member and the manager of the limited liability company, Mosing Motorcars.[12]

7.      Mosing Motorcars buys, sells, and consigns specialty automobiles, including

---

[10] Exhibit A, at 10:3-12; 11:24-3.
[11] *Id.* at 12:4-17.
[12] *Id.* at 13:16-14:15. Mosing Motorcars is the only assumed name for Mosing Autosport, LLC. The company's website is www.mosingmotorcars.com.

classic, performance, and off-road cars and trucks.[13]

8.     The dealership, which consists of a 10,000 square foot building which includes a 2,400 square foot showroom, focuses on older, classic cars.[14]

9.     Mosing Motorsport holds a motor vehicle dealer license in Texas, which authorizes Mosing to buy, sell, and consign vehicles for sale.[15]

10.     Mosing Autosport is authorized to sell essentially any street legal vehicle, excluding motorcycles.[16]

11.     Mosing became a certified Superformance dealer in either 2015 or 2016.[17] Superformance is a company that produces replicas and duplicates of cars that were built in the 1960s.[18]

12.     In fact, Mosing first met Tracy "Trac" Stephenson when Mosing moved to Austin because he became interested in purchasing a Superformance GT40, for which Stephenson was the Texas licensed dealer at the time.[19]

13.     After meeting Stephenson around 2009, Mosing purchased four vehicles from Stephenson prior to the transaction at issue here.[20]

14.     In those transactions, Stephenson transferred either title or Manufacturer's Statement of Origin ("**MSO**"), whichever applied.[21]

15.     The first vehicle Mosing purchased from Stephenson was the GT40 Mosing

---

[13] *Id.* at 14:18-15:18.
[14] *Id.*
[15] *Id.* at 17:12-18:13.
[16] *Id.*
[17] *Id.* at 18:8-19:4.
[18] *Id.*
[19] *Id.* at 23:20-24:11.
[20] *Id.* at 51:20-53:21; Exhibit B, at 28:6-29:6.
[21] *Id.* at 51:20-53:21.

purchased in 2008 for approximately $85,000.00, which Stephenson transferred with its MSO.[22]

16.     The next two vehicles Mosing purchased from Stephenson were two Corvettes ('66 and '67, respectively) in either 2008 or 2009 for a collective price of $70,000.00, which were transferred with title.[23]

17.     Finally, Mosing purchased a Shelby Daytona Coupe from Stephenson for approximately $50,000.00 in the fall of 2009, which was transferred with the MSO.[24]

18.     Around April of 2012, Stephenson discussed the possibility of obtaining funds from Defendants in exchange for selling the Cobra.[25]

19.     Mosing understood that Stephenson was selling the Cobra because Stephenson needed money to support aa business venture he was trying to get off the ground.[26]

20.     The April 19, 2012 proposal from Stephenson reads: "***Here is what I would like to work out if possible: … Purchase price of $120,000 with an agreement that I can purchase the Cobra back for up to a year or so. . . .***"[27]

21.     To arrive at the purchase price, Mosing testified: "that was his proposition; I accepted it."[28]

22.     From Mosing's standpoint, the consideration was fair and reasonable for the Cobra because he figured he could sell it for $120,000 if Stephenson proved unable to buy it back.[29]

23.     Stephenson very clearly testified that the parties memorialized his April 19, 2012

---

[22] *Id*. at 52:2-22.
[23] *Id*. at 52:23-53:11.
[24] *Id*. at 53:12-21.
[25] *Id.* at 25:6-14.
[26] *Id.* at 24:19-25:5.
[27] Exhibit B, at 23:14-25:10; Exhibit C.
[28] Exhibit A, at 25:15-26:5.
[29] *Id*.

email into their May 8, 2012 Agreement.[30]

24.    The Agreement was executed at Mosing's place of business.[31]

25.    Following the execution of the Agreement, Mosing made out the payment to Stephenson's company, "427 Legends," at Stephenson's direction.[32]

26.    As a consignor and a dealer, Mosing is very familiar with the importance of a vehicle's title.[33]

27.    He has to know if the vehicle he seeks to sell is free and clear, if it has a prior lien, if the title to the car is legitimate, and even if there is a MSO.[34]

28.    A manufacturer's statement of origin is something foreign to the general public, what Mosing characterizes as the "birth certificate" of the car.[35]

29.    Stephenson offered the MSO to further induce Mosing to purchase the Cobra.[36]

30.    According to Stephenson, "we didn't have the title yet physically in our hands so the next best thing. . . the only physical document that I could offer him at the time was the original MSO."[37]

31.    By Stephenson's own admission, *"it was important to [Mosing]"* to retain possession of both the Cobra and the MSO.[38]

32.    Regardless of how the parties characterized the transaction, ultimately Stephenson agreed that he would lose any rights to the Cobra and Mosing would retain

---

[30] Exhibit B, at 35:10-36:18; Exhibit D.
[31] Exhibit B, at 33:19-34:4.
[32] *Id.* at 50:14-51:17.
[33] Exhibit A, at 19:8-20:3.
[34] *Id.*
[35] *Id.* at 20:18-21:2. "When you go to a dealership, they have the MSOs for the cars that they get delivered to them, and then they turn those over to whatever state they're selling the car, and that gets transferred into a title."
[36] Exhibit B, at 36:19-37:23.
[37] *Id.*
[38] *Id.* at 42:12-43:2.

possession unless Stephenson purchased it back under the terms of the Agreement.[39]

33.    By their agreement, Mosing next took possession of the Cobra and its MSO.[40] Contemporaneously with taking possession of the Cobra and its MSO, on May 8, 2012, Mosing and Stephenson memorialized Stephenson's email offer.[41]

34.    Despite Trustee's argument that this transaction was set up as a loan, Stephenson notably admits that the word "loan" makes no appearance in the document.[42]

35.    The parties executed the Agreement.[43]

36.    Though Stephenson testified that that the parties' final agreement was a loan, this testimony contradicts the very terms of the executed Agreement.[44]

37.    Ultimately, however, Stephenson admitted it was fair at the time for Mosing to assume there was no prior lien on the Cobra, based on their background communications and the language of the Agreement itself.[45]

38.    Stephenson exchanged the Cobra with Mosing for a sum certain, with the agreement that Stephenson could buy the Cobra back.[46]

39.    Prior to receiving service on Plaintiff's suit, Mosing has certainly operated as though he legally owned the Cobra as of May 9, 2013:

> Q.    So it's your position that, even though this letter says it's a loan, that it was a purchase of the vehicle with a right to repurchase. Is that your –
>
> A.    Yeah. He specifically requested that I don't list it for sale, that he wanted to try to buy it back. And once the

---

[39] *Id.* at 52:6-25; 56:4-24.
[40] Exhibit A, at 26:19-25.
[41] Exhibit C.
[42] Exhibit B, at 73:17-74:9.
[43] Exhibit A, at 35:7-12; Exhibit D.
[44] *Id.* at 35:7-12; Exhibit D.
[45] Exhibit B, at 44:2-23.
[46] Exhibit D.

time lapsed, the agreement was, you know -- I mean, I own
the car. I have the MSO. I have the car. It's been in my
possession for eight years. I've been insuring it like it's my
car. I've been maintaining it and doing mechanical work
to it like it's my car.[47]

40.    Mosing has maintained and insured the vehicle, with an insured value at
$120,000.00, since 2012.[48]

41.    Mosing had no knowledge that the Cobra was previously titled in Colorado or
financed, as he was led to believe all he needed was the MSO to sell the Cobra.[49]

42.    Rather than take possession of the title, Stephenson provided Mosing the Cobra's
MSO, which supersedes the title:

Q.    Were there any discussions about a certificate of title?

A.    Yes.  Even though it's -- I considered him a friend, I'm
still going to ask, Is there any title to the car, and he
responded with, No, I have the MSO that's all you need.
And I'm familiar with the MSO. That is -- that trumps
anything that's out there.

Q.    Does an MSO trump a certificate of title?

A.    Yes.  In Texas it does.

Q.    What's that based off of?

A.    I can go today to the Texas DMV and obtain a title for
that car.  And as far as Texas cares, that's going to trump
anything that's possibly out there previous.

Q.    What if a certificate of title had been issued in Colorado
prior to you going down to the Texas DMV?

A.    It doesn't matter.  I can go -- the MSO trumps anything
that's out there.[50]

---

[47] Exhibit A, at 34:21-6.
[48] *Id.* at 38:21-39; Exhibit F.
[49] *Id.* at 42:14-43:19.
[50] *Id.* at 27:3-21.

9

Mosing still has the MSO in his shop safe.[51]

43.    In the parties' four previous transactions, Stephenson transferred both titles and MSOs with the vehicles he sold to Defendants, depending on the vehicle.[52] For Mosing, the MSO superseded any certificate of title, and so he took Mr. Stephenson's representation that the vehicle was not titled as true:

> Q.    There are some allegations in your counterclaims that Trac had defrauded you in connection with the Cobra transaction. Can you tell me more about that?
>
> . . . .
>
> A.    When Trac and I talked about this transaction, I specifically asked him if there was a title to the car, and he said, No, just the MSO. And he presented that to me along with the car, and that was it. I had no idea or knowledge of the fact that the car was not only titled in Colorado but it had a lien on it. This was not the only time that he had deceived me.[53]

44.    Stephenson testified that he took a loan out with Extraco Bank on or around February 24, 2012 in the amount of $75,000, putting down two real property lots as collateral.[54]

45.    Subsequently, the bank demanded that he add the Cobra to the note.[55]

## LEGAL ANALYSIS

### SUMMARY JUDGMENT STANDARD

46.    Summary judgment is proper when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56] Rule 7056 of the Federal Rules

---

[51] *Id.* at 30:4-23.
[52] *Id.* at 51:20-53:21.
[53] *Id.* at 53:22-19.
[54] Exhibit B, at 27:8-28:1.
[55] *Id.* at 27:8-28:1.
[56] FED. R. CIV. P. 56(a).

of Bankruptcy Procedure incorporates Federal Rule of Civil Procedure 56 in adversary proceedings.  A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law.[57]  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.[58]  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[59]  However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.[60]

47.    The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[61]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim.[62]

48.    Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[63] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[64]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[65]  Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her

---

[57] *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).
[58] *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).
[59] *Id.*
[60] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).
[61] *Id.*
[62] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).
[63] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[64] *Id.*
[65] *Adler*, 144 F.3d at 671.

favor.[66]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[67]

### ARGUMENT AND AUTHORITIES

49.    Stephenson's failure to buyback the Cobra from Defendants created a constructive trust in favor of Defendants.  Both Texas and Colorado apply the "most-significant-relationship test" to determine which state's substantive law controls.[68]  Under either state, the elements for imposition of a constructive trust are essentially the same.[69]

## I.    DEFENDANTS ARE ENTITLED TO A DECLARATION THAT THE COBRA IS THEIR PROPERTY AND NOT PROPERTY OF THE ESTATE

### A.    The Texas elements for the equitable remedy of a Constructive Trust are met here

50.    As acknowledged by the Court, to establish a constructive trust, Defendants generally need to meet the following elements: (1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res.[70]

51.    First, it is clear that Stephenson committed a fraud upon Mosing, and by natural extension, Mosing Motorcars.  Stephenson enticed Mosing to enter a sales transaction for a motor vehicle with an agreed purchase price and a specific buyback date.[71]  In this situation, because of Mosing's past history and business relationship with Stephenson and his knowledge

---

[66] *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).
[67] *Id.*
[68] *See In re Kaiser Steel Corp.*, 87 B.R. 154, 159 (Bankr. D. Colo. 1988); *In re Cyrus II Partnership*, 413 B.R. 609, 615 (Bankr. S.D. Tex. 2008).
[69] *See* ECF No. 38 at 4 ("Accordingly, the elements for imposition of a constructive trust, particularly as here with the Mosing Defendants are proceeding under a fraud theory, are essentially the same such that a choice of law analysis is not required.").
[70] *Mowbray v. Avery*, 786 S.W.3d 663 (Tex. App.—Corpus Christi 2002, no pet.).
[71] *See* Exhibit D.

of how to transact the vintage Superformance vehicles, Mosing reasonably believed that the Cobra was not titled when he took possession.[72]  For example, in his four previous transactions with Stephenson, when Mosing purchased the two Corvettes, Stephenson transferred titles.[73]  However, with regard to the GT 40 and the Shelby Daytona Coupe, Stephenson transferred only the MSO.[74]

52.     In fact, it is truly of no consequence that Plaintiff and Stephenson prefers to call the transaction a loan, because under either scenario Stephenson failed to reclaim the vehicle within the agreed-upon time period.[75]  Indeed, Defendants have rightfully operated over the past seven years as though they owned the Cobra, because they possessed the vehicle, the original MSO, and had no knowledge of a prior Colorado title.[76]  Stephenson's questionable testimony that Mosing may have known about the prior title contradicts both the parties' prior course of dealings and common business practices.

53.     For the second element, Stephenson was undoubtedly unjustly enriched to the extent he retained any interest in the Cobra. Stephenson agreed he would pay Mosing back and failed to do so.  He misrepresented the status of the Cobra as free and clear of any liens while obtaining the full benefit of the funds payable to his company 427 Legends.[77]

54.     For the third element, there can be no dispute about the property subject to the dispute.  The Agreement refers to the subject 1965 Shelby 427 Cobra SC that remains in Defendants' possession.  The parties agree that the Cobra is the same vehicle that is the subject

---

[72] Exhibit A at 51:20-53:21.
[73] *Id.*
[74] *Id.*
[75] *Id.* at 38:21-39; Exhibit F.
[76] *Id.*
[77] Exhibit B at 50:14-51:17.

of Plaintiff's claims in this dispute. Accordingly, Defendants have satisfied the three elements

in demonstrating that a constructive trust was imposed on the Cobra.

**B.    Because a Constructive Trust was Imposed on the Cobra, the Cobra is Not Property of Estate and the Trustee Cannot Use Strong-Arm Provisions to Reach the Cobra**

55.    Before it can be subject to the reach of the Trustee, the sought after property must

belong to the estate. Section 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, *only legal title and not an equitable interest*, such as a mortgage secured by *real property*, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, *but not to the extent of any equitable interest in such property that the debtor does not hold.*[78]

56.    Trustee's attempt to invoke his power under § 544 fails because the only

remaining interest Stephenson had in the Cobra was legal, not equitable, and therefore the

property does not belong to the estate.[79] The Third, Fifth, and Eleventh Circuits have held that

§ 544 provides little help in defeating a constructive trust claim as to *personal property*.[80] As

the court in *In re DVI* explained:

> While the status of a hypothetical lien creditor as of the petition date may create a lien in real property, it does not automatically create a lien in personal property . . . . Therefore, it would not be superior to a constructive trust claim on personal property. Even if the Debtors did obtain a lien on personal property under section 544(a)(1) or (2), that lien would arise only as of the petition date. Since the constructive trust arises when the wrong occurs . . . it is

---

[78] 11 U.S.C. § 541(d) (emphasis added).

[79] *In re Kang*, No. 11-36325, 2013 WL 870223, at *2. (Bankr. S.D. Tex., Mar. 6, 2013) (quoting RESTATEMENT (SECOND) OF TRUSTS § 456 (1959)).

[80] *See Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.*, 960 F.2d 366, 372 n.2 (3d Cir. 1992); *Vineyard v. McKenzie* (*In re Quality Holstein Leasing*), 752 F.2d 1009 (5th Cir. 1985); *City Nat'l Bank of Miami v. Gen. Coffee Corp.* (*In re Gen. Coffee Corp.*), 828 F.2d 699 (11th Cir. 1987).

superior to the Debtors' rights because it is first in time.[81]

57.    As Defendants previously briefed in their Motion to Dismiss, bankruptcy courts have recognized the limitations of the trustee's avoidance powers in the face of equitable trusts. To briefly refresh this Court, in *Kang,* the bankruptcy court considered whether residential real property that belonged to the debtors in title only, but who had never made any payments for property, was property of the debtors' subsequent bankruptcy estate.[82]    It was undisputed that before or concurrent with the initial conveyance of the property to the debtors, the parents would be obligated to pay the balance of the debt.[83]    As a result, the court held that a constructive trust arose at the time of the conveyance.[84]    The estate, which had legal title by virtue of a deed of trust in debtors' name, held legal title in a resulting trust for the parents, who had equitable title.[85]

58.    The court concluded that the bankruptcy estate held legal title subject to the parents' full equitable interest in the real property at issue.    Furthermore, the court found that the parents were entitled to a declaration of an equitable interest to the property.

> "This is a situation where Section 541(d) must trump Section 544(a). Using Section 544(a) to avoid the parents' interest in the property would not be a marshalling of the debtors' assets. This would be an example of allowing the bankruptcy estate to benefit from property the debtors never 'owned.'"[86]

59.    Similarly here, if the property comes into the estate, it does so only to the extent of Debtor's legal interest.[87]    Moreover, and notably, the Fifth Circuit has found that the answer

---

[81] *In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004).
[82] *Id.* at *2–3.
[83] *Id*. at *4.
[84] *Id*.
[85] *Id*.
[86] *See id.* at *7.
[87] 11 U.S.C. § 541(d); *see Matter of Quality Holstein Leasing,* 752 F.2d 1009, 1012 (quoting *Georgia Pacific Corp. v. Sigma Service,* 712 F.2d 962, 968 (5th Cir.1983) ("The rule is elementary that the estate succeeds only to the title and

to when § 541(d) trumps § 544(a)(3) does not turn on the presence or absence of debtor misconduct.[88]   Thus, even if the Court does not believe that the evidence conclusively establishes Stephenson's fraud as an element to justify an equitable trust, the situation may also arise in a situation devoid of fraud.[89]

60.     Here, the estate's legal title is subject to Mosing's full equitable interest because he paid the full contract price as obligated by the Agreement and never received anything in repayment.  The *Georgia Pacific* panel also interpreted § 541(d) ***to require the trustee to turn over to the beneficiary of a state law constructive trust the property that the debtor holds subject to such a trust.[90]***   The debtor retains legal title, but the constructive trust beneficiary may reclaim in full his equitable interest in bankruptcy proceedings.  As a general rule, it must be held that § 541(d) prevails over the trustee's strong-arm powers.[91]   In fact, where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings.[92]

61.     Here, to the extent Stephenson possessed legal title to the vehicle as of the petition date, he did so only through fraud.   The record establishes that Defendants paid full consideration for the vehicle seven years before Stephenson filed for bankruptcy protection.

---

rights in the property that the debtor possessed, although the trustee is armed, of course, with the special rights and powers conferred upon him by the Code itself. Therefore ... the estate will generally hold such property subject to the outstanding interest of the beneficiaries.")

[88] *In re Quality Holstein Leasing,* 752 F.2d at 1012.

[89] *In re Kang,* 2013 WL 870223, at *7.

[90] 712 F.2d at 968 (emphasis added).

[91] *In re Matter of Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir. 1985); *see also Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.),* 12 F.3d 426, 436 (5th Cir. 1994) ("Because § 541(d) excludes property subject to a constructive trust from the bankruptcy estate, we have also held that § 541(d) prevails against the trustee's strong-arm powers under § 544.").

[92] *Id.*

Because a constructive trust in Defendants' favor attached prior to Stephenson's bankruptcy, Defendants can properly recover their equitable interest in the property through these proceedings.

## CONCLUSION

The summary judgment record proves Defendants' entitlement to equitable title in the Cobra, and renders Trustee's claims moot.  Accordingly, Defendants Jeffrey Mosing and Mosing Autosport, LLC d/b/a Mosing Motorcars respectfully request the Court grant their Amended Motion on their declaratory judgment counterclaim against the property sought by Plaintiff on behalf of the bankruptcy estate of Tracy Dean Stephenson, dismiss all of Plaintiff's claims as a matter of law, issue a declaration that Defendants are the owners of the motor vehicle at issue entitled to retain possession, enter a "take nothing" judgment as to the Trustee, and for all other and further relief to which they may show themselves justly entitled.

October 21, 2020

Respectfully submitted,

CHAMBERLAIN HRDLICKA

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars***

17

**OF COUNSEL:**
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 21, 2020, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

_/s/ Jarrod B. Martin_____
Jarrod B. Martin

# Exhibit A

1                    UNITED STATES BANKRUPTCY COURT

                      FOR THE DISTRICT OF COLORADO

2

3      In re:

4      TRACY DEAN STEPHENSON,          Case No. 19-13565 MER

                                       Chapter 7

5             Debtor.                  Adv. Proc. No. 19-01211 MER

       _____

6

       M. STEPHEN PETERS,

7      Chapter 7 Trustee,

8             Plaintiff,

9      v.

10     JEFFREY MOSING and

       MOSING AUTOSPORT, LLC,

11     dba MOSING MOTORCARS,

12            Defendants.

13     _____

14

        VIDEOCONFERENCED DEPOSITION OF JEFFREY LOUIS MOSING

15        and VIDEOCONFERENCED 30(b)(6) DEPOSITION OF

                     MOSING AUTOSPORT, LLC by

16                  JEFFREY LOUIS MOSING

17                    August 26, 2020

18     _____

19

20

21

22

23

24

25

                                                 Page 1

EXHIBIT

A

174

```
 1    VIDEOCONFERENCED APPEARANCES:
 2    ON BEHALF OF THE CHAPTER 7 TRUSTEE AND PLAINTIFF:
           AARON J. CONRARDY, ESQ.
 3         Wadsworth Garber Warner Conrardy, P.C.
           2580 West Main Street, Suite 200
 4         Littleton, Colorado 80120
           Phone:  303-296-1999
 5         Email:  aconrardy@wgwc-law.com
 6    ON BEHALF OF THE DEFENDANTS:
           REAGAN H. GIBBS III, ESQ.
 7         Chamberlain, Hrdlicka, White,
              Williams & Aughtry, P.C.
 8         1200 Smith Street, Suite 1400
           Houston, Texas 77002
 9         Phone:  713-658-1818
           Email:  tres.gibbs@chamberlainlaw.com
10
11
12    Also Present:  M. Stephen Peters
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page  2

```
 1          PURSUANT TO WRITTEN NOTICE and the appropriate

 2     rules of civil procedure, the videoconferenced

 3     deposition of JEFFREY LOUIS MOSING and the

 4     videoconferenced 30(b)(6) deposition of MOSING

 5     AUTOSPORT, LLC, called for examination by the Chapter 7

 6     Trustee and Plaintiff, was taken remotely from Austin,

 7     Texas, commencing at 9:29 a.m. MDT on August 26, 2020,

 8     before Denise A. Freeman, appearing remotely from

 9     Arapahoe County, Colorado, a Notary Public and

10     Registered Professional Reporter in and for the State of

11     Colorado.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                      Page  3
```

```
1                        I N D E X
```

| | | | |
|---|---|---|---|
| 2 | EXAMINATION: | | PAGE |
| 3 | By Mr. Conrardy | | 5 |
| 4 | EXHIBITS: | | PAGE |
| 5 | Exhibit A | Email to Jeffrey Mosing from | 23 |
| | | csxnut@yahoo.com dated April 19, | |
| 6 | | 2012 | |
| 7 | Exhibit B | Shelby Automobiles, Inc., Statement | 30 |
| | | of Origin for a CSX4000 Series | |
| 8 | | Component Vehicle | |
| 9 | Exhibit C | Agreement by Kirk Winterrowd dated | 33 |
| | | June 5, 2019, and Agreement by Jeff | |
| 10 | | Mosing and Trac Stephenson dated | |
| | | May 8, 2012 | |
| 11 | | | |
| | Exhibit D | Check Copy | 36 |
| 12 | | | |
| | Exhibit E | Texas Liability Insurance Card | 38 |
| 13 | | | |
| | Exhibit F | State of Colorado, Certificate of | 42 |
| 14 | | Title, Motor Vehicle | |
| 15 | Exhibit G | Law Enforcement Identification | 44 |
| | | Number Inspection | |
| 16 | | | |
| | Exhibit H | Letter To Whom It May Concern from | 49 |
| 17 | | Justin Mahaffey, Hillbank Motor | |
| | | Corporation, dated March 27, 2019 | |
| 18 | | | |
| | Exhibit I | Defendants' Rule 26(a)(2) | 57 |
| 19 | | Disclosure of Expert Testimony | |
| 20 | | (Exhibits remotely introduced and provided | |
| | | electronically to the reporter.) | |

```
21
22
23
24
25
```

Stevens-Koenig Reporting, A Veritext Company
303-988-8470

```
 1                    P R O C E E D I N G S
 2            THE COURT REPORTER:  All counsel
 3    participating in this deposition acknowledge that I am
 4    not physically present in a deposition room with the
 5    deponent and that I will be reporting this deposition
 6    and providing an oath remotely.
 7              You further agree that, in lieu of an oath
 8    administered in person, the witness declares that his
 9    testimony in this matter is given under penalty of
10    perjury.  All parties and counsel consent to this
11    arrangement and waive any objections to this manner of
12    reporting and manner of providing the oath.
13        Counsel, please indicate your agreement by stating
14    your name and your agreement on the record and then I
15    will swear in the witness.
16              MR. CONRARDY:  My name is Aaron Conrardy, and
17    I stipulate as such.
18              MR. GIBBS:  Tres Gibbs, and I so stipulate on
19    behalf of the defendants.
20                      JEFFREY LOUIS MOSING,
21    having been first duly sworn, was examined and
22    testified as follows:
23                      EXAMINATION
24    BY MR. CONRARDY:
25          Q.  Thank you, Mr. Mosing.  I appreciate you
```

Page 5

```
 1    taking the time out of your busy day to be with us.  I'm

 2    going to go over some preliminary matters, and after

 3    that, I'll ask you some questions about the case.

 4              So for the record, my name is Aaron Conrardy.

 5    I represent M. Stephen Peters, who's the Chapter 7

 6    Trustee for the bankruptcy estate of Tracy Dean

 7    Stephenson pending in the United States Bankruptcy Court

 8    for the District of Colorado.

 9              I'm going to ask you a series of questions

10    today relating to the adversary proceeding that

11    Mr. Peters filed against you and Mosing Autosport, LLC.

12              As Denise has done, you have been sworn in,

13    so you'll be answering the questions under oath.  Your

14    attorney is allowed to ask you questions, too.

15              The court reporter is taking everything down.

16    She'll prepare a written record of everything that is

17    said, which is referred to as a transcript.  Do you

18    understand?

19         A.   I do.

20         Q.   And then it's very important that you

21    understand the questions and give accurate answers.  If

22    there's anything that you don't understand or anything

23    that you don't know or aren't sure of, will you let me

24    know?

25         A.   Yeah.  I'll ask for clarification.
```

Page 6

1         Q.   Thank you.

2              And also -- you're doing this so far -- but

3    please be sure to answer clearly so that it's reflected

4    on the transcript.

5              For example, if the response requires a yes

6    or no answer, don't nod or give an mm-hmm.  Rather,

7    specifically say yes or no so it's properly reflected.

8    Do you understand?

9         A.   Yes.

10        Q.   Thank you.  And you also understand that the

11   transcript may be used for a variety of purposes in the

12   case, such as attaching it to motions or using it for

13   cross-examination purposes?

14        A.   I understand.

15        Q.   And, Mr. Mosing, are you on any drugs or

16   medications or alcohol that you think will interfere

17   with your ability to answer my questions today?

18        A.   No.

19        Q.   Is there anything else you're aware of that

20   would keep you from giving me full, complete, and

21   accurate answers to the questions today?

22        A.   No.

23        Q.   So please state your full name for the

24   record.

25        A.   Jeffrey Louis Mosing.

                                                 Page 7

1          Q.  And can you spell each one of those.

2          A.  Sure.  J-e-f-f-r-e-y, L-o-u-i-s, M-o-s-i-n-g.

3          Q.  Mr. Mosing, did you meet with your counsel

4     before today's deposition?

5          A.  Say it again.  There was some Internet

6     interference.

7          Q.  Sure.  Did you meet with your counsel before

8     today's deposition?

9          A.  Yes.

10         Q.  And when did you meet?

11         A.  This morning and two days prior.  Not

12    physically, but just in conversation over the phone.

13         Q.  Both were over the phone?

14         A.  Yes.

15         Q.  Was anyone else on the line other than you

16    and your counsel?

17         A.  No.

18         Q.  Tell me everything that you did to get ready

19    for today's deposition other than the two phone calls.

20         A.  I was researching through previous emails and

21    other documents that correspond with what we're all

22    talking about.

23         Q.  What were the emails that you looked at?

24         A.  One specifically was in 2012 that basically

25    defines what transaction Trac and I took part in.

                                              Page 8

```
 1            Q.  Was that the April 19, 2020, email between

 2     you and Mr. Stephenson?

 3            A.  2012, yes.

 4            Q.  We'll get to that email later on today.  What

 5     other emails did you look at?

 6            A.  That's pretty much it.  I mean, that one

 7     particular email defines basically what the transaction

 8     was.

 9            Q.  We'll get to that and some other documents.

10     You mentioned that you reviewed some documents.  What

11     documents did you review?

12            A.  In addition to the email, Trac and I had a

13     signed agreement basically defining the same, you know,

14     transaction.

15            Q.  Okay.  I think, if we're talking about the

16     same agreement, we'll go into more detail later on about

17     that.  Any other documents that you reviewed in

18     preparation?

19            A.  No.

20            Q.  Mr. Mosing, have you ever been in a

21     deposition?

22            A.  No.  Actually this is my first one that I've

23     had to do.

24            Q.  Welcome to the deposition club.

25            A.  Yay.
```

Page 9

```
 1          Q.  Have you ever testified in court, Mr. Mosing?

 2          A.  No.

 3          Q.  Mr. Mosing, can you briefly tell me about

 4     your educational background.

 5          A.  College graduate, University of Louisiana in

 6     Lafayette, focusing on business and computer science.

 7     Was IT manager for my family-owned company in Lafayette,

 8     Louisiana, for 12 years.

 9              Then I ended up moving to Austin, Texas,

10     because I have a son with autism and there were better

11     resources here for him.  So I retired from the company

12     and focused on my family.

13          Q.  I want to nail down a few dates.  When did

14     you graduate from the University of Louisiana?

15          A.  It was -- I believe it was 1993 or 1992.

16          Q.  And then did you start working for the family

17     company immediately after that?

18          A.  No.  I mean, I started when I was 13 working

19     summer jobs at the company part-time.  And then, as I

20     was going through high school and college, every summer

21     that I had the opportunity to work, I was working there.

22              I was an auto mechanic, paint and body

23     specialist.  I didn't -- of course, I was more drawn to

24     the automotive stuff because that's just how I am.  So

25     anything dealing with the oil field, I didn't want to
```

Page 10

```
 1     work in those departments.  I just worked in the auto

 2     stuff.

 3           Q.  What kind of business was the family company?

 4           A.  It's an oil field service company.  We

 5     started it -- my grandfather started it in 1938.  They

 6     do oil field rental tools.  Anything dealing with, like,

 7     drilling, and, you know, getting the oil out of the

 8     ground, we provide the services and tools to do that.

 9           Q.  So where did you work immediately after

10     graduating from the University of Louisiana?

11           A.  I went to work at our family business as an

12     IT manager.

13           Q.  What's the name of the family business?

14           A.  Now it's Frank's International.  It was

15     Frank's Casing Crew & Rental Tools domestically, and

16     then Frank's International was our international branch

17     that was owned by my generation.  And eventually that

18     company bought out the domestic side, and we went public

19     about four years or five years ago.

20           Q.  So you graduated from the University of

21     Louisiana, and then you worked for the company full-time

22     in the IT department for 12 years; is that right?

23           A.  Yes.

24           Q.  And then, after you left the company, you

25     moved to Austin.  What year did you move to Austin?
```

Page 11

1      A.   It was 2006.

2           Q.   And you've been living in Austin ever since?

3      A.   Yes.

4           Q.   And then let's talk about Mosing Autosport,

5      LLC.  Are you familiar with that entity?

6      A.   Vaguely, yes.

7           Q.   I had to ask so that we have a clear record.

8      A.   No.  I am familiar with it, yes.

9           Q.   And how are you familiar with it, Mr. Mosing?

10          A.   I had a vision and a dream to have my own

11     business where I could buy and sell cars as a dealer.

12     It didn't have to be, like, a very big type of deal.

13     It's more of a boutique dealership.  I mean, we never

14     had more than 30 cars for sale.

15               So in -- I think it was 2011 -- it was March

16     of 2011 or 2012, we started Mosing Autosport, which is

17     Mosing Motorcars dba.

18          Q.   So we'll get into more detail about Mosing

19     Autosport.  So you moved to Austin in 2006 and then

20     founded Mosing Autosport in 2011.  What did you do in

21     the meantime?

22          A.   Well, with my first wife, she was not

23     receptive to me doing what I wanted to do.  So as the

24     compliant husband -- Yes, dear; yes, what's the

25     question -- you know, I would do whatever she wanted to

                                        Page 12

```
 1    do.  So I retired from Frank's Casing Crew and Frank's

 2    International and was focusing on my kids.

 3              And then in 2009 she -- my first wife, she

 4    left me.  And after that I was able to start focusing on

 5    myself.  So that's why -- you know, eventually, after

 6    going through the divorce and everything, in 2011 I

 7    started my little company buying and selling cars.

 8         Q.  So between 2006 and 2011, were you a

 9    stay-at-home dad?  Would that be a fair label?

10         A.  Yeah, yeah.  I mean, I had investments that

11    were taking care of me.  The company was paying very

12    generous dividends.  So there was nothing that I needed

13    to do to, you know, provide a home for my family.  The

14    company was paying really good dividends and there was

15    no reason for me to work.

16         Q.  So let's talk about Mosing Autosport in some

17    more detail.  So you founded the company in 2011; is

18    that right?

19         A.  95 percent sure it was '11 or '12, yes.

20         Q.  And it's an LLC; is that correct?

21         A.  Mm-hmm.

22         Q.  Who were the initial members of the LLC?

23         A.  Just me.

24         Q.  Is that still the case?  You're the only

25    member?
```

Page 13

1          A.   Correct.

2          Q.   And you're the manager?

3          A.   Yes.

4          Q.   You mentioned a dba.   What are some of the

5     dba's that the LLC goes by?

6          A.   It's only Mosing Motorcars.

7          Q.   Mosing Motorcars.   Thanks.

8          A.   When we filed for the LLC, I wasn't sure what

9     we were going to call the company yet.   So that's why

10    there's -- the filing was Mosing Autosport, and then

11    eventually we decided just to call it Motorcars.

12         Q.   Does the company have a website?

13         A.   Yes.

14         Q.   What's the web address?

15         A.   The dba, MosingMotorcars.com.

16         Q.   Is that the only website?

17         A.   Yes.

18         Q.   And can you just state in your own words what

19    kind of business Mosing Motorcars engages in?

20         A.   We buy, sell, and consign special cars that

21    are not typical, you know, Toyota Camrys or -- we do

22    things that are fun, like something different.   So it's

23    sports cars, specialty 4x4s, anything in between -- just

24    not boring stuff.

25         Q.   Are any of the cars new cars?

Page 14

1          A.   No.   The newest car we've sold is probably,

2     you know, three to four years old.

3          Q.   And where is the business located?

4          A.   2420 West Braker Lane in Austin.

5          Q.   And is everything at one site?

6          A.   Yes.

7          Q.   Kind of talk to us about what the site looks

8     like.   Is there an office, a showroom, et cetera?   Walk

9     us through that.

10          A.   Yeah.   It's a 10,000-square-foot building.

11     We've got about a 2400-square-foot showroom.   Right

12     behind it we've got a mechanics' shop.   And then we have

13     the east side of the building, about 5000 square feet

14     of, you know, just storage.   That's where we keep the

15     other cars.

16          We have cars that we promote on the showroom

17     floor, when you come into the building, so -- and then

18     the offices are right behind that.

19          Q.   How many employees do you have?

20          A.   One.

21          Q.   Would that be you or one person in addition

22     to you?

23          A.   No.   In addition to me.   Kirk Winterrowd is

24     my manager and sales guy.

25          Q.   What are Kirk's responsibilities?

                                            Page 15

1          A.  He is taking care of everything.  I oversee

2     everything, but because I'm in and out a lot, he does

3     all the sales, correspondence, and, you know, answers

4     calls from anyone who wants to look at a car or test

5     drive it or whatever.

6          Q.  You mentioned that you have a mechanics'

7     shop.  Do you have mechanics that you contract or how

8     does that work?

9          A.  I have a guy that -- he's an older gentleman.

10    He was in the Secret Service and he loves to work on old

11    cars.  So he's on contract.  He's not officially, like,

12    on the payroll.  He doesn't get a structured salary.

13    It's only whenever we need to fix a car, he works on it.

14         Q.  Do you have any other employees like that

15    that are on a contract basis?

16         A.  Glen Nordell is my guy who takes care of my

17    personal collection of cars.  I pay him through a

18    different entity.  He's not paid through Autosport.

19    He's paid through a property management company that I

20    have.

21         Q.  Is he like a curator?

22         A.  Sort of, yeah.

23         Q.  What's the name of the mechanic?

24         A.  Wally Wible.

25         Q.  Can you spell his last name?

                                                  Page 16

```
 1          A.   It's W- -- I'll have to look it up because --
 2     it's Wally, W-a-l-l-y, W-i-b-l-e.
 3          Q.   Thanks.  How do you spell Glen Nordell's
 4     name?
 5          A.   Glen is G-l-e-n, one N.  N-o-r-d-e-l-l.
 6          Q.   And then how do you spell Kirk Winterrowd's
 7     name?
 8          A.   It's Winter, like the season, and then
 9     another r-o-w-d.
10          Q.   Thank you.  And Kirk, K-i-r-k?
11          A.   Yes.
12          Q.   Do either you or Mosing Motorsport have a
13     motor vehicle dealer license?
14          A.   Yes.
15          Q.   Is that issued to you individually or to the
16     company?
17          A.   To the company.
18          Q.   And which state issued that license?
19          A.   Texas.
20          Q.   Do you have a license, a dealer license, in
21     any other state?
22          A.   No.
23          Q.   When was that license issued?
24          A.   Good question.  If you want, I can call Kirk.
25     It's up on our wall at the dealership.  We can --
```

                                                Page 17

1    Q.  That's fine.  It's not critical.

2    A.  Okay.

3    Q.  What does the license authorize Mosing

4    Motorsport to do?

5    A.  Buy, sell, and consign vehicles for sale.

6    Q.  Any type of motor vehicle?

7    A.  Yeah.  Anything but boats or motorcycles.

8    Q.  Is Mosing Motorsport an authorized dealer for

9    any manufacturers?

10    A.  Mosing Autosport?

11    Q.  Yeah.

12    A.  Yeah.  I mean, we can sell any car that has

13    four wheels and, you know, is legal to drive on a road.

14    Q.  So maybe I wasn't very clear in my question.

15    For instance, a Ford dealer is an authorized dealer of

16    Ford.  Do you have any relationships like that with

17    manufacturers where you're an authorized dealer?

18    A.  Actually, yes, we do.  We became a

19    Superformance dealer in 2015 or '16.  I could call Kirk

20    and find that information out to make it accurate,

21    but -- so we're an authorized dealer.  Trac actually was

22    an authorized dealer for Superformance Products.

23    Q.  Can you spell Superformance?  This came up in

24    yesterday's deposition.  It has an unusual spelling.

25    A.  Right.  "Super" and then "formance."  So

Page 18

```
1    S-u-p-e-r-f-o-r-m-a-n-c-e.
2         Q.   And what is Superformance?
3         A.   They produce replicas and duplicates of cars
4    that were built in the 1960s, basically.
5         Q.   Is Mosing Motorsport an authorized dealer for
6    any other manufacturers?
7         A.   No.
8         Q.   You mentioned earlier that Mosing Motorsport
9    does consignments.  Can you walk us through how that
10   process works?
11        A.   A consignment is where an individual has a
12   car and we're not going to purchase the car outright
13   from them.  Basically we just list the car, put it up
14   for sale for them, and we get a 5 percent commission on
15   the sale.
16        Q.   When you put a car for consignment, does the
17   seller provide an original certificate of title?
18        A.   Yes.
19        Q.   And is that at the time of the sale or when
20   the person drops off the vehicle at your lot?
21        A.   Typically we try to obtain that paperwork
22   before any possible sale takes place.
23        Q.   And why would you want that paperwork, the
24   original certificate of title, before a sale takes
25   place?
```

Page 19

1          A.   Because we need to know, as a dealer, if the

2     car is free and clear or if it has a lien on it or if

3     the title is actually legitimate.

4          Q.   And you also want to make sure that the

5     consignment customer is the owner of the car, right?

6          A.   Correct.

7          Q.   And you'd be able to tell that from looking

8     at the certificate of title; is that right?

9          A.   Yes.

10         Q.   Would you ever put a car on consignment that

11    didn't have a certificate of title?

12         A.   We've had times that we put cars for sale and

13    we didn't have the title in hand yet, but we were told

14    or guaranteed that that title would be in our hands.

15         Q.   And then, when it ultimately sold, were you

16    able to get the title?

17         A.   Every time, yes.

18         Q.   Can you tell us, what's a manufacturer's

19    statement of origin?

20         A.   The manufacturer's statement of origin is

21    something that most people don't -- they're not aware of

22    it unless they're a dealer because -- it's like a birth

23    certificate for a car.

24         When you go to a dealership, they have the

25    MSOs for the cars that they get delivered to them, and

                                             Page 20

1    then they turn those over to whatever state they're

2    selling the car, and that gets transferred into a title.

3         Q.  When would the MSO be delivered to the state

4    for the state to issue a certificate of title?

5         A.  Ask the question again.  I'm not clear on

6    what you're --

7         Q.  So help me kind of understand the mechanics

8    of the process.  How does someone go from having an MSO

9    to getting a certificate of title?

10         A.  Depending on the state -- some states require

11    that the MSO gets turned in and destroyed and then the

12    title gets issued.  Some states will allow you to

13    present an MSO for a title and they'll let you keep the

14    MSO.

15         Q.  And who presents the MSO?  Is it the dealer

16    or the buyer?  Let me rephrase that question.  That's

17    not very clear.

18         A.  Okay.

19         Q.  Strike that question.  I'm trying to figure

20    out the mechanics of this.  So you're a dealer.  A car

21    is delivered to your lot, and it's a fresh brand-new

22    car, and that car is delivered to the dealer with an

23    MSO; is that right?

24         A.  If it is -- yes, that is correct.

25         Q.  And then, let's say, the dealer sells that

Page 21

```
 1    car to someone.  Is it the dealer -- what happens to the

 2    MSO when a car is sold to somebody?

 3         A.  If I sell it to -- whether it's another

 4    dealer or an individual, if I have the MSO, I can sell

 5    that car and it would be up to them to title it in their

 6    name.  So if I sell it to another dealer, they can keep

 7    the MSO.

 8         If I sell it to an individual, the only way

 9    they can legally drive it on the street is if they get a

10    title.  So they have to present that MSO to whatever

11    respective entity in the state to receive a title.  And

12    based on the state, they might keep that MSO or they

13    might let you have the MSO and the title.

14         Q.  Okay.  But in order for it to be roadworthy,

15    the car to be registered, a certificate of title needs

16    to be issued; is that right?

17         A.  Correct, yes.

18         Q.  Do you know, can you put a lien on an MSO?

19         A.  To my knowledge, no.  I've never tried to, so

20    I don't know.  I cannot say.

21         Q.  So we're going to start going through some of

22    these exhibits, and I'm going to try to do the share

23    screen.  Hopefully this works, so please bear with me

24    while I do this.  I've got two monitors, so I'm not sure

25    which monitor to put this on.  We're going to find out.
```

Page 22

```
 1                  Can everybody see this email?
 2                  MR. GIBBS:  Got it.
 3            A.   Yes.
 4                  (Exhibit A was marked.)
 5            Q.   (By Mr. Conrardy) So this is an email dated
 6      April 19, 2012, and the sender is csxnut@yahoo.com.  And
 7      it's sent to cajunairman@yahoo.com.  Mr. Mosing, do you
 8      recognize this email?
 9            A.   Yes.
10                  MR. CONRARDY:  Denise, can you label this as
11      Exhibit -- Tres, I'm just going to use letters.  Is that
12      okay?
13                  MR. GIBBS:  Sure.
14            Q.   (By Mr. Conrardy) I'm going to label this as
15      Exhibit A.  And whose email address is csxnut@yahoo.com?
16            A.   That's Trac Stephenson.
17            Q.   And then the cajunairman@yahoo.com, that's
18      your email address?
19            A.   Yes, sir.
20            Q.   And how do you know Trac Stephenson?
21            A.   I met him when I first moved to Austin.  I
22      think it was 2008 or 2009.
23            Q.   And under what circumstances did you meet
24      him?
25            A.   Car guys.  We were both into cars.  And I was
```

Page 23

1    looking at buying a Superformance GT40, and he was the

2    licensed dealer in Texas at the time.

3            Q.   Is your relationship with Trac a business

4    relationship or is there a personal friendship there as

5    well?

6            A.   I would call it 90 percent business,

7    10 percent friend.

8            Q.   Did you ever go out to drinks or dinner with

9    him?

10           A.   No.   I think I had lunch with him one time in

11   Marble Falls.   That was it.

12           Q.   So this email says, "Hey, Jeff, here is what

13   I would like to work out if possible."   And then it

14   says, "Purchase price of $120,000 with an agreement that

15   I can purchase the Cobra back for up to a year or so."

16           The Cobra he's referencing is the Cobra

17   that's subject to the lawsuit; is that right?

18           A.   That's correct.

19           Q.   This email starts out with, "Here is what I

20   would like to work out if possible."   That suggests to

21   me that there were some earlier conversations about this

22   transaction.   What were some of the earlier

23   conversations that you and Trac had?

24           A.   He mentioned that he was trying to get a --

25   some sort of application on a phone to -- basically to

                                                Page  24

```
 1   be able to bid out jobs, construction jobs.  Like an
 2   application where you can send out, This is what I want
 3   to build, and then other individuals who own businesses
 4   can chime back in and say, This is my bid to build
 5   this -- whatever it is -- building structure, whatever.
 6           Q.  So this email is dated April 19, 2012.  When
 7   did you and Trac first have a call about loaning him or
 8   transferring Trac some money for this project?
 9           A.  To my best recollection, I would say probably
10   three to four weeks prior to this date.
11           Q.  Was it in person or over the phone?
12           A.  A little bit of both.  He came by our
13   business and we talked about it and then we corresponded
14   with the email.
15           Q.  And then it says here, "Purchase price of
16   $120,000."  How did you guys arrive at the $120,000
17   number?
18           A.  That was his proposition, and I accepted it.
19           Q.  Was it based in any way off the value of the
20   Cobra?
21           A.  I was offering -- he wanted that amount for
22   his business that he wanted to promote or get going.
23   And I would suffice at that point in time that's -- I
24   could turn that car over for that amount of money if he
25   couldn't buy it back.
```

Page 25

1          So his collaboration or, you know, like

2     offering, Hey, I'll sell you this for 120- and I'll buy

3     it back in 9 to 12 months for this amount, just as the

4     email says -- and if he doesn't, then I still own the

5     car because I purchased it.

6          Q.   So there are these other terms it says.  "If

7     it takes 0 to 6 months, the buy-back price would be

8     130,000," et cetera.  How did you guys arrive at those

9     figures and timelines?

10         A.   This is what he offered, and I accepted it.

11         Q.   There wasn't any negotiating?

12         A.   No.  I was fine with this.  If he wants to

13    buy the car back in 12 months for 150- and I make

14    30 grand on my short-term investment, that's fine.

15         Q.   Did Trac make any payments on this?

16         A.   No.

17         Q.   Not a single one?

18         A.   No.

19         Q.   When was the Cobra delivered to you?

20         A.   I think it was about two to three weeks after

21    this email where we took possession of it and the MSO.

22         Q.   Trac provided you with the original MSO; is

23    that right?

24         A.   Yes.

25         Q.   With Carroll Shelby's original signature on

                                        Page 26

```
 1    it?

 2         A.   Yes.

 3              Q.   Were there any discussions about a

 4    certificate of title?

 5              A.   Yes.   Even though it's -- I considered him a

 6    friend, I'm still going to ask, Is there any title to

 7    the car, and he responded with, No, I have the MSO;

 8    that's all you need.   And I'm familiar with the MSO.

 9    That is -- that trumps anything that's out there.

10              Q.   Does an MSO trump a certificate of title?

11              A.   Yes.   In Texas it does.

12              Q.   What's that based off of?

13              A.   I can go today to the Texas DMV and obtain a

14    title for that car.   And as far as Texas cares, that's

15    going to trump anything that's possibly out there

16    previous.

17              Q.   What if a certificate of title had been

18    issued in Colorado prior to you going down to the Texas

19    DMV?

20              A.   It doesn't matter.   I can go -- the MSO

21    trumps anything that's out there.

22                   So if there's five titles to the same car in

23    different states, if I have the MSO, I can go get a

24    title in whatever -- as far as Texas goes, I can go get

25    a title and contest in court that I own the car because
```

Page 27

1    I've got a Texas title.

2          And Texas doesn't care if there's a title out

3    there from any other state.  It's whatever date is

4    latest.

5          Q.  So did Trac -- how did he deliver the Cobra

6    to your shop?  Did he drive it or was it on a trailer?

7          A.  If I remember right, he brought it in in a

8    closed trailer.

9          Q.  Did it have license plates on it?

10         A.  No.

11         Q.  No license plates?

12         A.  Not that I remember.

13         Q.  So what you're saying about the MSO,

14   though -- you had testified earlier that, if you sell a

15   car to somebody, you give them the MSO, and then they go

16   down to a state agency and get a title; is that right?

17         A.  Correct.

18         Q.  So what you're saying is, if, for some

19   reason, that MSO got lost or someone else retained it,

20   that that person then could go sell the car again even

21   though they didn't have title?

22         MR. GIBBS:  I'm going to object to the

23   mischaracterization.  You can answer, Mr. Mosing, if you

24   can.

25         A.  I would like for you to repeat the question.

                                              Page 28

```
 1              Q.   (By Mr. Conrardy) Sure.  So earlier you had
 2      testified that, if a dealer sells a car to a buyer --
 3      we'll call the buyer Sam.  Sam takes that MSO down to --
 4      here in Colorado it would be the DMV -- and the DMV
 5      gives Sam a certificate of title.
 6              So let's say Sam loses the MSO or someone
 7      steals it.  And that person's name is Bob.  And Bob then
 8      goes and sells the car and tenders the MSO to the new
 9      buyer.
10              So is it your testimony that that new buyer
11      then could take the MSO, at least in Texas, down to the
12      Texas authorities that issue certificates of title and
13      then Texas would issue a certificate of title on that
14      vehicle based solely on the MSO?
15          A.   The way that I can answer this question is,
16      whoever has the MSO in their possession is the owner of
17      whatever it is.
18          Q.   Even if someone else has a certificate of
19      title?
20          A.   Yes.
21          Q.   When Trac brought the car over, you mentioned
22      that there were some discussions about the certificate
23      of title.  Can you tell me more about those discussions?
24              MR. GIBBS:  I'm going to object to the extent
25      that mischaracterizes prior testimony.
```

                                                        Page 29

```
 1              Q.  (By Mr. Conrardy) You can still answer the

 2      question, Mr. Mosing.

 3              A.  Repeat the question.

 4              Q.  What conversations did you have with Trac

 5      regarding the certificate of title for the Cobra?

 6              A.  When we worked out this deal, I specifically

 7      requested or asked him if there was a title on the car.

 8      He said, No, I only have the MSO.

 9              Q.  Okay.

10              (Exhibit B was marked.)

11              Q.  (By Mr. Conrardy) Can people see this exhibit

12      that I'm sharing?

13              A.  Yes.

14              MR. GIBBS:  Yes.

15              Q.  (By Mr. Conrardy) Let's label this as

16      Exhibit B.  I'm going to scroll down a little bit so you

17      can see it better, Mr. Mosing.  Do you recognize this?

18              A.  Absolutely.  It's in my safe at the shop.

19              Q.  And this is the MSO for the Cobra that's at

20      issue, right?

21              A.  Yes.

22              Q.  And you have the original?

23              A.  Mm-hmm.

24              Q.  Do these MSOs have any independent

25      significance beyond being an MSO, such as being a
```

Page 30

```
 1    collector's item?

 2         A.  No.

 3         Q.  In your experience, in your opinion, is a

 4    Cobra worth more or less with an MSO signed by Carroll

 5    Shelby?

 6         A.  If I were to resell this particular car and

 7    I've already titled it, it would be less valuable than

 8    if I just sold it to an individual with the MSO.

 9    Because the tax value of this particular car, whatever

10    that value is on that day, that's what Texas would say,

11    Well, I need to tax you on this amount.

12             But if I'm selling it to an individual and

13    they bring this MSO to a Texas DMV, they don't tax them

14    on the value of the vehicle.  So you're talking -- you

15    know, 120-, that would be, roughly, 6000 or 7000 in

16    taxes that they would have to pay if I sold that car to

17    them with a title as opposed to an MSO.

18         Q.  Thank you for that background.  Maybe I'll

19    give you a different hypothetical.

20             Would the sale -- if you were to sell this

21    Cobra through a certificate-of-title process, would the

22    Cobra be worth more, less, or the same if it was not

23    accompanied with the MSO that was signed by Carroll

24    Shelby?

25         A.  The only value in the MSO is if it's never
```

                                                    Page 31

```
 1      been titled before.  So if I sold the vehicle to

 2      somebody with a title and an MSO, there's less value

 3      there to that individual who's buying it as opposed to

 4      just selling it to them with an MSO.  Does that answer

 5      your --

 6           Q.  Sure.  So then, if you were to title this car

 7      in Texas and Texas issued a certificate of title, then

 8      is there any purpose of keeping the MSO or would you

 9      just want to destroy it if it has no value?

10           A.  No.  It's always going to follow the car.

11      It's got Shelby's signature on it, so the signature

12      alone is worth something to the enthusiast that would

13      end up buying the car.

14           Q.  So it is customary, when selling Cobras,

15      that, even if you're transferring it through a

16      certificate of title, that the MSO accompanies it

17      because of Carroll Shelby's signature and kind of the

18      prestige that goes along with that; is that right?

19           A.  Sure.

20           Q.  So the MSO is like a collector's item?

21           A.  I would -- yeah, that would be a correct

22      statement.

23           Q.  I'm going to close this and bring up another

24      exhibit.  Mr. Mosing, can you see this?

25           A.  Yes.
```

Page 32

```
 1                 (Exhibit C was marked.)

 2          Q.   (By Mr. Conrardy) We'll label this as

 3     Exhibit C.

 4               Mr. Mosing, since you can't look at this, I'm

 5     going to scroll through it.  So the first page is this

 6     cover letter from Kirk Winterrowd, and then the second

 7     page is this agreement, the May 8, 2012, agreement.  Do

 8     you recognize these documents?

 9          A.   Yes.

10          Q.   Are you familiar with them?

11          A.   Yes.

12          Q.   So we'll talk about this cover letter first.

13     Who drafted this letter?

14          A.   I worked with Kirk to get this done.

15          Q.   You guys wrote it together?

16          A.   Yes.

17          Q.   And so you approved his -- let's scroll down.

18     Is that Kirk's signature at the bottom?

19          A.   Yeah.

20          Q.   And you authorized him to sign it?

21          A.   Yes.

22          Q.   And in it, it says, "Per the attached

23     agreement."  Is this the agreement that was attached

24     that you're referencing?

25          A.   Yes.
```

                                                    Page 33

```
 1              Q.  We'll get back to that in a sec.
 2              So it says, "Per the attached agreement, let
 3      it be known that, on May 8, 2012, Trac Stephenson
 4      entered into an agreement with Jeff Mosing to borrow
 5      $120,000 and that Trac Stephenson put up as collateral a
 6      1965 Shelby Cobra 427 CSX4501."  And then it goes on to
 7      kind of summarize the terms.
 8              But here it says, "borrow $120,000."  So was
 9      this a loan or a purchase?
10         A.  As per the email that I had from him -- and
11      if you scroll down, you'll see it -- basically I bought
12      the car and he had an option to buy it back.
13         Q.  So that's kind of what I'm trying to figure
14      out.  Because the email, which is dated about a month
15      before the agreement, suggests that it was a purchase,
16      but this cover letter says it was a loan.  So did it
17      initially start out as a purchase in April and then you
18      guys decided it would be a loan in May?
19         A.  He wanted money.  I wanted the car.  I bought
20      the car.  He had the option to buy it back.
21         Q.  So it's your position that, even though this
22      letter says it's a loan, that it was a purchase of the
23      vehicle with a right to repurchase.  Is that your --
24         A.  Yeah.  He specifically requested that I don't
25      list it for sale, that he wanted to try to buy it back.
```

Page 34

1    And once the time lapsed, the agreement was, you know --

2    I mean, I own the car.

3            I have the MSO.  I have the car.  It's been

4    in my possession for eight years.  I've been insuring it

5    like it's my car.  I've been maintaining it and doing

6    mechanical work to it like it's my car.

7            Q.  So let's go to the second page, which is the

8    actual agreement.  And I'm looking at the signatures.

9    Is that your signature, Mr. Mosing?

10           A.  Yes.

11           Q.  And is that Trac's signature?

12           A.  Yes.

13           Q.  And then who's Eric Beverding?

14           A.  Eric Beverding was the manager before Kirk

15   that was -- he ended up -- it was a mutual agreement.  I

16   didn't terminate him or anything like that.  He was

17   going back to school for another career.

18           Q.  And where was this agreement signed?

19           A.  At our location, the dealership.

20           Q.  So it was in person?

21           A.  Yes.

22           Q.  And so Trac was in the room, you were in the

23   room, Eric was in the room.  Anyone else in the room?

24           A.  Not that I recall.

25           Q.  Do you have the original of this agreement?

                                            Page 35

1        A.   That's a good question.  I don't know.

2        Q.   I'm going to go back up here.  So in that

3    first sentence, it says that Trac Stephenson's going to

4    put up as collateral the Cobra.  Was there a security

5    agreement entered into?

6        A.   When you say, "security agreement," I mean,

7    the agreement -- "Per the attached agreement, Trac may

8    re-acquire said Cobra."  So he's conveying the Cobra to

9    me until -- otherwise, if he doesn't produce money, he's

10   not going to buy it back.

11       Q.   So this agreement that's dated May 8, 2012,

12   and is signed by you and Trac, this is the only written

13   agreement between you guys with respect to this Cobra;

14   is that right?

15       A.   Yes.

16            (Exhibit D was marked.)

17       Q.   (By Mr. Conrardy) We're going to look at

18   another exhibit.  Let's label this as Exhibit D.

19            Mr. Mosing, do you recognize this check?

20       A.   Yes, I do.

21       Q.   What is it?

22       A.   It was the check that I issued to Trac.

23       Q.   Is that your handwriting on the check?

24       A.   Yes.

25       Q.   And is that your signature?

                                        Page 36

```
 1              A.  Yes.

 2              Q.  So this is the $120,000 that was paid to Trac

 3     for the Cobra.  Why was it made payable to 427 Legends

 4     instead of to Mr. Stephenson?

 5              A.  That was his request.  That's what he said to

 6     make the check out to.

 7              Q.  And then in the memo line, it looks like it

 8     says, "1 year capital loan."  Did I read that right?

 9              A.  Yeah.

10              Q.  And you wrote that?

11              A.  Yeah.

12              Q.  So this says it's a loan.  Was it a loan?

13              A.  What I end up putting in a memo check column

14     is irrelevant to the whole transaction.  For me, I

15     bought the car.  He had the option to buy it back.  We

16     had emails after that fact that say basically, you know,

17     Yeah, I can't buy it back; I'm sorry.  So the deal was

18     done.

19              MR. CONRARDY:  Mr. Gibbs, we asked for emails

20     like that per our discovery request, and we didn't get

21     those.  Can you get me those emails?

22              MR. GIBBS:  Yeah.  I'll see what we have.

23              Q.  (By Mr. Conrardy) We're going to look at

24     another exhibit.  Before I do that, let's talk about

25     these emails.  So what kind of emails did you have with
```

Page 37

```
1     Mr. Stephenson regarding this transaction?

2          A.  The one you've presented already was the main

3     one.

4          Q.  Were there others?

5          A.  I would have to -- I don't know how to -- I

6     could research that, but I don't know how to get out of

7     this without --

8          Q.  I'm not asking you to do it right now,

9     Mr. Mosing.  The question is, are there other emails

10    between you and Trac regarding this Cobra?

11         A.  Yes.

12         Q.  So I've asked Mr. Gibbs to give us those

13    emails and he can talk to you about that after the

14    deposition.

15         A.  Okay.

16         Q.  When were those emails?

17         A.  Along the same lines, within a year of our

18    transaction date.

19         Q.  So in 2012 and 2013, approximately?

20         A.  Yeah.

21             (Exhibit E was marked.)

22         Q.  (By Mr. Conrardy) So let's label this as

23    Exhibit E.  Mr. Mosing, do you recognize this?

24         A.  Yes.

25         Q.  Can you tell me what it is?
```

Page 38

```
 1              A.   It's an insurance card for the Cobra.
 2              Q.   So this says that it expired October 14,
 3      2016.   Has this policy been renewed?
 4              A.   Yeah.   It's still currently insured with
 5      another company, but yes.
 6              Q.   Okay.   What's the name of that company?
 7              A.   Hagerty.
 8              Q.   I'm sorry.   Can you repeat that?
 9              A.   Hagerty.
10              Q.   What kind of insurance?   What's the insurance
11      coverage?
12              A.   It's full -- it's comprehensive.
13              Q.   Is there an insurable value on that policy?
14              A.   Yes.
15              Q.   And what's that?
16              A.   I believe it's right at 120-.   I can look
17      that up if you need me to.
18              Q.   And how did you come up with the $120,000
19      insurable value?
20              A.   Because that was the transaction value and
21      I'm not going to claim that it's worth more until I go
22      to sell it.   I don't know -- nobody knows what
23      anything's worth until you go to sell it.
24              Q.   Where is the Cobra currently located?
25              A.   It's at my dealership at 2420 West Braker
```

Page 39

1    Lane.

2        Q.  What kind of condition is it in?

3        A.  It's operable, but there is a -- the vehicle

4    has a fuel bladder.  It's a rubber lining that's inside

5    the tank.  They go bad from time to time.  So as of

6    today, it needs to be replaced.  It's about 1700 bucks

7    to do it.

8        Q.  Any other problems with the car?

9        A.  No.

10       Q.  What would you say the overall -- setting

11   aside the replacement of the bladder, what would you say

12   the overall condition of the car is?

13       A.  It could use tires.  I would give it a 2 --

14   on a scale of 1 to 6, which Hagerty uses like kind of a

15   valuation scale, I would give it probably a solid 2 to

16   2.2.

17       Q.  On the scale of 1 to 6, is 1 high or is 6

18   high?

19       A.  One would be an absolutely perfect car that

20   doesn't need anything.  Six would be a parts car.

21       Q.  So it's a 2 because we've got the bladder and

22   some tires need to be replaced?

23       A.  Yeah.  It can't be driven how it sits.

24       Q.  What's the mileage, roughly?

25       A.  It's less than a thousand.

Page 40

1          Q.  Have you driven it?

2          A.  Yes.

3          Q.  So it has plates then or are you driving it

4     on dealer plates?

5          A.  No.  Just driving it on dealer plates.

6          Q.  What kind of engine does it have?

7          A.  It's a 427, all aluminum.  It is the exact

8     replica of the motors that they made in the '60s, but

9     it's made out of aluminum.

10          Q.  In yesterday's deposition Trac said it's a

11     carbon fiber body.  Is it a carbon fiber body, for one?

12          A.  Yes.  They only made -- they were supposed to

13     make, I think, five of them.  I don't know if all five

14     have been produced or not.  I think four or three were

15     produced.

16          Q.  Was this the first carbon fiber body one that

17     was produced?

18          A.  I don't recall if the first serial number

19     would have been 4500 or 4501.

20          Q.  This serial number ends in 4501, so it was

21     either the first or second that was carbon fiber that

22     was produced, right?

23          A.  Correct, yeah.  I haven't dug into it enough

24     to know if it was the first or second one produced.

25          Q.  Well, I've got to ask.  How does it drive?  I

                                        Page 41

```
 1    imagine it's really fun to drive.
 2         A.   It is absolutely the most terrifying thing
 3    you'll ever do in a car.  It is capable of scaring the
 4    living hell out of you, basically.  I can't put it in
 5    words.  That's why we do what we do.
 6              You know, I'm a pro driver, and the race car
 7    is less scary than this car.  It will literally put you
 8    sideways in a ditch if you don't respect it.
 9              (Exhibit F was marked.)
10         Q.   (By Mr. Conrardy) We're going to look at
11    another exhibit.  Mr. Mosing, can you see this?
12         A.   Okay.  I'm looking at a certificate of title
13    for the State of Colorado.
14         Q.   Right.  And we'll label this as Exhibit F.
15    This is a certificate of title that was issued in
16    Colorado for the Cobra.  Have you seen this before?
17         A.   Not until I had to start all this litigation
18    to keep the car.  I have not -- I was never made aware
19    of this in existence.
20         Q.   So when did you first learn of this?  If you
21    could nail it down by a month of when you first learned
22    of this title.
23         A.   My attorney, who's present, would have to
24    tell me because, when I first contacted them to help me
25    with this, I didn't learn of this being in existence
```

Page 42

1    until then.  So it would have been maybe October of '19.

2    Does that sound accurate?

3          Q.  So the lawsuit was filed in August of '19.

4    And I believe -- I think it was an exhibit to the

5    complaint that was served on you.  So I think you would

6    have gotten it in the mail in about September of '19.

7    Does that sound right?

8          A.  Yeah.  September, October, somewhere around

9    there, yeah.

10         Q.  And prior to September of '19, did Trac tell

11   you there was a certificate of title issued in Colorado

12   for this car?

13         A.  No.  Quite the opposite.  He specifically

14   said there wasn't.

15         Q.  Did he say that orally or in writing?

16         A.  The day that he brought the car, I asked him

17   if there was a title, and he said no.  He said, The MSO

18   is all you need to be able to resell the car.

19         Q.  So if you'll scroll down here, you'll see

20   that in March of 2012, so two months before your

21   transaction with Trac, a lien was put on the car from

22   Extraco Bank.  Did Trac discuss Extraco Bank with you?

23         A.  No.

24         Q.  Did he ever mention there was a lien against

25   the Cobra?

Page 43

1          A.   No.

2               (Exhibit G was marked.)

3          Q.   (By Mr. Conrardy) I'm going to pull up

4     another exhibit.   Can you see this, Mr. Mosing?

5          A.   Yes.

6          Q.   So I'm going to scroll through these pages,

7     just so you can see them.   These are documents that you

8     provided in response to our request for production of

9     documents.   And we'll label this as Exhibit G.

10               I'll kind of quickly go through it, just to

11    refresh your memory.   If you need me to slow down or

12    need to come back to it, just let me know.

13               So what do you recognize these documents to

14    be, Mr. Mosing?

15          A.   Is there -- so I can't scroll through them,

16    right?

17          Q.   Yeah.   It's kind of a downside for this.   If

18    we were doing an in-person deposition, you'd have these

19    right in front of you.   Where do you want me to go?

20          A.   Just scroll to the bottom of this one.   Stop.

21    Yeah, this is -- so whenever you have a vehicle that's

22    never been titled before, you have to get it -- you have

23    to have it verified by a law enforcement officer.

24          Q.   So is that what this is?

25          A.   Yes.

                                        Page  44

```
1              Q.   And this is for the Cobra, correct?

2              A.   Yes.

3              Q.   So let's -- maybe we should go through this

4    page by page.  So the first page is the Law Enforcement

5    ID Number Inspection.  So whose handwriting is this?

6              A.   I cannot say yes or no if it was Kirk that

7    filled it out or not.

8              Q.   So it was not you, though?

9              A.   Correct.

10             Q.   So just tell us how this process works.  You

11   go down to the sheriff's office or --

12             A.   Typically we set up an appointment and they

13   come to wherever the vehicle's located.

14             Q.   So in this instance, a sheriff's deputy came

15   down to your shop; is that right?

16             A.   Correct.

17             Q.   And then they looked at the Cobra?

18             A.   Mm-hmm.

19             Q.   Is that a yes?

20             A.   Yes.  Sorry.

21             Q.   And it says here it was June 20 of 2019 and

22   that Carl Olavesen signed it.  Is that the gentleman

23   that came down and inspected the car?

24             A.   Yes.

25             Q.   Is that date correct, to the best of your
```

                                        Page 45

1    information?

2            A.  Yes.

3            Q.  So what was the purpose of his visit?

4            A.  I was starting the process to title the

5    vehicle in my company's name.

6            Q.  So did you or Kirk -- who called the

7    sheriff's department to set up this appointment?

8            A.  Kirk.

9            Q.  When did he do that?

10           A.  I would have to talk to him to get you an

11   accurate answer.

12           Q.  Would it have been within maybe a couple

13   weeks of June 20, 2019?

14           A.  Yeah.  Typically they can make it out in a

15   week or two.

16           Q.  So then the second page says it's a Motor

17   Vehicle Appraisal for Tax Collector Hearing/Bonded

18   Title.  What's this form?

19           A.  To be able to title it, you have to establish

20   a value to the vehicle.

21           Q.  What does "bonded title" mean?

22           A.  A bonded title is -- with a vehicle that is

23   not titled yet or may have been titled in the past, you

24   have to put up a bond to title it.  And that way the

25   State protects themselves on if there's anything else

Page 46

```
 1    that says that the vehicle belongs to somebody else.

 2          Q.  Was a bond posted for this vehicle?

 3          A.  No.

 4          Q.  No bond has been posted?

 5          A.  Correct.

 6          Q.  And then this next page is Bonded Title

 7    Application or Tax Collector Hearing Statement of Fact.

 8    What's this form?

 9          A.  It's the same.

10          Q.  It's just part of this bonding process.

11    Whose handwriting is this?

12          A.  It's not mine.

13          Q.  So here you can see it says the car was given

14    as payment for a loan.  Did Kirk fill that out?

15          A.  I would have to verify that with him.

16          Q.  Did you review any of these documents?

17          A.  Do you see my signature anywhere on it?

18          Q.  Is that your signature, Mr. Mosing?

19          A.  Yes.  Yeah, there you go.

20          Q.  You did sign these documents; is that right?

21          A.  Yes.

22          Q.  And then in 15 it says, "Is the vehicle 25 or

23    more years old?  If yes, what is the current value of

24    the vehicle?"  The Yes box was checked and the value's

25    $150,000; is that right?
```

Page 47

```
 1              A.  Yes.

 2              Q.  And let's go to the next page.  This is an

 3    Application for Antique License Plate.  What's this?

 4              A.  Any vehicle that's more than 25 years old, as

 5    stated, you can apply for an antique plate.

 6              Q.  Then is that your signature on the bottom?

 7              A.  Yes.

 8              Q.  So this one's dated June 20, 2019, and the

 9    page on top of it, the Bonded Title Application, isn't

10    dated.  Do you think that you signed this one the same

11    date, on June 20, 2019?

12              A.  Probably, yes.

13              Q.  Then we'll go to the last page, which is the

14    Application for Texas Title and/or Registration.  What's

15    this form for?

16              A.  That's the Form 130.  That's what will

17    produce a title when you turn it in to the Texas DMV.

18              Q.  I'm scrolling down.  Is that your signature?

19              A.  Yes.

20              Q.  Has a title been issued to you or Mosing

21    Autosport by Texas?

22              A.  No.

23              Q.  So is this application pending or was it

24    withdrawn?

25              A.  It was not submitted.
```

<div align="right">Page 48</div>

```
 1              Q.   This has never been submitted.  Okay.

 2                   (Exhibit H was marked.)

 3              Q.   (By Mr. Conrardy) We'll look at another

 4      exhibit.  Mr. Mosing, let me know when you're ready.

 5              A.   Mm-hmm.

 6              Q.   Have you ever seen this document before?

 7              A.   Can you scroll through it slowly?

 8              Q.   Sure.

 9              A.   I don't recollect having this in my

10      possession, no.

11              Q.   So I'll represent to you that this is an

12      appraisal that the trustee, Mr. Peters, obtained on the

13      Cobra.  And I just want to go through a couple of the

14      statements that the appraiser makes in it since you're

15      familiar with the car.

16                   It says it's "the very first production

17      Carbon Fiber Bodied Shelby Continuation Cobra."  We

18      talked about that earlier.  You think it's either the

19      first or the second; is that right?

20              A.   Yes.

21              Q.   What does a "Continuation Cobra" mean?

22              A.   Carroll Shelby produced these fabulous cars

23      back in the '60s.  Those are much more valuable than

24      anything that's produced after the fact.  But, because

25      he's Carroll Shelby, he's going to continue to build the
```

Page 49

```
 1    same car.  There's, you know, venues that they can do

 2    that because it's a limited production car.

 3              So they produced the cars exactly like they

 4    were built back in the '60s except -- with the exception

 5    of this one.  Carbon fiber didn't exist in the '60s.  So

 6    they decided to produce a few of these cars.

 7              And to this day they still produce the same

 8    Shelby Cobra in Las Vegas.  You can go and buy one

 9    today.  And Hillbank is a big distributor of those cars

10    also.

11         Q.  So the specific Cobra we're talking about was

12    manufactured in Las Vegas?

13         A.  I can't say yes or no, but I would believe

14    yes.

15         Q.  All of the Shelby Cobras are manufactured

16    in -- the continuation models are all manufactured in

17    Vegas; is that right?

18         A.  The headquarters is in Las Vegas, yes.

19         Q.  And then it says here that this specific

20    Cobra has a 427FE Side Oiler Big Block.  Is that an

21    accurate statement?

22         A.  Yes.

23         Q.  And then he writes -- Justin Mahaffey writes,

24    "Entry Level Fiberglass Cobras with much less pedigree

25    regularly sell on the pre-owned market for $150,000 or
```

Page 50

1    more."  Would you agree with that statement?

2            A.  We sold a continuation car with fiberglass.

3    I believe we sold it for 140-.

4            Q.  When was that?

5            A.  Six months.

6            Q.  Six months ago?

7            A.  Yeah.

8            Q.  And then he writes, "Aluminum Continuation

9    Cobras, which are more rare than Fiberglass but less

10   rare than Carbon Fiber, sell for over $220,000."  Do you

11   agree with that statement?

12           A.  Yes.

13           Q.  And then he values this specific car at

14   $200,000.  Do you think that's a fair valuation?

15           A.  If we weren't talking about the year of

16   COVID, possibly.  But, again, until you put something up

17   for sale, you just don't know what it's worth.  Does

18   that answer your question?

19           Q.  Yes.  Thank you.

20               During yesterday's deposition of Trac, he had

21   testified that either you or Mosing Autosport had

22   purchased some cars from him in the past.  In fact, he

23   testified that there were four other cars in addition to

24   this Cobra.  I want to just kind of go through those

25   transactions with you.

                                              Page 51

1          A.   Okay.

2               Q.   The first is a -- and Trac's recollection

3     wasn't very good, so I'm hoping you've got a better

4     memory.   So far it seems like you're on it.   There's a

5     GT40 that Trac sold.   Was that to you or to your

6     company?

7               A.   It was to me.

8               Q.   And when was that sale?

9               A.   It would have been either '07 or '08.   The

10    cars come as a component.   They don't have an engine or

11    transmission.   So you get the car on a crate and then

12    you have to put an engine and transmission in it.

13              So the car didn't get commissioned until '09,

14    so I think it was '08 or '07 when I purchased it.

15              Q.   And how much did you pay for it?

16              A.   I believe it was around 80-, 80- or 85,000.

17              Q.   Did you pay cash or was it financed?

18              A.   I paid it out, cash.

19              Q.   Cash.   All right.   Did Trac transfer the

20    title to that vehicle with a certificate of title or

21    with an MSO?

22              A.   It was MSO.   There was no title.

23              Q.   And then he mentioned a 1966 Corvette.   When

24    was that purchased?

25              A.   There were actually two Corvettes.   It was a

                                        Page  52

1    package deal, a '66 and '67.  I believe it was either

2    '08 or '09.

3            Q.   And then how much was paid for those two, I'm

4    sure, beautiful cars?

5            A.   It was 70,000 for both cars.  One you could

6    value at 40- and one you could value at 30-.

7            Q.   And then was that cash or financed?

8            A.   Cash.

9            Q.   And was a certificate of title used in the

10   transaction or an MSO?

11           A.   Titles.

12           Q.   And then the last one is a Shelby Daytona

13   Coupe.  When was that purchased?

14           A.   That was, I believe, in the fall of '09.

15           Q.   And purchase price?

16           A.   I'm trying to remember if -- I think, in the

17   state that the car was in -- like, it wasn't complete --

18   I believe it was around 50,000.

19           Q.   Then was that transferred with a title or an

20   MSO?

21           A.   MSO.

22           Q.   There are some allegations in your

23   counterclaims that Trac had defrauded you in connection

24   with the Cobra transaction.  Can you tell me more about

25   that?

                                        Page 53

1      MR. GIBBS:   Objection to the extent it's

2   vague.  You can answer, Jeff.

3      THE DEPONENT:   Do you want I answer?

4      Q.  (By Mr. Conrardy) So just to clarify,

5   Mr. Mosing, unless Mr. Gibbs makes a privilege

6   objection, you'll still need to answer my questions

7   notwithstanding the objection.

8      MR. GIBBS:   Assuming you understand it and

9   can answer it, Jeff.

10      Q.  (By Mr. Conrardy) Yeah.

11      A.   When Trac and I talked about this

12   transaction, I specifically asked him if there was a

13   title to the car, and he said, No, just the MSO.  And he

14   presented that to me along with the car, and that was

15   it.

16            I had no idea or knowledge of the fact that

17   the car was not only titled in Colorado but it had a

18   lien on it.  This was not the only time that he had

19   deceived me.

20      Q.   What were some other times where he deceived

21   you?

22      A.   He had a 1965 Shelby GT350 convertible that

23   he brought to my dealership and wanted me to sell for

24   him.  And I loaned him an additional 50,000 against that

25   car, which the car had already -- he had already had

Page 54

```
 1      liens on it also.
 2            Q.  When was that transaction, Mr. Mosing?
 3            A.  Probably -- I'd have to go back and look at
 4      emails, but I think it was about six to nine months
 5      after the first transaction.
 6            Q.  So maybe late 2012, early 2013?
 7            A.  Yes.
 8            Q.  What ultimately happened with that?
 9            A.  I never -- he tried to write six or seven
10      checks to start paying me back on the 50,000 and all the
11      checks bounced.
12            Q.  Does he still owe you that money?
13            A.  Technically, yeah, but he doesn't have it
14      apparently or I wouldn't be here with you-all.
15            Q.  Yeah.  In that transaction did he ever give
16      you a title to the Shelby GT350?
17            A.  Yeah, we had the title.  I mean, we sold the
18      car, and we didn't -- we weren't aware of the liens on
19      the title until after the sale.
20            Q.  Aren't the liens usually noted on the face of
21      the title?
22            A.  He didn't give me the title -- I didn't have
23      the title in hand until we sold the car.
24            Q.  I see.  So you marketed it, you sold it, and
25      then, when you're going to close the deal, Trac brought
```

Page 55

1    you the title, and then you looked at it and you said,

2    Oh, shit, there are liens on this?

3        A.  Yes.

4        Q.  So were the liens paid off and the car sold

5    or what happened?

6        A.  Yeah, the liens were paid off.  I think there

7    was about 6 grand that was available.  And Eric

8    Beverding, the one you've seen before on paperwork, he

9    was my manager and didn't hold that money against the

10   50- that he owed me.

11       Q.  So the 6000 was the net proceeds from the

12   sale after payment of the liens; is that right?

13       A.  Yes.

14       Q.  These sales of the other four cars that we

15   discussed, did those transactions go okay?  Were there

16   any problems with those?

17       A.  No problems.

18       Q.  So you mentioned the '65 Shelby there were

19   some issues.  Any other transactions with Trac that

20   caused some problems?

21       A.  No.

22       Q.  I've got another exhibit and I'm almost done.

23       A.  The one that you had from Hillbank, would I

24   be able to get a copy of that?

25       Q.  Yeah.  I sent it to your attorneys.  So,

                                              Page 56

1    Tres, if you don't -- I sent it to Jarrod early on in

2    the case.  If you can't find it, just shoot me an email

3    and I'll send it again.

4              MR. GIBBS:  Yeah, I might need to do that,

5    Aaron.  Thanks.

6              MR. CONRARDY:  Not a problem.

7              MR. GIBBS:  Did you attach it to the depo as

8    an exhibit?

9              MR. CONRARDY:  Yeah, it'll be an exhibit.

10             MR. GIBBS:  If we need it earlier, I'll email

11   you.

12             (Exhibit I was marked.)

13        Q.  (By Mr. Conrardy) So I'm going to do another

14   share screen.  We'll label this as Exhibit I.

15             So, Mr. Mosing, this is a disclosure that was

16   made by your attorneys in the adversary proceeding that

17   you would be testifying as an expert in the case.  Are

18   you familiar with this document?  Have you seen it

19   before?

20        A.  Can you scroll through it?

21        Q.  Yeah.  Tell me when you want me to scroll

22   further.

23        A.  I'm not sure that I've seen this document

24   before.

25        Q.  Okay.  Let me go to the next page.  You

                                              Page 57

```
 1    didn't sign it.  So based on your recollection, you

 2    don't think you've seen this document before?

 3          A.  I'm not going to say that I'm 100 percent

 4    sure that I've seen or read through this.

 5          Q.  Did you assist in the preparation of this

 6    document?

 7          A.  I conferred with Jarrod to get the ball

 8    rolling on defending myself against what I own, yes.

 9          Q.  So the answer is yes, you did help prepare

10    this document?

11          MR. GIBBS:  Objection.  Mischaracterization

12    of testimony.

13          MR. CONRARDY:  He didn't answer my question.

14    I'll ask it again.

15          Q.  (By Mr. Conrardy) Did you help prepare this

16    document, Mr. Mosing?

17          A.  Directly, no.

18          Q.  Have you seen this document before today?

19          MR. GIBBS:  Asked and answered.

20          A.  I don't recall.

21          MR. GIBBS:  He said he doesn't know if he's

22    seen it.

23          MR. CONRARDY:  I heard the testimony.

24          Q.  (By Mr. Conrardy) In connection with this

25    adversary proceeding, what documents that have been
```

Page 58

1    prepared by your counsel have you reviewed?

2          A.  I would have to go refer back to my emails to

3    see specifically which ones.

4          MR. CONRARDY:  So can we take just a

5    five-minute break?  I want to look at my notes and then

6    come back and maybe ask a few follow-up questions.  Is

7    that okay with everybody?

8          MR. GIBBS:  Yes.

9          (Recess from 11:04 a.m. to 11:14 a.m.)

10         Q.  (By Mr. Conrardy) We're back on the record.

11   Mr. Mosing, you understand you're still under oath?

12         A.  Yes.

13         Q.  I'm going to do another share screen.  This

14   is of an exhibit that we looked at earlier.  This is

15   Exhibit G, which was the paperwork that you completed to

16   get the title that hasn't been submitted.

17         It's dated in June of 2019, and the agreement

18   with Trac was in 2012.  Why did you wait nearly seven

19   years between Trac's failure to either buy it back or

20   default the loan, however you want to characterize it,

21   and you completing this paperwork?

22         A.  I've got -- in my collection I've got

23   probably 75 to 80 cars.  Like, literally I cannot tell

24   you exactly how many vehicles I own.

25         And so there's no -- I have the MSO.  There's

Page 59

```
 1    no rush to get a title.  But I made the decision to

 2    start the paperwork to put the vehicle either in my

 3    personal name or in the name of my company in 2019, just

 4    doing some housecleaning, basically, trying to catch up.

 5         Q.  Did Trac's bankruptcy have anything to do

 6    with you filing this paperwork?

 7         A.  No.  I had already decided that I needed to

 8    get the paperwork done.  It just took some time.

 9            MR. CONRARDY:  Tres, can we stipulate that,

10    because there is a dispute over the title, that

11    Mr. Mosing refrains from filing this paperwork with the

12    State of Texas until the adversary proceeding is

13    resolved or there's a settlement?

14            MR. GIBBS:  I think we can do that.  I'd like

15    to talk to Jeff about it, I guess, a little bit off the

16    record, but I don't see -- I mean, Jeff, I'm just

17    thinking, you know more about it than I do.

18            Do you mind waiting until this adversary

19    proceeding is over to proceed forward or do you want to

20    talk about it more before we --

21            THE DEPONENT:  No.  I mean, we can wait.  We

22    can defer it.

23         Q.  (By Mr. Conrardy) Thank you, Mr. Mosing.

24    There is a real bona fide dispute here, and I would just

25    like to preserve everybody's rights until the judge
```

Page 60

1    decides the outcome or we come to a settlement.

2    I appreciate that stipulation.

3            The last question I have is, is the Cobra for

4    sale, Mr. Mosing, or is it in your personal collection?

5        A.   Neither.  It's residing at my business that

6    we discussed earlier, at Mosing Motorcars.  I haven't

7    presented it for sale because we're in litigation, so

8    it's not -- I don't own it personally.  It's still owned

9    by my company.

10       Q.   In Texas, when you turn in the MSO -- I know

11   I said that was my last question.  I'm sorry.  Lawyers

12   are bad about that.

13           In Texas, when you turn in -- when you

14   present an MSO to the DMV in Texas, do they give you the

15   option of keeping the MSO, after they issue you the

16   certificate of title, or does the DMV keep it?

17       A.   They present it -- they give it back to you.

18           MR. CONRARDY:  Thank you.  No further

19   questions for Mr. Mosing save possibly some follow-up

20   questions after Mr. Gibbs.

21           MR. GIBBS:  You know, I don't know that I

22   have any questions.

23           THE COURT REPORTER:  Attorneys, do you want a

24   copy of the transcript?

25           MR. CONRARDY:  Yes, please, a pdf with

                                            Page 61

1    exhibits.

2              MR. GIBBS:  I'll have the same, and we'll

3    read and sign.

4                   *   *   *   *   *   *   *

5        WHEREUPON, the foregoing deposition was concluded

6    at the hour of 11:19 a.m.  Total time on the record was

7    1 hour and 40 minutes.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                          Page 62

```
 1          I, JEFFREY LOUIS MOSING, the deponent in the above

 2     deposition, do hereby acknowledge that I have read the

 3     foregoing transcript of my testimony and state under

 4     oath that it, together with any attached Amendment to

 5     Deposition pages, constitutes my sworn testimony.

 6

 7     _____  I have made changes to my deposition

 8     _____  I have NOT made any changes to my deposition

 9

10                    _____

                         JEFFREY LOUIS MOSING

11

12          Subscribed and sworn to before me this

13     _____ day of _____, 2020.

14

15          My commission expires: _____

16

17

18                    _____

                         Notary Public

19

20

21

22

23

24

25

                                              Page 63
```

```
 1                    REPORTER'S CERTIFICATE

 2         I, Denise A. Freeman, a Registered Professional

 3    Reporter and Notary Public within the State of Colorado,

 4    do hereby certify that, previous to the commencement of

 5    the examination, the deponent was duly sworn by me to

 6    testify to the truth.

 7         I further certify that this deposition was taken

 8    remotely in shorthand by me at the time and place herein

 9    set forth and thereafter reduced to a typewritten

10    form and that the foregoing constitutes a true and

11    correct transcript.

12         I further certify that I am not related

13    to, employed by, nor of counsel for any of the parties

14    or attorneys herein, nor otherwise interested in the

15    result of the within action.

16         My commission expires December 12, 2022.

17

18

19                    Denise A. Freeman

20                    Denise A. Freeman

                      Registered Professional Reporter

21                    and Notary Public

22

23

24

25

                                             Page  64
```

Colorado Rules of Civil Procedure

Chapter 4, Disclosure and Discovery

Rule 30

(e) Review by Witness; Changes; Signing. If
requested by the deponent or a party before
completion of the deposition, the deponent shall be
notified by the officer that the transcript or
recording is available. Within 35 days of receipt
of such notification the deponent shall review the
transcript or recording and, if the deponent makes
changes in the form or substance of the deposition,
shall sign a statement reciting such changes and
the deponent's reasons for making them and send
such statement to the officer. The officer shall
indicate in the certificate prescribed by
subsection (f)(1) of this rule whether any review
was requested and, if so, shall append any changes
made by the deponent.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF
CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

```
                   VERITEXT LEGAL SOLUTIONS
            COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

     Veritext Legal Solutions represents that the
     foregoing transcript is a true, correct and complete
     transcript of the colloquies, questions and answers
     as submitted by the court reporter. Veritext Legal
     Solutions further represents that the attached
     exhibits, if any, are true, correct and complete
     documents as submitted by the court reporter and/or
     attorneys in relation to this deposition and that
     the documents were processed in accordance with
     our litigation support and production standards.

     Veritext Legal Solutions is committed to maintaining
     the confidentiality of client and witness information,
     in accordance with the regulations promulgated under
     the Health Insurance Portability and Accountability
     Act (HIPAA), as amended with respect to protected
     health information and the Gramm-Leach-Bliley Act, as
     amended, with respect to Personally Identifiable
     Information (PII). Physical transcripts and exhibits
     are managed under strict facility and personnel access
     controls. Electronic files of documents are stored
     in encrypted form and are transmitted in an encrypted
     fashion to authenticated parties who are permitted to
     access the material. Our data is hosted in a Tier 4
     SSAE 16 certified facility.

     Veritext Legal Solutions complies with all federal and
     State regulations with respect to the provision of
     court reporting services, and maintains its neutrality
     and independence regardless of relationship or the
     financial outcome of any litigation. Veritext requires
     adherence to the foregoing professional and ethical
     standards from all of its subcontractors in their
     independent contractor agreements.

     Inquiries about Veritext Legal Solutions'
     confidentiality and security policies and practices
     should be directed to Veritext's Client Services
     Associates indicated on the cover of this document or
     at www.veritext.com.
```

# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

Case No. 19-13565

-------------------------------------------------------

VIDEOCONFERENCE DEPOSITION OF TRACY DEAN STEPHENSON
August 25, 2020

-------------------------------------------------------

In re:

Tracy Dean Stephenson,

Debtor,

M. Stephen Peters, Chapter 7 Trustee,

Plaintiff,

v.

Jeffrey Mosing and Mosing Autosport, LLC, dba
Mosing Motorcars.

-------------------------------------------------------

APPEARANCES:

    SCOTT NELSON, ESQ.
        Law Office of Scott Nelson
        5427 Orchard Court
        Golden, Colorado 80403
          Appearing on behalf of Debtor

    AARON CONRARDY, ESQ.
        Wadsworth Garber Warner Conrardy, PC
        2580 Main Street
        Suite 200
        Littleton, Colorado 80120
          Appearing on behalf of Plaintiff

    REAGAN H. "TRES" GIBBS, III
        Chamberlain Hrdlicka White
        Williams & Aughtry, PC
        1200 Smith Street
        Suite 1400
        Houston, Texas 77002
          Appearing on behalf of
          Jeffrey Mosing, et al.



EXHIBIT
B

1        PURSUANT TO SUBPOENA and the Federal

2   Rules of Civil Procedure, the deposition of TRACY

3   DEAN STEPHENSON, called by the Defendants, was

4   taken on Tuesday, August 25, 2020, commencing at

5   10:07 a.m., via Zoom videoconference, before

6   Shelly Findley, Professional Shorthand Reporter

7   and Notary Public within and for the State of

8   Colorado.

9   -------------------------------------------------

10              I N D E X

11  DEPOSITION OF TRACY DEAN STEPHENSON

12  EXAMINATION                         PAGE

13   By Mr. Gibbs                    3, 70
    By Mr. Conrardy                   57
14   By Mr. Nelson                    --

15             E X H I B I T S

16  EXHIBITS                    INITIAL REFERENCE

17   Exhibit 1    Certificate of Title State of      21
                 Colorado

18
    Exhibit 2    Promissory note              24
19
    Exhibit 3    Change in Terms Agreement      25
20
    Exhibit 4    Email dated 4/19/2012        33
21
    Exhibit 5    Agreement                39
22
    Exhibit 6    Copy of Check            50
23
    Exhibit 7    427 Legends Bank Ledger      53
24

25

1              P R O C E E D I N G S

2              TRACY DEAN STEPHENSON,

3    having been first duly sworn, testified as follows:

4                    EXAMINATION

5    BY MR. GIBBS:

6         Q    Mr. Stephenson, good morning, sir.  My name

7    is Tres Gibbs, and I represent Jeff Mosing and Mosing

8    Autosport, LLC, dba, Mosing Motorcars in this lawsuit

9    that's been filed.

10             Do you understand who I am and who I

11   represent, sir?

12        A    Yes, I do.

13        Q    Okay.  Have you ever given your deposition

14   before?

15        A    Yes.

16        Q    When was the last time?

17        A    More than 15 years ago.

18        Q    Okay.  So it's been a while?

19        A    Yes.

20        Q    So you've been through this before, but just

21   very briefly before we get going, I don't anticipate

22   asking several hours' worth of questions or anything

23   like that.  But if you don't mind, when I am asking

24   questions, it's important for you to let me finish my

25   question completely even if you anticipate where I'm

1    going with my question before you answer.  That way

2    we'll have a clean record for the reporter.  She's

3    typing everything down as we talk so it's easier on her

4    if we go one at a time.

5        A    Sounds good.

6        Q    And if you don't understand my question at

7    any time, please just ask me to rephrase or restate it;

8    is that fair?

9        A    Yes.

10        Q    And if you answer my question -- if you

11    answer my questions, I'm assuming that you have

12    understood them; is that fair?

13        A    Yes.

14        Q    And, of course, as you know, you've just

15    given an oath to tell the truth.  It's my goal here

16    today to get full, honest, complete testimony from you

17    with regard to the subject matter.  Can I have that

18    agreement, that you'll give truthful, honest answers

19    today, sir?

20        A    Yes.

21        Q    And you understand that you're under oath

22    just like if we were in the courtroom?

23        A    Understood.

24        Q    Thank you.  Mr. Stephenson, where are you

25    from originally?

1    A    I grew up in Colorado.

2    Q    What part of Colorado?

3    A    Littleton, Colorado.

4    Q    I see you're joining us from the Bay Area

5    today?

6    A    No, no, no.  I'm in Colorado.

7    Q    Okay.  And where did you go to high school?

8    A    I went to -- in Littleton, Colorado,

9    Columbine High School.

10    Q    When did you graduate?  What year?

11    A    1988.

12    Q    Did you go on to any education post high

13    school?

14    A    Minimal.  I did some -- a couple -- probably

15    about a year's worth of extended school.

16    Q    Was there any particular focus in your

17    extended school?

18    A    No.

19    Q    And did you go off to work after you

20    finished school, or what did you do after your year's

21    worth of extended post high school?

22    A    I began to work.

23    Q    Where did you work?

24    A    Various jobs.  My first full-time

25    multiple-year job was starting when I was about 20

1    years old.

2    Q    Any particular industry?

3    A    It was in the warehouse industry.

4    Q    What did you do in the warehouse industry?

5    A    I managed a warehouse.

6    Q    Okay.  How long did you do that?

7    A    About four years.

8    Q    And what did you do after that?

9    A    I started a construction business in 1994.

10    Q    What was the name of that construction

11    business?

12    A    Quality Siding.

13    Q    Is that -- is Quality Siding still doing

14    business today?

15    A    No.

16    Q    What other -- have you started any other

17    businesses?

18    A    Yes.

19    Q    Can you, I guess, list those businesses for

20    me starting with -- let's go reverse chronological

21    order with the oldest one first, if you can?

22    A    So Quality Siding became Stephenson

23    Construction over time.  It went from an LLC to a

24    corporation.  So that one takes us through

25    probably 2011 or '12.

Case No. 1:22-cv-00642-GPG    Document 8-1    filed 04/14/22    USDC Colorado    pg
Case:19-01211-MER    Doc#:60-2    Filed:10/21/20    Entered:10/21/20 18:22:43    Page8 of 78
26/21 of 261

Tracy Dean Stephenson

Pages 7

1    Q    Okay.

2    A    The next company was Quality Build Team, and

3   that was a construction business also here in Colorado.

4   That was started in 2014.

5    Q    Okay.  Any other businesses?

6    A    In 2017, I started Stix Framing.  S-t-i-x.

7    Q    Anything else besides Stix Framing?

8    A    So those are all the construction related --

9    Q    Those are all -- sorry to cut you off.

10   Those are all construction-related companies?

11    A    Correct.  Yes.

12    Q    All right.

13    A    So I apologize.  You asked for

14   chronological.  So going back in time, I had an

15   automotive company called Legendary Motorsport that I

16   believe started in about 2006.

17    Q    Legendary Motorsport?

18    A    Correct.  Yes.

19    Q    And what -- what did you do or what did the

20   company Legendary Motorsport do?

21    A    It was automotive performance related,

22   represented the selling of new vehicles, specialty

23   automotive.

24    Q    What do you mean when you say "specialty

25   automotive"?

Tracy Dean Stephenson

1    A    Specialty cars, not production high-volume

2  cars.  They were unique low-production sport-car type

3  offerings.

4    Q    Okay.  So more new cars.  Any particular

5  line?  Like, are we talking about racecars, performance

6  cars, things like that?

7    A    They were Shelby replica cars built by a

8  company called Superformance, all one word.

9  S-u-p-e-r-f-o-r-m-a-n-c-e.

10    Q    So did Legendary deal exclusively with these

11  replica Shelby Cobras?

12    A    Not exclusively, no; but that was the vast

13  majority of the offering for that company.

14    Q    Were these cars -- was Legendary assembling

15  these itself or just kind of brokering the sale of

16  them?

17    A    Brokering the sale of them, and then there's

18  a third party that finished the cars to the customers'

19  requirements.

20    Q    Was that third party the same third party or

21  did it vary?

22    A    They varied.  The customer could choose who

23  they wanted.

24    Q    Thank you.  And is Legendary Motorsports

25  still a going concern?

1        A    It's not.  It hasn't been for probably seven

2    years.

3        Q    So it terminated or stopped doing business

4    around 2013?

5        A    Correct.

6        Q    Any other companies in the automotive

7    industry?

8        A    So Legendary Motorsport rebranded to 427

9    Legends for a new market, which was Texas at the time.

10   So that would be a new LLC.

11       Q    When was that time?

12       A    Approximately 2010.

13       Q    Okay.

14       A    And it closed about the same time frame as

15   Legendary, 2013.

16       Q    And did you say that you did get another LLC

17   set up for 427 Legends in Texas?

18       A    I believe so.

19       Q    And who were -- were you the sole -- was it

20   a member-managed LLC or --

21       A    Yes.

22       Q    And were you the sole member of 427 Legends?

23       A    Correct.

24       Q    And did you -- you mentioned that you --

25   okay.  I'm sorry.

1        Any other companies in the automotive

2    industry?

3        A    No.  I do not believe so, no.

4        Q    Okay.  So just the Legendary Motorsport that

5    kind of merged into the 427 Legends for the Texas

6    market; is that right?

7        A    Yes.

8        Q    Now, you mentioned you grew up in Colorado.

9    Have you ever lived anywhere besides Colorado?

10        A    I lived in Texas.  I began -- I moved down

11    there initially in 2008.

12        Q    Where did you move in Texas?

13        A    Near Austin, Texas.

14        Q    Where -- any particular town near Austin?

15        A    Initially Kingsland, Kingsland, Texas.

16        Q    All right.  How long did you live in

17    Kingsland?

18        A    Four, five years.

19        Q    What did you do after those four or five

20    years?

21        A    I moved to another town near Kingsland

22    called Horseshoe Bay.

23        Q    It's a nice area.

24        A    Yeah.

25        Q    How long did you live in Horseshoe Bay?

1      A    I left Horseshoe Bay and came back to

2    Colorado in 2014.

3      Q    Okay.

4      A    And then I went back to Texas in 2016 for

5    one year, and then came back to Colorado.

6      Q    What was that one year you returned to

7    Texas, what year was that?

8      A    2016 -- late 2016.

9      Q    And did you live again in that kind of

10   central Texas, Austin area?

11     A    The Horseshoe Bay area.

12     Q    For 2016?

13     A    Same house, yes.

14     Q    Same house.  Since 2016, have you lived back

15   in Colorado exclusively?

16     A    No.

17     Q    Okay.  Where else have you lived?

18     A    In 2019, I moved back to that same house in

19   Texas and only recently, two months ago, moved back to

20   Colorado.

21     Q    Any particular reason you're moving back and

22   forth between Texas and Colorado?

23     A    Because my family, kids, ex-wife are in

24   Texas and more business operations -- more business

25   opportunities are in Colorado.

1    Q    Okay.  So you're divorced?

2    A    Correct.

3    Q    And your ex-wife and your children are still

4  in Texas?

5    A    Correct.

6    Q    And they're still, I'm assuming, in the

7  Horseshoe Bay area?

8    A    Yes.  My daughter was going to college, but

9  her home base is that area, yes.

10    Q    Fair enough.  Thanks.

11        Okay.  Sir, Mr. Stephenson, I appreciate it.

12  Obviously, you're here today with counsel of your

13  choosing to give some testimony in this lawsuit that's

14  been filed by the Chapter 7 trustee against my client,

15  related -- or I guess stemming from a bankruptcy

16  proceeding that you filed in Colorado.

17        Do you understand that to be the case?

18    A    Yes.

19    Q    And we sent over -- and I understand you may

20  not have received it initially -- but we served a

21  notice of your deposition with a subpoena for

22  documents.

23        Do you recall seeing that subpoena for

24  documents?

25    A    I have not seen the subpoena for documents.

 1    I believe Scott, my attorney, received the subpoena for

 2    documents.  I haven't seen them yet.

 3        Q    Okay.  Well, in that subpoena for documents,

 4    there was some categories of documents that we

 5    requested.  I would ask that after this deposition,

 6    when you can, will you agree to look at that subpoena,

 7    look at those requests -- I think there's 13 or 14

 8    different categories --

 9        A    Okay.

10        Q    -- and we do have some documents, I believe,

11    from you; but if there's any other documents that you

12    have in your possession that are responsive to those

13    requests, will you agree to make those available

14    through your attorney, sir?

15        A    Absolutely.

16        MR. NELSON:  And, Mr. Gibbs, just to make a

17    record, I did speak with Mr. Stephenson, and he

18    indicated that he had sent you all of the documents

19    that he had in his possession.

20        Q    (By Mr. Gibbs)  Okay.  Mr. Stephenson, is

21    that accurate?

22        A    Yes.

23        Q    So you did have a chance to look at that

24    subpoena?

25        MR. NELSON:  He did not have a chance to

Tracy Dean Stephenson

 1    look at the subpoena because of the -- I just got

 2    involved in this.

 3         MR. GIBBS:  No, I understand.  He said a

 4    minute ago -- you're telling me he's given us all the

 5    documents; but if he hasn't seen the subpoena, how does

 6    he know he's given all the documents?  That's my only

 7    question.

 8         MR. NELSON:  We will go through the subpoena

 9    and provide everything to you if we have anything more.

10         THE DEPONENT:  What I had heard Scott say

11    was that I had given -- and this is true -- that I have

12    given the documents that I have.

13         Q    (By Mr. Gibbs)  Fair enough.  And I'll

14    represent to you that, you know, we have seen those

15    documents before.  And I appreciate you sending them,

16    by the way, Mr. Stephenson.  To the extent there's

17    anything more, that's all I'm asking about, and you'll

18    see when you look at the subpoena.  Fair enough?

19         A    Absolutely.  Yes.

20         Q    Thank you.  So you mentioned a minute ago

21    one of the -- your first automotive company specialized

22    in the Shelby Cobras.  That's obviously what we're here

23    about today, a 1965 Shelby 427 Cobra SC is my

24    understanding, that you purchased around 2011.

25         Does this ring a bell?

Tracy Dean Stephenson

1      A    Yes.

2      Q    Can you just tell me -- kind of walk me

3   through what you remember with regard to this

4   transaction from when you first identified the car,

5   when it was first made available to you, and what you

6   did at that point?

7          MR. CONRARDY:  Objection.  Form.

8      Q    (By Mr. Gibbs)  There may be some

9   objections --

10         MR. CONRARDY:  Go ahead and answer the

11  question, Mr. Stephenson.  I'm sorry.  I don't mean to

12  take away from Mr. Gibbs; but, Mr. Stephenson, some

13  attorneys may be lodging objections; and unless it's an

14  objection for privilege, you still need to answer the

15  question after the objection is lodged.

16         THE DEPONENT:  Okay.  No worries.  So I

17  personally had bought and collected Shelby cars going

18  back to as early as 2001 maybe.  2001, I believe.  So

19  the -- so I knew some people in this -- Shelby Cobra

20  dealers and people in the space and in --

21  approximately -- I don't know the exact dates but --

22  when I was first aware of this car it was from a dealer

23  in the Dallas area that I had known from previous

24  relationships.  And I acquired it in

25  approximately 2011.  I don't know the exact date.

1      Q    (By Mr. Gibbs)  Sure.  Let me just interrupt

2    for a second.  What was the dealer's name in Dallas?

3      A    Sanderson.

4      Q    Okay.  And that was the dealer you were

5    familiar with from a prior history?

6      A    Yes.

7      Q    You had purchased Shelby Cobras from them in

8    the past?

9      A    I had, yes.

10      Q    And you were living in the Horseshoe Bay

11    area at the time?

12      A    I believe I was living in -- yes, I was

13    living in Texas.

14      Q    You were in Kingsland or Horseshoe Bay?

15      A    I believe so, yes.

16      Q    Okay.

17      A    I think I was in Kingsland at the time.

18      Q    Okay.  And what did you do?  Did you drive

19    out to Dallas to look at it, or how did you obtain

20    possession of the car?

21      A    I obtained possession of the car by

22    delivery.  I had known about the car from pictures in

23    the past.  So I'd seen images of the car, and I was

24    very familiar with exactly what it was because I had

25    one very, very similar to it.  So I was very much aware

1    of what it was.

2        Q    So what did you do?  Did you just call

3    Sanderson and say -- your contact at Sanderson and say,

4    "Hey, you've got this '65 Shelby 427.  I want it"?

5        A    I don't believe the exact -- I don't believe

6    the exact term "communication" -- I don't recall.

7        Q    Sure.  And I wasn't trying to put words

8    exactly in your mouth.  I was just trying to get an

9    idea of what you communicated to Sanderson to get the

10   car.  How did they know to deliver it to you?

11       A    I expressed interest.  We made the

12   transaction and set up a -- I honestly don't recall how

13   it got to me -- but one way or the other some

14   transporter brought it to me.

15       Q    Okay.  Did you make payment to Sanderson?

16       A    I -- yes.

17       Q    And did you make -- how did you make payment

18   to Sanderson?

19       A    I don't recall.

20       Q    Do you remember how much the purchase price

21   was?

22       A    I -- I do not recall.  I don't have the

23   exact amount.

24       Q    Do you recall whether you paid some cash and

25   financed -- or if you paid cash for some and financed

1    another portion, or do you recall anything about that?

2        A    No financing.

3        Q    Cash payment?

4        A    Yes.

5        Q    Mr. Stephenson, I'm going to go ahead and

6    pull up -- let me see if I can do this.  Bear with me.

7    I'm going to try to share my screen.

8            Mr. Stephenson, are you able to see my

9    screen?

10       A    I am, yes.

11       Q    Certificate of Title?

12       A    Yes.

13       Q    State of Colorado at the top?

14       A    Yes.

15       Q    Okay.  Who is Extracto [sic] Bank?

16       A    Extraco Bank is --

17       Q    Sorry.  Extraco Bank.  Sorry.

18       A    It's just Extraco, but it's a bank in Texas.

19       Q    Thank you for that clarification.  I've been

20   saying it wrong for a long time.

21           Where did -- how did -- is it a bank that

22   you have utilized?

23       A    Yes.  Correct.

24       Q    And this is a -- this document appears to be

25   a Certificate of Title from the State of Colorado; is

1    that right?

2        A    Yes.

3        Q    Do you recognize this document?

4        A    Yes.

5        Q    What is it?

6        A    It's the Certificate of Title for the

7    vehicle we're discussing.

8        Q    Okay.  So it is for the vehicle we're

9    discussing.  How did you -- when did you obtain the

10   Certificate of Title?

11       A    I'm going off the date on the title.   Is

12   that what --

13       Q    Sure.  When do you remember getting this

14   document?

15       A    I don't remember the time, but I'm just

16   going off the date that's visible on the title, which

17   is 2012.  Date issued.

18       Q    The date issued.  That's when the title was

19   issued?  Your understanding?

20       A    From my understanding, yes.

21       Q    Okay.  And it says the date purchased right

22   above that, December 20, 2011.  Does that sound about

23   right as far as the date you purchased the vehicle?

24       A    It does.

25       Q    And how did you -- I'm just trying to figure

1   it out.  So you're living in Kingsland, and you

2   purchase this vehicle, this Shelby Cobra from Sanderson

3   in the Dallas area, and it looks like you utilized a

4   bank called Extraco in Gatesville, Texas.  How did you

5   go about getting the title issued in Colorado?

6       A    I still had my Colorado operation, the

7   dealership, and I had a staff office manager that

8   handled the paperwork for the vehicles.  So that was

9   the manner in which we had got it in Colorado.

10      Q    Walk me through that a second.  I mean, I

11  might have missed something.  You said you had a

12  Colorado dealership?

13      A    Correct.  Legendary Motorsport.

14      Q    Okay.  I was under the impression that was

15  in Texas.

16      A    I had operations in both states.

17      Q    Did you have, like, a physical location for

18  Legendary?

19      A    In Colorado, yes.

20      Q    In Colorado?  Yes?

21      A    Correct.

22      Q    And so, essentially, when you purchased this

23  vehicle, you wanted it -- you wanted it titled in

24  Colorado?

25      A    It wasn't a matter of want.  It was just --

1  we had more -- we had experience with titling in

2  Colorado; and I had recently moved to Texas so it was

3  titled in Colorado.

4          (Exhibit 1 was marked.)

5      Q    (By Mr. Gibbs)  Okay.  And you see that

6  there -- a little bit below here -- and I'll go ahead

7  and enter this as Defendant's Exhibit 1 or Exhibit 1 to

8  the deposition.

9          It says date issued March 8, 2012.  If you

10  go down a little bit further, right here -- I'm not

11  sure if you can see it with me when I'm scrolling like

12  that --

13     A    I can.

14     Q    It says First Lienholder Extraco Bank.  Do

15  you have an understanding of what this -- of what this

16  represents?

17     A    Yes.

18     Q    What is that?

19     A    I had some -- I had a loan through Extraco

20  Bank; and multiple assets were leveraged, secured with

21  that relationship, that loan.  Pieces of property and

22  this vehicle.

23     Q    Pieces of real property and this vehicle?

24     A    Pieces of vacant real property, yes, in

25  Texas.

1    Q    So lots?

2    A    Exactly.

3    Q    And so you had this vehicle and maybe some

4    other lots that were basically serving as collateral

5    for a loan from Extraco Bank?

6    A    Correct.

7    Q    Am I saying that right?  Extraco?  I'm

8    sorry.

9    A    Yeah.  Extra, co.

10    Q    And it says the amount of the lien was

11    $75,000.

12         Does that sound right in your memory?

13    A    Yes.  But, again, the amount of lien

14    encumbered, from my memory, two lots and the car.  So

15    the entire loan amount for the two lots, which are

16    probably valued at 40- to $50,000 apiece, and the car

17    was a total of 75,000.

18    Q    Okay.  And was this lien ultimately

19    released?

20    A    Yes.

21    Q    And I'm looking over here on the right.  It

22    looks like there's a signature, Sherry Mitchell.

23         Do you know who Ms. Sherry Mitchell is?

24    A    I do not recall.

25    Q    You don't know her specifically?  I'm

1    assuming she's with the bank.  Do you know that one way

2    or the other?

3        A    I believe she is with the bank, yes; but I

4    don't know her personally.

5        Q    Fair enough.  And it looks like the release

6    is dated June 2, 2016; is that right?

7        A    Yes.

8        Q    Does that meet your recollection of when

9    this lien was released?

10       A    Correct, yes.

11       Q    It was in 2016?

12       A    Yes.

13       Q    So you had paid off whatever you owed to

14   Extraco by that point?

15       A    Yes.

16       Q    Incidentally, Mr. Stephenson, real quick

17   before we move on.  I see this maturity date of

18   March 7, 2022, kind of next to Sherry's signature.

19       A    Okay.

20       Q    Does that mean -- was that the date by

21   which, I guess, it was originally supposed to be paid

22   off?

23           MR. CONRARDY:  Objection.  Calls for a legal

24   conclusion.

25           I'll help you out with that, Mr. Gibbs.  So

 1    in Colorado, whenever a title is issued, by statute the

 2    lien expires in ten years.

 3              MR. GIBBS:  Thank you.  I'm seeing that

 4    right now as you're talking.

 5              (Exhibit 2 was marked.)

 6        Q    (By Mr. Gibbs)  Let me pull up something

 7    else real quick, Mr. Stephenson, if you don't mind.

 8              I'll represent that we just, as of midnight

 9    this morning, received some documents from Extraco

10    Bank.  So bear with me a second.  Okay.

11              Are you seeing my screen?

12        A    Yes.

13        Q    This looks like a Promissory Note; correct?

14        A    Yes.

15        Q    Does this document look familiar to you?

16        A    Yes.

17        Q    Does this look to be an accurate copy of the

18    Promissory Note?  It looks like it's dated

19    February 24, 2012, if you can see that.

20        A    Yes.

21        Q    This looks like an accurate copy?

22        A    Yes.

23        Q    And it says the principal amount is $75,000?

24        A    Yes.

25        Q    And that's the same amount that we just saw

 1   on the Certificate of Title; right?

 2       A    Correct.

 3       Q    Do you know what -- and so this --

 4   February 24, 2012, you were borrowing $75,000 from

 5   Extraco?

 6       A    Yes.

 7       Q    Do you recall why?

 8       A    Business related, operational.

 9       Q    Okay.  I don't think this Note references

10   the Cobra anywhere.  We can make this Exhibit 2.

11           Do you recall issuing or executing a

12   security agreement along with that Promissory Note,

13   Mr. Stephenson, by chance?

14       A    I do not recall.

15       Q    Okay.  But you may have?

16       A    Sure.  I may have, but I do not recall.

17           (Exhibit 3 was marked.)

18       Q    (By Mr. Gibbs)  Okay.  Do you see this

19   Change in Terms Agreement on the screen, sir?

20       A    Yes, sir.

21       Q    Okay.  And what's the date of this

22   agreement?

23       A    February 24, 2013.

24       Q    All right.  So a year after the one we just

25   looked at; right?

1        A    Correct.  This is the renewal.

2        Q    Okay.  Tell me about this renewal, what you

3    remember.

4        A    From what I remember, the -- each agreement

5    was a term of one year so it was renewed each year.

6        Q    It was renewed each -- just as a matter of

7    course?

8        A    Yes.

9        Q    And -- okay.  And I see here it references

10   the original note, February 24, 2012, and then below

11   that it has a description of the collateral.

12            Do you see that?

13       A    Yes.

14       Q    And it's a security interest in the 1965

15   Shelby Cobra 427 with VIN Number CSX4501?

16       A    Yes.

17       Q    So at this point, the 1965 Shelby Cobra was

18   serving as collateral for this renewed loan --

19       A    Yes.

20       Q    -- correct?

21            Okay.  And this is February 24, 2013?

22       A    Correct, yes.

23       Q    And after this point, Mr. Stephenson, did

24   you continue -- you mentioned a minute ago that each

25   loan was a year for renewals.  Did you have more

1  changes in the principal or, I guess, the original loan

2  that you recall?

3       A    Initially, it included, again, the multiple

4  lots.  I believe it was two lots.  And at some point --

5  I don't recall the dates -- I had sold -- found buyers

6  for and sold the lots over a period of time.  I don't

7  know if it included this time period or not.

8       Q    Do you know, is it possible, because I

9  don't -- I'm not seeing the lots referenced in this

10  Change in Terms Agreement.  Is it possible that the

11  lots weren't added until subsequent years?

12       A    No, initially the loan from Extraco

13  initially included the two lots.  The Cobra became a

14  cherry on top for the bank.  Pardon the phrase.  But

15  initially the reason for the loan was for the lot

16  purchases or securing the lots.  The bank just wanted

17  more from me.

18       Q    Of course, they did.  Right?

19            When you say "cherry on top," do you mean

20  that was the extra item that pushed the loan over the

21  point of acceptability on the bank's part, basically?

22       A    Yes.  To my -- from my point of view, yes.

23       Q    So the lots were always included -- from the

24  bank's standpoint -- the bank's standpoint, the lots on

25  their own were not enough to warrant the loan?

1    A    Exactly.

2    Q    How did you come to meet -- when did you

3    first meet Jeff Mosing?

4    A    I -- while I was in Texas, approximately --

5    somewhere between 2009 and '11.

6    Q    And how did you go about -- or how did you

7    meet Mr. Mosing?

8    A    He became interested in one of the

9    Superformance cars that I was representing out of the

10    427 Legends operation in Texas.

11    Q    And that's Superformance?

12    A    Superformance, yes.

13    Q    Okay.  And do you remember what car it was

14    that he was interested in?

15    A    Initially, I think it was -- I sold multiple

16    cars to Jeff.  I believe the first one was a GT40.

17    Q    So you sold a GT40 to Mr. Mosing and his

18    auto dealership?

19    A    It was never his auto dealership to me.  It

20    was just Jeff.

21    Q    Okay.  Mr. Mosing.  A GT40?

22    A    Correct.  Which is a Superformance product.

23    Q    Okay.  And you mentioned that was one

24    vehicle that Jeff purchased.  Did he buy any others?

25    A    Yes.

Tracy Dean Stephenson

1      Q    Can you tell me the others?

2      A    I believe he bought three additional

3   vehicles from me.   One was a -- two of them were

4   Corvettes from the '60s, I believe.   One was a '66, and

5   one was a 1967.   And then he also bought a Shelby

6   Daytona Coupe from me.

7      Q    The Shelby Daytona Coupe is obviously a

8   different car than the Shelby Cobra; correct?

9      A    Correct.

10      Q    Did you ever purchase any cars from

11   Mr. Mosing?

12      A    No, I -- no.

13      Q    And do you -- is that the list of cars that

14   you remember, the GT40 -- other than the GT40, the two

15   Corvettes and the Shelby Daytona, do you recall him

16   buying any other cars from you?

17      A    No.

18      Q    And when I say "buying from you," was he

19   buying from you individually or were they in the name

20   of one of your companies?

21      A    The Superformance product cars, so the GT40,

22   was the company.

23      Q    Okay.

24      A    And then the others were individually.

25      Q    And the company, we're talking about

 1    Legendary?

 2        A    427 Legends.

 3        Q    This is 427 Legends by this point?

 4        A    Correct.

 5        Q    Do you remember, were those purchases from

 6    Mr. Mosing, were those made cash?  Was there some sort

 7    of a financing arrangement?

 8        A    The cars that Jeff purchased were not

 9    financed.

10        Q    Okay.  And you said -- and do you recall

11    when these transactions occurred?

12        A    I -- no, I do not.

13        Q    Okay.  You mentioned meeting him sometime in

14    the 2009-to-2011 time frame?

15        A    Correct.

16        Q    Do you believe that these transactions

17    probably all occurred in that same 2009-to-2011 time

18    frame?

19        A    Yes, I would say up to 2012.  Early 2012, I

20    believe.

21        Q    Okay.  Any other -- aside from those

22    transactions, did you ever have any other business with

23    Jeff Mosing?

24        A    I do not believe so, no.

25        Q    Okay.  Did you ever --

1    A    Could you repeat the question again?

2    Q    Sure.  Did you have any other -- and I'm not

3    trying to trick you -- did you have any other business

4    where you sold any vehicles or equipment to Jeff

5    Mosing?

6    A    No.

7    Q    Did you -- did you ever see Mr. Mosing, you

8    know, at any automobile functions or anything like

9    that?  Any trade associations or anything?

10    A    No.  I visited his collection in Austin, but

11    other than that, no.

12    Q    How many times did you visit the collection

13    in Austin?

14    A    A few times.  Less than six.

15    Q    And was his -- I guess his collection was

16    located at -- where his dealership is; correct?

17    A    Initially, no.  Ultimately, yes.

18    Q    Okay.  And even where they were initially,

19    was that maybe an hour from where you lived?

20    A    Correct.

21    Q    An hour's drive?

22    A    Correct.

23    Q    Okay.  So how did Mr. Mosing get involved in

24    the 472 Cobra SC?

25    A    I -- I was having a conversation with him

1    and proposed that -- I was trying to start up a new

2    framing business at the time and asked him if he would

3    be interested in helping me financially get that

4    started.  And ultimately it became -- we worked out

5    something to where he would hold the -- he would loan

6    me money to help get my business off the ground and

7    held the Cobra collateral.

8        Q    Okay.  Thank you.  And you said started a

9    new framing business.  Is that in the construction

10   context?

11       A    Yes.

12       Q    So this is something separate from the

13   automobile line of companies you had?

14       A    Correct.  I was closing down my automotive

15   businesses and getting back into construction.

16       Q    Why were you closing down your automotive

17   businesses?

18       A    The finances just didn't make sense.  The

19   market wasn't there for that type of product as much as

20   I needed it to be to support my family.

21       Q    And do you recall when you first approached

22   Mr. Mosing about what you termed as this loan

23   arrangement?

24       A    I do not.  I believe it to be a phone call,

25   but I do not specifically.

Tracy Dean Stephenson

1    Q    Okay.  But at this point in time when you're

2    discussing -- you know, when you're having these calls

3    or this call with Mr. Mosing, did you already have

4    possession of the Cobra?

5    A    Yes.

6        (Exhibit 4 was marked.)

7    Q    (By Mr. Gibbs)  Let me pull up -- we'll mark

8    this as an exhibit to your deposition.

9        This is an email.  Do you recognize -- I

10    guess, first of all, is this your email address at the

11    top?

12    A    Yes, it is.

13    Q    So is this an email that you sent to

14    Mr. Mosing?

15    A    Yes, it appears to be, yes.

16    Q    You can take a second to review it to

17    confirm that.

18    A    I have no doubts that I -- I do concur.

19    Q    Okay.  Thank you.  And this looks like an

20    email that you sent on April 19, 2012, at 7:24 p.m.

21    Central; correct?

22    A    Yes.

23    Q    And you wrote this email; right?

24    A    Yes, I don't doubt that.

25    Q    Do you recall -- so this is April 2012.  Do

1    you recall where you were when you wrote this email?

2        A    I do not.

3        Q    Okay.  Do you think you were in Texas?

4        A    I do not recall.  I think I was in Texas.

5        Q    But essentially what this email is and -- I

6    guess tell me and tell us what this email is.

7        A    Obviously, I'll take a chance to read it

8    real quick?

9        Q    Sure.  Can you see it when I scroll like

10   that?

11       A    Yeah, yeah.  That's perfect.  Okay.

12       Q    Okay.  There's just one more.

13       A    Okay.

14       Q    Did you get it?

15       A    Yeah, I don't understand the last part of

16   it, but it's probably not material.

17       Q    Do you see here where it mentions that

18   things are moving fast on your network business?

19       A    Yes.

20       Q    Is that one of your construction businesses?

21       A    No, I don't think this materialized.

22       Q    Okay.  What was this network business

23   supposed to be?

24       A    That's what I'm trying to figure out so I

25   can't comment.

Case No. 1:22-cv-00642-GPG   Document 8-1   filed 04/14/22   USDC Colorado   pg
Case:19-01211-MER   Doc#:60-2   Filed:10/21/20   275 of 621   Entered:10/21/20 18:22:43   Page36 of 78
Tracy Dean Stephenson
Pages 35



1       Q    Okay.  Fair enough.  You don't recall?

2       A    I don't know what the Hemridge lots of cash.

3   I do not recall.

4       Q    I'm wondering if -- is it a play on

5   hemorrhage maybe?  Maybe not?

6       A    I do not recall.

7       Q    Okay.  But you don't recall what this

8   network business is either?

9       A    I do not.

10      Q    Okay.  So just take it from the top real

11  quick.  It looks like you were memorializing perhaps

12  something that you and Mr. Mosing had already

13  discussed.  You mention you had a phone call with him,

14  and you're now putting something down in an email.

15          Does that sound fair?

16      A    Yes.

17      Q    Here's what you would like to work out, if

18  possible.  Those are your words so those are your

19  terms, Mr. Stephenson?

20      A    Correct.

21      Q    That you're proposing to Mr. Mosing?

22      A    Yes.

23      Q    It says here, "The purchase price of

24  $120,000 with an agreement that I can purchase the

25  Cobra back for up to a year or so."

Tracy Dean Stephenson



1          Does that sound --

2          A    Yes.  Sorry.

3          Q    That was part of your agreement?

4          A    That was part of my proposal.

5          Q    That was part of your proposal.  You're

6     right.  At this point, this is a proposal where

7     Mr. Mosing would purchase the car for $120,000;

8     correct?

9          A    Correct.

10          Q    But you could purchase the car back within

11     around a year or so at various prices?

12          A    Correct.

13          Q    Depending on how soon you could pay back the

14     money?

15          A    Correct.

16          Q    Okay.  And that's basically the gist of your

17     proposal here, is it not?

18          A    Correct.

19          Q    And then, of course, I'll keep reading.

20     "You would obviously take possession of the Cobra

21     immediately with the original MSO."

22          Why did you term it that way?  Why did you

23     say "You would obviously take possession of the Cobra

24     immediately"?

25          A    I think -- I don't recall specifically, but

Tracy Dean Stephenson

1    I recall from our conversation that he wanted to have

2    possession of the car.

3        Q    Okay.  So that was something you understood

4    to be an important element of this agreement?

5        A    Yes.

6        Q    Was him taking possession of the car?

7        A    Yes.

8        Q    And what about the original MSO?  What is

9    the importance of that?

10        A    The application -- well, we didn't have the

11    title yet physically in our hands so the next best

12    thing -- the only other physical document that I could

13    offer him at the time was the original MSO.  It wasn't

14    the title.  We didn't have the title yet, I don't

15    believe so, at this time.

16        Q    So is the MSO, that's something that comes

17    before the title?

18        A    Correct.  And -- yes.  And in the Shelby

19    industry they're collect -- I'm trying to search for

20    the word.  This is something you hold on to because

21    it's got Carroll Shelby's original signature.  It's

22    novelty.  After you get your title, people will frame

23    the original MSO.

24        Q    So it's got some novelty component to it,

25    but who prepares the MSO?

1      A     The manufacturer.  It's a manufacturer's

2   statement of origin.

3      Q     Okay.  And who is the particular

4   manufacturer for this?

5      A     Shelby Automobiles, Inc.

6      Q     And had you already discussed with

7   Mr. Mosing at this time that you didn't have the title

8   yet and that's why you were offering the MSO?

9      A     Yes, I believe so.  Yes.

10     Q     What happened after -- I guess just to --

11  the rest of the email looks like you're kind of

12  pivoting a little bit, discussing maybe further

13  business opportunities with Mr. Mosing, but nothing

14  else in the rest of this email directly relates to this

15  buyback agreement that you're proposing at the top of

16  the email; correct?

17     A     Yes.

18     Q     And do you recall what happened after you

19  sent that email?

20     A     I do not recall specifically what happened.

21  I believe we had another phone call and made the

22  arrangements to take care of it -- to execute.

23     Q     So you continued conversations with

24  Mr. Mosing about his purchase of the Cobra?

25     A     Yes, I believe so.

1      Q    And I'm sorry.  That email was

2   April 19, 2012.  Okay.

3           (Exhibit 5 was marked.)

4      Q    (By Mr. Gibbs)  Here is -- does this

5   document look familiar to you, Mr. Stephenson?

6      A    Yes, this is the executed one.  Yes.

7      Q    Does that look like the executed one?

8      A    Correct, yes.

9      Q    Okay.  And that's your signature at the

10  bottom?

11     A    Yes.

12     Q    Okay.  And so this is May 8, 2012; right?

13     A    Correct.

14     Q    So roughly a month after you sent the email

15  that we just looked at?

16     A    Yes.

17     Q    And do these terms look to be the same?  I'm

18  not sure they were included in the last email, but

19  basically the purchase price for Mr. Mosing is

20  $120,000; right?

21     A    Correct.  Back up one second.  We ended up

22  making it a loan, not a purchase, because again I

23  didn't have title at the time.  So we agreed on a loan,

24  and this is the agreement that we signed.

25     Q    And then the buyback period, again,

1    approximately a year.  So from May 2012, you had the

2    option of buying it back or acquiring it back until

3    May 9, 2013; right?

4        A    Correct.

5        Q    And what was your understanding of what was

6    going to happen if you did not pay him back by

7    May 9, 2013?

8        A    We didn't have discussions related to that;

9    but my hope was always -- my intent was always to

10    reacquire -- to pay Jeff off and re- -- take back

11    possession of the car.

12        Q    But you understood that in order to retake

13    possession you'd have to actually pay him back; right?

14        A    That was my understanding, yes.

15        Q    And then, again, you guys memorialize here

16    the agreement that Jeff would hold the MSO and the car

17    during the pendency of this period; correct?

18        A    Correct.

19        Q    And obviously it was important for

20    Mr. Mosing to obviously have possession of the car;

21    right?

22        A    It was important to Jeff, yes.

23        Q    And important -- and you also have --

24    considering that you had represented to him that you

25    did not have the title, it was also important that he

1    have the original MSO; right?

2    A    Yes.

3    Q    You said the MSO is the manufacturer's

4    statement of origin?

5    A    Yes.

6    Q    What other information -- you mentioned this

7    is kind of a collector's item.  What other information

8    is on the MSO?

9    A    Serial number, year, make, and model of the

10    vehicle.  Similar to information that would be on the

11    title.

12    Q    Is the MSO required to get a title?

13    A    Not necessarily.  From personal experience,

14    no.

15    Q    Is an MSO something that's unique to these

16    Cobras, or is it something that all vehicles -- we all

17    get MSOs whenever we buy a new car?

18    A    I don't have -- I'm not an expert in that,

19    but my understanding is that every manufacturer has

20    some document that ultimately becomes the information

21    that states use for titles.  But I'm not an expert.

22    Q    But in your experience, generally,

23    manufacturers will have some sort of a document that

24    contains the information you just mentioned, the serial

25    number, the car, that sort of thing?

1       A     Yes.

2       Q     You also mentioned they're somewhat unique

3   or -- I can't remember how you put it -- with regards

4   to Shelby Cobras?  They carry a little bit more weight?

5   Is that your understanding or your opinion?

6           MR. CONRARDY:  Objection.  Calls for legal

7   conclusion.

8       Q     (By Mr. Gibbs)  When I say "more weight," I

9   just mean why is the MSO more significant for the

10  Shelby Cobra replica?

11          MR. CONRARDY:  Calls for a legal conclusion.

12          You can answer.

13          THE DEPONENT:  Okay.  Carroll Shelby's

14  signature is valuable no matter what it's placed on.  A

15  napkin with Carroll Shelby's signature on it is worth,

16  probably today, $1,000.

17      Q     (By Mr. Gibbs)  Sure.  Anything else aside

18  from that?

19      A     Not my understanding, no.  They're unique

20  vehicles so the owners just take pride in any

21  documentation they have around these type of vehicles.

22      Q     And you said generally or -- I'm not trying

23  to mischaracterize.  But tell me again, in order to get

24  title, do you have to have the MSO?

25          MR. CONRARDY:  Objection.  Asked and

1    answered.

2           THE DEPONENT:  I'll answer.

3      Q    (By Mr. Gibbs)  Go ahead.

4      A    From personal experience, no, it's not

5    necessary to have an MSO to get a title.  Every state

6    has different rules.

7      Q    Is it preferable to have one?

8      A    My personal opinion, preferable, yes.

9      Q    So the date on this agreement again is

10   May 8, 2012.  We saw a minute ago, you borrowed money

11   from Extraco in February 2012.  Did you make -- did you

12   let Mr. Mosing know about any prior interest in the

13   vehicle?

14     A    I do not recall.

15     Q    By agreeing to let Mr. Mosing retain the MSO

16   and, of course, the Cobra itself, do you agree that

17   Mr. Mosing was within his right to assume that there

18   was no prior lien on the Cobra?

19          MR. CONRARDY:  Objection.  Calls for legal

20   conclusion and speculation.

21     Q    (By Mr. Gibbs)  In your experience in the

22   automotive industry, would you say that was fair for

23   Mr. Mosing?

24          MR. CONRARDY:  Same objection.

25          THE DEPONENT:  Would you mind asking the

1    question one more time?

2        Q    (By Mr. Gibbs)  Sure.  In your experience,

3    by agreeing to let Mr. Mosing retain the MSO and, of

4    course, retain the car itself during the pendency of

5    your agreement, do you agree that it was fair for him

6    to assume that there was no other lien on the Cobra?

7        MR. CONRARDY:  Same objection.

8        Go ahead and answer it, Mr. Stephenson.

9        THE DEPONENT:  I don't know what -- I'm not

10   sure how to answer that.  I don't -- this was eight

11   years ago.  I don't recall exactly what our discussions

12   were at the time.  He knew that the title was coming,

13   and we had discussed other things.  I don't know -- my

14   intent was that Jeff Mosing would pay off the bank.

15   Things didn't work out that way.  So my intention

16   was -- and whether we had a lengthy discussion of this

17   at the time, I don't recall.  But my intention was that

18   Jeff -- Jeff's loan to me at the time, a small portion

19   of that, would pay off the debt with the bank, which I

20   anticipated that to be 20- to $25,000.  But to answer

21   your question, fair?  Yes.  If he did not know or if we

22   did not have lengthy discussions, I would say yes, the

23   answer is fair.

24       Q    (By Mr. Gibbs)  Thank you.  Because you

25   don't recall telling him about any prior lien, do you?

 1        A    I don't recall discussions around that,

 2   whether we did or we did not.

 3        Q    Do you think that Mr. Mosing would have

 4   agreed to this agreement if he knew that there was a

 5   prior lien?

 6        A    Again, the intention was to pay off the

 7   prior lien, which should have been a low dollar

 8   amount --

 9        Q    Sure.

10        A    -- so -- so when we made this agreement, if

11   we had the discussion, the discussion would have been a

12   small portion of this is going to pay it off -- pay off

13   the portion that's held in security by Extraco.

14        Q    But you don't recall having that discussion,

15   do you?

16        A    I don't recall whether we did or we did not.

17        Q    I mean, I'm going to -- just because I don't

18   know if you answered this.  Do you think he would have

19   agreed to the agreement if he had known about any prior

20   lien?

21        MR. CONRARDY:  Objection.  Speculation.

22        Q    (By Mr. Gibbs)  In your opinion.

23        A    In my opinion, yes.

24        MR. CONRARDY:  Same objection.

25        THE DEPONENT:  In my opinion, yes, because

1    again, the amount that would have released this vehicle

2    should have been a small amount and he was loaning me

3    more than enough to make that happen.

4        Q    (By Mr. Gibbs)  So what you're saying is

5    that assuming that he even knew about the prior lien,

6    it would have been a very small amount to actually

7    release that lien compared to the $120,000 that he was

8    giving you?

9        A    Yes.

10        Q    Okay.  But again, at the time, you would --

11    he was under the impression that title was coming to

12    him; correct?

13        A    No.

14        Q    That's not correct?

15        A    You said, At "the time, he was under the

16    impression that the title was coming to him"?

17        Q    Well, you mentioned a minute ago -- I asked

18    you about -- you know, when I asked you about whether

19    or not he was, you know, whether or not he was fair to

20    assume there was no prior lien, I believe you said that

21    he knew title was coming.  Is that not accurate?  Is

22    that not what you said?

23        A    I believe he understood that title was in

24    the process and coming, yes.

25        Q    And where was -- as far as you know, where

 1    do you think he thought the title was coming?

 2        A    Could you ask that one more time?

 3        Q    Yeah.  I need to.  Where was the

 4    understanding that the title would be going.  If you

 5    said it was coming, it's sounding like it's in the

 6    process of being worked and issued.  Where would that

 7    title be going?

 8        A    Could you clarify?  When you say "where

 9    would that title be going," do you mean to him

10    specifically, like his address?

11        Q    Or to you.  No, just who would hold the

12    title?

13        A    I'm not sure how to answer that.

14        Q    Do you know one way or the other whether or

15    not Jeff had any reason to think that the title that

16    was apparently forthcoming was not free and clear of

17    any liens?

18        A    I just want to make sure I'm answering

19    correctly so, please, I'm sorry.  Say that one more

20    time.

21        Q    I'm trying to remember what I said.

22        A    Okay.  Me too.  I mean, I'm listening but --

23        Q    No, no, no.  You mentioned -- hold on.  You

24    mentioned that Mr. Mosing agreed to accept the MSO

25    because at this point in time there was no title;

1    correct?

2        A    Yes, correct.

3        Q    And -- however, there was an understanding

4    that title was forthcoming.  It was in the works;

5    right?

6        A    It's -- the understanding was that title was

7    in the works, yes.  There wasn't a specific

8    understanding that Jeff expected the M- -- sorry --

9    that Jeff expected the title from me, no.  What he had

10   for our agreement was this executed document,

11   possession of the car, with full intention that I was

12   going to pay him off and take back possession of the

13   car.  So there was not the intention -- the expectation

14   that he was going to have a title; but he was under the

15   understanding that it was in the process.

16       Q    Sure.  Okay.  That makes sense.  Because

17   this is -- again, you had just acquired the car --

18   right? -- a few months previously?

19       A    My understanding is that -- yes.

20           MR. GIBBS:  Okay.  I'm sorry, Madam Court

21   Reporter, did I make that last one an exhibit to the

22   deposition?  That will be Exhibit 4.

23           MR. CONRARDY:  Sorry to interrupt.  I think

24   this is Number 5.

25           MR. GIBBS:  Okay.  Thank you.

1          MR. CONRARDY:  No problem.

2          MR. GIBBS:  Okay.  So we'll make that

3   Exhibit 5.  Now is a good time for a ten-minute break.

4   Off the record.

5          (Recess from 11:18 a.m. until 11:30 a.m.)

6     Q    (By Mr. Gibbs)  Mr. Stephenson, we just took

7   a quick break, and we're back on the record.  You

8   understand you're still under oath; right?

9     A    I do, yes.

10     Q    Are you ready to proceed?

11     A    Yes.

12     Q    Okay.  Here's the agreement again, the

13   May 8, 2012, agreement.

14          Do you see that?

15     A    I do, yes.

16     Q    And you mentioned a minute ago before we

17   took a break, one of the things that's part of this

18   agreement and this and then the email we looked at

19   beforehand, was that there was the MSO but that title

20   was coming; correct?  Not necessarily to Mr. Mosing,

21   but that title was coming; right?

22     A    Correct.

23     Q    I want to look back at Exhibit 1.  Here it

24   says "Title" -- do you see my screen?

25     A    I do, yes.

Tracy Dean Stephenson

1    Q    "Title was issued March 8, 2012"; is that

2    right?

3    A    Yes.

4    Q    At this point you already had title;

5    correct?

6    A    I do not believe so.  There's a -- I do not

7    believe I had it in my hands at this time, no.  I

8    believe it was in process, in mail, I don't know how

9    that works; but it's not an instant issue.

10    Q    Do you recall what representations you made

11    to Mr. Mosing about the title?

12    A    I do not recall, no.

13        (Exhibit 6 was marked.)

14    Q    (By Mr. Gibbs)  Okay.  I will mark as

15    Exhibit 6 to your deposition this document.  And this

16    looks like check payments -- a check -- a front and

17    back of a check; correct?

18    A    Yes.

19    Q    And it looks like it's made by Jeff Mosing?

20    A    Yes.

21    Q    To 427 Legends?

22    A    Yes.

23    Q    On May 8, 2012?

24    A    Yes.

25    Q    And so is this the payment that was

1    contemplated by the agreement that we just looked at?

2        A    Yes.

3        Q    And what is 427 Legends again?

4        A    My Superformance dealership in Texas.

5        Q    And that's your company?

6        A    Yes.

7        Q    To which you are the sole -- or at least at

8    the time, were the sole member?

9        A    Yes.

10        Q    And did 427 Legends bank with American Bank

11    of Texas?

12        A    Yes.

13        Q    And where are they physically located?

14        A    Marble Falls, Texas.

15        Q    Did you direct Mr. Mosing to make the check

16    out to 427 Legends?

17        A    I must have.

18        Q    And is this -- I'm looking at the bottom

19    left picture.  Do you see this kind of endorsement

20    signature in the middle at the top?

21        A    Yes.

22        Q    Is that your signature, do you know?

23        A    No, it was not.

24        Q    Is that someone from the bank?

25        A    I couldn't say.

Tracy Dean Stephenson

1    Q    Okay.  But -- did you deposit this check?

2    A    Yes.

3    Q    Okay.  So this was the payment from

4  Mr. Mosing with regard to the Cobra?

5    A    This was the loan payment, yes.

6    Q    Now, I know you're calling it a loan

7  payment.  What -- if you failed to pay back this loan,

8  what would become of the car in your understanding?

9    A    From my personal understanding was that I

10  would lose possession of it.

11    Q    And that Mr. Mosing would keep possession of

12  it?

13    A    Yes.  Again, from my personal --

14    Q    Sure.  That's all I'm asking about is your

15  personal understanding?

16    A    Right.  I'm just saying that Jeff and I

17  didn't have a talk about "what if."

18    Q    I understand that, but just in the course of

19  this transaction --

20    A    Yes.

21    Q    -- that was the understanding; correct?

22    A    That was, again, my understanding, yes.

23    Q    Because he had the car and he had the MSO;

24  right?

25    A    Correct.



1     Q     And without repayment, in all likelihood

2     outside of something else, he's just going to hold on

3     to the car and the MSO; right?

4         A     That was my understanding, yes.

5         Q     Okay.  And you made deposit of this check at

6     the Marble Falls branch of this American Bank of Texas

7     in your recollection?

8         A     It appears to be correct, yes.

9         Q     So Mr. Mosing complied with his part of the

10    agreement; correct?

11        A     Yes.

12            (Exhibit 7 was marked.)

13        Q     (By Mr. Gibbs)  Okay.  Let me pull up

14    another document.

15            This is probably overkill, but here is what

16    appears to be a ledger from the 427 Legends bank.  Does

17    that appear -- does this look like that document to

18    you, sir?

19        A     Yes.

20        Q     And here there's a highlighted deposit on

21    May 9, 2012, of $120,000.

22            Do you see that?

23        A     Yes.

24        Q     Do you believe that's the same $120,000 that

25    we just saw in the check in the previous exhibit?

Tracy Dean Stephenson

1      A    It is, yes.

2      Q    Okay.  And then that same $120,000, that's

3   part of the agreement with Jeff Mosing?

4      A    Yes.

5      Q    Okay.  Thank you.  Then we can make this

6   Exhibit 7.

7           And, Mr. Stephenson, were you able to pay

8   Mr. Mosing back?

9      A    No.

10     Q    Okay.  Is that out of anything other than

11  just financial difficulties?

12     A    Financial difficulties was the result, yes.

13     Q    It had nothing to do with any bad blood

14  between you and Mr. Mosing?

15     A    No.

16     Q    Okay.  Just an inability to pay it back?

17     A    Correct.

18     Q    So we discussed earlier, Mr. Stephenson, we

19  kind of talked -- we looked at a promissory note and an

20  amended -- or a change to that note, I believe, from

21  the Extraco Bank.

22          Do you recall that?

23     A    Yes.

24     Q    I think you mentioned that was something

25  that was done on a yearly basis?

Case No. 1:22-cv-00642-GPG   Document 8-1   filed 04/14/22   USDC Colorado   pg
Case:19-01211-MER   Doc#:60-2   Filed:10/21/20   Entered:10/21/20 18:22:43   Page56 of 78

Tracy Dean Stephenson

Pages 55

1    A    Yes.

2    Q    Did you ever -- did you ever make Extraco

3  Bank aware of the agreement you had with Mr. Mosing

4  regarding the Cobra?

5    A    I do not believe so.  I do not -- sorry.  I

6  do not recall having conversations about that, no.

7    Q    And you don't recall telling Mr. Mosing

8  about the promissory note with Extraco Bank; right?

9    A    I don't recall specifically having that

10  conversation, whether we did or we did not.

11    Q    Do you recall what you used the funds you

12  received from Mr. Mosing for?

13    A    I do not recall specifically, no, but

14  business related.

15    Q    Did you use it to pay back the lien on

16  the -- with Extraco for the car?

17    A    I tried to.

18    Q    Were you ultimately unsuccessful?

19    A    Correct.  The bank wanted more from me than

20  I anticipated.  They wanted the entire note paid off,

21  whereas my expectation was it was going to be a small

22  amount.

23    Q    Did you ever -- did you ultimately pay off

24  the lien with Extraco?

25    A    Yes.

1    Q    Okay.  That was 2016; right?  We looked at

2    that a little earlier.

3    A    Yes.

4    Q    So your thinking was at the time of this

5    transaction that you would -- you never told anyone at

6    Extraco that you had tendered possession of the Cobra

7    and the MSO to Jeff Mosing?

8    A    I do not believe -- if I did or if I did

9    not.  I had a friend at Extraco Bank, an acquaintance.

10   I wouldn't say friendship but an acquaintance.  And we

11   had lunch, and that could have come up in conversation.

12   Whether it did specifically, I don't recall.

13   Q    You don't specifically recall that?

14   A    I do not.

15   Q    And, again, regarding what you call the loan

16   with Mr. Mosing, without the loan, as you call it,

17   being paid off, what did you expect Mr. Mosing to do

18   with the car?

19   A    Hold possession of it until such point that

20   I could pay it off, and my expectation was that if I

21   did not pay it off, then he would retain possession of

22   it.

23   Q    And as of today, you have not paid it off?

24   A    Correct.

25   Q    And you wouldn't expect him to give it back

1   to you without repayment; right?

2       A    Correct.

3           MR. GIBBS:  Okay.  Mr. Stephenson, I

4   appreciate your time.  I think that's all the questions

5   I have at this point.  I'll pass the witness.

6           MR. CONRARDY:  Thank you, Mr. Gibbs.  I have

7   a few follow-up questions, Mr. Stephenson.

8                   EXAMINATION

9   BY MR. CONRARDY:

10      Q    As you probably know, my name is Aaron

11  Conrardy.  I represent your bankruptcy trustee and

12  Stephen Peters, who is also the plaintiff in the

13  adversary proceeding.

14          The $120,000 check, why was it made payable

15  to 427 Legends instead of you personally?

16      A    I do not recall specifically.  I could say

17  that I think it was for -- I had mentioned that it was

18  for business-related expenses so given that it was

19  eight years ago -- more than eight years ago, thinking

20  back on it, it was related to the business expenses of

21  buying and selling -- purchasing chassis -- cars from

22  Superformance and selling them.  So I believe that's

23  where I used those funds at the time.

24      Q    Were there any discussions with Mr. Mosing

25  at the time you entered into the agreement to have

1    427 Legends sign the agreement?

2        A    I do not recall.

3        Q    Prior to entering into the agreement with

4    Mosing Autosports, where was the Cobra located?

5        A    It would have been in my possession in

6    Texas.

7        Q    Where in Texas?

8        A    The Kingsland address, I believe, is where I

9    was at that time.

10        Q    And how was the Cobra delivered to

11    Mr. Mosing?

12        A    I delivered it to Mr. Mosing.

13        Q    Did you drive it, or was it delivered on a

14    truck bed?

15        A    I pulled it in an enclosed trailer.

16        Q    Okay.  Has the Cobra ever been located in

17    Colorado?

18        A    No.

19        Q    The $120,000 check, payable to 427 Legends,

20    just walk us through the mechanics of how you got it.

21    I'm talking about were you in Mr. Mosing's office,

22    et cetera?

23        A    I don't recall specifically because I -- I

24    had met him on several occasions, either at his place

25    of business, his collection; or we met for several

1   lunches; and he's been to my place -- where I had cars

2   in Marble Falls.  I can't say specifically where the

3   exchange happened.

4       Q    Did he personally hand the check to you, or

5   was it delivered to you some other way?

6       A    I honestly do not recall.  He also had

7   someone that worked with him that I had interactions

8   with so I can't say specifically.  It was eight years

9   ago so I don't know for sure.

10       MR. CONRARDY:  All right.  Mr. Gibbs, could

11   you do me a favor and pull up Exhibit 1, which is the

12   Certificate of Title?

13       MR. GIBBS:  Yeah.

14       MR. CONRARDY:  Thanks.

15       MR. GIBBS:  Here you go.

16       MR. CONRARDY:  Thank you very much.

17       Q    (By Mr. Conrardy)  Okay.  Mr. Stephenson, so

18   this is the Certificate of Title that has been marked

19   as Exhibit 1.  In the -- so I just want to kind of run

20   through these dates.  So you purchased the vehicle in

21   December of 2011; is that correct?

22       A    Yes.

23       Q    And then in March of 2012, Extraco Bank got

24   a lien against the vehicle; is that right?

25       A    That's on another document.  I don't recall

1    the date.

2        Q    Okay.  So in the section of this title where

3    it says "First lienholder Extraco Bank," it says "Date

4    RCD."

5            Does that mean date received?

6        A    Tell me where you're looking.  I don't see

7    it.

8        Q    Do you see where it says "first lienholder"?

9        A    I see it now.

10        Q    And it says "Date RCD."  Do you believe that

11    "Date RCD" means date received?

12        A    It makes sense that it would, but I don't

13    know.

14        Q    Okay.  And then it says March 7, 2012, below

15    that; is that right?

16        A    Yes.

17        Q    Okay.  Is it possible that the bank got a

18    lien -- its lien noted on this title on March 7 of

19    2012?

20        A    Yes.

21        Q    Okay.  And then let's just keep that date

22    pinned in our mind, March 7, 2012, is the Extraco lien.

23            MR. CONRARDY:  And then, Mr. Gibbs, could

24    you bring up for me Exhibit 5, which is the agreement?

25            MR. GIBBS:  Yup.

1      Q    (By Mr. Conrardy)  Okay.  And when is this

2   agreement dated, Mr. Stephenson?

3      A    May 8, 2012.

4      Q    So May 8, 2012.  So you got a lien from

5   Extraco in March of 2012, and then a few months later

6   you entered into this agreement with Mr. Mosing.  Is

7   that a fair timeline?

8      A    Yes.

9      Q    Okay.  Have you ever purchased motor

10  vehicles before with a loan where the bank gets a lien?

11      A    Me personally getting a loan, yes.

12      Q    Yeah.  And when that happens, does the

13  lender hold the title until the loan is paid off, or do

14  you hold the title until the loan is paid off?

15      A    The lender would hold the title.

16      Q    Is that what happened here?  Extraco was

17  holding the title because it had a lien?

18      A    Yes.

19      Q    And is that why you were unable to deliver

20  the title to Mr. Mosing?

21      A    Yes.

22      Q    Okay.  Did you ever disclose to Mr. Mosing

23  the Extraco lien?

24      A    Again, I answered that earlier, and I

25  believe that we had discussions around I was using part

1    of this money to pay it off and I would need to get him

2    the title.  That's why he took possession of the MSO at

3    the time.

4         Q    Is it your impression that it was his

5    understanding that once the Extraco lien was paid off,

6    then you'd be able to deliver Mr. Mosing the title?

7         A    Again, that's why I was trying to be

8    careful.  I don't recall that specific conversation,

9    but in my eyes that's exactly the case.  His money was

10   to be used to pay off the Extraco, title would be

11   released, and then I would still -- well, Jeff didn't

12   actually anticipate getting the title from me.  The

13   anticipation was that I was still going to pay it off

14   and take back possession of it.

15         MR. CONRARDY:  And, Mr. Gibbs, can you bring

16   back Exhibit 1, the Certificate of Title?

17         MR. GIBBS:  Yup.  It is kind of tricky doing

18   it this way.

19         MR. CONRARDY:  Yeah.  I appreciate you doing

20   it for me.  Thank you.

21         MR. GIBBS:  I've got to make myself useful

22   somehow.

23         MR. CONRARDY:  I'll return the favor

24   tomorrow, I'm sure.

25         MR. GIBBS:  Okay.  There you go.

1      Q    (By Mr. Conrardy)  All right.  So I'm

2    looking at the right-hand side of this title,

3    Mr. Stephenson, where there's a handwritten notation

4    that says Extraco Bank, MA, and then Sherry Mitchell's

5    signature, and it's dated June 2, 2016.

6          Do you see that?

7      A    Yes.

8      Q    So that's when Extraco released its lien.

9    Is that your understanding?

10     A    Yes.

11     Q    Okay.  After Extraco released its lien, when

12    did you receive the original Certificate of Title?

13     A    Shortly thereafter.

14     Q    So maybe June, July, or August of 2016; is

15    that fair?

16     A    It's fair, yes.

17     Q    Okay.  And then did you have possession of

18    that original Certificate of Title until you filed for

19    bankruptcy?

20     A    Yes.

21     Q    And when you filed bankruptcy, what did you

22    do with that Certificate of Title?

23     A    I shared it with my attorney.

24     Q    Okay.  And then do you know was that

25    original Certificate of Title tendered to Mr. Peters?

1       A    Yes.

2       Q    And to the best of your information,

3   Mr. Peters still has that original Certificate of

4   Title?

5       A    I can't comment to that.  I have no idea

6   where it's at.

7       Q    Okay.  You discussed that you did a few

8   other transactions with Mr. Mosing, and I'm just going

9   to go through those briefly.  The first is you sold

10  Mr. Mosing -- or maybe it was one of the Mosing

11  entities -- a GT40.

12          Do you recall how much you sold that for?

13      A    I do not recall specifically, no.

14      Q    Okay.  Was -- did you provide Mr. Mosing or

15  one of his entities a Certificate of Title for that

16  sale?

17      A    No.  These new vehicles were sold on MSO.

18  So the answer would be no title but, yes, a

19  manufacturer's statement of origin.

20      Q    So walk me through that.  So for the GT40,

21  Mr. Mosing would give you X dollars, and in exchange

22  you would give him the MSO?

23      A    Correct.  And the vehicle.

24      Q    And the vehicle.  What about the '66

25  Corvette?

1    A    What's the question regarding it?

2    Q    When you sold the '66 Corvette to Mr. Mosing

3    or one of his entities, did you also give him a

4    Certificate of Title?

5    A    Yes, I did.

6    Q    Okay.  And then for the '67 Corvette, did

7    you also give Mr. Mosing a Certificate of Title?

8    A    Yes.

9    Q    Okay.  And for the Shelby Daytona Coupe did

10   you give Mr. Mosing a Certificate of Title?

11   A    Mr. Mosing?  No.  It would have been the

12   same situation as the MSO vehicles because it was -- it

13   was only on an MSO at the time.

14   Q    So the two vehicles that were on an MSO, you

15   had an MSO because you bought it as a dealer; is that

16   right?

17   A    Correct, yes.

18   Q    And you were selling it to Mr. Mosing as a

19   dealer; is that correct?

20   A    Not necessarily.  I was selling it to Jeff

21   Mosing.  Whether he held it personally or in his

22   business, I'm not aware.

23   Q    So if you would have sold the GT40 to me,

24   would you give me a title or would you give me the MSO?

25   A    You would be issued an MSO.

1      Q     And then what would I do with that MSO after

2   I get it to get title, in your understanding?

3      A     Depends on which state you're in.  Every

4   state is different.  Some states you would turn in that

5   MSO; some states you would not.

6      Q     Okay.

7      A     But the first customer -- the first owner of

8   the car would turn in whatever paperwork they have for

9   a Certificate of Title.  Dealers do not issue titles.

10      Q     So what I understand is if you're a dealer

11   and you're buying a car from a manufacturer, a car is

12   delivered to the dealer with an MSO; is that right?

13      A     Correct.

14      Q     Okay.  And -- but in the case of the Cobra

15   that's subject to this case, the title -- a Certificate

16   of Title had been issued in December of 2011; correct?

17      A     Yes.

18      Q     So at that point, the MSO was a novelty?

19      A     Yes.

20      Q     You wouldn't transfer title with an MSO at

21   that point.  Is that your understanding?

22      A     Yes.

23      Q     And in one of Mr. Mosing's discovery

24   responses, he asserts that you told him, "The MSO is

25   what you use to get title.  There is no title to the

1    car."

2         Did you make that statement at any time to

3    Mr. Mosing?

4    A    I do not recall making that statement.

5    Q    That's not like a statement you would make?

6    A    One more time, please?

7    Q    Does that sound like a statement you would

8    have made to Mr. Mosing?

9    A    No.

10         MR. GIBBS:  Object to hearsay.

11    Q    (By Mr. Conrardy)  Please answer the

12    question, Mr. Stephenson.

13    A    Time frame, please?

14    Q    At the time of the transaction in 2012 or

15    thereabouts, is that the type of statement that you

16    would have made to him?

17    A    No.

18    Q    So for this -- the Cobra at issue, how did

19    you get the Certificate of Title issued?

20    A    From the initial dealer.

21    Q    And remind me, who did you buy it from?

22    A    Sanderson.

23    Q    Oh, right.  And so when you bought it from

24    Sanderson, they gave you an MSO?

25    A    Correct.

Tracy Dean Stephenson

1    Q    Okay.  And then you took the MSO down to the

2  DMV, and they issued you a title?

3    A    Yes.

4    Q    Okay.  What do you think the value of this

5  car is?

6    A    Currently today?

7    Q    Yeah.

8    A    Give or take 175,000.

9    Q    What's that based off of?

10    A    I -- I'm just familiar with the market on

11  these cars.  I used to be very familiar with the market

12  on these cars.  I'm a little out of it today so I could

13  be wrong.

14    Q    Is there anything special or unique about

15  this car?

16    A    Yes.

17    Q    What is that?

18    A    It's the very first carbon-fibered body

19  Shelby 427 Cobra built.

20    Q    And why is that -- I'm a layman when it

21  comes to this stuff.  Why is that important?

22    A    All of these cars are unique and rare, and

23  that fact just makes it more unique and rare.

24    Q    So when you say "carbon fiber," is that the

25  frame or the body?

1      A    The body.

2      Q    Okay.  What are some other materials that

3  these Cobra bodies are made out of that would make it

4  less valuable?

5      A    They're also made out of aluminum and

6  fiberglass.  The fiberglass cars are the least

7  valuable.

8      Q    So in order of value from least to most, it

9  would be fiberglass body, aluminum body, and then the

10  most valuable would be carbon fiber?  Is that your

11  opinion?

12      A    Not necessarily.  Again, it comes down to

13  rarity.  Aluminum was the first material used for the

14  bodies, but they made more of them than carbon fiber.

15  So carbon fiber is unique but not original.  But given

16  the fact that there's less of them, it could

17  potentially change that.

18      Q    Thank you.  And I want to go back to one

19  line of questioning and finish it off, and then I'm

20  done.  Which is the other cars that you had sold to

21  Mr. Mosing, what was the general time frame of those

22  sales?

23      A    General time frame was from 2009 to 2012.

24      Q    Was this Cobra the last car that you sold to

25  Mr. Mosing, or did you sell him another car after that?

1      A    So you're saying -- you're using the

2   terminology "sold."

3      Q    Let's just use "transferred."  Yeah, sold --

4   you're right.  That's not the right word.

5          After Mr. Mosing took possession of the

6   Cobra, were there any other cars that you sold to him?

7      A    I do not believe so, but again it was a long

8   time ago so I'm not sure on the time frame.  But I

9   believe this one to be the last transaction.

10     Q    Okay.  The MSO that you provided to

11  Mr. Mosing for the Cobra, was that the original one you

12  received when you purchased the Cobra?

13     A    I believe so, yes.

14         MR. CONRARDY:  Okay.  I don't have any

15  further questions for Mr. Stephenson.

16         MR. GIBBS:  I just have a few follow-ups,

17  real briefly.

18                    EXAMINATION

19  BY MR. GIBBS:

20     Q    Mr. Stephenson, can you see my screen?

21     A    Yes.

22     Q    So when you put on here "Purchase price of

23  $120,000 with an agreement that I can purchase the

24  Cobra back for up to a year," what made you use this

25  language, "purchase price" and "purchase back," if your

1    testimony now is that this was a loan?

2        A    Again, this was the proposal of what I had

3    proposed to Jeff.  And then we had -- so to answer your

4    question, at the time -- at the time that we made --

5    okay.  So the intent was for him to purchase the car

6    and I would have the option to purchase it back.  A

7    month later, several weeks later, when we made the

8    transaction in the conversations leading up to, it

9    became a loan, again, because I didn't have the title

10   at the time.  And the anticipation was that I would pay

11   it off and reacquire.  So the whole purchase didn't

12   become -- the purchasing language wasn't relevant the

13   further along we got in the discussions.

14       Q    So it became a loan for one reason you just

15   said because you did not have title at the time; right?

16       A    Correct.

17       Q    You also mentioned because it became -- the

18   understanding would -- I guess, turned into a situation

19   where you would reacquire the car; right?

20       A    Yes.

21       Q    But even under this email, you still have

22   that option to reacquire the car; right?

23       A    Yes.

24       Q    Okay.  So that never -- that never left.

25   That never changed from the course of this April 19

Tracy Dean Stephenson                                          Pages 72

1    email to the May 12 agreement?

2        A    Correct.

3        Q    In some of the testimony with Mr. Conrardy

4    just now, you indicated that the MSO -- once -- once

5    the title of a car is issued, the MSO is basically

6    relegated to a novelty item.  Is that a fair

7    characterization?

8        A    Yes.

9        Q    So looking at your email here, part and

10   parcel of this proposal from you is that Mr. Mosing

11   would take possession of the Cobra with the original

12   MSO; right?

13       A    Yes.

14       Q    And then the Cobra would stay on the

15   original MSO until the agreement ends; right?

16       A    Yes.

17       Q    So it's fair to say that this original MSO

18   is a material part of this proposal; right?  And let me

19   rephrase that.

20           An important part of the proposal; correct?

21       A    Important part of the proposal, yes.  And

22   the -- follow-up?  Why?

23       Q    I'm sorry?

24       A    Sorry.  I wanted to make sure that he didn't

25   turn in the MSO for a title because the original MSO is

1    very valuable to these cars.  The last thing you want

2    to do is lose the MSO for the original car.

3        Q    That's because it has the original Carroll

4    Shelby signature on it for one reason?

5        A    Yes.  And ultimately it could also bring far

6    more value to the car down the road.  So it's important

7    that whoever owns these cars doesn't lose possession of

8    the original MSO.  That's the intent with -- the Cobra

9    would stay on the original MSO until the end.

10        Q    Okay.  I appreciate the clarification or the

11    explanation on that.

12            Do you think it also had meaning to

13    Mr. Mosing at the time as a title substitute?

14            MR. CONRARDY:  Objection.  Speculation.

15            THE DEPONENT:  Yeah, I can't say what it

16    meant to Jeff at the time.

17        Q    (By Mr. Gibbs)  Is the agreement up on your

18    screen, sir?

19        A    Yes.

20        Q    Okay.  Now, this is an agreement that was

21    memorialized almost a month after your email exchange

22    from April.  Is the word "loan" anywhere found in this

23    agreement?

24        A    I do not see it, no.

25        Q    The language is that Trac Stephenson may

1   reacquire the Cobra for a certain period; correct?

2      A   Yes.

3      Q   Which is consistent with your earlier email

4   from April; correct?

5      A   Correct.

6      Q   And, of course, Mr. Mosing would hold the

7   original MSO plus possession of the Cobra during the

8   period?

9      A   Yes.

10         MR. GIBBS:  Okay.  I think that's all the

11   questions I have.

12         MR. CONRARDY:  I don't have any further

13   questions.

14         MR. GIBBS:  Mr. Stephenson, thank you for

15   your time.

16         THE COURT REPORTER:  Can I have orders on

17   the record?

18         MR. CONRARDY:  I'll have a minuscript with

19   four to a page.  Just a PDF.  I don't need the

20   original.  And then the PDF exhibits as well.

21         MR. GIBBS:  Same here.

22         MR. NELSON:  Me as well.

23         (The deposition concluded at 12:11 p.m.)

24

25

1                          CHANGES AND SIGNATURE

2      PAGE LINE              CHANGE              REASON

3      _____

4      _____

5      _____

6      _____

7      _____

8      _____

9      _____

10     _____

11     _____

12     _____

13     _____

14     _____

15     _____

16     _____

17     _____

18     _____

19     _____

20     _____

21     _____

22     _____

23     _____

24     _____

25     _____

1          I, TRACY DEAN STEPHENSON, do hereby certify

2     that I have read the foregoing transcript and that the

3     same and accompanying amendment sheets, if any,

4     constitute a true and complete record of my testimony.

5

6

7                    _____

                     Signature of Deponent

8

       (  ) No amendments

9        (  ) Amendments attached

10

       Acknowledged before me this _____ day of

11

       _____, 2020.

12

13        Notary Public: _____

14        My commission expires _____

15        Seal:

16

17

18

19

20

21

22

23

24

25

76

1    STATE OF COLORADO)

2                        )ss.    REPORTER'S CERTIFICATE

3    COUNTY OF DENVER )

4        I, Shelly Findley, do hereby certify that I am a

5    Professional Shorthand Reporter and Notary Public

6    within the State of Colorado; that previous to the

7    commencement of the examination, the deponent was duly

8    sworn to testify to the truth.

9        I further certify that this deposition was taken in

10   shorthand by me at the time and place herein set forth,

11   that it was thereafter reduced to typewritten form, and

12   that the foregoing constitutes a true and correct

13   transcript.

14       I further certify that I am not related to,

15   employed by, nor of counsel for any of the parties or

16   attorneys herein, nor otherwise interested in the

17   result of the within action.

18       In witness whereof, I have affixed my signature

19   this 4th day of September, 2020.

20

21       My commission expires October 7, 2023.

22

23   _____

     Shelly Findley, Court Reporter
24   Notary ID:   984025312
     216 - 16th Street, Suite 600
25   Denver, Colorado  80202

# Exhibit C

Begin forwarded message:

**From:** CSXNUT <csxnut@yahoo.com>
**Subject: Shelby Cobra**
**Date:** April 19, 2012 at 7:24:17 PM CDT
**To:** Jeff Mosing <cajunairman@yahoo.com>

Hey Jeff,

Here is what I would like to work out if possible...

Purchase price of $120,000 with an agreement that I can purchase the Cobra back for up to a year or so.

If it takes 0-6 months, the buy-back price would be $130,000.
If it takes 6-9 months, the buy-back price would be $140,000.
If it takes 9-12 months, the buy-back price would be $150,000.

You would obviously take possession of the Cobra immediately, with the Original MSO.
The Cobra would stay on the Original MSO until our agreement ends.

I would ask that you not advertise it for sell but if you have a customer interested in a Cobra, we could offer to order a new Superformance or Genuine Shelby or even find them one which I could help with. You and I could split the profit on each Cobra ordered or Brokered (or whatever you feel is fair)

We could also order someone a GT40, the new Daytona Coupe or Corvette Grand Sport as well.

All orders would be through an existing Shelby/Superformance Dealer or directly through Shelby/Superformance themselves. Kirkham is also a great car which you could offer.

You would have to make sure that your business is not representing itself as a Dealer in any way however. Shelby American gets pretty upset about that.

But, if you have buyers, we can get the cars. That should not be a problem.

There is also money to be made on the Build-Out of the new cars. For example, we could get good prices from ROUSH, SHELBY, Performance Engineering, Keith Craft Engines & GM Performance Parts and leave the assembly to someone else.

If this interests you or if you have something else in mind, please let me know.

**MOSING 000007**



EXHIBIT

A
319

I would really like to do something right away... Things are moving really fast on my Network business. I am needing to Hem-ridge lots of cash to do it right!

Thanks Jeff

Trac Stephenson
512.755.9895

**MOSING 000008**

# Exhibit D

Agreement:

1965 Shelby 427 Cobra SC
CSX4501


May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013


Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.

Jeff Mosing

Trac Stephenson

ERIC  BEVERDING
(WITNESS)

# Exhibit E



*SHELBY AUTOMOBILES, INC.*

STATEMENT OF ORIGIN
FOR A CSX4000 SERIES COMPONENT VEHICLE

The undersigned authorized representative of **Shelby Automobiles, Inc.** hereby certifies that the new CSX4000 Series Component Vehicle consisting of the parts and components listed on invoice, and described below, is the property of **Shelby Automobiles, Inc.** and has been transferred on the date hereof to the following purchaser:

Sanderson Sales and Marketing
4000 Whistler Drive
Plano, TX 75093

| | | | |
|---|---|---|---|
| Date: | July 21, 2004 | Invoice No.: | 0501 |
| Trade Name: | Shelby Cobra 427 | Series: | CSX4000 |
| Model Year: | 1965 | Body Type: | 2 Dr. Roadster |
| Chassis No.: | CSX4501 | | |

The CSX4000 Series Component Vehicle is sold by Shelby Automobiles, Inc. without engine or transmission.

**Shelby Automobiles, Inc.** further certifies that this was the first transfer of such new CSX4000 Series Component Vehicle in ordinary trade and commerce.

Shelby Automobiles, Inc.

By _____
(Authorized Representative)
6755 Speedway Boulevard
Las Vegas, Nevada 89115

**MOSING 000001**

**EXHIBIT**
**B**
324

# Exhibit F

MOSIJE1    AM

## TEXAS LIABILITY INSURANCE CARD

| | | | |
|---|---|---|---|
| COMPANY PHONE NO. | COMPANY | ☐ COMMERCIAL | ☒ PERSONAL |
| 800-613-5207 | AIG | | |

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| 0003045637 | 10/14/15 | 10/14/16 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 1965 | SHELBY COBRA | CSX4501 |

AGENCY
TDC Risk Management
Amy J. Spengler
1440 Arrowhead Dr.
Maumee, OH 43537

AGENCY PHONE NO
877-545-2522

INSURED

Jeff Mosing

Po Box 26534
Austin, TX 78755

This policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy.

**SPANISH TRANSLATION**

**TRADUCCION DE ESPANOL**

---

### Tarjeta de Seguro de Responsabilidad de Texas
### Guarde esta tarjeta.

**IMPORTANTE:** Esta tarjeta o una copia de su póliza de seguro debe ser mostrada cuando usted solicite o renueve su:

- o registro de vehiculo de motor
- o licencia para conducir
- o etiqueta de inspección de seguridad para su vehículo.

Puede que usted tenga también que mostrar esta tarjeta o su póliza de seguro si tiene un accidente o si un oficial de la paz se la pide.

Todos los conductores en Texas deben de tener seguro de responsabilidad para sus vehículos, o de otra manera llenar los requisitos legales de responsabilidad civil. Fallo en llenar este requisito pudiera resultar en multas de hasta $1,000, suspensión de su licencia para conducir y de su registro de vehiculo de motor, y la retención de su vehículo por un periodo de hasta 180 días (a un costo de $15 por día).

### Texas Liability Insurance Card
### Keep this card.

**IMPORTANT:** This card or a copy of your insurance policy must be shown when you apply for or renew your:

- o motor vehicle registration
- o driver's license
- o motor vehicle safety inspection sticker.

You also may be asked to show this card or your policy if you have an accident or if a peace officer asks to see it.

All drivers in Texas must carry liability insurance on their vehicles or otherwise meet legal requirements for financial responsibility. Failure to do so could result in fines up to $1,000, suspension of your driver's license and motor vehicle registration, and impoundment of your vehicle for up to 180 days (at a cost of $15 per day).

ACORD 50 TX (2008/11)                    © 1991-2008. ACORD CORPORATION. All rights reserved.

**MOSING 000012**

EXHIBIT

E
326

# Exhibit G



05-09-12             $120,000.00



05-09-12             $120,000.00



05-09-12             $120,000.00



05-09-12             $120,000.00

COPY OF ORIGINAL      Item Count: 1    Amount Total: $120,000.00      COPY OF ORIGINAL

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS, | ) | |
| | ) | |
| Defendants. | ) | |

---

<div align="center">

**PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

</div>

---

COMES NOW Plaintiff M. Stephen Peters, chapter 7 trustee (the "Trustee"), by and through his counsel, Wadsworth Garber Warner Conrardy, P.C., and pursuant to L.B.R. 7056-1, Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56), responds to the *Amended Motion for Summary Judgment* (the "Motion for Summary Judgment") (Docket No. 60) filed by Defendants Jeffrey Mosing ("Mr. Mosing") and Mosing Autosport, LLC dba Mosing Motorcars ("Mosing Motorcars" together with Mr. Mosing, the "Defendants") and submits his *Cross-Motion for Summary Judgment* (the "Cross-Motion"). In support of Trustee's response to the Motion for Summary Judgment and his Cross-Motion, he states as follows:

<div align="center">

1

</div>

## I.   <u>INTRODUCTION</u>

At its heart, this is a garden variety motor vehicle lien avoidance action that the Court has seen countless times.  Defendants loaned $120,000 to Debtor to be secured by a high-end custom 1965 Shelby Cobra.  Defendants never perfected their lien on the Cobra by having the Colorado Division of Motor Vehicles issue a Certificate of Title notating the lien.  Now, six years after the loan, and contrary to written documents signed by Defendants, they are trying to recast the transaction as a sale.  The tool that Defendants are using to recast the transaction is the imposition of a construction trust.

Courts are very critical of constructive trusts and for good reason.  They are often used, not to rectify a fraud, but to re-engineer a transaction for the benefit of the Defendants.  The imposition of constructive trusts has serious policy implications in the context of a bankruptcy case because it upsets administration of the estate by taking an asset that is available to all creditors and removing it from the estate.  Moreover, the secret nature of a constructive trust is doubly concerning because creditors have no way of learning of the constructive trust.  Frequently, the constructive trust makes its first appearance as a defensive maneuver in the bankruptcy case to shift an asset to one creditor to the detriment of all creditors.

That is exactly what is happening here.  As the Court will see below, Defendants' evidence in support of their constructive trust claim comes nowhere close to proving actual fraud.  If anything, the contradictory evidence calls into serious doubt Defendants' credibility.  Moreover, by the Defendants' own admission, the transaction was a fair deal, making it impossible for Defendants to satisfy the unjust enrichment element.

The constructive trust issue may be moot, however.  If the court adopts the majority view

2

that constructive trusts are avoidable under § 544, then the Trustee wins no matter what.  Either he avoids and recovers the constructive trust, or if there is no constructive trust, he avoids the unrecorded security interest or ownership interest in the Cobra.  Either way, the Cobra is recovered for the benefit of the estate.

Despite being a sophisticated motor vehicle dealer, Defendants never notated their lien on the Certificate of Title and never took any steps to perfect an ownership interest.  It is well established that under such circumstances, Trustee avoids the unrecorded security interest or ownership interest and recovers the Cobra for the benefit of the bankruptcy estate.  Any other outcome would be rewarding Defendants for their lack of diligence and shifting the burden of their mistake to the creditors of this case.

## II.   RESPONSE TO MOTION FOR SUMMARY JUDGMENT

### A.  Statement of the Burden of Proof

Trustee does not contest Defendants' statement of the burden of proof set forth in Defendants' section in the Motion for Summary titled "Summary Judgment Standard."

### B.  Statement Regarding Defendants' Material Undisputed Facts

Trustee responds to Defendants' numbered facts set forth in Defendants' section of the Motion for Summary Judgment titled "Relevant Factual Background" as follows:

4.    Admit.

5.    Admit.

6.    Admit.

7.    Admit.

8.    Admit.

3

9.      Trustee admits that Mosing Motorsports holds a motor vehicle dealer license in Texas, but denies the remaining allegations.  Mr. Mosing does not hold a motor vehicle dealer license in his individual name.  <u>Exhibit A</u> at 17:12-22.  Only Mosing Motorsports is a licensed Texas motor vehicle dealer.  <u>Exhibit A</u> at 17:12-22.

10.      Admit.

11.      Trustee denies that Mosing became a certified Superformance dealer in either 2015 or 2016.  *Mosing Motorsports*, not Mr. Mosing, became a certified Superformance dealer in either 2015 or 2016.  <u>Exhibit A</u> at 18:8-22.  Trustee admits the balance of paragraph 11.

12.      Trustee denies the allegation that "Stephenson was the Texas licensed dealer at the time."  The evidence supporting the allegation is hearsay and it is vague.  It is unclear whether the alleged fact is whether Debtor was a Texas licensed motor vehicle dealer or a Superformance dealer.  Trustee admits the balance of paragraph 12.

13.      Admit.

14.      Trustee denies the allegation of "whichever applied" because it calls for a legal conclusion.  Trustee admits the balance of paragraph 14.

15.      Trustee denies the allegation that title was transferred by the MSO because it calls for a legal conclusion.  Trustee admits the balance of paragraph 15.

16.      Admit with the clarification that ownership of the subject vehicles was transferred with certificates of title not simply "title."  <u>Exhibit A</u> at 53:9-11.

17.      Trustee denies the ownership of the subject vehicles was transferred with the MSO because it calls for a legal conclusion.  Trustee admits the balance of paragraph 17.

18.      Deny.   As set forth in more detail in the Additional Facts section below,

4

characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

19.     Deny.   As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

20.     Exhibit C speaks for itself.  As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

21.     Deny.  The testimony is taken out of context.  As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

22.     Deny.  Argumentative.  As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

23.     Deny.  Argumentative and mischaracterizes the testimony.  In the testimony cited by Defendants, Debtor stated that the Exhibit C email was a *proposal*.  Exhibit B at 36:3-18.

24.     Admit.

25.     Admit.

26.     Admit.

27.     Deny.  Calls for legal conclusion.

28.     Deny.  Hearsay, lack of foundation, speculative, and calls for legal conclusion.

29.     Admit.

5

30.    Admit.

31.    Admit.

32.    Deny.  Argumentative.  The Agreement, which is <u>Exhibit D,</u> is silent as to whether Debtor "would lose any rights to the Cobra."

33.    Trustee denies that the Agreement, which is <u>Exhibit D,</u> is a memorialization of the email proposal at <u>Exhibit C</u>.  Not only do the proposed terms in the email and the actual terms in the Agreement contradict, but, as discussed in the Additional Facts section below, Mr. Mosing characterizes the transaction as a loan in numerous documents he subsequently signed.

34.    Deny.  The allegations are vague.  It is unclear which "document" Defendants are referring to.  As discussed in the Additional Facts section below, Mr. Mosing characterizes the transaction as a loan in numerous documents he subsequently signed.

35.    Admit.

36.    Deny.  The Agreement is ambiguous as to whether it is a loan or a purchase agreement.  However, as discussed in the Additional Facts section below, Mr. Mosing characterizes the transaction as a loan in numerous documents he subsequently signed.

37.    Deny.  The allegation mischaracterizes the testimony and the question at the deposition is subject to a form objection that was not cured by the attorney asking the question.

38.    Deny.  As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

39.    Deny.  Calls for legal conclusion and is argumentative.  As set forth in more detail in the Additional Facts section below, characterizing the transaction as a sale mischaracterizes the

facts and is inconsistent with documents signed by Mr. Mosing proving that the transaction was a loan.

40.    Admit.

41.    Deny.  Calls for legal conclusion.  There is contradictory, or a at a minimum vague, testimony regarding what the parties' expectations were with respect to turning over the Certificate of Title to Mr. Mosing.  <u>Exhibit B</u> at 44:9-23; 46:17-24; 47:23-48:15; 49:16-22.

42.    Deny.  Calls for legal conclusion, hearsay and is argumentative.  Additionally, both Debtor and Mr. Mosing characterized the MSO as a "novelty" or "collector's item."  <u>Exhibit A</u> at 32-20-22.  <u>Exhibit B</u> at 66:10-22.

43.    Deny.  Calls for legal conclusion.  There is contradictory, or a at a minimum vague, testimony regarding what the parties' expectations were with respect to turning over the title to Mr. Mosing.  <u>Exhibit B</u> at 44:9-23; 46:17-24; 47:23-48:15; 49:16-22.

44.    Admit.

45.    Admit.

**C.  <u>Additional Facts</u>**

Additional relevant material facts are set forth as follows:

1.    Trustee is the duly appointed chapter 7 trustee of the bankruptcy estate of Tracy Dean Stephenson ("Debtor"), Case No. 19-13565 MER.  First Amended Complaint ("Amended Complaint") (Docket No. 23) at ¶ 6; Amended Answer to First Amended Complaint ("Answer") (Docket No. 42) at ¶ 6.

2.    Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("Petition Date").  Amended Complaint at ¶ 9; Answer at ¶ 9.

7

3.      On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra motor vehicle, VIN CSX4501 ("Cobra").  *See* Certificate of Title attached hereto as <u>Exhibit 1</u>; <u>Exhibit B</u> at 14:20-15:1; 19:21-24.

4.      On March 8, 2012, the State of Colorado issued the Certificate of Title for the Cobra.  *See* <u>Exhibit 1</u>.

5.      The Cobra is titled in Debtor's name individually.  *See* <u>Exhibit 1</u>.

6.      Trustee is in possession of the Cobra's original Certificate of Title.  Aff. of Trustee at ¶ 3, which is attached hereto as <u>Exhibit 2</u>.

7.      Debtor used the Cobra as collateral for a $75,000 loan from Extraco Bank NA ("Extraco").  *See* <u>Exhibit 1</u>; <u>Exhibit B</u> at 21:14-22.

8.      Extraco's lien was noted on the Certificate of Title.  *See* <u>Exhibit 1</u>.

9.      Debtor paid of the Extraco loan and on June 2, 2016 Extraco released its lien against the Cobra.  *See* <u>Exhibit 1</u>; <u>Exhibit B</u> at 23:5-15.

10.     Mr. Mosing is the sole member and manager of Mosing Motorcars and has been since its inception.  <u>Exhibit A</u> at 13:16-14:13.

11.     Mosing Motorcars is a Texas motor vehicle dealership that specializes in the purchase, sale and consignment of high-end sports cars and specialty 4x4s.  <u>Exhibit A</u> at 14:18-24.

12.     Mosing Motorcars is a licensed automobile dealer in Texas.  <u>Exhibit A</u> at 17:12-19.

13.     Mr. Mosing, individually, is not a licensed automobile dealer in Texas.  <u>Exhibit A</u> at 17:15-17.

14.     Neither Mosing Motorcars nor Mr. Mosing have an automobile dealer license in

any other states.  Exhibit A at 17:20-22.

15.    Mosing Motorcars is a licensed dealer of Superformance automobiles.  Exhibit A at 18:8-22.

16.    Debtor operated his car dealership Legendary Motorsport, Inc. ("Legendary").  Exhibit B at 20:6-13.

17.    Legendary was a licensed motor vehicle dealer in Texas and Colorado.  Exhibit B at 20:6-16.

18.    427 Legends, LLC ("427 Legends"), of which Debtor was the sole member, was a licensed Superformance dealer in Texas.  Exhibit B at 9:22-23. 51:3-6.

19.    427 Legends was the rebranded version of Legendary for the Texas market.  Exhibit B at 9:8-11.

20.    The Exhibit C email was a proposal and the final agreement between the parties was reduced to an "Agreement" dated May 8, 2012.  Exhibit B at 36:3-18.

21.    In an "Agreement" dated May 8, 2012, either Mr. Mosing or Mosing Motorcars loaned Debtor $120,000.  See Exhibit D.

22.    The Agreement is the only written agreement between Mr. Mosing and Debtor regarding the Cobra.  Exhibit A at 36:11-15.

23.    The loan is evidenced by a $120,000 check payable to 427 Legends dated May 5, 2012 and written from an account bearing Mr. Mosing's name.  See Exhibit G.

24.    Mr. Mosing personally wrote the check including the notation in the memo line, and he signed the check.  Exhibit A 36:17-36:11, 37:7-11.

25.    The memo line on the $120,000 check states it is "for 1 YR. CAPITAL LOAN."

9

*See* Exhibit G (emphasis in original).

26.    On June 5, 2019, Mosing Motorcars executed a letter (the "June 5, 2019 Letter") stating that the $120,000 was a loan and the Cobra was collateral for the loan.  A copy of the letter is attached hereto as Exhibit 3; Amended Complaint at ¶ 14; Answer at ¶ 14.

27.    Specifically, the June 5, 2019 Letter states that "Per the attached agreement, let it be known that on May 8th, 2012, Trac Stephenson entered into an agreement *with Jeff Mosing to borrow* $120,000 and that Trac Stephenson put up as a *collateral* a 1965 Shelby Cobra 427 CSX 4501."  Exhibit 3 (emphasis added).

28.    The June 5, 2019 letter is signed by Kirk Winterrowd ("Mr. Winterrowd") as General Manager of Mosing Motorcars.  Exhibit 3.

29.    Mr. Mosing drafted the June 5, 2019 letter with Mr. Winterrowd.  Exhibit A 33:4-33:16.

30.    Mr. Mosing approved the June 5, 2019 letter and authorized Mr. Winterrowd to sign it.  Exhibit A at 33:17-21.

31.    Debtor made no payments to Defendants and Mr. Mosing never received the original Certificate of Title for the Cobra.  Exhibit 3.

32.    In Response to Request for Admission No. 3, Defendants admitted "that $120,000 was loaned to the Debtor according to a repayment schedule."    Attached hereto as Exhibit 4 is Defendants' Objections and Reponses to the Trustee's Combined Requests for Admissions, Interrogatories, and Requests for Production of Documents and Tangible Things (the "Discovery Responses").

33.    Defendants admit that they took no steps under either Colorado or Texas law to

10

338

either perfect a security interest or ownership interest in the Cobra. <u>Exhibit 4</u>, Requests for Admissions Nos. 5 through 8.

34.    On or around June 20, 2019, after Debtor's bankruptcy case was filed, Mr. Mosing completed paperwork to have the Texas Department of Motor Vehicles issue a Certificate of Title for the Cobra (the "DMV Application") in his name individually. A copy of the DMV Application is attached hereto as <u>Exhibit 5</u>; <u>Exhibit A</u> at 44:3-48:25.

35.    Mr. Mosing, and not Mosing Motorcars, is listed as the applicant in the DMV Application. <u>Exhibit 5</u>.

36.    Mr. Mosing signed the DMV Application in three places. <u>Exhibit 5</u>; <u>Exhibit A</u> at 47:18-21, 48:6-7, 48:18-19.

37.    In the DMV Application, Mr. Mosing states that "The [Cobra] was given as payment for a *loan*." <u>Exhibit 5</u> at MOSING 000004 (emphasis added).

38.    In the DMV Application, Mr. Mosing states that the current value of the Cobra is $150,000. <u>Exhibit 5</u> at MOSING 000004.

39.    Mr. Mosing did not submit the DMV Application to the Texas Department of Motor Vehicles. <u>Exhibit A</u> at 48:23-25.

40.    The Cobra has less than 1,000 miles. <u>Exhibit A</u> at 40:24-25.

41.    The Cobra is an authentic limited-edition carbon fiber body, which is an exact replica of the Cobras that Carol Shelby produced in the 1960s. <u>Exhibit A</u> at 41:7-12.

42.    Approximately five such vehicles were manufactured and, based upon the Cobra's VIN, it was either the first or second such vehicle manufactured. <u>Exhibit A</u> at 41:10-24.

43.    Both Debtor and Mr. Mosing testified that the MSO is a "novelty" or "collector's

item." <u>Exhibit A</u> at 32-20-22.  <u>Exhibit B</u> at 66:10-22.

44.  Regarding the Certificate of Title, Debtor testified that "[Mr. Mosing] knew the title was coming"; "I believe he understood that title was in the process of coming, yes"; "the understanding was that title was in the works."  <u>Exhibit B</u> at 44:9-23; 46:17-24; 47:23-48:15; 49:16-22.

### D.  <u>Documents</u>

Trustee does not dispute the authenticity and admissibility of <u>Exhibits C</u> through <u>G</u> attached to the Motion for Summary Judgment.

Trustee's additional exhibits include the following:

1.  <u>Exhibit 1</u> – Certificate of Title

2.  <u>Exhibit 2</u> – Trustee's Affidavit

3.  <u>Exhibit 3</u> – June 5, 2019 Letter

4.  <u>Exhibit 4</u> – Discovery Responses

5.  <u>Exhibit 5</u> – DMV Application

### E.  <u>Argument</u>

Defendants are trying to accomplish a seemingly impossible feat: have the Court enter summary judgment on an actual fraud claim in the presence of contradictory material evidence. The evidence is not just contradictory between Mr. Mosing and Debtor, Mr. Mosing contradicts himself in testimony, papers signed by him and written discovery responses.  Based upon the record before the Court, none of the evidence is clear, none of the evidence is convincing.  At most, the contradictory evidence demonstrates that Mr. Mosing is willing to change the story to suit his strategy and that the Court will need to hear testimony from Mr. Mosing and Debtor to

12

determine (a) whether false representations were made, (b) whether there was justifiable reliance on any false representations, and (c) whether Debtor acted with the requisite intent to deceive. Those determinations cannot be made here. The Motion for Summary Judgment should be denied.

> **1. Not only do Defendants fail to overcome the heightened clear and convincing evidence burden, but there are genuine issues of material fact that preclude summary judgment on Defendants' constructive trust claim.**

Under both Colorado and Texas law, a party attempting to impose a constructive trust has the burden of establishing the same by clear and convincing evidence. *Larson v. Chassee*, 168 Colo. 437, 442 (1969); *Putaturo v. Crook*, 653 F.2d 1027, 1029 (5th Cir. 1981) (applying Texas law). "Evidence is clear 'if it is certain, unambiguous, and plain to the understanding,' and it is convincing 'if it is reasonable and persuasive enough to cause the trier of facts to believe it.'" *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002) (internal quotations and citations omitted). In addition to this heightened burden, "Courts often cast a jaundiced eye on constructive trust claims in bankruptcy, because constructive trusts appear to be a form of 'secret lien' that prefers trust beneficiaries over other creditors." *In re Horton*, 618 B.R. 22, 26 (Bankr. D.N.M. 2020) (*citing United States v. Romani*, 523 U.S. 5217, 532 (1998) (noting the "strong policy objections to the enforcement of secret liens").

Consistent with the "strong policy objections to the enforcement of secret liens", "the modern trend in the case law strongly disfavors bankruptcy courts imposing constructive trusts on assets that otherwise would be estate property." *Id.* (internal quotations and citations omitted). Parties often assert constructive trusts for improper purposes. "[A] constructive trust should not be imposed merely to give effect to a prior agreement, but instead should be reserved for situations in which a party's misconduct gives rise to his unjust enrichment." *In re Fetman*, 567 B.R. 702,

13

706 (Bankr. E.D.N.Y. 2017) (*citing In re First Central Financial Corp.*, 377 F.3d 209, 216 (2nd

Cir. 2004).

The Court has already established that the constructive trust elements are identical in both

Colorado and Texas.  Order at Docket No. 38.  To impose a constructive trust, the Defendants

must show (1) breach of an informal relationship of special trust or confidence arising prior to the

transaction in question, or actual fraud, (2) unjust enrichment, and (3) tracing to an identifiable res.

*Id.* at p. 4.  Defendants are not alleging a breach of an informal relationship or special trust or

confidence arising prior to the transaction in question.  Instead, Defendants allege actual fraud.

Counterclaim at ¶ 94 (Docket No. 42); Motion for Summary Judgment at ¶ 51.

Conspicuously missing from Defendants' Motion for Summary Judgment is the application

of the common law elements of actual fraud.  This failure alone is grounds to deny the Motion for

Summary Judgment.  However, even if Defendants would have applied the elements of actual

fraud, they would have come up short.  The elements of actual fraud are:

> (1) the person makes a false representation of a past or present fact; (2) the fact was
> material; (3) at the time the representation was made, the person knew the
> representation was false; (4) the person made the representation with the intent that
> another person would rely on the representation; (5) the other person relied on the
> representation; (6) that other person's reliance was justified; and (7) the reliance
> caused damages.

*Shaw v. 17 West Mill St., LLC*, 307 P.3d 1046, 1047 (Colo. 2013); *See Ernst & Young, L.L.P. v.*

*Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Texas 2001) (same elements as Colorado, but

stated differently).

The determination of actual fraud depends upon a finding of wrongful intent.  *Shaw v. 17*

*West Mill St., LLC*, 307 P.3d at 1047 (wrongful intent implied in elements); *Archer v. Griffith*, 390

S.W.2d 735, 740 (Texas 1964) ("Actual fraud usually involves dishonesty of purpose or intent to

deceive"); *In re Thompson*, 555 B.R. 1, 11 (10th Cir. BAP 2016) (in the context of § 523 claims, "For fraud to be 'actual' fraud there must be wrongful intent. Constructive or implied fraud is not actual fraud.")

Defendants cannot satisfy the actual fraud elements of a constructive trust. At the outset, it is worth noting that Defendants have taken varying positions on the nature of the transaction depending on what goal they would like to achieve. These tactics call into question Defendants' veracity. Defendants' current position is that "Stephenson enticed Mosing to enter a sales transaction for a motor vehicle with an agreed purchase price and a specific buyback date." Motion for Summary Judgment at ¶ 51. However, this contradicts the following documents signed by Mr. Mosing and representations made by him:

1. The memo line on the $120,000 check states it is "for 1 YR. CAPITAL LOAN." *See* Exhibit G (emphasis in original).

2. The June 5, 2019 Letter states that "Per the attached agreement, let it be known that on May 8th, 2012, Trac Stephenson entered into an agreement *with Jeff Mosing to borrow* $120,000 and that Trac Stephenson put up as a *collateral* a 1965 Shelby Cobra 427 CSX 4501." Exhibit 3 (emphasis added).

3. In Response to Request for Admission No. 3, Defendants admitted "that $120,000 was loaned to the Debtor according to a repayment schedule." *See* Exhibit 4

4. In the DMV Application, Mr. Mosing states that "The [Cobra] was given as payment for a *loan*." *See* Exhibit 5 at MOSING 000004 (emphasis added).

The inconsistent and contradictory characterizations of the transaction by Mr. Mosing calls into question his credibility and create a genuine issues of material facts. Any representation made

15

by Mr. Mosing regarding the nature of the transaction, and by extension statements made to him by Debtor, is highly suspect. These factual issues are best resolved by the Court hearing testimony and weighing credibility.

Mr. Mosing's argument that Debtor represented that a Certificate of Title had not been issued raises similar issues. For instance, Debtor testified that "[Mr. Mosing] knew the title was coming"; "I believe he understood that title was in the process of coming, yes"; "the understanding was that title was in the works." Exhibit B at 44:9-23; 46:17-24; 47:23-48:15; 49:16-22. Again, this is contradictory testimony regarding a key issue. As such, summary judgment is inappropriate because the Court needs to hear the testimony, weigh evidence, and reach its own conclusion regarding the veracity of Mr. Mosing and Debtor's testimony. Accordingly, Defendants fail the first, second and third elements of proving actual fraud because it is currently impossible for the court to determine whether a false representation of a material fact was made. If the Court cannot identify what the precise false statements are, then it cannot evaluate remaining elements four, five, six and seven since those elements are predicated on there being a false representation.

With that said, the reliance element deserves some attention. Mr. Mosing asserts that he relied to his detriment on Debtor's alleged statement that there was not a Certificate of Title. This argument does not withstand scrutiny. Mr. Mosing testified that "I have the MSO that's all you need . . . that trumps anything that's out there" including a certificate of title. Exhibit A at 27:3-12. Mr. Mosing went on to testify that "I can go to the Texas DMV and obtain a title for that car. And as far as Texas cares, that's going to trump anything that's possibly out there previous." Id. Trustee disputes Mr. Mosing's legal conclusions and asserts that Texas would care very much that Colorado had issued a certificate of title for the Cobra. However, this statement goes straight to

16

Mr. Mosing's reliance.  Mr. Mosing did not rely on receipt of the Certificate of Title because he did not think it had any independent legal significance.  As the Court can readily see, Mr. Mosing has woefully failed to put on evidence of actual fraud that is either clear or convincing.

Mr. Mosing fails to satisfy the unjust enrichment element based upon Mr. Mosing's own papers.  There is no question that the Cobra is the genuine article and is worth at least $150,000. Exhibit A at 41:7-12; Exhibit 5 at MOSING 000004.  Mr. Mosing loaned Debtor $120,000, which was secured by a loan against the Cobra.  This was a fair deal that Mr. Mosing readily admits. Motion for Summary Judgment at ¶ 22 ("From Mosing's standpoint, the consideration was fair and reasonable").  There would be unjust enrichment if the Cobra was a fake.  But it is not.  The Cobra is the real deal.  Mr. Mosing simply failed to protect his security interest in the Cobra by noting his lien on the Certificate of Title and now wants to shift the burden of that mistake to the bankruptcy estate and other creditors.

Trustee admits that the third constructive trust element is satisfied.  However, Mr. Mosing's failure to satisfy the first two elements is fatal.  Instead of owning up to his mistake, Mr. Mosing is improperly using the constructive trust theory as a tool to give effect to the prior agreement and remedy Mr. Mosing's failure to perfect his lien against the Cobra by filing the appropriate paperwork with the Colorado Division of Motor Vehicles.  This mistake has been implicitly admitted by Mr. Mosing by his preparation of the DMV Application *over six years after the transaction*.  It is simply too late to remedy his failure to properly perfect the lien against the Cobra.

For the above reasons, the Motion for Summary Judgment should be denied.

### F.  Conclusion

The Motion for Summary Judgment should be denied because Mr. Mosing has fallen short of meeting the clear and convincing evidence standard.  Mr. Mosing relies on evidence that is easily contradicted by Mr. Mosing's own testimony, documents signed by Mr. Mosing and Debtor's testimony.  There can be no doubt that there are genuine issues of material fact that the Court will need to resolve at trial by weighing evidence and making credibility determinations.

### III.  CROSS-MOTION FOR SUMMARY JUDGMENT

### A.  The Burden of Proof

Trustee carries the burden of proving his claim under 11 U.S.C. § 544(a) by a preponderance of evidence.  *In re Davison*, 738 F.2d 931, 936 (8th Cir. 1984); *In re Bucholz*, 297 B.R. 593, 598 (Bankr. N.D. 2003).

Trustee carries the burden of proving his claim under 11 U.S.C. § 542(a) by a preponderance of evidence.  *In re Quality Health Care*, 215 B.R. 543, 549 (Bankr. N.D. Ind. 1997).

### B.  Elements of the Claims

1.  Trustee's Second Claim for Relief under 11 U.S.C. § 544(a):

Trustee has, as of the commencement of the case, "the rights and powers of, or may avoid any transfer of property of the debtor . . . that is voidable by" (1) a judgment lien creditor and (2) an execution lien creditor.  11 U.S.C. § 544(a).

2.  Trustee's Fifth Claim for Relief under 11 U.S.C. § 542(a):

11 U.S.C. § 542(a) requires an entity in possession, custody or control of property of the bankruptcy estate to "deliver to the trustee, and account for, such property, or the value of such

18

property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

3.      Related relief under 11 U.S.C. §§ 550 and 551:

"[T]o the extent that a transfer is avoided under section [544] of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . (1) the initial transferee." 11 U.S.C. § 550(a).

"Any transfer avoided under section [544] of this title . . . is preserved for the benefit of the estate . . . ." 11 U.S.C. § 551.

**C.  Material Undisputed Facts**

1.      Trustee incorporates herein his Additional Facts in his response to the Motion for Summary Judgment.

**D.  Documents**

1.      Trustee incorporates herein the Documents identified in his response to the Motion for Summary Judgment.

**E.  Argument**

A majority of Courts have held that constructive trusts are avoidable because they are effectively secret liens. Congress specifically amended what was to become § 544 to prohibit secret liens because they turn the Bankruptcy Code on its head by perverting estate interests and ultimately prejudicing creditors. Stated otherwise, constructive trusts are antithetical to the bankruptcy policies of orderly and fair distribution of assets to *all* creditors.

If the Court adopts the majority position, under any outcome, Trustee recovers the Cobra for the benefit of all creditors. If there is a constructive trust, it is avoided and Trustee recovers

the Cobra.  If there is no constructive trust, Defendants never perfected their security interest or ownership interest in the Cobra.  The Cobra is subject to strict certificate of title laws.  Failure to fully and completely comply with the laws results in a security interest or ownership interest not being perfected.  There are simply no defenses to non-compliance.  Under both Colorado and Texas law, if the lien is not noted on the Certificate of Title, it is avoidable by Trustee.  If an ownership interest is not noted on the Certificate of Title, it is avoidable by Trustee.

> **1. A majority of Courts have held that constructive trusts are avoidable pursuant to Trustee's strong-arm powers.**

In a case similar to this one, the Honorable Elizabeth E. Brown, after extensively analyzing the circuit split, held that a trustee may avoid an equitable lien or constructive trust pursuant to § 544(a).  *In re Richards*, 275 B.R. 586 (Bankr. D. Colo. 2002).  In *Richards*, debtor purchased a car with money borrowed from his friend.  *Id.*  at 588.  It was the intent of the parties that the friend would have a lien on the vehicle.  *Id.*   The friend failed to perfect the lien and trustee filed a complaint to avoid the lien under § 544.  *Id.*  The court engaged in an extensive analysis of whether the friend's purported equitable lien or constructive trust claim may be avoided.  As stated by Judge Brown, the central issue was

> Can the equitable lien or constructive trust claim be avoided under Section 544 and, therefore, the asset be brought into the estate pursuant to Section 541(a)(3)?  Or does Section 541(d) prevent property in which a third party claims an equitable interest from becoming property of the estate?

*Id.* at 589.

Judge Brown rejected the minority view, espoused by Defendant, with a thorough and insightful analysis.

> The majority view is best exemplified by *In re Seaway Express Corp.,* 912 F.2d 1125 (9th Cir.1990), wherein the Ninth Circuit found no conflict between Sections 541(d) and 544(a). Congress amended Section 541(d) in 1984 to provide that its limitations would only apply to property otherwise brought into the estate through

20

Section 541(a)(1) and (2). In other words, amended Section 541(d) only places limits on whether beneficial interests of third parties are to be included in property of the estate through Sections 541(a)(1) and (2). It makes no reference to Section 541(a)(3), which continues to add to property of the estate any property recovered through exercise of the trustee's avoidance powers.

> Section 541(d) qualifies the trustee's right under § 541(a) to succeed to certain property interests possessed by the *debtor* at the time of the filing of his bankruptcy petition. In contrast, § 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various *creditors* and *transferees* of the debtor . . . and thereby insure[s] an equality of distribution among the debtor's general unsecured creditors.

*In re General Coffee Corp.,* 828 F.2d 699, 705 (11th Cir.1987) (quoting *In re Anderson,* 30 B.R. 995, 1009–10 (M.D.Tenn.1983)(emphasis added)). "Thus, §§ 541(d) and 544(a) should be construed to operate independently of one another." *In re Paul J. Paradise & Assocs., Inc.,* 249 B.R. 360, 367 (D.Del.2000). *See Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.1989).

*In re Richards,* 275 B.R. at 589-590.

Judge Brown identified the precise problem with the minority view. The problem is that the minority view does not correctly analyze the purpose of § 544(a), which is to cloak Trustee with hypothetical *creditor* rights and powers to avoid secret liens and level the playing field. The minority view construes Trustee's strong-arm powers too narrowly as being limited to the rights and powers of the *Debtor*. This is simply not the case. As stated by Judge Brown:

> What the minority loses sight of is the fact that these subsections of Section 541 actually operate cohesively to ensure that the property available for distribution to creditors of the estate is not diminished by the bankruptcy filing as opposed to what would be available to creditors outside bankruptcy. Sections 541(a)(1), (2) and (d) guarantee that the trustee will succeed to whatever rights the debtor had, no more and no less. Sections 541(a)(3) and 544(a) ensure that the bankruptcy creditors will be no worse off than if they had been allowed to exercise their rights under state law as judicial lien creditors on personal property or as bona fide purchasers of real property.

> Legislative history tells us that the strong-arm clause was added to the statute in 1910 in order to avoid "the evil of secret liens" which had been perpetuated by *York Manufacturing Co. v. Cassell,* 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782 (1906). The Court there held

21

> that an unfiled security interest, invalid under state law as to judicial
> lien creditors, was effective against the trustee in bankruptcy
> because the trustee was vested with no better title than the debtor.

> *In re Mill Concepts Corp.,* 123 B.R. at 943 (footnote omitted). While their operation
> in particular circumstances may exceed this expectation, the general intent of the
> several subsections of Section 541 is to preserve, rather than enhance, the state law
> rights of the various parties.

*In re Richards*, 275 B.R. at 589-590.

Accordingly, a sensible and cohesive interpretation of §§ 541 and 544 leads to the inescapable conclusion that equitable interests, such as Defendants' purported constructive trust claim, are avoidable by Trustee pursuant to § 544(a).

> **2.  Under either Colorado or Texas law, the Defendants' purported equitable interest in the Cobra is either unperfected or void and therefore may be avoided, recovered and preserved by Trustee.**

"Section 544 allows a trustee to step into the shoes of an "ideal creditor" in order to defeat the interest of a third party, if that interest could be defeated at the time of the bankruptcy filing under applicable non-bankruptcy law by: (1) a judicial lien creditor, per Section 544(a)(1); [or] (2) a creditor who executes or levies on the debtor's property, per Section 544(a)(2)." *In re Richards*, 275 B.R. at 588. Whether Defendants' interest in the Cobra is avoidable is determined by reference to state law. *Id.* at 591-592. Regardless of whether Colorado or Texas law applies, Trustee wins.

*Colorado Law*

Colorado's Certificate of Title Act (the "Colorado Act"), C.R.S. § 42-6-101, *et seq.*, operates as strictly as real property recording statutes to cut off unrecorded interests. *Id.* at 592. If the interest is not recorded on the face of the certificate of title, it can be defeated by a judgment lien or execution creditor. *Id.* C.R.S. § 42-6-120(1) provides as follows:

22

> [a] mortgage or refinancing of a mortgage intended by the parties to the mortgage
> or refinancing to encumber or create a lien on a motor vehicle, or to be perfected as
> a valid lien against the rights of third persons, purchasers for value without notice,
> mortgagees, or creditors of the owner, must be filed for public record.

C.R.S. § 42-6-120(1).

There is literally no defense to a creditor not noting its lien on the certificate of title. If the

certificate of title does not reflect the creditors' lien, it is unperfected and intervening creditors will

have a superior interest in the vehicle. *In re Moore*, 275 B.R. 390, 393 (Bankr. D. Colo. 2002)

("Under Colorado law, a security interest in a motor vehicle is *only* effective as a valid lien if it is

recorded and is noted on the certificate of title, C.R.S. § 42–6–120(1)" (emphasis in original)); *In*

*re Richards*, 275 B.R. at 592. The statute is so strict that a lender's possession of the certificate of

title will not perfect its security interest. *Taylor v. Colorado State Bank of Denver*, 440 P.2d 772,

774 (Colo. 1968).

Defendants readily admit they never applied to the Colorado Division of Motor Vehicles

to have a lien notated on the Cobra's Certificate of Title. Exhibit 4, Requests for Admission Nos.

5 through 8. There is no dispute that the original Certificate of Title in Trustee's possession does

not reflect Defendants' lien. Exhibit 1 and Exhibit 2. Accordingly, Defendants' lien in the Cobra

was not perfected and may be avoided, recovered and preserved for the benefit of the bankruptcy

estate pursuant to 11 U.S.C. §§ 544, 550 and 551.

The outcome is identical if the Court buys Defendants' after-the-fact story that Defendants

purchased the Cobra. The Colorado Act sets forth the exclusive manner in which title to the Cobra

may be transferred. *Codding v. Jackson*, 287 P.2d 976, 978 (Colo. 1955). Failure to strictly

comply means that the purchaser "cannot be considered a purchaser in good faith." *Id*. at 980.

Consequently, a purchaser without a certificate of title takes *subject to* all prior liens. *First Nat.*

*Bank of Ogallala, Neb. v. Chuck Lowen, Inc.*, 261 P.2d 158, 161 (Colo. 1953). Here, that would

23

mean taking subject to Trustee's hypothetical judgment lien and rights as an execution creditor.

The Colorado Act goes one step further and unequivocally provides that purchasers without a certificate of title have no rights in the transferred vehicle. C.R.S. § 42-6-109(1) provides as follows:

> . . . a purchaser or transferee does not acquire any right, title, or interest in and to a motor or off-highway vehicle purchased by the purchaser or transferee *unless and until he or she obtains from the transferor the certificate of title duly transferred in accordance with this part 1.*

C.R.S. § 42-6-109(1) (emphasis added).

C.R.S. § 42-6-110 provides, in pertinent part,

> The purchaser or transferee, within sixty days thereafter, shall present the certificate, together with an application for a new certificate of title, to the director or one of the authorized agents, accompanied by the fee required in section 42-6-137 to be paid for the filing of a new certificate of title . . . .

C.R.S. § 42-6-110.

To summarize, a purchaser of a motor vehicle has *no rights* in the vehicle unless and until the purchaser (a) receives an *original* certificate of the title from the seller, (b) presents that *original* certificate of title to the Division of Motor Vehicles within 60 days of the purchase, *and* (c) pays the requisite fee.

Defendants did not satisfy the requirements of the Colorado Act to perfect an ownership interest because they never obtained the Certificate of Title. Exhibit 3. Without the original Certificate of Title, it is impossible to present it to the Colorado Division of Motor Vehicles and pay the requisite fee. Accordingly, Defendants have no rights in the Cobra.

Defendants' argument that the MSO somehow imbued them with legal title to the Cobra enjoys no legal support. Once a certificate of title is issue, the MSO has no legal significance. *See* C.R.S. § 42-6-113(1) and (3). Additionally, Mr. Mosing implicitly acknowledges that the MSO

24

has no legal significance when he characterized it as a "collector's item."  Exhibit A at 32-20-22.

For the above reasons, Defendants' unrecorded interests in the Cobra, whether they are a security interest or an ownership interest, may be avoided, recovered and preserved pursuant to §§ 544(a), 550(a) and 551.

*Texas Law*

The outcome is no different under Texas law.  To perfect a security interest:

(a) Except as provided by Subsection (b), a person may perfect a security interest in a motor vehicle that is the subject of a first or subsequent sale *only* by recording the security interest on the title as provided by this chapter.

(b) A person may perfect a security interest in a motor vehicle held as inventory by a person in the business of selling motor vehicles only by complying with Chapter 9, Business & Commerce Code.

Tex. Code § 501.111 (emphasis added).

A lien is deemed recorded when:

(a)(1) the department's titling system is updated; or

(2) the county assessor-collector accepts the application of title that discloses the lien with the filing fee.

(b) For purposes of Chapter 9, Business & Commerce Code, the time of recording a lien under this chapter is considered to be the time of filing the security interest, and on such recordation, the recorded lienholder and assignees under Section 501.114 obtain priority over the rights of a lien creditor, as defined by Section 9.102, Business & Commerce Code, for so long as the lien is recorded on the title.

Texas Code § 501.113; *see also In re Clark Contracting Services, Inc.*, 399 B.R. 789, 798 (Bankr. W.D. Texas 2008) ("The Act expressly states that notation on the certificate of title equals perfection of the lien").

Defendants' security interest is not reflected on any certificate of title; therefore, it is an unperfected interest that is avoidable by Trustee pursuant to 11 U.S.C. § 544(a).  The inventory exception to Tex. Code § 501.111(b) does not alter the outcome because it still requires perfection

25

under Texas' Business and Commercial Code (Texas' Uniform Commercial Code) and the
Defendants have admitted that they took no steps under either Colorado or Texas law to either
perfect a security interest or ownership interest in the Cobra.  <u>Exhibit 4</u>, Requests for Admission
Nos. 5 through 8.

Defendants do not have an ownership interest in the Cobra because Defendants did not
comply with Texas statutes.  In *U.S. v. 1977 Porsche*, the Fifth Circuit, applying Texas law, held
that a sale of a motor vehicle that does not comply with Texas law is void.  *U.S. v. 1977 Porsche
Carrera 911*, 946 F.2d 30, 34 (5th Cir. 1991).  *U.S. v. 1977 Porsche* was a forfeiture action.
Hatchett transferred his Porsche to Turner to fund a $50,000 retainer.  *Id.* at 32.  After Turner took
possession of the Porsche, but before he applied for a certificate of title, the U.S. Government
notified Turner that the Porsche was subject to forfeiture and was subsequently seized.  *Id.* at 32-
33.  Turner challenged the forfeiture and seizure.  The Court acknowledged that Turner had
acquired an equitable interest in the vehicle; however, the failure to obtain a certificate of title
rendered the sale void because "[t]itle does not pass until the parties have complied with the
provisions of the Act."  *Id.* at 34.  While the sale between Hatchett and Turner may have been
valid, "[a]n owner's purported transfer of an automobile which does not comply with the Texas
Certificate of Title Act does not affect a third party's rights."  *Id.*  Accordingly, the U.S.
Government's seizure interest was superior to Turner's interest in the Porsche.  *Id.* at 35.

Perfecting an ownership interest in a motor vehicle is a multi-step process and failure to
strictly comply with every step results in the sale being void and title not passing.  Tex. Code
§ 501.073 ("[a] sale made in violation of this chapter is void and title may not pass until the
requirements of this chapter are satisfied.").  The first step is to obtain the Certificate of Title.  Tex.
Code § 501.0721 specifically requires that

26

[a] person, whether acting for that person or another, who sells, trades, or otherwise transfers a used motor vehicle shall deliver to the purchaser at the time of delivery of the vehicle a properly assigned title or other evidence of title as required under this chapter.

Tex. Code § 501-0721.

Here, the MSO was not "other evidence of title" because an MSO only applies to the first sale, *i.e.* the sale of a brand new car. Tex. Code § 501.025. This was not the first sale of the Cobra. The first sale occurred when Debtor purchased the Cobra on December 20, 2011. Exhibit 1. Accordingly, since this was a subsequent sale and the Certificate of Title had been issued, the only way to transfer title was for Debtor to endorse the Certificate of Title to Mr. Mosing and tender it to him.

The second step requires the buyers and seller to tender certain paperwork to the county or the department. Tex. Code § 501.017 provides as follows:

(a) Except as provided by Sections 503.036 and 503.039, a motor vehicle may not be the subject of a subsequent sale unless the owner designated on the title submits a transfer of ownership of the title.

(b) The transfer of the title must be in a manner prescribed by the department that:
(1) certifies the purchaser is the owner of the vehicle; and
(2) certifies there are no liens on the vehicle or provides a release of each lien on the vehicle.

Tex. Code § 501.017.

Section 503.036 is not applicable because it is predicated on a dealer transaction and receipt of the actual Certificate of Title. Here, Mr. Mosing never received the Certificate of Title. Exhibit 3. Additionally, Mr. Mosing individually, not his dealership, was the party to the transaction as evidenced by the $120,000 check being written from his personal account and the DMV Application wherein he requested that the Cobra be titled in his individual name. Exhibit G and Exhibit 5. Section 503.039 is not applicable because it only applies to public motor vehicle

27

355

auctions.

Since Defendants failed to obtain the original Certificate of Title *and* apply for a new title, they have no ownership interest in the Cobra.

For the above reasons, regardless of whether Defendants had an unrecorded security interest in the Cobra or an unrecorded ownership interest, neither were perfected and may therefore be avoided, recovered and preserved for the benefit of the bankruptcy estate pursuant to § 544(a), 550(a) and 551.

> **3. The Cobra is of consequential value or benefit to the bankruptcy estate and is therefore subject to turnover.**

As a result of Trustee's avoidance claims, all legal and equitable interests in the Cobra become property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(3).  The Cobra unquestionably has value to the bankruptcy estate.  The Cobra is worth at least $150,000 and has no liens.  *See* <u>Exhibit 1</u> and <u>Exhibit 5</u> at MOSING 000004.  Defendants must therefore deliver the Cobra to Trustee pursuant to 11 U.S.C. § 542(a).

## F.  <u>Conclusion</u>

Based upon the foregoing, Defendants' unrecorded interests in the Cobra, whether they be a security interest or an ownership interest, may be avoided, recovered and preserved for the benefit of the estate pursuant to § 544(a), 550(a) and 551.  As a consequence, the Court should compel Defendants to deliver the Cobra to Trustee pursuant to § 542(a).

Trustee therefore requests entry of a judgment in his favor and against Defendants (a) avoiding the transfers of the interests in the Cobra to Defendants, (b) recovering and preserving the Cobra for the benefit of the bankruptcy estate, and (c) compelling Defendants to deliver the Cobra to Trustee.

DATED this 29th day of October, 2020.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/ Aaron J. Conrardy
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
aconrardy@wgc-law.com
*Attorneys for Plaintiff M. Stephen Peters, chapter 7 trustee*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of October 2020, I served a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**, via CM/ECF to those persons listed below:

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

Jarrod Martin
Jarrod.martin@chamberlainlaw.com

/s/ Angela C. Garcia
For Wadsworth Garber Warner Conrardy, P.C.

29

319164

# STATE OF COLORADO
## CERTIFICATE OF TITLE
### ****MOTOR VEHICLE****

| | | | | |
|---|---|---|---|---|
| VIN<br>CSX4501 | YEAR<br>1965 | MAKE<br>SHE | MODEL | BODY<br>CV |

TITLE NUMBER
47E826370

ODOMETER
340      A

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage; WARNING
ODOMETER DISCREPANCY

MAIL TO

EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX  76528

CWT/CAP/SIZE
23

PREVIOUS TITLE
47E824155

FUEL
G

DATE PURCHASED
12/20/2011

OWNER
STEPHENSON TRAC D

DATE ACCEPTED
03/08/2012

DATE ISSUED
03/08/2012

FIRST LIENHOLDER
EXTRACO BANK NA
PO BOX 719
GATESVILLE     TX  76528

DATE RCD
03/07/2012

FILE NUMBER
001201631

AMOUNT OF LIEN
75,000.00

LIEN EXTENDED TO     COUNTY

MATURITY DATE
03/07/2022

Signature below certifies under penalty of
perjury in the second degree the release of the
first lienholder's interest in the vehicle.

*Extraco Bank NA*
Lienholder's Name

*Sherry Mitchell    6-2-16*
Authorized Agent's Signature     Date

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature     Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED,
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE
BARBARA BROHL

DATE DUPLICATE ISSUED

H8854186

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

REV. 1/18/10

VOID IF ALTERED

358

**TRANSFER OF OWNERSHIP/BUYER(S) REQUIREMENT**- Upon the sale or transfer of a motor vehicle the owner in whose name the certificate of title is issued shall execute a formal transfer of the vehicle. Within **60 days** the buyer shall present the certificate of title together with an application for title to an authorized agent pursuant to C.R.S. 42-6-110.

**TRANSFER OF OWNERSHIP/SELLER(S) REQUIREMENT**- When the owner of a motor vehicle transfers or assigns the certificate of title to a buyer, the registration of such vehicle shall expire and the seller shall remove the license plates pursuant to C.R.S. 42-3-115.

**ODOMETER CERTIFICATION** - Federal and state law requires the seller to declare the mileage of the motor vehicle and requires the buyer to acknowledge the mileage of the motor vehicle upon transfer of ownership. The seller and buyer are required to print and sign their name to acknowledge the mileage pursuant to 49 USC 327.

**THE SELLER(S) CERTIFIES, UNDER PENALTY OF PERJURY IN THE SECOND DEGREE, THAT THE SELLER(S) SIGNATURE(S) RELEASES AND TRANSFERS INTEREST IN THE VEHICLE AND THE ODOMETER READING AND DECLARATION ARE TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE.**

**NOTICE: ANY ALTERATION OR ERASURE MAY VOID THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW**

**ASSIGNMENT BY OWNER(S)**

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Signature Acknowledges Odometer Reading |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | Date of Sale | Buyer's Physical Address |
| Seller's Signature | Purchase Price | Buyer's City, State, ZIP |

**THE FOLLOWING REASSIGNMENT MAY ONLY BE USED BY LICENSED DEALERS.**

**1ST DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**2ND DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**3RD DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading (No Tenths) | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

NO ADDITIONAL REASSIGNMENTS PERMITTED [illegible]

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF M. STEPHEN PETERS

| | |
|---|---|
| STATE OF COLORADO | ) |
| | ) ss |
| COUNTY OF SUMMIT | ) |

I, M. Stephen Peters, being first duly sworn upon oath, state and aver as follows:

1.    I am the duly appointed chapter 7 trustee of the bankruptcy estate of Tracy Dean Stephenson ("Debtor"), Case No. 19-13565 MER.

2.    During the course of my administration of the bankruptcy case, Debtor caused to be delivered to me an original Certificate of Title for a 1965 Shelby 427 Cobra motor vehicle, VIN CSX4501, issued by the State of Colorado.

3.    I remain in possession of the original Certificate of Title.

4.    A true and correct copy of the original Certificate of Title is attached as <u>Exhibit 1</u> to *Plaintiff's Response to Defendants' Amended Motion for Summary Judgment and Plaintiff's Cross-Motion or Summary Judgment and Memorandum of Law in Support Thereof.*

5.    I am not aware of Defendants making any requests to inspect the original Certificate

of Title.

6.     The original Certificate of Title in my possession is authentic based upon the watermark, other security features, and the handwritten lien release.

M. Stephen Peters

Subscribed and sworn to before me this 29 day of October, 2020.  WITNESS my hand and official seal.

Notary Public

IVAN AYALA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20204035936
MY COMMISSION EXPIRES 10/14/2024



Per the attached agreement, let it be known that on May 8th 2012, Trac Stephenson entered into an agreement with Jeff Mosing to borrow $120,000 and that Trac Stephenson put up as collateral a 1965 Shelby Cobra 427 CSX4501.

Per the attached agreement, Trac Stephenson may re-acquire said Cobra for a period of one year ending May 9th 2013 per the following:
$130,000: May 9th 2012 ~November 9th 2012
$140,000: November 10th 2012 ~February 9th 2013
$150,000: February 10th 20 13 ~May 9th 2013

And per the attached agreement, Jeff Mosing is to hold the original MSO for the 1965 Shelby Cobra 427 CSX4501 and have possession of said Cobra during the agreement period.

If the agreement is not fulfilled by the dates set for in the agreement, Jeff Mosing is to retain possession and ownership of the 1965 Shelby Cobra 427 CSX4501.

As of this day, June 5, 2019, no payments have been made from Trac Stephenson to Jeff Mosing nor has the title for the 1965 Shelby Cobra 427 CSX4501 been sent to Jeff Mosing.

**Kirk Winterrowd**
**General Manager**
**Mosing Motorcars**

**2420 West Braker Lane Austin, Tx. 78758     (512) 821-9491www.mosingmotorcars.com**

Agreement:

1965 Shelby 427 Cobra SC
CSX4501


May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013


Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.



Jeff Mosing


Trac Stephenson

ERIC   BEVERDING
(WITNESS)

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | |
| | § | **Case No. 19-13565** |
| Debtor. | § | **Chapter 7** |

---

|  |  |  |
|---|---|---|
| **M. Stephen Peters, Chapter 7 Trustee,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Adversary No. 19-01211 MER** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars.** | § | |
| | § | |
| Defendants. | § | |

---

### DEFENDANTS' OBJECTIONS AND RESPONSES TO THE TRUSTEE'S COMBINED REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS

---

TO:   M. Stephens Peters, Chapter 7 Trustee
c/o Aaron J. Conrardy
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120

PLEASE TAKE NOTICE that Jeffrey Mosing and Mosing Autosport LLC *dba* Mosing Motorcars (collectively, "**Defendants**") hereby serves their Objections and Responses to M. Stephen Peters, Chapter 7 Trustee's ("**Plaintiff**" or "**Trustee**") Combined

---

Requests for Admissions, Interrogatories, and Requests for Production of Documents and

Tangible Things as follows:

Dated:        April 13, 2020

                            Respectfully submitted

                            By:  /s/ Jarrod B. Martin

                            Jarrod B. Martin
                            Texas Bar No. 24070221
                            Nicole E. Su
                            Texas Bar No. 24106476
                            McDowell Hetherington LLP
                            1001 Fannin Street
                            Suite 2700
                            Houston, TX 77002
                            P: 713-337-5580
                            F: 713-337-8850
                            E: Jarrod.Martin@mhllp.com
                            E: Nicole.Su@mhllp.com

                            ***Counsel for Jeffrey Mosing and Mosing
                            Autosport, LLC dba Mosing Motorcars***

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 13, 2020 a true and correct copy of the

attached Defendants' Responses to Plaintiff's Requests for Admissions, First Set of

Interrogatories, and Production was served upon the Plaintiff, through counsel, via email

at aconrardy@wgwc-law.com.

                            */s/ Jarrod B. Martin*
                            Jarrod B. Martin

## GENERAL OBJECTIONS

The following general objections apply to each individual interrogatory and document request and are expressly incorporated into each response.

1.      Defendants object to each and every interrogatory and document request to the extent that the request purports to impose obligations upon them in excess of those defined in the Federal Rules of Civil Procedure, this Court's local rules and practices, or any other legal obligation.

2.      Defendants object to each and every interrogatory and document request to the extent that it seeks information protected from discovery by the attorney–client privilege, work-product privilege, or any other applicable privilege, protection, or immunity from discovery. The inclusion of any such information in any response to the request does not constitute a waiver of such privilege or immunity. Furthermore, Defendants reserve the right to recall any document that has been produced inadvertently and that is otherwise protected by the attorney-client privilege, attorney work product doctrine, or by any other applicable privilege, protection, or immunity from discovery.

3.      Defendants object to each and every interrogatory and document request to the extent that it seeks that seeks confidential, private, or protected information of Defendants or third parties.

4.      As discovery is ongoing, Defendants reserve the right to amend or supplement their responses to each and every document request should additional responsive information be discovered or otherwise be made available to them.

5.      Any failure to repeat all or any part of a general objection in any specific response does not constitute a waiver or other relinquishment of that objection. Defendants specifically

reserve all rights at any time to revise, correct, supplement, or clarify the responses and objections propounded.

## RESPONSES TO FIRST REQUEST FOR ADMISSIONS

### REQUEST FOR ADMISSION NO. 1
Admit that the relief sought against You in the Complaint is not barred by the statute of limitations.

**RESPONSE:** Admitted.

### REQUEST FOR ADMISSION NO. 2
Admit the You did not request that Debtor provide You with the Certificate of Title.

**RESPONSE**: Denied.

### REQUEST FOR ADMISSION NO. 3
Admit that pursuant to the Agreement, You loaned Debtor $120,000.

**RESPONSE**: Defendants admit that $120,000 was loaned to the Debtor according to a repayment schedule.  Otherwise, denied.

### REQUEST FOR ADMISSION NO. 4
Admit that the Agreement does not identify the Vehicle as collateral for the Loan.

**RESPONSE**: Denied.

### REQUEST FOR ADMISSION NO. 5
Admit that You did not take the steps required to perfect a security interest in the Vehicle under Colorado law.

**RESPONSE**: Defendants admit that no steps were taken to perfect a security interest because of the Debtor's misrepresentations.  Otherwise, denied.

### REQUEST FOR ADMISSION NO. 6
Admit that You did not take the steps required to perfect an ownership interest in the Vehicle under Texas law.

**RESPONSE**: Defendants admit that no steps were taken to perfect an ownership interest because of the Debtor's misrepresentations.  Otherwise, denied.

**REQUEST FOR ADMISSION NO. 7**
Admit that You did not take the steps required to perfect an ownership interest in the Vehicle under Colorado law.

**RESPONSE**: Defendants admit that no steps were taken to perfect an ownership interest because of the Debtor's misrepresentations.  Otherwise, denied.

**REQUEST FOR ADMISSION NO. 8**
Admit that You did not take the steps required to perfect a security interest in the Vehicle under Texas law.

**RESPONSE**: Defendants admit that no steps were taken to perfect a security interest because of the Debtor's misrepresentations.  Otherwise, denied.

## DEFENDANTS' OBJECTIONS/ RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

1.    To the extent You denied, either in whole, or in part, any Request for Admission stated above, explain completely, without equivocation or qualification, and in detail Your reason for denying that Request for Admission.

   **RESPONSE:** Defendants incorporate by reference the general objections set forth above. Defendants further object to this interrogatory as compound and containing multiple discrete subparts.  Subject to and without waiving the foregoing general and specific objections, Defendants incorporate its responses to Requests for Admissions 1-8.

2.    Identify all persons who were consulted in connection with, or provided information or assistance concerning, the responses to these Combined Discovery Requests and provide separately, by paragraph number of the inquiry, the position or job title, together with a description of the nature of the consultation, or of the assistance or information provided, for each such interrogatory or request for admission on which assistance was provided.

   **RESPONSE:** Defendants incorporate by reference the general objections set forth above. Subject to and without waiving the foregoing objections, Defendants consulted with Jeffery Mosing, the defendant in this case and owner of Mosing Autosport.

3.    State completely and in detail the circumstances surrounding the Agreement, including the date, location, and details of each communication You had with Debtor, and the method of communication, whether it be written, oral, in person, by phone, by email, by text message, or by some other means.

   **RESPONSE:** Defendants incorporate by reference the general objections set forth above. Subject to and without waiving the foregoing objections, Mosing was approached by the Debtor because the Debtor was seeking capital for a new business venture.  On April 19, 2012, the Debtor emailed Mosing with the terms of the Agreement.  Mosing agreed to these terms and sent the Debtor a $120,000 check after receiving possession of the car.

4.    State completely and in detail the circumstances surrounding Your payment to 427 Legends of $120,000.00.

   **RESPONSE:** Defendants incorporate by reference the general objections set forth above. Subject to and without waiving the foregoing objections, Mosing sent the Debtor a check for $120,000 on May 8, 2012.

---

5.    State completely and in detail all monies received by You in connection with the
Agreement, the Vehicle, and the Loan from January 1, 2012 through the Petition Date.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above.
Subject to and without waiving the foregoing objections, to date, Defendants have not
received any money for the Vehicle.

6.    Identify every instance in which You have done business or conducted a transaction with
the Debtor, including a description of the transaction, the identify of all parties to the
transaction, a description of property involved, and the date, terms and status of the
transaction.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above.
Defendants object to this interrogatory in that it is overbroad, unduly burdensome, and
seeks information that is irrelevant and not reasonably calculated to lead to the discovery
of admissible evidence.  Further, Defendants object to this interrogatory in that it is vague
and overbroad as to time period and scope and seeks information that is not proportional
to the needs of this case.  Any transactions or agreements between the parties beyond this
Agreement are irrelevant.

7.    State completely and in detail the factual basis for all affirmative defenses identified in
Your Answer and Counterclaim.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF
No. 24) in which Defendants outline the factual basis for Defendants' constructive trust on
the Vehicle.

8.    State completely and in detail the factual basis for Your counterclaim identified in Your
Answer and Counterclaim.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF
No. 24) in which Defendants outline the factual basis for Defendants' constructive trust on
the Vehicle.

9.    State completely and in detail the factual basis for Your contention that You were
defrauded by Debtor.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF No. 24) in which Defendants outline the factual basis for the Debtor's fraud.

10.   State completely and in detail how the terms of the Agreement were arrived at including, without limitation, discussions with Debtor, the decision to structure the transaction as a purchase (as asserted in page 3 of Your Motion to Dismiss and paragraph 78 of Your Answer and Counterclaim), metrics used, and risks considered, and any discussions concerning insurance for the Vehicle.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Subject to and without waiving the foregoing objections, Mosing was approached by the Debtor because the Debtor was seeking capital for a new business venture.  On April 19, 2012, the Debtor emailed Mosing with the terms of the Agreement.  Mosing agreed to these terms and sent the Debtor a $120,000 check after receiving possession of the car.

11.   State completely and in detail the circumstances surrounding the transfer of possession of the Vehicle from Debtor to You, including the date of the transfer, the location of the transfer, and the identity of the individuals involved in the transfer.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Subject to and without waiving the foregoing objections, Mosing received possession of the Vehicle shortly before the funds were transferred to the Debtor on May 8, 2012.  The Debtor brought the Vehicle to Mosing Autosport in an enclosed trailer.

12.   State completely and in detail business arrangements You were involved in from January 1, 2011 to the Petition Date, relating to the acquisition of a motor vehicle or collateralization of a motor vehicle, including an explanation of how, in each instance, legal transfer of the title was accomplished in the case of a sale/purchase and/or how You secured Your interest in a motor vehicle as collateral in the case of a loan.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Defendants object to this interrogatory in that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Further, Defendants object to this interrogatory in that it is vague and overbroad as to time period and scope and seeks information that is not proportional to the needs of this case.  Any transactions or agreements between the parties beyond this Agreement are irrelevant.

13.    State completely and in detail any Communications you had with Debtor regarding the Certificate of Title and/or Manufacturer's Statement of Origin for the Vehicle, including a description of any requests You made for the same.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF No. 24) in which Defendants outline the factual basis of the transaction. Mosing asked the Debtor about a title for the Vehicle. The Debtor stated: "The MSO is what you use to get a title, there is no title to the car." Mosing relied on the Debtor's representations and did not make any further requests for the Vehicle's title.

14.    State completely and in detail the factual basis for Your assertion in Paragraph 78 of Your Answer and Counterclaim that "If you have a MSO, you cannot also have a title."

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF No. 24) in which Defendants outline the factual basis of the transaction. Mosing asked the Debtor about a title for the Vehicle. The Debtor stated: "The MSO is what you use to get a title, there is no title to the car." Mosing relied on the Debtor's representations and did not make any further requests for the Vehicle's title. In Texas, when an individual applies for a vehicle title, the individual must surrender the vehicle MSO to receive the title. Mosing relied on this process because the vehicle was in his possession in Texas.

15.    State completely and in detail any attempt You made to determine whether the Vehicle was encumbered by a lien. If no such attempt was made, so state and explain why no attempt was made.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF No. 24) in which Defendants outline the factual basis of the transaction. The Debtor offered Mosing the car and the MSO in exchange for the loan. Mosing asked the Debtor if the car was "free and clear" and the Debtor stated that the car was free and clear. Mosing relied on the Debtor's representation.

16.    State completely and in detail any attempt You made to perfect your security or ownership interest in the Vehicle. If no such attempt was made, so state and explain why no attempt was made.

**RESPONSE:** Defendants incorporate by reference Defendants' Motion to Dismiss (ECF No. 24) in which Defendants outline the factual basis of the transaction. Mosing asked the Debtor if the car was "free and clear" and the Debtor stated that the car was free and clear. Mosing relied on the Debtor's representation and did not seek to perfect any security or ownership interest in the vehicle.

## DEFENDANTS' OBJECTIONS/RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

1.    Produce all Documents and Communications to which You have referred or upon which You have relied in preparing Your answers to the foregoing Interrogatories.

**RESPONSE:** Defendants relied on the documents already produced in this matter (MOSING 000001-000012).

2.    Produce all Documents and Communications to which You have referred or upon which You have relied in preparing Your answers to the foregoing Requests for Admission.

**RESPONSE:** Defendants relied on the documents already produced in this matter (MOSING 000001-000012).

3.    Produce all Documents and Communications supporting or refuting Your affirmative defenses.

**RESPONSE:** All relevant documents supporting Defendants' affirmative defenses have already been produced in this matter (MOSING 000001-000012).

4.    Produce all Documents and Communications supporting or refuting Your counterclaim.

**RESPONSE:** All relevant documents supporting Defendants' counterclaim have already been produced in this matter (MOSING 000001-000012).

5.    Produce all Documents that You contend constitute, evidence, or reflect the agreement between You and Debtor regarding the Vehicle, including any revisions, alterations, or amendments thereto.

**RESPONSE:** All relevant documents relating to the Agreement have already been produced in this matter (MOSING 000001-000012).

6.    Produce all Documents and Communications exchanged between You and Debtor relating to the Vehicle, the Agreement, and the Loan.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

7.      Produce all non-privileged Documents and Communications exchanged between Mr. Mosing and Motorsports relating to the Vehicle, the Agreement, and the Loan.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

8.      Produce all non-privileged Documents and Communications exchanged between You and any third party relating to the Vehicle, the Agreement, and the Loan.

**RESPONSE:** Defendants object to this request as overly broad and not reasonably calculated to lead to discovery of admissible evidence.  Defendants further object that the request is vague as to time period and scope and seeks information that is not proportional to the needs of this case.  Subject to and without waiving the foregoing objections, all relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

9.      Produce all contracts, agreements or understandings and all documents evidencing the same between You and any third party relating to the Vehicle, the Agreement, or the Loan.

**RESPONSE:** Defendants object to this request as overly broad and not reasonably calculated to lead to discovery of admissible evidence.  Defendants further object that the request is vague as to time period and scope and seeks information that is not proportional to the needs of this case.  Subject to and without waiving the foregoing objections, all relevant documents have already been produced in this matter (MOSING 000001-000012).

10.     Produce all Documents and Communications relating to any payment of monies by You in connection with the Vehicle, the Agreement, and the Loan from January 1, 2012 through the Petition Date, including all communications between You and Debtor regarding who to make the Loan payable to.

**RESPONSE:** Defendants object to this request as overly broad and not reasonably calculated to lead to discovery of admissible evidence.  Defendants further object that the request is vague as to time period and scope and seeks information that is not proportional to the needs of this case.  Subject to and without waiving the foregoing objections, all

relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

11.      Produce all Documents and Communications relating to the receipt of monies by You in connection with the Vehicle, the Agreement, and the Loan from January 1, 2012 through the Petition Date.

**RESPONSE:** Defendants object to this request as overly broad and not reasonably calculated to lead to discovery of admissible evidence.  Defendants further object that the request is vague as to time period and scope and seeks information that is not proportional to the needs of this case.  Subject to and without waiving the foregoing objections, all relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

12.      Produce all Documents and Communications relating to the Certificate of Title.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

13.      Produce all Documents and Communications relating to the "Manufacturer Statement of Origin," as that term is used in Your Motion to Dismiss.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

14.      Produce All Documents and Communications between You and any person in connection with any and all business transactions identified in Interrogatory No. 6.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

15.      Produce All Documents and Communications evidencing supporting or refuting Your contention that You were defrauded by Debtor.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

16.    Produce all Documents and Communications that You contend evidence Your intent with regard to the Agreement, the Vehicle, and the Loan.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

17.    Produce all Documents and Communications concerning the transfer of possession of the Vehicle from Debtor to You.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

18.    Produce all Documents and Communications relating to insurance on the Vehicle, including but not limited to a copy of the insurance policy covering the Vehicle, evidence of premium payments in connection with that policy, and any agreements or understandings between You and Debtor relating to insurance on the Vehicle.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

19.    Produce all Documents and Communications exchanged between You and Debtor relating to the transactions referred to in paragraph 76 of Your Answer and Counterclaim.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Defendants object to this request in that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Further, Defendants object to this request in that it is vague and overbroad as to time period and scope and seeks information that is not proportional to the needs of this case.  Any transactions or agreements between the parties beyond this Agreement are irrelevant.

20.    Produce all non-privileged Documents and Communications exchanged between Mr. Mosing and Motorsports relating to the transactions referred to in paragraph 76 of Your Answer and Counterclaim.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Defendants object to this request in that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Further, Defendants object to this request in that it is vague and overbroad as to time period and scope and seeks information that is not proportional to the

needs of this case.  Any transactions or agreements between the parties beyond this Agreement are irrelevant.

21.    Produce all non-privileged Documents and Communications exchanged between You and any third party relating to the transactions referred to in paragraph 76 of Your Answer and Counterclaim.

**RESPONSE:** Defendants incorporate by reference the general objections set forth above. Defendants object to this request in that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Further, Defendants object to this request in that it is vague and overbroad as to time period and scope and seeks information that is not proportional to the needs of this case.  Any transactions or agreements between the parties beyond this Agreement are irrelevant.

22.    Produce all Documents that You intend to designate as exhibits at trial in this adversary proceeding.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

23.    Produce all Documents and Communications not previously produced that are in your possession, custody, or control and that you may use to support your defenses in this proceeding.

**RESPONSE:** All relevant documents and communications have already been produced in this matter (MOSING 000001-000012).

RECEIVED



JUN 24 2019

## Law Enforcement Identification Number

### Inspection

AUSTIN REGIONAL OFC

Texas Department
of Motor Vehicles

This form is void if not submitted within 30 calendar days of inspection.

### Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX4501 | 1965 | SHFB | CP | CSX |
| Title/Document Number (if available) | License Plate State and Number (if any) | | | |
| Manufacture Certificate of Origin 0501 | | | | |

### Owner/Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Tobias | | Mosing | |
| Address | City | State | Zip |
| 110 San Antonio St Apt 3130 | Austin | TX | 78701 |
| Email (optional) | Phone Number (optional) | | |

| Government-issued Photo ID Number or FEIN/EIN | Identification Type | State or Country | ID Expiration Date |
|---|---|---|---|
| REDACTED | Driver License | Texas | 2-13-2025 |

### Law Enforcement Auto Theft Inspection Report

This inspection covers (check ALL appropriate boxes):
☑ Motor Vehicle  ☐ Motorcycle Frame  ☐ Motorcycle Motor  ☐ Equipment
☐ Travel Trailer  ☐ Trailer*  ☐ Semitrailer*
☐ Vehicle part installed in owner/applicant's vehicle  ☐ Vehicle part not installed in owner/applicant's vehicle**

\* See "Trailer/Semitrailer Definitions" on page 2
\*\* Describe part in "Remarks – Explanation of Inspection" section below

#### Inspection Result(s) – Check all that apply

☐ Manufacturer did not assign an identification number
☐ Vehicle assembled from parts and no identification number was ever affixed to body (motor vehicle) or frame (motorcycle, travel trailer, trailer, or semitrailer)
☐ Original manufacturer's identification number has been removed, changed, or obliterated (see "Important" on page 2)
☐ Unable to determine the original manufacturer's identification number
☑ Found/determined the original manufacturer's identification number

#### Remarks – Explanation of Inspection

Upon inspection, provide an explanation of the results, including the original manufacturer's identification number if located/verified, and other applicable details

VIN verified as a Blue 1965 Shelby Cobra 427 model CSX4000 replica manufactured in 2004. Manufacturer applied Chassis Number CSX4501

Original manufacturer's identification number (if found)
CSX 4501

### Auto Theft Investigator Certification – State law makes falsifying information a third degree felony

I personally inspected the vehicle, part, or equipment described above, and if recorded results are true and accurate to the best of my knowledge. I certify I have received Texas Department of Motor Vehicles' authorized auto theft training and am employed with or assigned to (check applicable box to the right):

| | ☐ Municipal Police Auto Theft Unit |
|---|---|
| | ☑ County Sheriff's Auto Theft Unit |
| Carl Olavesen    6-20-19 | ☐ Texas Department of Public Safety Criminal Investigations Division |
| Signature of Investigator    Printed Name (Same as Signature)    Date | ☑ Auto Burglary and Theft Prevention Authority Task Force |
| 3479    SCATTF Manor, Travis    512-854-7409 | ☐ National Insurance Crime Bureau |
| Investigator's Official ID Number    Agency Name and City/County    Phone Number | |

### For Department Use Only

☐ TEX Assigned VIN  ☐ Motor Number  ☐ Reassigned Manufacturer's VIN  ☐ Equipment
☐ Trailer  ☐ Travel Trailer  ☐ Component Part (Motor, Frame, or Body)

| Number Assigned | Decal Control Number | Date |
|---|---|---|
| Printed Name of Clerk | Signature of Clerk | Regional Service Center |

VTR-68-A Rev 09/17

Page 1 of 2

MOSING 000002



**Texas Department of Motor Vehicles**

## Motor Vehicle Appraisal for Tax Collector
## Hearing / Bonded Title

### Information

This form may only be used to establish the value of a motor vehicle if the department is unable to establish the value by using the Standard Presumptive Value or from a national reference guide. Use of this form is strictly limited to establishing the value of a motor vehicle for use in a bonded title or tax assessor-collector hearing.

The appraiser must inspect the motor vehicle in person and provide all information requested in the "Appraiser Information" and "Appraisal Information" sections.

### Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX 4501 | 1965 | Shelby | 2dr | Cobra |

### Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffrey | Louis | Mosing | |

| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78255 |

| Email (optional) | Phone Number (optional) |
|---|---|
| jeff@mosingmotorcars.com | 512-771-0676 |

### Appraiser Information

Appraiser Type:
☐ Motor Vehicle Dealer    ☐ Insurance Adjuster

Motor Vehicle Dealer or Insurance License Number

Licensed Motor Vehicle Dealer or Insurance Company Name

| Appraiser's First Name | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Email | Phone Number |
|---|---|
| | |

### Appraisal Information

| Date of Appraisal | Vehicle Condition: ☐ Complete Vehicle    ☐ Incomplete Vehicle | Appraised Value $ |
|---|---|---|

Comments

### Appraiser Certification – State law makes falsifying information a third degree felony

I, the above listed appraiser, certify I have personally inspected the above described vehicle, have provided a fair market appraised value for the vehicle, and all statements contained herein are true and correct to the best of my knowledge.

| Signature of Appraiser | Printed Name (Same as Signature) | Date |
|---|---|---|

VTR-125 Rev 08/16    Form available online at www.TxDMV.gov    Page 1 of 1

**MOSING 000003**



## Bonded Title Application or Tax Collector Hearing Statement of Fact

Texas Department
of Motor Vehicles

### Vehicle Information

| | | | | |
|---|---|---|---|---|
| Vehicle Identification Number CSX 4501 | Year 1965 | Make Shelby | Body Style 2 dr | Model Cobra |
| Vehicle Purchased or Obtained From (Name of Individual or Entity) Trac Stephenson | Odometer Reading (no tenths) 3509 | Purchase Date 5/9/2013 | | Purchase Price $150,000 |

### Applicant(s) Information – Print name as it appears on photo identification

| | | | |
|---|---|---|---|
| First name or Entity Name) Jeffrey | Middle Name Louis | Last Name Mosing | Suffix (if any) |
| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |

| Address P.O. Box 26534 | City Austin | State Texas | Zip 78755 |
|---|---|---|---|
| Email (required if submitting this form by mail) jeff@mosingsMotorcars.com | | Phone Number (required if submitting this form by mail) 512-771-0676 | |

### Application Explanation

Provide an explanation for requesting a bonded title or tax assessor collector hearing.

The car was given as payment for a loan

### Application Questions – An answer must be provided to ALL questions

| | | Yes | No |
|---|---|---|---|
| 1 | Do you live in Texas? | ☒ | ☐ |
| 2 | Are you military personnel stationed in Texas? | ☐ | ☒ |
| 3 | Was the vehicle last titled in Texas? If no, a *Law Enforcement Identification Number Inspection* (Form VTR-68-A) is required. | ☐ | ☒ |
| 4 | Is the vehicle you are attempting to title an abandoned vehicle? | ☐ | ☒ |
| 5 | Is the vehicle subject to storage or mechanic's charges? | ☐ | ☒ |
| 6 | Is the vehicle subject to any type of foreclosure lien? | ☐ | ☒ |
| 7 | Is the vehicle you are attempting to title a nonrepairable vehicle? | ☐ | ☒ |
| 8 | Is the vehicle you are attempting to title a salvage vehicle? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) is required. | ☐ | ☒ |
| 9 | Is the vehicle involved in any pending lawsuits or disputes of ownership? | ☐ | ☒ |
| 10. | Are you in legal possession of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 11 | Are you in legal control of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 12. | Was the vehicle manufactured for sale or distribution in the United States by a motor vehicle manufacturer? If no, proof of compliance with U.S. Department of Transportation safety requirements is required or evidence the vehicle is an assembled vehicle. If newly assembled, "Yes" is required for question 13. | ☒ | ☐ |
| 13. | Is the vehicle an assembled vehicle from new or used part(s) or a kit that has not been previously titled? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) and an ASE inspection on Form VTR-64 or VTR-852 are required. | ☐ | ☒ |
| 14. | Is the vehicle complete? A motor vehicle (such as a passenger car or pickup truck) must have a motor, body, and frame. A motorcycle must have a motor and frame. A trailer must have a bed, frame, and axle assembly. An incomplete motor vehicle will not be titled. | ☒ | ☐ |
| 15. | Is the vehicle 25 or more years old? If yes, what is the current value of the vehicle? $ 150,000 | ☒ | ☐ |

### Certification – State law makes falsifying information a third degree felony

I, the above listed applicant(s), certify physical inspection of the vehicle identification number (VIN) was made and corresponds to the VIN provided above, and all other information provided on this form is true and correct to the best of my knowledge.

| | | |
|---|---|---|
| Signature of Applicant | Printed Name (Same as Signature) Jeffrey Louis Mosing | Date |
| Signature of Additional Applicant (if any) | Printed Name (Same as Signature) | Date |

VTR-130-SOF Rev 09/17    Form available online at www.TxDMV.gov    Page 1 of 2

MOSING 000004



**Texas Department
of Motor Vehicles**

# Application for
# Antique License Plate

| County Use Only |
| --- |
| License No _____ |
| Mo/Yr of Exp _____ |
| Date Issued _____ |

## Instructions

Submit the completed application; payment in the form of a personal check, money order, or cashier's check; and any required attachments to your local county tax assessor-collector's office. **Do not mail cash.** If you have not previously registered the vehicle in Texas, you must submit ownership evidence, proof of insurance if applicable, and the applicable fees before the license plate or plate tab can be issued.

If you order by mail, please contact your county tax assessor-collector's office in three weeks to verify your license plate is ready. Contact your county tax assessor-collector if you have any questions.

Vehicles at least 25 years old will be issued one Antique plate to be displayed on the rear of the vehicle for a five-year period. The fee is $50 if the vehicle was manufactured in 1921 or later; the fee is $40 if the vehicle was manufactured prior to 1921.

Instead of an Antique plate, the owner of an antique vehicle may use a license plate issued by this state that is the same year as the year model of the vehicle. The plate must have the original color scheme, and be in good, readable condition. If the original plate is approved by your local county tax assessor-collector's office, a plate tab with sticker will be issued to show the plate is valid.

Replicas of Texas license plates are not acceptable. Plates with an alpha-numeric pattern that are already in use, or qualifying license plates such as a Farm plate, Dealer plate, etc., will not be approved.

Proof of financial responsibility (insurance) is required at time of application, or a copy of the completed Texas Department of Public Safety (DPS) affidavit (DPS form SR-2).

## Applicant Information

| First Name | Middle Name | Last Name | Suffix | County |
| --- | --- | --- | --- | --- |
| Jeffrey | Louis | Mosing | | Travis |

| Address | City | State | ZIP |
| --- | --- | --- | --- |
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email | Phone Number |
| --- | --- |
| jeff@mosingmotorcars.com | 512-771-0676 |

## Vehicle Information

| Vehicle Identification Number | Current TX License Plate | Year | Make | Body Style | Empty Weight (lbs.) |
| --- | --- | --- | --- | --- | --- |
| CSX450I | | 1965 | Shelby | 2dr | |

Vehicle Type   ☒ Antique Auto   ☐ Antique Truck   ☐ Antique Motorcycle   ☐ Antique Bus

## Certification – State law makes falsifying information a third degree felony.

I certify I am the owner of the above-described vehicle, and as statutorily required, I also certify the frame, body, and motor are at least 25 years old; the vehicle is a collector's item that will be used solely for exhibition, club activities, parades, and other functions of public interest; it is not a replica or aftermarket vehicle; will not be used for daily transportation except when routine maintenance is needed; and will not carry advertising.

X _Jeffrey Louis Mosing_   Date _6-20-19_
Signature

Form VTR-54 Rev 1/2018          Form available online at www.TxDMV.gov          Page 1 of 1

## Application for Texas Title and/or Registration

| Applying for (please check one): | | | | TAX OFFICE USE ONLY | | |
|---|---|---|---|---|---|---|
| ☒ Title & Registration  ☐ Title Only  ☐ Registration Purposes Only  ☐ Nontitle Registration | | | | County _____ | | |
| For a corrected title or registration, check reason: | | | | Doc # _____ | | |
| ☐ Vehicle Description  ☐ Add/Remove Lien  ☐ Other: | | | | ☐ SPV  ☐ Appraisal Value $ | | |
| 1. Vehicle Identification Number  CSX450I | 2. Year  1965 | 3. Make  Shelby | 4. Body Style  2 dr. | 5. Model  Cobra | 6. Major Color  Blue | 7. Minor Color  Silver |
| 8. Texas License Plate No.  3509 | 9. Odometer Reading (no tenths) | 10. This is the Actual Mileage unless the mileage is:  ☐ Not Actual  ☐ Exceeds Mechanical Limits  ☐ Exempt | | 11. Empty Weight | | 12. Carrying Capacity (if any) |

| 13. Applicant Type  ☒ Individual  ☐ Business  ☐ Government  ☐ Trust  ☐ Non-Profit | 14. Applicant Photo ID Number or FEIN/EIN  REDACTED |
|---|---|

| 15. ID Type  ☒ U.S. Driver License/ID Card (issued by: Texas )  ☐ NATO ID  ☐ U.S. Dept. of State ID |
|---|
| ☐ Passport (issued by: _____ )  ☐ U.S. Military ID  ☐ U.S. Dept. of Homeland Security ID |
| ☐ U.S. Citizenship & Immigration Services/DOJ ID  ☐ Other Military Status of Forces Photo ID |

| 16. Applicant First Name (or Entity Name)  Jeffrey | Middle Name  Louis | Last Name  Mosing | Suffix (if any) |
|---|---|---|---|
| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |

| 18. Applicant Mailing Address  P.O. Box 26534 | City  Austin | State  Texas | Zip  78755 | 19. Owner County of Residence  Travis |
|---|---|---|---|---|
| 20. Previous Owner Name (or Entity Name) | City | State | 21. Dealer GDN (if applicable) | 22. Unit No. (if applicable) |

| 23. Renewal Recipient First Name (or Entity Name) (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| 24. Renewal Notice Mailing Address (if different) | City | State | Zip |

| 25. Applicant Phone Number (optional)  512-771-06676 | 26. Email (optional)  jeff@mosingmotorcars.com | | 27. Registration Renewal eReminder  ☐ Yes (Provide Email in #26) |
|---|---|---|---|
| 28. Vehicle Location Address (if different)  8990 Research blvd | City  Austin | State  Texas | Zip  78758 |

| 29. Multiple (Additional) Liens  ☐ Yes (Attach Form VTR-267) | 30. Electronic Title Request  ☐ Yes (Cannot check #29) | 31. Certified/eTitle Lienholder ID Number (if any) | 32. First Lien Date (if any) |
|---|---|---|---|
| 33. First Lienholder Name (if any) | Mailing Address | City | State | Zip |

| 34. Check only if applicable. | MOTOR VEHICLE TAX STATEMENT |
|---|---|
| ☐ I hold Motor Vehicle Retailer's (Rental) Permit No _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code §152.16[ ] |
| ☐ I am a dealer or lessor and qualify to take the Fair Market Value Deduction V.A.T.S., Tax Code, §152.002[c]) GDN or Lessor Number |

| 35. Trade In (if any)  ☐ Yes (Complete) | Year | Make | Vehicle Identification Number | 36. Additional Trade In(  Yes |
|---|---|---|---|---|

| 37. Check only if applicable | SALES AND USE TAX COMPUTATION |
|---|---|
| ☐ (a) Sales Price ($ 150,000 rebate has been deducted)  $ | ☐ $90 New Resident Tax – (Previous State) _____ |
| (b) Less Trade in Amount, described in Item 35 above  $ ( ) | ☐ $5 Even Trade Tax |
| (c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, described in Item 35 above  $ ( ) | ☐ $10 Gift Tax – Use Comptroller Form 14-317 |
| | ☐ $65 Rebuilt Salvage Fee |
| (d) Taxable Amount (Item a minus Item b or tem c)  $ | ☐ 2.5% Emissions Fee (Diesel vehicles 1996 and Older > 14 000 lbs )_____ |
| (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625)  $ | ☐ 1% Emission Fee Diesel Vehicles 1997 and Newer > 14,000 lbs )_____ |
| (f) Late Tax Payment Penalty ☐ 5% or ☐ 10%  $ | ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because |
| (g) Tax Paid to _____ STATE  $ | |
| (h) AMOUNT OF TAX AND PENALTY DUE  (Item e plus Item f minus item g)  $ | ☐ $28 or $33 Application Fee for Texas Title  (Contact your county tax assessor-collector for the correct fee ) |

CERTIFICATION – State law makes falsifying information a third degree felony

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable).

| Signature(s) of Seller(s), Donor(s), or Trader(s) | Printed Name(s) (Same as Signature(s))  Jeffrey Louis Mosing | Date |
|---|---|---|
| Signature of Applicant/Owner | Printed Name (Same as Signature) | Date |
| Signature(s) of Additional Applicant(s)/Owner(s) | Printed Name(s) (Same as Signature(s)) | Date |

Form 130-U Rev 08/16               Form available online at www TxDMV gov               Page 1 of 2

MOSING 000006

383

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| **Debtor.** | § | **Case No. 19-13565** |
| | § | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars** | § | |

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Jeffrey Mosing ("**Mosing**") and Mosing Autosports, LLC d/b/a Mosing

Motorcars ("**Mosing Autosports**," and collectively, "**Defendants**") file this Reply to M.

Stephen Peters, Chapter 7 Trustee's ("**Plaintiff**" or "**Trustee**") Response to Defendant's

Motion for Summary Judgment ("**Reply**"), and in further support thereof states as follows:

### RELEVANT PROCEDURAL HISTORY

1.  Pursuant to the Court's Scheduling Order,[1] Defendants timely filed their Motion

for Summary Judgment on September 25, 2020.[2]

---

[1] *See* ECF No. 18.
[2] *See* ECF No. 58.

2.      On October 21, 2020, after a report of no opposition from the Trustee, Defendants' amended their Motion for Summary Judgment solely for clerical and stylistic changes ("**Amended Motion**").[3]

3.      On October 29, 2020, Trustee filed two duplicate documents: his Response to Defendants' Amended Motion ("**Response**") and his Motion for Summary Judgment.[4]

SUMMARY OF REPLY

4.      While Defendants' position is that Trustee's Motion for Summary Judgment was not timely filed, Trustee's Response to Defendants' Amended Motion distinctly reveals the fundamental flaws in Plaintiff's case: the Cobra made the basis of this adversary proceeding is not property of Debtor's estate because the estate only holds legal title.  Trustee has not met his burden of establishing that the Cobra is property of the estate by a preponderance of the evidence.

5.      Whether characterized as a purchase or loan, the Agreement provides that Debtor may "re-acquire" the Cobra if he meets certain conditions.  After misrepresenting his ability to transfer legal title and assuring Mosing the Cobra was not titled, Debtor then failed to meet the agreed upon conditions to reacquire the Cobra.  Regardless of how the transaction was characterized, the Trustee's own authority legitimizes Defendants' constructive trust claim over the Cobra.

I.      **Mosing believed the Cobra was untitled when he accepted it from Stephenson**

6.      Trustee is correct that a constructive trust should not be imposed merely to give effect to a prior agreement, but instead should be reserved for situations in which a party's

---

[3] *See* ECF No. 60.
[4] ECF Nos. 61, 62, respectively.

misconduct gives rise to his unjust enrichment.[5]  Here, after sifting through Trustee's attacks

on Mosing's credibility, designed to cast doubt or create a fact issue on purportedly relevant

matters, the Court can make only one determination – Debtor misled Mosing into tendering

$120,000 in exchange for taking possession of a novelty high-end performance vehicle to

which he did not have clear title.  Regardless of how Mosing described it the memo line of a

check, or in a letter seven years after the transaction, the key fact is Mosing's understanding

of Debtor's legal ability to transfer the Cobra.

 7. Thus, although Trustee devotes ample time to attack Mosing's characterization

of the transaction in an attempt to attack his credibility and obfuscate the record, Trustee

conspicuously glosses over the fundamental fact in this case – Mosing's understanding of

whether the Cobra was titled at the time of transaction. On this issue, Mosing's testimony is

clear and unwavering – when Debtor and Mosing originally discussed the transaction in 2012,

Mosing asked Debtor if there was title.[6]  Stephenson replied that there was no title, just the

MSO.[7]  ***"I had no idea or knowledge of the fact that the car was not only titled in Colorado

but it had a lien on it."***[8]

 8. Notably, Trustee relies on testimony from Debtor to create a fact issue on

Mosing's knowledge of title. Considering the source, context and totality of Debtor's

testimony, the Court should already be skeptical of this "evidence" and consider the record in

totality, including the parties' prior dealings, and Mosing's professional understanding of deals

involving specialty motor vehicles.

---

[5] *In re Fetman*, 567 B.R. 702, 706 (Bankr. E.D.N.Y. 2017) (citing *In re First Central Financial Corp.*, 377 F.3d 209, 216 (2nd Cir. 2004).
[6] Ex. A to Defendants' Motion, at 53:22-54:19.
[7] *Id*.
[8] *Id.* (emphasis added).

9.      In any event, the testimony Trustee relies on establishes Debtor's fraud.[9]  At various points during his deposition, Debtor's response on the issue varied.  Debtor's testimony went from him believing that Mosing understood title was in the process of coming, to "[Mosing] *knew* title was coming."[10]  Regardless of whether Mosing believed or knew title was coming, Debtor's testimony highlights the lie – *the fact that the Cobra was already titled at the time of the transaction.*  Thus, Debtor admits he misled Mosing into thinking title was coming when he knew the entire time that title had already been issued.

10.      There is no dispute that Mosing is a sophisticated automobile dealer, specifically with regard to Superformance automobiles such as the Cobra.[11]  The reason Mosing had faith in the transaction with Debtor is because Debtor delivered the Cobra's MSO, which Mosing knows by experience to be tantamount, if not superior, to a vehicle's title.  Regardless of whether Mosing's understanding that he could obtain title in Texas by presenting the MSO was legally accurate, it remains critical to the analysis because Mosing understood that he could obtain title in Texas by virtue of his possession of the MSO.[12]

11.      In this vein, Trustee mischaracterizes Mosing's testimony by arguing that Mosing did not rely on the certificate of title.  This is simply not true.  Mosing is an automobile dealer – he understands the value of the certificate of title.  Quite the contrary: by virtue of his previous dealings with Debtor and Superformance autos, Mosing believed he could obtain title using the MSO.

---

[9] *See* Response, Ex. B, at 44:9-23; 46:17-24; 47:23-48:15: 49:16-22.
[10] *Id*.
[11] Trustee points out that the entity Mosing Autosports is the licensed dealer, not Mosing individually.  As the sole member and operator of Mosing Autosports, clearly Jeffrey Mosing possesses the knowledge and expertise necessary to operate the business.
[12] *See* Response, Ex. A, at 27:3-12.

## II. Stephenson will be unjustly enriched if his estate is granted possession of the Cobra

12.     The Trustee's argument that Debtor was not unjustly enriched because the Cobra is worth at least what Mosing paid for it fails because, if Trustee prevails on his claims, Debtor and his estate will receive the benefit of Mosing's payment *and* the Cobra.  Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another.  In Colorado, unjust enrichment occurs when (1) at the plaintiff's expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying.[13]   In Texas, unjust enrichment allows the plaintiff to recover money or property given to the defendant when the defendant has obtained a benefit from the plaintiff by fraud, duress, or taking undue advantage, or to recover when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons.[14]

13.     Under either state's legal elements, the Trustee is asking the Court to permit an unjust enrichment.  By declaring the Cobra property of Debtor's estate, the Trustee's position is that Debtor retained an interest in the Cobra, despite the Agreement with Mosing.  This is clear unjust enrichment, regardless of the Cobra's worth.

## CONCLUSION

For the above reasons and those contained in their underlying motion, Jeffrey Mosing and Mosing Autosport, LLC d/b/a Mosing Motorcars respectfully request that the Court grant their Amended Motion, declare that the motor vehicle made the basis of this suit their property

---

[13] *Martinez v. Colo. Dep't of Human Servs.,* 97 P.3d 152, 159 (Colo. App. 2003).
[14] *Burlington N. R.R. v. Southwestern Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998).

in equity, dismiss all of Plaintiff's causes of action against them, and award them all other

relief to which the Court finds them to be entitled.

Respectfully submitted,

CHAMBERLAIN HRDLICKA

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

**Counsel for Jeffrey Mosing and Mosing
Autosport, LLC dba Mosing Motorcars**


**OF COUNSEL:**
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
CHAMBERLAIN, HRDLICKA, WHITE,
  WILLIAMS & AUGHTRY
1200 Smith, Suite 1400
Houston, Texas 77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com


## CERTIFICATE OF SERVICE

The undersigned certifies that on November 5, 2020, a true and correct copy of the foregoing  was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.


*/s/ Jarrod B. Martin*
Jarrod B. Martin

200646\000000\3887447.v2

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |
| | § | |
| _____ | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars** | § | |

### DEFENDANTS' OBJECTION AND RESPONSE TO
### PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants Jeffrey Mosing ("**Mosing**") and Mosing Autosports, LLC d/b/a Mosing Motorcars ("**Mosing Autosports**," and together with Mosing, "**Defendants**") file their Objection and Response to M. Stephen Peters, Chapter 7 Trustee's ("**Plaintiff**" or "**Trustee**") Cross-Motion for Summary Judgment ("**Motion**"), and in further support thereof states as follows:

### OBJECTION TO TRUSTEE'S UNTIMELY DISPOSITIVE MOTION

Defendants object to Trustee's untimely Motion on the grounds that it was filed more than a month after the dispositive motion deadline. Trustee neither sought nor obtained leave of court to file its Motion after the deadline. Accordingly, the Court should strike Trustee's Motion.

The Court's Rule 16 Scheduling Order provided that the deadline to file all dispositive motions was September 25, 2020.[1]  Trustee's Unopposed Motion to Extend the Deadline to File Pleading in Response to Defendants' Motion for Summary Judgment ("**Unopposed Motion**") states: "Plaintiff seeks entry of an order extending the *response deadline* to October 23, 2020."[2]  The Court's Order Granting the Unopposed Motion ("**Order**") extended Trustee's "deadline to file a *pleading in response to Defendants' Motion for Summary Judgment* to October 23, 2020.[3]  The Court's Order did not authorize the Trustee to file a dispositive motion. As such, the Court should strike Trustee's Motion.

## <u>RESPONSE TO TRUSTEE'S MOTION FOR SUMMARY JUDGMENT</u>

### SUMMARY OF THE RESPONSE

Defendant Jeffrey Mosing complied with his obligations under a 2012 Agreement with Debtor Tracy Stephenson to acquire a vintage 1965 Shelby Cobra.  Mosing paid $120,000 to Stephenson and took possession of the Cobra and the original Manufacturer's Statement of Origin at his dealership in Austin, Texas, with the belief the vehicle was untitled.  Stephenson had the option of purchasing the Cobra back from Mosing, but never did.  In 2019, Stephenson filed for bankruptcy protection in Colorado.[4]  Trustee is attempting to invalidate the 2012 Agreement by arguing the bankruptcy estate's interest trumps Mosing's interest because Mosing never perfected a security interest in Cobra.  However, Mosing never perfected a security interest because Stephenson defrauded him into believing the Cobra had no title and

---

[1] ECF No. 18.
[2] ECF No. 58 (emphasis added).
[3] ECF No. 59 (emphasis added).
[4] *See* Case No. 19-13565, ECF No. 1.

was thus free and clear of any prior lien.  Unbeknownst to Mosing, Stephenson previously titled the vehicle in Colorado.

Regardless, Trustee's possession of the Certificate of Title is not dispositive of the estate's ownership.  To the contrary, Mosing's equitable claim surpasses that of the estate.  For the reasons set forth below and in Defendants' Motion for Summary Judgment, under either Texas or Colorado law, the Court should deny Trustee's Motion.

### STATEMENT REGARDING BURDEN OF PROOF

Defendants do not contest Trustee's statement of his burden of proof set forth in his Motion.

### STATEMENT REGARDING TRUSTEE'S ADDITIONAL FACTS

1.    Admit.

2.    Admit.

3.    Admit.

4.    Admit.

5.    Admit.

6.    Admit.

7.    Admit.

8.    Admit.

9.    Admit.

10.    Admit.

11.    Admit.

12.    Admit.

13.  Admit.

14.  Admit.

15.  Admit.

16.  Admit.

17.  Admit.

18.  Admit.

19.  Admit.

20.  Admit.

21.  Admit.

22.  Admit.

23.  Deny.  Mischaracterizes the language in the Agreement.

24.  Admit.

25.  Admit.

26.  Admit.

27.  Admit.

28.  Admit.

29.  Admit.

30.  Admit.

31.  Admit.

32.  Admit.

33.  Deny.  Mischaracterizes the evidence.

34.  Admit.

35.    Admit.

36.    Admit.

37.    Admit.

38.    Admit.

39.    Admit.

40.    Admit.

41.    Admit.

42.    Admit.

43.    Admit.

44.    Admit that Mosing made those statements, which are taken out of context.

## SUMMARY JUDGMENT EVIDENCE

Defendants incorporate herein the summary judgment evidence submitted with their Motion for Summary Judgment.

## FACTUAL BACKGROUND

Defendants incorporate herein the factual background section from their Motion for Summary Judgment.

## LEGAL ARGUMENT

The fundamental reason to impose a constructive trust is to right a wrong.[5]  Otherwise, a constructive trust would not be necessary.  Trustee's Motion essentially seeks to hold Mosing accountable for failing to perfect his security interest in the Cobra by ignoring the very basis for that failure – Debtor's fraud.  There is no dispute that Mosing did not obtain the Certificate

---

[5] *See In re Seneca Oil Co.*, 906 F.2d 1445, 1450 (10th Cir. 1990).

5

of Title or otherwise perfect a security interest in the Cobra.  Accordingly, as Defendants have argued from the outset, the question is one of equity.  On this point, Trustee admits, the law is not well settled.  For purposes of the Motion, because Trustee cannot establish that the Cobra is property of the bankruptcy estate as a matter law, summary judgment is not proper and should be denied.

### A.    Possession of Certificate of Title is not dispositive proof of ownership

Trustee is correct that, "for most bankruptcy proceedings, property interests are created and defined by state law."[6]  Once a determination as to the property interest is made under state law, however, the Court must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate.[7]

As an initial matter, Trustee's argument that the Certificate of Title trumps Mosing's equitable interest falls flat.  Under Colorado law, a certificate of title is prima facie evidence of the matters contained therein.[8]  Notably however, while a certificate of title is presumptive evidence of ownership of an automobile, "*the presumption is rebuttable.*"[9]  Indeed, "a certificate of title does not represent conclusive proof of ownership."[10]  Similarly, in Texas, the mere fact of registration of automobile in name of party as owner is not conclusive as to

---

[6] *Ogden v. Big Sky Motors, Ltd*. (*In re Ogden*), 314 F.3d 1190, 1197 (10th Cir. 2002) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).
[7] *Ogden*, 314 F.3d at 1197.
[8] C.R.S. § 42-6-107. (The certificate of title filed with the director's authorized agent shall be prima facie evidence of all of the matters contained in the record and that the person in whose name said certificate is registered is the lawful owner of the vehicle described in the record.)
[9] *Glass, Inc. v. General Motors Acceptance Corp.*, 175 Colo. 518, 488 P.2d 879, at 882 (Colo. 1971).
[10] *Martinez v. Allstate Insurance Co.*, 961 P.2d 531, 533 (Colo. App. 1997).

ownership.[11]   The presumption of ownership itself disappears the moment it is rebutted by undisputed evidence.[12]

To overcome this presumption, Mosing's burden is to demonstrate that Trustee's possession of the certificate of title alone, and indeed his claim to legal title, is not determinative of ownership.  Mosing presents contrary evidence supporting his ownership of the Cobra.  Mosing paid valuable consideration in 2012 and has maintained possession and insurance on the vehicle ever since.  Stephenson represented that the Cobra was not titled, and based on his prior trading in Superformance autos with Stephenson, Mosing rightfully believed him.  Even if the Court is not convinced by the evidence adduced to date, the question at minimum raises a genuine issue of material fact.

## B.    Mosing's equitable interest trumps Trustee's Certificate of Title

Though perhaps designated the "minority view," the Fifth Circuit's holding in *Quality Holstein Leasing* that the estate's property interests—or lack thereof—prevails over the trustee's strong arm powers remains good law: "Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own."[13]   Regardless of whether this Court adopts the "majority" or "minority" view on the seeming contradiction between 11 U.S.C. §§ 541(a), (d), and 544(a), and whether Colorado or Texas law applies, the inquiry does not stop there.

---

[11] *Pacific Finance Corp. v. Gilkerson*, 217 S.W.2d 440 (Tex. Civ. App.—Beaumont 1948, no writ).
[12] *McGee v. Phillips Petroleum Co*., 373 S.W.2d 773 (Tex. Civ. App.—El Paso 1963, writ ref'd n r.e.); *see also Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763 (Tex. Comm'n App. 1940) (Presumption of ownership from registration of motor vehicle is not evidence but rather a procedure or an administrative assumption which vanishes when positive evidence to the contrary is introduced).
[13] *In re Quality Holstein Leasing,* 752 F.2d 1009, 1013 (5th Cir. 1985).

The issue presented to the court and Trustee's authority are not identical to the facts in *In re Richards*.[14]  Here, Mosing does not assert that they hold a lien of any sort in the Cobra, as the defendant did in *Richards*.[15]  There, Judge Brown concluded that the majority view was the best approach—the trustee's strong-arm powers under 11 U.S.C. § 544 take precedence over a party claiming a beneficial interest in property titled in the name of the debtor.[16]

Instead, Mosing asserts *ownership in*—that is, *beneficial ownership and equitable economic interest in*—the Cobra.  In a case similar to but importantly distinct from *Richards*, the District of Colorado concluded that a vehicle was not property of the debtor's estate where: (1) the vehicle was purchased in the name of the debtor and his son with funds belonging *only* to the debtor's son, a minor at the time; (2) the debtor never used the vehicle; and (3) the debtor never intended to have an interest in the vehicle.[17]  In reaching this conclusion and denying the trustee's complaint for turnover, the Court held:

> The father's interest created by his name on the Bill of Sale and Application for Title seems, therefore, to be in the nature of a resulting trust.  The marks of a resulting trust are found in *First National Bank of Denver v. Harry W. Rabb Foundation*, 29 Colo. App. 34, 479 P.2d 986 (1970).
>
> > ". . . one in which a party, through no actual or constructive fraud, becomes invested with legal title, but holds that title for the benefit of another. . ."
>
> The fact that the Debtor has not done anything to remove his name from the Bill of Sale or the application for Colorado title since the son reached the age of contractual majority does not change our finding that the actual ownership of this automobile is in [debtor]. Therefore, we find the [vehicle] is not property of the Debtor's estate.[18]

---

[14] 275 B.R. 586 (Bankr. D. Colo. 2002).
[15] *Lewis v. Hare* (*In re Richards*), 275 B.R. 586, 589 (Bankr. D. Colo. 2002).
[16] *Id.*
[17] *Bernstein v. Sommer* (*In re Sommer*), 28 B.R. 95, 97 (Bankr. D. Colo. 1983).
[18] *Id.*

In another District of Colorado case, the Court held that, despite their seemingly different conclusions, the *Richards* holding squares with the *Sommer* holding.[19]  As Judge Brown noted in *Richards*, "Sections 541(a)(1), (2) and (d) guarantee that the trustee will succeed to whatever rights the debtor had, *no more or no less*."[20]  The Court in *Sommer* agreed, which is why it held the vehicle was not property of the debtor's estate.[21]

The trustee in *Garberding* argued that, because the car at issue was titled in the name of the debtor, who likely could have transferred good title to a third-party purchaser, he was entitled to exercise the strong arm provision to include the vehicle as estate property.[22] However, the Court noted, the debtor could theoretically be liable to the defendant, her boyfriend who actually paid consideration for the vehicle, if she had done so.[23]  By implication, the court noted, the defendant-boyfriend had some legal right in the vehicle.[24]

Consistent with the prevailing authority, the court ultimately held that the plaintiff-trustee succeeded to the rights the debtor had, no more or no less.[25]  Because of the factual circumstances of the case, the debtor's *absence* of actual ownership interest in the vehicle rendered the vehicle not property of the debtor's estate.[26]

Similar to the parties in *Sommer*, Stephenson here was paid consideration for the Cobra and intended to relinquish his interest in the Cobra, as memorialized in the May 2012 Agreement.  Trustee's position that, simply because the Cobra remains titled in Stephenson's

---

[19] *See In re Garberding* 338 B.R. 463 (Bankr. D. Colo. 2005).
[20] *Id*. (quoting *Richards*, 275 B.R. at 590) (emphasis added).
[21] *Sommer*, 28 B.R. 95.
[22] *Garberding*, 338 B.R. at 469.
[23] *Id.*
[24] *Id.*
[25] *Id*.
[26] *Id*. (emphasis in original).

name it must be property of the estate, does not adequately address the consequences of these unique factual circumstances.  As shown by *Sommer* and *Garberding*, the analysis must extend further to address Mosing's equitable interest in light of the estate's claim to legal title.  Here, not only has Trustee not established the Cobra is property of the estate as a matter of law, the evidence supports the opposite conclusion.

### CONCLUSION

Jeffrey Mosing and Mosing Autosports, LLC d/b/a Mosing Motorcars respectfully request the Court deny Trustee's Motion for Summary Judgment because: (1) it is untimely under the Court's Rule 16 Scheduling Order; and (2) the Trustee has not established his entitlement to summary judgment; and award Defendants all other relief to which the Court finds them to be entitled.

Respectfully submitted,

CHAMBERLAIN HRDLICKA

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Counsel for Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars*

10

OF COUNSEL:
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
CHAMBERLAIN, HRDLICKA, WHITE,
   WILLIAMS & AUGHTRY
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 12, 2020, a true and correct copy of the foregoing  was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.


/s/ Jarrod B. Martin
Jarrod B. Martin

3892817.v2

11

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff M. Stephen Peters, chapter 7 trustee (the "Trustee")[1], by and through his counsel, Wadsworth Garber Warner Conrardy, P.C., and submits this reply in support of his *Cross-Motion for Summary Judgment*. In support of thereof, Trustee states as follows:

### I.   INTRODUCTION

Defendants do not add anything to the analysis in their Response to the Cross-Motion. Defendants cite to a series of cases where Courts, some of which are curiously insurance coverage and tort cases, held that a person who purchased a vehicle, had exclusive use and paid the loan was the actual owner of the vehicle thereby rebutting the presumption of ownership created by a

---

[1] Unless defined herein, capitalized terms correspond with the definitions ascribed in the Cross-Motion.

certificate of title.

The cases cited by Defendants suffer from two fatal defects.  First, the facts in this case come nowhere close to rebutting a presumption that the Cobra is titled in Debtor's name.  It is undisputed that Debtor purchased the Cobra, that he paid off the $75,000 Extraco lien, and the numerous documents signed by Mosing clearly show the transaction was a loan, not a purchase.  Second, the cases do not involve resolution of claims of competing interests from third parties, such as judgment and execution lien creditors.

Underscoring these defects is Defendant's total failure to distinguish the cases and statutes cited in the Cross-Motion that a purchaser of a vehicle that does not comply with titling laws has no interest in the vehicle, and the transfer is deemed void with respect to third-parties.  Defendants' failure to make any effort to refute these cases and statutes is sufficient grounds alone to grant Trustee's Cross-Motion and deny Defendant's Motion to Summary Judgment.

Moreover, Defendants have failed to convincingly argue that constructive trust claims are not avoidable by Trustee.  Defendants do not address the majority opinion, which holds that trustees may avoid constructive trusts.  Additionally, the circuit level case that Defendants cite to–*In re Quality Holstein Leasing*–has been widely criticized and relies on a previous version of § 541(a) that predates the inclusion of § 541(a)(3).  The inclusion of § 541(a)(3) is notable because the majority opinions cite to § 541(a)(3) for the proposition that trustees may avoid constructive trusts.  In fact, Defendants do not even cite to § 541(a)(3) in their Response to the Cross-Motion.

For the reasons stated herein and in Trustee's other pleadings, the Cross-Motion should be granted, and the Motion for Summary Judgment should be denied.

2

## II.    **ARGUMENT**

### A.    **Defendants' failure to obtain the original Certificate of Title and have their interests noted on the Certificate of Title is dispositive in Trustee's favor because Trustee is a third-party to which the presumption of ownership may not be rebutted.**

Defendants make much ado that "while a certificate of title is presumptive evidence of ownership of an automobile, 'the presumption is rebuttable.'"  Defendants' Objection and Response to Plaintiff's Cross-Motion for Summary Judgment (the "Response to Cross-Motion") at p. 6.  This narrow view ignores the numerous cases and statutes cited by Trustee in the Cross-Motion that, under both Colorado and Texas law, (a) a purchaser without a certificate of title takes subject to all prior liens, including Trustee's hypothetical judgment and execution liens pursuant to 11 U.S.C. § 544, (b) that no ownership rights are transferred until the respective titling act is complied with, and (c) that any transfer of ownership is void and "does not affect a third party's rights."  *U.S. v. 1977 Porsche Carrera 911*, 946 F.2d 30, 34 (5th Cir. 1991); Tex. Code § 501.073; *Codding v. Jackson*, 287 P.2d 976, 978 (Colo. 1955); *First Nat. Bank of Ogallala, Neb. v. Chuck Lowen, Inc.*, 261 P.2d 158, 161 (Colo. 1953); C.R.S. § 42-6-109(1).  Defendants make no effort to distinguish these cases and statutes and instead rely on cases that bear little resemblance to the issues in this case.

A case cited by Defendants, *Doenges-Glass, Inc. v. General Motors Acceptance Corporation*, squarely supports Trustee's Cross-Motion.  In *Doenges-Glass, Inc.*, Taibi purchased a vehicle in New York financed by General Motors Acceptance Corporation ("GMAC").  *Doenges-Glass, Inc. v. General Motors Acceptance Corporation*, 175 Colo. 518, 520 (Colo. 1971).  GMAC perfected its security interest in the vehicle with the Suffolk County Clerk. *Id.*  Taibi brought the vehicle to Denver and sold it to Doenges-Glass, Inc. ("Doenges"). *Id.*  Taibi signed

the New York certificate of registration to Doenges and an affidavit warranting there were no liens against the vehicle. *Id.* at 520-521. Since New York was not a certificate of title state, the Court remarked that it was incumbent upon Doenges to inquire with the Suffolk County Clerk regarding whether there were any outstanding liens. *Id.* at 524-525. Consequently, the Court held that GMAC's lien was a proper lien on the vehicle and superior to Doenges' interest. *Id.* at 525.

Using *Doenges-Glass, Inc.* as an analogy, Trustee is GMAC by virtue of his hypothetical judgment and execution lien powers, Defendants are Doenges, and Debtor is Taibi. Both cases have the common thread of the purchasers alleging that the sellers defrauded them. Despite the alleged fraud, the secured creditor's interest supersedes that of the purchaser's interests. This conclusion is consistent with the statutes and cases cited by Trustee in the Cross-Motion. *See Codding*, 287 P.2d at 978; *First Nat. Bank of Ogallala, Neb.*, 261 P.2d at 161; C.R.S. § 42-6-109(1). Similar to Doenges, Mosing should have inquired with the Colorado Division of Motor Vehicles regarding the Certificate of Title prior to transacting with Debtor. Defendants' failure to exercise reasonable care should not be used to prejudice Debtor's other creditors.

*Martinez v. Allstate Insurance Company* has limited, to no, applicability to this case because it does not address competing interests in a motor vehicle. *Martinez* is an insurance coverage case. Martinez was injured while operating a motorcycle. *Martinez v. Allstate Insurance Company*, 961 P.2d 531, 523 (Colo. App. 1997). Martinez' sister was the titled owner of the motorcycle, but Martinez purchased the motorcycle, was the exclusive user, and paid to insure it. *Id.* The sister never operated the motorcycle, did not keep it at her residence, and considered it to belong exclusively to Martinez. *Id.* The motorcycle was titled in the sister's name so it would not be considered marital property in Martinez' divorce case. *Id.*

4

Martinez filed a claim against his parent's automobile policy contending that he did not own the motorcycle and was therefore entitled to personal injury protection benefits ("PIP"). *Id.* at 533. However, the policy excluded PIP benefits for the operation "of his own motor vehicle." *Id.* The insurer argued that Martinez was excluded from PIP coverage because he was the actual owner of the motorcycle. Based on Martinez purchasing the motorcycle, being the exclusive owner, the sister admitting it was not her motorcycle, and other factors, the Court concluded that Martinez owned the motorcycle and was therefore excluded from PIP coverage. *Id.*

*Martinez* is easily distinguishable. Not only is it an insurance coverage case, it does not involve the interest of third parties claiming title to or interest in the vehicle, and the facts are entirely different. Here, it is undisputed that Debtor purchased the Cobra. Exhibit 1; Exhibit B at 14:20-15:1; 19:21-24. Debtor did not purchase the Cobra for Mosing's benefit and Mosing did not allow the Cobra to be titled in Debtor's name to conceal the property from a soon-to-be-ex-spouse akin to *Martinez*. Additionally, the evidence overwhelmingly demonstrates that Defendants' transaction with Debtor was a loan, not a purchase, despite Defendants' efforts to re-write history to cast the transaction as a purchase. *See* Exhibits A, D, G, 3, 4 and 5.

*Pacific Finance Corp. v. Gilkerson* is similarly distinguishable. Son was a minor and desired to purchase a vehicle. *Pacific Finance Corp. v. Gilkerson*, 217 S.W.2d 440, 441 (Texas App. 1948). However, since he was a minor, his father guaranteed the loan to purchase the vehicle and titled the vehicle in father's name. *Id.* at 442. Son made four payments on the loan by physically delivering the payments to the lender's office. *Id.* Son was drafted to the Army and stopped making payments. *Id.* Father informed lender that son was the true owner of the vehicle. *Id.* Lender ignored the father and, despite being fully aware of the son's rights under the Soldiers'

5

and Sailors' Civil Relief Act of 1940, repossessed the Vehicle, which contained son's tools. *Id.* at 443. Based on the totality of circumstances, the Court held that the son was the true owner of the vehicle because the vehicle was purchased for the son, the son made the loan payments, and the father notified the lender of the son's interest. *Id.* at 444 and 446-447.

Again, like *Martinez*, this case does not advance Defendants' theory. The Court did not address the interests of third parties, such as competing lienholders, and it was the intent of the parties from the outset that the son own the vehicle. Here, it is undisputed that Debtor purchased the Cobra and Defendants' assertion of ownership directly contradicts documents signed by Mosing unequivocally proving the transaction was a loan. Exhibit 1; Exhibit B at 14:20-15:1; 19:21-24.

Defendants' reliance on *McGee v. Phillips Petroleum Company* further reveals the weaknesses in their case. In *McGee*, a truck owned by Woodrow Douglas Oil Company ("Woodrow") and driven by its employee was in an accident killing a mother and injuring three children. *McGee v. Phillips Petroleum Company*, 373 S.W.2d 773, 774 (Texas App. 1964). Woodrow was an independent contractor for Phillips Petroleum Company ("Philips") and "Phillips 66" was lettered on the side of the truck. *Id.* McGee sought to hold Philips liable under the presumption that "one whose name appears on a truck or vehicle is presumed to be the owner thereof and the employer of the one operating it." *Id.* at 775. Ultimately, the Court ruled in favor of Philips because the truck was not titled in Philips' name and Philips had no control over Woodrow. *Id.* at 777.

It is incredible that Defendants are trying to conflate having one's name on the side of a vehicle as being the same as having one's name on the certificate of title. Defendants' name has

not been painted on the side of the Cobra and to argue that if it were, then Defendants would be the presumed owner, is ridiculous. *McGee* is a case about vicarious liability, not a case about competing interests in a vehicle and is therefore wholly inapplicable.

*Empire Gas & Fuel Co. v. Muegge* is another tort case Defendants rely upon. In *Empire Gas*, Muegge sued Empire Gas & Fuel Co. ("Empire") for damages because his milk truck overturned in avoiding a collision with a truck driven by Warren Angel that had been wedged in an underpass. *Empire Gas & Fuel Co. v. Muegge*, 143 S.W.2d 763, 764-765 (Texas 1940). The truck was registered to Empire. *Id.* at 766. In Texas, for the purposes of tort liability, the registered owner is the presumed owner, which may be rebutted by "clear, positive and undisputed evidence." *Id.* at 768. There was uncontradicted testimony that Empire did not authorize the truck to be registered in its name, that it did not authorize a permit to be issued in its name, that Warren Angel was not an employee of Empire, and that Empire was in no way interested in Warren Angel's operation of the truck. *Id.* at 768.

Just like the other cases cited by Defendants, *Empire Gas* has no bearing on this case. *Empire Gas* is a tort case, it is not a case where the Court was faced with issues relating to competing interests in a vehicle. Moreover, even if the Court held that an ownership presumption may be rebutted in the context of the facts of the instant case, Defendants come nowhere close to rebutting the presumption that the Cobra is property of the estate with "clear, positive and undisputed evidence." To the contrary, the evidence shows that Defendants loaned money to Debtor secured by the Cobra, and Defendants failed to perfect the lien. *See* Exhibits A, D, G, 3, 4 and 5.

Lastly, in the context of the sale of motor vehicles, which is the proper context of the

7

analysis, not as a tort case, Texas Code § 501.073 specifically states that "[a] sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied." Texas Code § 501.073.  This statute became law effective September 1, 1995, decades after the Texas opinions cited by Defendants.  The opinions have therefore been abrogated by statute to the extent they even apply to cases where Courts are resolving competing interests in vehicles.

It is revealing that Defendants do not cite to any cases that involve third-party rights. Instead, they cite to a litany of cases that either advance Trustee's arguments, are on the fringes of applicability, or are in the context of imputing liability for torts.  Defendants cite to nothing that refutes the cases and statutes cited by Trustee holding that the sale of the Cobra without following the statutory procedures to have Defendants' name listed on the Certificate of Title is void as to third-parties.  Trustee, as a hypothetical judgment and execution lien creditor, is such a third-party, and the Cross-Motion should therefore be granted.

### B. Defendants' argument that their constructive trust claim against the Cobra supersedes Trustee's strong-arm powers does not withstand scrutiny.

Defendants' analysis of the cases cited in their Response to the Cross-Motion is fatally flawed because they omit key aspects of the cases.  Each case will be addressed in turn.

Defendants argue that the Fifth Circuit's holding in *In re Quality Holstein Leasing* "remains good law."  Response to Cross-Motion at p. 7.  Based on subsequent amendments to § 541, it is no longer good law.  In any event, it is the minority view, the analysis is fatally flawed, and is not binding precedent in the Tenth Circuit.  Interestingly, in all the briefing, Defendants have shied away from a deep dive into *Quality Holstein Leasing's* holding.  That is because a close examination of the case does not strongly favor Defendants' position.

In *In re Quality Holstein Leasing*, Borg-Warner financed McKenzie's purchase of an

8

aircraft. *In re Quality Holstein Leasing*, 752 F.2d 1009, 1010 (5th Cir. 1985). McKenzie took

title to the aircraft in his own name. *Id.* Through a series of transactions that included swapping

aircraft, McKenzie transferred the aircraft to the debtor and placed the debtor in chapter 11 before

Borg-Warner was able to perfect its lien by filing the appropriate documents with the FAA. *Id.* at

1010-1011. The chapter 11 trustee moved to sell the aircraft and Borg-Warner argued that, due to

McKenzie's fraud, Texas law impressed a constructive trust over the aircraft that defeated trustee's

claim as a lienholder. *Id.* at 1012. Essentially, Borg-Warner sought the imposition of a

constructive trust for the benefit of *McKenzie* so that its lien would become perfected and then it

could foreclose against McKenzie. *Id.* at 1014.

While the Court, in footnote 10, explained that "section 541(d) overcomes' trustee's

section 544 powers only where state law confers equitable title on a third part effective prior to the

commencement of the bankruptcy case[,]" the Court nevertheless ruled against Borg-Werner:

> In summary, we find that the courts below erred in concluding that section 544
> empowers a bankruptcy trustee to retain for the benefit of the estate property that
> the debtor obtained by fraud and upon which state law has imposed a valid
> constructive trust. We also conclude, however, that any fraud by [debtor] upon
> McKenzie conferred on Borg-Warner no rights in addition to those flowing from
> its status as a holder of an unperfected security interest in property that it alleges
> [debtor] fraudulently obtained. Section 544 gives the trustee authority to avoid such
> remote claims. Thus, no issue of material fact prevented summary judgment. In the
> ultimate reorganization of [debtor], Borg-Warner's claim to the [aircraft] will stand
> on no better grounds than those of [debtor]'s other unperfected, secured creditors.

*In re Quality Holstein Leasing*, 752 F.2d at fn. 10 and 1015.

While footnote 10 ostensibly favors Defendants' position, a subsequent amendment to

§ 541(a)(3) results in *In re Quality Holstein Leasing* having no persuasive value. *In re Quality*

*Holstein Leasing* relied upon an older version of § 541(a) that did not include § 541(a)(3). *In re*

*DVI, Inc.*, 306 B.R. 496, fn. 5 (Bankr. D. Del. 2004). Section 541(a)(3) is a key component of the

analysis.  As discussed in the Cross-Motion, Courts that have rejected the minority view analyze

the interaction between §§ 541(a)(3) and 544 in concluding equitable interests, such as

constructive trust claims, are avoidable by trustees.  *See In re Richards*, 275 B.R. 586, 590 (Bankr.

D. Colo. 2002).  Because of this subsequent change in law, *In re Quality Holstein Leasing* is no

longer "good law" and is not likely even to be followed by the Fifth Circuit.

Defendants' reliance on *In re Sommer* and *In re Garberding* borders on being misleading.

In *In re Sommer*, trustee moved for turnover of debtor's one-half interest in a Jaguar pursuant to

§ 542.  *In re Sommer*, 28 B.R. 95, 95 (Bankr. D. Colo. 1983).  The co-owner of the Jaguar was

debtor's son. *Id.* at 95.  Debtor's son purchased the Jaguar with his own funds and debtor never

used the Jaguar for transportation, as security for a loan, or claimed it as an asset.  *Id.* at 97.  The

Court held that the debtor was holding the Jaguar in a resulting trust for the benefit of the son. *Id.*

Consequently, the one-half interest was not property of the estate and the Court denied the trustee's

turnover motion.  *Id.  In re Sommer* has no applicability to this case because (a) the Court was only

addressing turnover issues–the avoidability of the resulting trust and trustee's strong-arm powers

were not at issue, and (b) the facts were undisputed that debtor did not purchase the car and it was

purchased solely for his son's benefit.  There have been no facts whatsoever to indicate that Debtor

purchased the Cobra on behalf of Defendants.  Accordingly, to draw an analogy between *In re*

*Sommer* and the instant case is a dubious.

In *In re Garberding*, Judge Brooks concurred with Judge Brown's conclusions in *In re*

*Richards* and held that a trustee, "*under appropriate facts and circumstances,* has the ability to

exercise his strong-arm powers to recover, for the benefit of the estate, property that the debtor

held subject to an equitable lien, *as long as the trustee, as a hypothetical lien creditor, would*

10

prevail under state law against an equitable lien claimant." *In re Garberding*, 338 B.R. 463, 467

(Bankr. D. Colo. 2005) (emphasis in original). The facts in *In re Garberding* are not analogous to

this case. In *In re Garberding*, the debtor's boyfriend asserted that he owned a Mercedes that was

titled in debtor's name. *In re Garberding*, 338 B.R. at 465. The parties stipulated that the debtor

never made a single payment on the loan and had never insured it because debtor drove her own

Nissan. *Id.* The facts in this case are drastically different. Debtor purchased the Cobra, paid off

the $75,000 Extraco loan against the Cobra, and the transaction was structured as a loan. Exhibit

1; Exhibit B 14:20-15:1; 19:21-24; *see* Exhibits A, D, G, 3, 4 and 5.

      As a last-ditch effort, Defendants take a quote from *In re Richards* out of context to argue

that the Cobra is not property of the estate. Defendants remark: "As Judge Brown noted in

*Richards*, 'Sections 541(a)(1), (2) and (d) guarantee trustee will succeed to whatever rights debtor

had, *no more or no less*.'" Response to the Cross-Motion at p. 9 (emphasis added by Defendants).

What is striking, and conspicuously absent from Defendants' Response to the Cross-Motion, is

that in *the very next sentence*, Judge Brown writes:

> Sections 541(a)(3) and 544(a) ensure that the bankruptcy creditors will be no worse
> off than if they had been allowed to exercise their rights under state law as judicial
> lien creditors on personal property or as bona fide purchasers of real property.

*In re Richards*, 275 B.R. at 590.

      Defendants would like the Court to limit Trustee's rights and powers to that of the Debtor.

However, by doing that, Defendant is asking the Court to upend the Bankruptcy Code and overturn

a key policy of bankruptcy, which is to preserve creditors' rights and remedies by cloaking trustees

with the powers of hypothetical judgment and execution lien creditors. As discussed *supra* and in

the Cross-Motion at length, because Defendants failed to have their purported ownership interest

in the Cobra (or security interest) reflected on the Certificate of Title, no transfer occurred, their interest is void, and therefore a judgment or execution lien creditor would have a superior interest. The title acts in both Colorado and Texas are so strict that Defendants cannot rebut any presumption of ownership because their interests have been severed by a third-party hypothetical judgment or execution lien creditor, not by the Debtor as Defendants would like the Court to believe.

**III.    <u>Conclusion</u>**

Whether Defendants assert an ownership interest or security interest has no bearing on the outcome of the case.  Based upon the foregoing, Defendants' unrecorded interests in the Cobra, whether they be a security interest or an ownership interest, may be avoided, recovered and preserved for the benefit of the estate pursuant to § 544(a), 550(a) and 551.  As a consequence, the Court should compel Defendants to deliver the Cobra to Trustee pursuant to § 542(a).

Trustee therefore requests entry of a judgment in his favor and against Defendants (a) avoiding the transfers of the interests in the Cobra to Defendants, (b) recovering and preserving the Cobra for the benefit of the bankruptcy estate, and (c) compelling Defendants to deliver the Cobra to Trustee.

DATED this 19th day of November, 2020.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
aconrardy@wgwc-law.com
*Attorneys for Plaintiff M. Stephen Peters, chapter 7 trustee*

12

## CERTIFICATE OF SERVICE

I do hereby certify that on the 19th day of November 2020, I served a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**, via CM/ECF to those persons listed below:

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

Jarrod Martin
Jarrod.martin@chamberlainlaw.com


*/s/ Angela C. Garcia*
For Wadsworth Garber Warner Conrardy, P.C.

13

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

---

### ORDER GRANTING MOTION TO DEEM CROSS-MOTION FOR SUMMARY JUDGMENT AS TIMELY FILED

---

THIS MATTER having come before the Court on the *Motion to Deem Cross-Motion for Summary Judgment as Timely Filed* (the "Motion") filed by Plaintiff M. Stephen Peters, chapter 7 trustee ("Plaintiff"), and the Court, having reviewed and considered the Motion, and being fully advised on the premises hereby

ORDERS that the Motion is GRANTED. Plaintiff's Cross-Motion for Summary Judgment filed at Docket Nos. 61 and 62 is deemed timely filed.

DATED this 25th day of ___November___, 2020.

BY THE COURT:

_____
Hon. Michael E. Romero, Chief Judge
United States Bankruptcy Court

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | |
| | Case No. 19-13565 MER |
| TRACY DEAN STEPHENSON | |
| Debtor. | Chapter 7 |
| | |
| M. STEPHEN PETERS, Chapter 7 Trustee | Adversary No. 19-1211 MER |
| | |
| Plaintiff | |
| | |
| v. | |
| | |
| JEFFRY MOSING and MOSING AUTOSPORT, LLC | |
| | |
| Defendants | |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that the Court will hear oral argument on the parties' pending motions for summary judgment at **1:30 p.m. on Tuesday, December 15, 2020**, via Zoom video conference.  A complete list of all video conference participants (attorneys and witnesses), **with the participants' email addresses,** shall be delivered to chambers by email on or before **December 10, 2020.**

For security reasons, the Zoom video conference details will not be posted publicly.  The Court will send Zoom invitations via email to counsel and/or parties within one day of the hearing.  Counsel and/or parties shall not, under any circumstances, share, post, and transmit the Zoom video conference link, meeting ID, or password.

All parties scheduled to take part in the hearing are strongly encouraged to test all equipment ahead of time by taking part in the Court's Zoom training sessions.  More information on the training sessions is available on the Court's website at https://www.cob.uscourts.gov/zoom-video-conferences.  Parties who have not tested equipment ahead of time may be excluded from the hearing.  All parties should read the Court's guidelines for zoom video conferences on its website in advance of the video test.

DATED: November 25, 2020          BY ORDER OF THE COURT:

                              KENNETH S. GARDNER, CLERK

                              By: Deborah L. Beatty, Deputy Clerk
                                   United States Bankruptcy Court
                                   U.S. Custom House
                                   721 19th Street
                                   Denver, Colorado 80202-2508

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

### Minutes of Proceeding

| | |
|---|---|
| December 15, 2020 | Honorable Michael E. Romero, Presiding<br>Courtroom C |

| | |
|---|---|
| In re:<br><br>TRACY DEAN STEPHENSON<br><br>Debtor | Case No. 19-13565 MER<br><br>Chapter 7 |

| | |
|---|---|
| M. STEPHEN PETERS,<br><br>    Plaintiff<br><br>v.<br><br>JEFFREY MOSING and MOSING AUTOSPORT, LLC,<br><br>    Defendants | Adversary Proceeding No. 19-1211 MER |

Appearances:

| Plaintiff | M. Stephen Peters | Counsel | Aaron Conrardy |
|---|---|---|---|
| Defendants | Jeffrey Mosing and Mosing Autosport, LLC | Counsel | Jarrod Martin |

Proceedings: Oral Arguments on Parties' Cross-Motions for Summary Judgment

Orders:

The Court takes the matter under advisement.

BY THE COURT:
KENNETH S. GARDNER, CLERK


By: _____
      Deputy Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>TRACY DEAN STEPHENSON,<br><br>Debtor. | Case No. 19-13565 MER<br><br><br>Chapter 7 |
| M. STEPHEN PETERS,<br><br>Plaintiff.<br><br>v.<br><br>JEFFREY MOSING and MOSING AUTOSPORT, LLC,<br><br>Defendants. | Adv. Case No. 19-1211 MER |

### ORDER

When an informal business arrangement fails, there can be quite a bit of uncertainty regarding what legal remedies are available to the aggrieved party and what steps should be taken to be made whole.  In the case presently before the Court, the aggrieving party filed bankruptcy long after the business arrangement failed, and it is now for this Court to determine the Defendants' rights in certain property, if any, in the face of the Chapter 7 Trustee's claims.

### BACKGROUND

As demonstrated by the parties' competing summary judgment motions,[1] many of the facts in this matter are largely undisputed.  Debtor Tracy Dean Stephenson ("**Stephenson**") and Jeffrey Mosing ("**Mosing**") became acquainted in 2009 in Austin, Texas,[2] where Mosing is the sole member and manager of Mosing Autosport, LLC, which is a licensed automobile dealer in Texas specializing in the purchase, sale, and consignment of high-end and specialty vehicles.[3]  Mosing and Stephenson

---

[1] *See* ECF Nos. 60 ("**Mosing Motion**"), 61 ("**Trustee Motion**"), 63 (Mosing's reply with respect to the Mosing Motion), 64 ("**Mosing Response**"), and 65 (Trustee's reply).

[2] Mosing Motion at ¶ 13; Trustee Motion at p. 4.

[3] Trustee Motion at p. 8; Mosing Response at p. 3.

subsequently entered into multiple vehicle sales transactions whereby Mosing purchased vehicles from Stephenson,[4]

On or about December 20, 2011 Stephenson purchased a 1965 Shelby 427 Cobra motor vehicle ("**Cobra**").[5]  Around April of 2012 Stephenson and Mosing began discussing a transaction involving the Cobra and an exchange of funds from Mosing to Stephenson.[6]  Specifically, Stephenson outlined a proposal to Mosing for a "purchase price of $120,000 with an agreement that [he could] purchase the Cobra back for up to a year or so."[7]  The parties' agreement was ultimately formalized in a single-page document dated May 8, 2012, signed by both at Mosing's dealership in Texas.[8]

The Agreement states an "amount" of $120,000 and "Agreement that Trac Stephenson may Re-Acquire Cobra for a Period of 1 Year ending May 9th 2013."  The Agreement provides for a sliding scale of "Re-Acquisition Amounts" from $130,000 to $150,000 based on date ranges from May 9, 2012 to May 9, 2013.  Finally, the Agreement states "Jeff Mosing to hold Original MSO & Possession of Cobra during the agreement period."

Following the execution of the Agreement, and at Stephenson's direction, Mosing wrote a check to 427 Legends, Stephenson's company, in the amount of $120,000.[9]  The memo line of the check states "1 YR. CAPITAL LOAN."[10]  As called for by the Agreement, Stephenson provided Mosing with the Manufacturer's Statement of Origin for the Cobra (the "**MSO**")[11] and delivered the Cobra to Mosing's dealership.[12]  Mosing

---

[4] Mosing Motion at ¶ 13; Trustee Motion at p. 4.

[5] *See* Trustee Motion at p. 8; Mosing Response at p. 3.

[6] Exh. C.

[7] Id.

[8] Exh. D. (the "**Agreement**").  *See also* Mosing Motion at ¶ 24; Trustee Motion at p. 5.  The Court will refer to the Agreement and parties' performances thereunder as the "**Transaction.**"

[9] Mosing Motion at ¶ 2; Trustee Motion at p. 5.

[10] Exh. G (emphasis in original).

[11] There is some disagreement between the parties as to the significance of the MSO.  Texas law defines a "manufacturer's statement of origin" as "a certificate on a form prescribed by the department showing the original transfer of a new motor vehicle from the manufacturer to the original purchaser."  Tex. Occupations Code § 2301.002(20),  "So long as the vehicle is a new, unregistered vehicle, there may be repeated transfers of the vehicle, for example, from the manufacturer to a dealer, from dealer to dealer, and from a dealer to an owner, without the need to register the vehicle or apply for a certificate of title."  8 Tex. Jur. 3d Automobiles § 203 (2021) (citing *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex. Civ. App. 1974)).  Mosing maintains the MSO was all he needed in order to properly own the Cobra insofar as, according to him, "the MSO trumps anything that's out there."  Exh. A. at 27:21.  Trustee argues once a certificate of title was issued for the Cobra in Colorado, the MSO lost its legal significance.

[12] Exh. A., 28:5-8, 39:24-40:1.

has maintained possession of the Cobra and the MSO since that time and has stored, insured, and performed mechanical work on the Cobra.[13]

Important to the matter before the Court, the Cobra was and is titled in Stephenson's name in Colorado.[14]  Mosing asserts he was unaware of the Colorado title and that Stephenson denied the existence of a title when asked.[15]  Stephenson, on the other hand, testified Mosing "knew that the title was coming."[16]  The Cobra was also used by Stephenson as partial security for a loan from Extraco Bank, N.A. shortly before the parties entered into the Agreement.[17]  Stephenson testified he did not recall whether he had discussions with Mosing about this lien, and the lien has since been released.[18]

Stephenson did not make any of the "reacquisition" payments contemplated by the Agreement.[19]  Additionally, at no time prior to Stephenson's bankruptcy filing did Mosing attempt to perfect a security interest in the Cobra or obtain a Certificate of Title for the Cobra,[20] and Stephenson did not transfer the Certificate of Title for the Cobra to Mosing.[21]

Stephenson filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code[22] on April 29, 2019.[23]  Stephenson did not list the Cobra on his schedules, but did list Mosing as an unsecured creditor based on a "Breach of Contract (Business Debt)" in the amount of $50,000.[24]  Stephenson later amended his Statement of Financial Affairs to indicate he "held" the Cobra owned by Mosing, stating "debtor sold vehicle to Jeff

---

[13] Mosing Motion at ¶ 40; Trustee Motion at p. 7.

[14] Exh. 1.

[15] Exh. A at 27:6-8.

[16] Exh. B at 44:12.

[17] Trustee Motion at p. 8; Mosing Response at p. 3.

[18] Exh. B at 45:1-2.

[19] Trustee Motion at p. 10; Mosing Response at p. 4.

[20] Exh. 4 at pp. 5-6.

[21] Trustee Motion at p. 10; Mosing Response at p. 4.

[22] Unless otherwise specified, all references herein to "Section," "§," and "Code" refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

[23] Case No. 19-13565 MER ("**Administrative Case**").

[24] Administrative Case at ECF No. 1.

Mosing in or about 2012 for $120,000.00, but is still listed as the owner on the certificate of title."[25]

After the Petition Date, Mosing completed an application to register the Cobra in his name in Texas, but never submitted the application to the Texas Department of Motor Vehicles.[26]  The application states "The car was given as payment for a loan."[27]

The Trustee initiated this action against Mosing and Mosing Autosport, LLC on August 7, 2019.[28]  In his Complaint, the Trustee seeks to avoid Mosing's interest in the Cobra under § 544, stating Mosing failed to perfect either a security interest or ownership interest.[29]  The Trustee likewise seeks turnover of the Cobra under § 542. Mosing and Mosing Autosport, LLC, on the other hand, assert a counterclaim against the Trustee seeking a determination they have a constructive and/or resulting trust in the Cobra and are the equitable owners of the Cobra, and such interest is not subject to the Trustee's avoidance powers.[30]  Specifically, Mosing asserts the Transaction was a sale and his failure to "perfect" his ownership interest in the Cobra was a result of Stephenson's fraud insofar as he was unaware of the Colorado Certificate of Title. According to Mosing, he believed the MSO conferred ownership of the Cobra to him in the absence of a certificate of title.  Now, the parties each move for summary judgment on their claims.

## ANALYSIS

### A.    Standard for Summary Judgment

Generally, pursuant to Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[31] The burden for establishing entitlement to summary judgment rests on the movant.[32]

---

[25] Administrative Case at ECF No. 17, p. 8.

[26] Trustee Motion at p. 11; Mosing Response at pp. 4-5.  *See also* Exh. 5.

[27] Exh. 5.

[28] ECF No. 1.  *See also* ECF No. 23 (Amended Complaint).

[29] The Trustee also asserts an avoidance claim under § 547, but this claim is not part of the Trustee Motion.

[30] ECF No. 40.

[31] *Celotex Corp. v. Cattrett,* 477 U.S. 317, 322 (1986); *Stat–Tech Int'l Corp. v. Delutes (In re Stat–Tech Int'l Corp.),* 47 F.3d 1054, 1057 (10th Cir. 1995).

[32] *Celotex,* 447 U.S. at 324.

Summary judgment is not appropriate where a dispute exists as to material facts, *i.e.*, facts which could affect the outcome of the suit under relevant law.[33]

A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[34]   In applying this standard, the Court is to "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."[35]  "All doubts must be resolved in favor of the existence of triable issues of fact."[36]

Stated differently, the Court's role in deciding summary judgment is to determine whether *any* facts exist that would require the Court to weigh the parties' competing evidence through a trial.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[37]  "The inquiry performed is the threshold for determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party."[38]

## B.    Choice of Law Analysis

The matters presented to the Court involve both federal *and* state law.  As such, this Court must determine whether to apply Texas or Colorado law.[39]  As summarized by the Bankruptcy Court for the Western District of Oklahoma,

It is well established that when a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling *substantive* law. *Guaranty Trust Co. Of New York v. York*, 326 U.S. 99, 112, 65 S.Ct. 1464 (1945); *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Garcia v. International Elevator Co., Inc.,* 358 F.3d 777, 779 (10th Cir. 2004); *New York Life Insurance Co. v. K N Energy, Inc.,* 80 F.3d 405, 409 (10th Cir. 1996). . . . .

---

[33] *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).

[34] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–289 (1968)).

[35] *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir. 1999).

[36] *Novotny v. I.R.S.*, 1994 WL 722686, at *1 (D. Colo. Sept. 8, 1994).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[38] Id.

[39] The Court notes both Mosing and the Trustee argue the same outcome is reached under either state's law.

[I]n contrast to a federal court sitting in diversity jurisdiction, we are dealing with a bankruptcy court exercising federal question jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(c)(1). The U.S. Supreme Court has never extended its holdings in *Klaxon* applying the choice-of-law rules of the forum state in diversity cases to cases involving bankruptcy courts. Appellate and bankruptcy courts are divided on the issue of whether bankruptcy courts should apply the choice-of-law rules of the forum state or those of federal common law.[40]

Under either Colorado or federal common law, however, the Court must apply the "most significant contacts test."[41] In reviewing the record, the Court concludes Texas has the most significant contacts to the Transaction. It is undisputed the Transaction was negotiated while Stephenson resided in Texas.[42] Mosing is a resident of Texas and Mosing Autosport, LLC is a limited liability company organized under the laws of the State of Texas and does business in Texas.[43] The Agreement was executed in Texas.[44] The Cobra was delivered to Mosing in Texas at the time of the Transaction and is currently located in Texas.[45] Although the Cobra was and still is titled in Colorado,[46] the overwhelming contacts to the Transaction are to Texas and, accordingly, where questions of state law arise the Court will apply Texas law.

## C.   Trustee's Avoidance Powers Under § 544

Moving to the substance of the parties' arguments, each party asserts whether the Transaction is characterized as a loan or a sale is of no import insofar as the end result is the same. The Trustee argues his strong-arm powers under § 544 enable him to avoid both equitable liens and equitable ownership interests in assets legally titled in Stephenson's name, while Mosing argues § 541(d) limits the estate's interest in property held in legal title only and the Trustee cannot use his avoidance powers to overcome his equitable ownership interest in the Cobra.

---

[40] *In re Copeland*, 2019 WL 1139800, *5 (Bankr. W.D. Okla. March 12, 2019).

[41] *See id.* at *6 ("Federal common law follows the approach outlined in the *Restatement (Second) of Conflict of Laws*."); *Great American Opportunities, Inc. v. Kent*, 352 F.Supp.3d 1126, 1333 (D. Colo. 2018) (applying Colorado choice of law rules, which is consistent with the *Restatement (Second) of Conflict of Laws*). *See also Restatement (Second) of Conflict of Laws* § 188 ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.").

[42] Exh. B. at 10:10-18, 33:25-34:1-4.

[43] ECF No. 42 at ¶¶ 7-8.

[44] *See* Mosing Motion at ¶ 24, Trustee Motion at p. 5.

[45] Exh. A., 28:5-8, 39:24-40:1.

[46] Exh. 1.

The question before the Court involves the interplay between § 541(a)(1) and (d) on the one hand, and §§ 541(a)(3) and 544 on the other.  While § 541(a)(1) includes as property of the estate "all legal or equitable interest of the debtor as of the commencement of the case," § 541(d) clarifies

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Subsection (d), therefore, serves as a clear limitation on what is property of the estate and recognizes "the crucial distinction between a legal interest and an equitable interest in property."[47]  Stated differently, § 541(d) provides the bankruptcy estate's interest in any property is limited to the interest held by the debtor, "no more and no less."[48]  If the debtor holds a purely legal interest in property, the estate does not likewise receive the equitable interest in such property.

On the other hand, and as emphasized by the Trustee, § 541(a)(3) provides "[a]ny interest in property that the trustee recovers under section . . . 550 of this title" is included in property of the estate.  Trustee argues this subsection, conspicuously *not* mentioned in § 541(d), underscores that he may avoid and recover equitable interests in property to the extent allowable under applicable state law, and such avoided interests also become property of the estate through § 541(a)(3).

In *In re Richards*, Judge Elizabeth E. Brown of this Court dealt with a similar issue and summarized the question presented as follows: "Can [an] equitable lien or constructive trust claim be avoided under Section 544 and, therefore, the asset be brought into the estate pursuant to Section 541(a)(3)? Or does Section 541(d) prevent property in which a third party claims an equitable interest from becoming property of the estate?"[49]

In *Richards* the debtor purchased a vehicle with funds borrowed from a friend.[50] Although the parties intended the loan to be secured against the vehicle, the friend failed to perfect his interest on the vehicle's certificate of title.[51]  When the debtor filed

---

[47] Marrs-Winn Co. v. Giberson Electric, Inc. (*In re* Marrs-Winn Co.), 103 F.3d 584, 589 (7th Cir. 1996).

[48] *In re Richards*, 275 B.R. 586, 590 (Bankr. D. Colo. 2002).

[49] *Id.* at 589.

[50] *Id.* at 587

[51] Id.

7

for bankruptcy, the Chapter 7 trustee asserted the vehicle was property of the estate and the unperfected lien was subject to his avoidance powers under § 544.[52]

Judge Brown pointed to the Ninth Circuit Court of Appeals opinion of *In re Seaway Express Corp.* as demonstrating the "majority view" that "amended Section 541(d) only places limits on whether beneficial interests of third parties are to be included in property of the estate through Sections 541(a)(1) and (2). It makes no reference to Section 541(a)(3), which continues to add to property of the estate any property recovered through exercise of the trustee's avoidance powers."[53] As highlighted by Judge Brown and explained by the Bankruptcy Court for the District of Massachusetts,

> Section 541(d) and its history nevertheless express a clear intent to keep beneficial interests in express and constructive trusts out of the bankruptcy estate under any theory. Surely Congress must be held to have realized that a bona fide purchaser for value cuts off such interests. It makes no sense for such concern to be shown for preserving these interests under one subsection of § 541 if they would be readily included under another subsection. The two subsections would then be strangers to each other, like ships passing in the night. A literal interpretation of § 544(a)(3) so as to apply the statute only to transfers *by* the debtor brings harmony among §§ 541(d), 541(a)(3) and 544(a)(3) in their application to trusts.[54]

Applying this reasoning to the facts before her, Judge Brown noted the key to the analysis was "the treatment of the specific beneficial interest*, i.e.* an equitable lien or constructive trust claim, under applicable non-bankruptcy law. As to personal property, the court must determine whether a judicial or execution lien creditor would prevail under state law against the equitable interest."[55] Because under Colorado's Certificate of Title Act the trustee as a hypothetical lien creditor would have prevailed over the friend's unperfected equitable lien, Judge Brown determined the trustee could avoid and recover the friend's interest in the vehicle.[56]

While the Trustee would have the Court consider *Richards* to be dispositive of the issue, Mosing cites to *In re Garberding*, a decision from Judge Sidney B. Brooks, also from this Court (now retired).[57] In *Garberding* the Chapter 7 trustee sought to avoid under § 544 the debtor's boyfriend's interest in a Mercedes vehicle described in her

---

[52] *Id.* at 588.

[53] *Id.* at 589 (citing *In re Seaway Express Corp.*, 912 F.2d 1125 (9th Cir. 1990)).

[54] *Id.* at 590 (quoting *In re Mill Concepts Corp.*, 123 B.R. 938, 945 (Bankr. D. Mass. 1991)).

[55] *Id.* at 591.

[56] *Id.* at 592.

[57] *In re Garberding*, 338 B.R. 463 (Bankr. D. Colo. 2005).

schedules as "titled in Debtor's name but paid for and used by Debtor's boyfriend."[58] Although the title and loan on the vehicle were in the debtor's name, the vehicle was in the possession of the debtor's boyfriend, who reimbursed the debtor for the car payments and maintained, insured, and drove the vehicle exclusively.[59]

Judge Brooks noted and agreed with Judge Brown's analysis in *Richards*, but highlighted a key difference in the facts presented, stating

[A] trustee, *under appropriate facts and circumstances*, has the ability to exercise his strong-arm powers to recover, for the benefit of the estate, property that the debtor held subject to an equitable lien, *as long as the trustee, as a hypothetical lien creditor, would prevail under state law against an equitable lien claimant.*

Nevertheless, the inquiry does not stop here. The issue presented to this Court and the facts herein are *not* identical to those in the *Richards* case and require further examination and discussion.  In *Richards,* the trustee was attempting to avoid an unperfected lien of a creditor.  Here, the [debtor's boyfriend] does not assert that he holds a lien of any sort in the Mercedes.  Instead, he is asserting *ownership in*—that is, *beneficial ownership and economic interest in*—the Mercedes.  The cornerstone of the analysis herein is whether the Plaintiff would prevail under state law.[60]

Judge Brooks recognized Colorado law provides for a certificate of title as *prima facie* evidence of the matters contained therein, but such presumption is rebuttable.[61] The court noted that although the debtor would have been able to transfer good title to the vehicle on the petition date, she would have potentially been liable to her boyfriend had she done so.[62]  Based on the facts of the case, Judge Brooks determined as of the petition date the debtor lacked an "actual ownership" in the vehicle, such that it was not property of the estate and the Trustee could not use his strong-arm powers under § 544 to avoid the interest.[63]

The Court agrees with both *Richards* and *Garberding*.  While the Trustee may be able to use his avoidance powers under § 544 to avoid an equitable lien interest in the Cobra, to the extent Mosing is able to establish a "beneficial ownership and economic interest in" the Cobra that would prevail under Texas law, the Trustee is not able to avoid such interest.  To provide otherwise would eliminate the purpose and effect of

---

[58] *Id.* at 465.

[59] *Id.* at 465.

[60] *Id.* at 467.

[61] *Id.* at 467-68.

[62] *Id.* at 469.

[63] *Id.*

§ 541(d), which specifically excludes beneficial interests not held by the Debtor from property of the estate.

## D.    Whether Mosing Is Entitled to a Constructive Trust in the Cobra

The Court must first address Mosing's argument relating to the imposition of a constructive trust.  Under Texas law a constructive trust is used as "'an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.'"[64]  In order to succeed on his counterclaim, Mosing must show "1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; 2) unjust enrichment of the wrongdoer; [and] (3) tracing to an identifiable res."[65]

Mosing alleges actual fraud by Stephenson due to his failure to inform Mosing of the existence of the Colorado Certificate of Title and the lien in favor of Extraco Bank.  However, courts in the Tenth Circuit, this Court included, have long taken the position intent is necessarily a factual issue to be decided at trial, and questions of motive and intent are "particularly inappropriate for summary judgment disposition."[66]  The record before the Court includes conflicting testimony from both Stephenson and Mosing as to the negotiations of the Transaction and whether the Colorado Certificate of Title and lien were discussed.  The Court determines such matters are best left to be determined at trial, where the Court can evaluate not only the evidence presented, but also the credibility of the witnesses.  As such, at this time the Court declines to find Stephenson acted with the requisite fraudulent intent to establish a constructive trust.

## E.    Classification of the Transaction as a Loan or Sale

Additionally, the parties fundamentally disagree on the characterization of the Transaction, with Trustee asserting it was a loan and Mosing asserting it was a sale. The facts presented to the Court demonstrate a clear dispute as to this critical issue. For example, the April 19, 2012 email from Stephenson to Mosing describes a "purchase price" of $120,000,[67] and Mosing's testimony indicates he intended the Transaction to be a sale.[68]  On the other hand, the check written by Mosing to Stephenson states "1 yr. capital loan" on the memo line[69] and the general manager of

---

[64] *Southmark Corp.*, 49 F.3d at 1118 (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)).

[65] *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App. 2002).

[66] *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir. 1980); *Ruskin v. Sunrise Mgmt., Inc.*, 506 F.Supp. 1284, 1289 (D. Colo. 1981) ("Summary judgment is particularly inappropriate where . . . questions of motive and intent are at issue.").

[67] Exh. C.

[68] Exh. A at 34:11-12.

[69] Exh. G.

Mosing Motorcars also described the Transaction as a loan.[70]  Mosing also stated on a title application "[t]he car was given as payment for a loan."[71]

While it would appear this material dispute would summarily end the Court's summary judgment analysis, both the Trustee and Mosing advance arguments stating they are entitled to judgment as a matter of law under either scenario.

       1.      *Trustee's Arguments in the Event the Transaction Was a Sale*

The Trustee argues even if the Transaction was intended as a sale and Mosing was entitled to an equitable ownership interest, the Texas Certificate of Title Act ("**TCTA**") provides "a motor vehicle may not be the subject of a subsequent sale unless the owner designated on the title submits a transfer of ownership of the title."[72]  The TCTA also states "[a] sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied."[73]  Based on these provisions, the Trustee argues the Transaction is void and Mosing can have no valid ownership interest in the Cobra.

The Texas Court of Appeals addressed this provision of the TCTA in *Vibbert v. PAR. Inc.*[74]  In *Vibbert*, the Vibberts traded in their Nissan vehicle for another vehicle and the payoff of a loan owed to Wells Fargo, which was secured by a lien on the Nissan.  A few days later, the dealership sold the Nissan to the Kuwamotos, who financed the purchase.  The dealership's payment to Wells Fargo bounced, and Wells Fargo continued to demand payment from the Vibberts.  Meanwhile, the financing company for the Kuwamotos sought to secure title to the Nissan through PAR, Inc., who in turn contracted with C & M Title Services to perform the necessary title work.  C & M discovered the Vibberts remained on title to the Nissan, as well as the existence of a lien, but nonetheless filed an application to transfer title to the Kuwamotos.  The Vibberts then sued PAR, alleging it converted the Nissan by fraudulently transferring title to the Kuwamotos.

PAR disputed the Vibberts could establish conversion, arguing under the Uniform Commercial Code ("**UCC**"), title to the Nissan passed to the Kuwamotos when the vehicle was physically delivered to them.  The Vibberts, on the other hand, argued the sale of the Nissan was void according to the TCTA because the certificate of title was not transferred as required.

The Texas Court of Appeals noted "[t]he name on the certificate of title is not conclusive of ownership.  Evidence of the name in which an automobile is registered

---

[70] Exh. 3.

[71] Exh. 5.

[72] Tex. Transp. Code § 501.071.

[73] Tex. Transp. Code § 501.073.

[74] *Vibbert v. PAR, Inc.*, 224 S.W.3d 317 (Tex. App. 2006).

427

only raises a presumption of ownership."[75]  The court then highlighted the TCTA provision stating that sales made in violation of the TCTA, *i.e.* without passing the certificate of title, are void.[76]  The court noted, however, Chapters 1 through 9 of the Texas Business and Commerce Code, which includes Texas's adoption of the UCC, control over conflicting provisions of the TCTA,[77] and "[u]nder the UCC, title to a motor vehicle passes to the buyer upon delivery or possession even though a certificate of title will be delivered later and the names on the certificate of title are not changed."[78] Finding a conflict in the statutes, the court held the UCC trumped the TCTA provision, and the Vibberts' failure to transfer the title to the Nissan did not void the sale.[79]

The Cobra at issue here is a "good" within the purview of Article 2 of the UCC, as described by the Texas Court of Appeals in *Vibbert*.  Accordingly, to the extent the Transaction was a sale, under Texas law, title to the Cobra would have passed to Mosing at the time Stephenson delivered the Cobra, regardless of the failure to transfer a certificate of title pursuant to the TCTA.[80]  As such, the Trustee's argument he is entitled to summary judgment even if the Transaction was a sale must fail, and precludes summary judgment in his favor.

### 2.    *Mosing's Arguments in the Event the Transaction Was a Loan*

On the other hand, Mosing asserts even if the Transaction is characterized as a loan instead of a sale, the Agreement provides that upon Stephenson's failure to timely repay the loan, Mosing would retain possession and ownership of the Cobra.  Mosing cites to the fact he has possessed, maintained, and insured the Cobra since the Transaction, and argues by the terms of the Agreement, the Cobra is now his, even if the Transaction began as a loan.

The terms of the Agreement do not clearly support Mosing's position, however. Specifically, the Agreement signed by Stephenson and Mosing provides an amount, and an "Agreement that Trac Stephenson may Re-Acquire Cobra for a Period of 1 Year ending May 9th 2013. . . . Jeff Mosing to hold Original MSO & Possession of Cobra during the agreement period."[81]  It is not clear from the face of the Agreement what would happen upon Stephenson's failure to "reacquire" the Cobra during the agreement

---

[75] *Id.* at 321 (citing *Tyler Car & Truck Center v. Empire Fire & Marine Insurance Co.*, 2 S.W.3d 482, 485 (Tex. App. 1999); *Minter v. Joplin*, 535 S.W.2d 737, 738 (Tex. Civ. App. 1976)).

[76] *Id.* at 322.

[77] *Id.* (citing Tex. Transp. Code § 501.005).

[78] *Id.* (citing *First Nat. Bank of El Camp, TX v. Buss*, 143 S.W.3d 915, 920 (Tex. App. 2004)).

[79] *Id.* at 324.

[80] Tex. Bus. & Comm. Code § 2.410(b).

[81] Exh. 3, p. 2.

period, and Stephenson testified he did not have any discussions with Mosing as to what would happen if he did not pay during the specified period of time.[82]

Although the Agreement is silent as to the remedies available to Mosing in the event of Stephenson's default, Tex. Bus. & Comm. Code § 9.609 provides "[a]fter default, a secured party may take possession of the collateral," with or without judicial process.[83]  However, taking possession does not equate to conferral of ownership interest and there is no evidence in the record Mosing took any further steps prior to the bankruptcy to effectuate his ownership of the Cobra after Stephenson's failure to pay as required.  Without a sale pursuant to an execution or a foreclosure of the security interest, Stephenson's lien on the Cobra would not have changed into an ownership interest merely by operation of law.  To distinguish from the Court's analysis above, Article 2 of the UCC does not apply in the event the Transaction was a loan, and Mosing's possession of the Cobra in and of itself would not have translated into a valid ownership interest in the Cobra.  Accordingly, after Stephenson's default under the Agreement, Mosing's interest would have remained as an unperfected lien, and this interest would potentially be subject to the Trustee's § 544 avoidance powers.  As such, the Court declines to grant summary judgment in favor of Mosing.

## CONCLUSION

While many of the facts involved here are undisputed, the parties presented enough conflicting evidence regarding central, material matters in this case to preclude the entry of summary judgment in either party's favor.  The Court will need to hear and determine these issues at trial.

For the foregoing reasons, it is ORDERED the Motions for Summary Judgment are DENIED.  A separate notice will issue setting a trial scheduling conference.

Dated March 25, 2021                          BY THE COURT:

                                             Michael E. Romero, Chief Judge
                                             United States Bankruptcy Court

---

[82] Exh. B at 40:5-8.

[83] Tex. Bus. & Comm. Code § 9.609(a)(1), (b).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 19-13565 MER |
| TRACY DEAN STEPHENSON | Chapter 7 |
| Debtor. | |
| M. STEPHEN PETERS, CHAPTER 7 TRUSTEE | Adversary No. 19-1211 MER |
| Plaintiff, | |
| v. | |
| JEFFREY MOSING MOSING AUTOSPORT, LLC | |
| Defendants | |

**ORDER**

PLEASE TAKE NOTICE  that this matter is set for a one day trial, commencing on **Thursday, July 15, 2021, at 9:30 am.,** in Courtroom C, U.S. Custom House, 721 19th Street, Denver, Colorado.  Participants shall comply with the "Administrative Order of the Chief Judge 2020-2" and the Entry and Operational Protocols located on the Court's website at https://www.cob.uscourts.gov/covid-19-information.

IT IS ORDERED that the provisions of Fed.R.Civ.P. 26 shall apply to this proceeding, subject to the provisions of this Order.  The requirements in this Order specifically supersede the requirements in Local Bankruptcy Rule 9070-1.

IT IS FURTHER ORDERED that the parties adhere to the following deadlines:

1.  **Witnesses and Exhibits**.  The parties shall exchange witness lists and exhibits on or before **July 1, 2021**.  A List of Witnesses and Exhibits shall be filed with the Court on or before **July 1, 2021**, substantially in the form of L.B. Form 9070-1.1.  Do not file the actual exhibits unless otherwise directed by the Court.  Any illustrative aids to be used at trial in opening statements, with a witness, or in closing arguments, shall be exchanged by **July 6, 2021.**

a. The parties must exchange FULL SETS of intended exhibits prior to trial. Exhibits which have been attached to pleadings or provided as discovery responses are not considered to be exchanged for purposes of trial preparation.

b. Exhibits must be marked for identification (Movant-numbers and Respondent-letters).

c. **Multi-page exhibits should be individually page-numbered.**

d. Expert witnesses must be specifically identified.

e. The courtroom is equipped for electronic evidence presentation and the Court strongly encourages its use.  The guidelines for using courtroom technology are available on the Court's website under "Judges' Info" at: http://www.cob.uscourts.gov.

f. If paper exhibits are being used, each party shall provide three (3) copies of all exhibits to the Law Clerk or Courtroom Deputy. Exhibits should be placed in a binder and indexed in the form of Attachment 1 to L.B.R. 9070-1.1.

g. Written objections directed to the witnesses or exhibits must be filed with the Court and served on opposing counsel or party on or before **July 8, 2021**, otherwise all objections except as to foundation and relevancy are waived.

h. Copies of contested exhibits must be attached to the filing of objections for the Court's prior review, unless the nature of the objection involves the fact that the party proffering the exhibit has failed to adequately identify and/or exchange it.

i. While objections to exhibits will be deemed waived unless the objector complies with this paragraph, only those exhibits which are specifically admitted during the evidentiary hearing will be considered by the Court and become part of the evidentiary hearing record.

2. <u>**Pretrial Statement**</u>.  On or before **June 27, 2021**, the parties, through counsel, if applicable, must confer and prepare a pretrial statement setting forth the following, which must be filed with the Court on or before **July 1, 2021:**

a. A brief summary of the claims and defenses of each party;

b. A concise statement of stipulated and uncontested facts;

c. A concise statement of the issues that are in dispute;

d. A brief statement of all points of law relied upon, citing pertinent statutes, standards, cases and other authority; and

e. If applicable, an itemization of damages with a description of the basis for the calculation.

**Failure to timely file the witness and exhibit lists or a complete pretrial statement <u>including stipulated facts</u> may result in the *sua sponte* vacation of the trial.**

3.    **Trial Briefs**.  For all trials and contested hearings set for one day or longer, it is the practice of this Court to request the parties to provide written closings, with legal authority and citations to the trial record, at a date to be determined after the close of evidence.  Accordingly, the Court asks the parties to forego pre-trial briefing in lieu of the written closings. Motions requesting conventional oral closings may be tendered to the Court prior to the start of trial.

4.    **Notification of Settlement**.  To facilitate court preparation for this hearing, any motion to continue the hearing or to vacate the hearing due to settlement shall be filed at least 24 hours prior to the scheduled hearing.  Parties shall contact chambers staff by telephone at 720-904-7413 upon filing such a motion, and chambers staff will advise parties if the hearing is continued or vacated.  Except in exigent circumstances not known 24 hours before the hearing, oral motions to continue will not be entertained.  If the matter is settled and a written motion to vacate due to settlement cannot be timely submitted, counsel and parties appearing pro se may be required to appear, either in person or by telephone, at the scheduled hearing time to read the terms of any settlement into the record.

5.    **Court Appearances**.  Evidence will not be received by telephone or declaration, nor will parties be permitted to appear by telephone.  All parties shall appear in person or by counsel.

Dated May 11, 2021                              BY THE COURT:

                                                Michael E. Romero, Chief Judge
                                                United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants | ) | |

**ORDER GRANTING UNOPPOSED MOTION TO VACATE AND RESCHEDULE
TRIAL**

THIS MATTER having come before the Court on the Unopposed Motion to Vacate and
Reschedule Trial ("Motion") filed by Plaintiff M. Stephen Peters, chapter 7 trustee, and the Court
having read the Motion, and being otherwise fully advised in the premises, it is hereby

ORDERED that the Motion is GRANTED. The one-day trial scheduled for August
17, 2021 at 9:30 a.m. is hereby VACATED and rescheduled to Friday, September 3, 2021 at 9:30
a.m. All pre-trial deadlines are extended for 15 days.

DATED this 28th day of ____July____, 2021.

BY THE COURT:

Hon. Michael E. Romero
United States Bankruptcy Judge

(COB #237 NtcFilTrans)(09/08)

# UNITED STATES BANKRUPTCY COURT
### District of Colorado

M. Stephen Peters                                      Case No.
                                                       **19–01211–MER**

                                Plaintiff,
v.

Jeffrey Mosing

                                Defendant.


### NOTICE OF FILING OF TRANSCRIPT
### AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION[1]

A transcript of the proceeding held on 12/15/2020 was filed on 8/12/2021 . The following deadlines apply:

The parties have until 8/19/2021 to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *Request for Redaction* is 9/2/2021 .

If a request for redaction is filed, the *Redacted Transcript* is due 9/13/2021 . If no such notice is filed, the transcipt may be made available for remote electronic access upon expiration of the restriction period, which is 11/10/2021 unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber:

Access Transcripts, LLC
10110 Youngwood Lane
Fishers, IN 46048
(855) 873–2223

or you may view the document at the clerk's office public terminal.

---

[1] The Judiciary's privacy policy provides for limiting Social Security and Financial Account numbers to the last four digits, using only initials for the names of minor children, and limiting dates of birth to the year. If such personal identifier information is elicited within court proceedings, this information will appear on the transcript and will become available to the public unless action is take to redact this information.

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT PRETRIAL STATEMENT

Plaintiff M. Stephen Peters, chapter 7 trustee (the "Trustee"), and Defendants Jeffrey Mosing and Mosing Autosports dba Mosing Motorcars (together "Mosing"), by and through their respective undersigned counsel, hereby submit this Joint Pretrial Statement, pursuant to the Court's Order and Notice of Trial by Videoconference (Docket Nos. 71 and 78), and state as follows:

## I.    SUMMARY OF CLAIMS AND DEFENSES

### A.    Plaintiff's Claims and Affirmative Defense:

1.    First Claim for Relief: Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 547(b), 550(a) and 551

2.    Second Claim for Relief:  Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551

3.    Third Claim for Relief: Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(a), 550(a) and 551

4.    Fourth Claim for Relief: Avoid, Recover and Preserve Transfer – 11 U.S.C. §§ 544(b), 550(a) and 551

1

5.      Fifth Claim for Relief: Turnover of Property of the Estate – 11 U.S.C. § 542(a)

6.      Sixth Claim for Relief: Declaratory Relief – Determination of Interests in the Vehicle

7.      Affirmative defenses of equitable estoppel or laches

8.      Affirmative defense of statute of limitations

**B.    Defendants' Counterclaim and Affirmative Defenses:**

1.      First counterclaim for relief: declaratory judgment that the subject property is not property of the Debtor's estate – 11 U.S.C. §§ 541(a)(1); 541(d)

2.      First counterclaim for relief: the subject property is held in a constructive trust on behalf of Defendants - 11 U.S.C. § 541(d)

3.      Affirmative defense of failure to allege a claim upon which relief may be granted.

4.      Affirmative defense that Debtor was not insolvent at time of subject transfers.

5.      Affirmative defense that Trustee's claims are barred by the doctrine of in Pari Delicto.

6.      Affirmative defense that Defendants accepted the alleged transfer in good faith.

7.      Affirmative defense that Defendants gave value to Debtor in exchange for the subject property.

## II.    <u>STATEMENT OF UNCONTESTED FACTS</u>

1.      Tracy Dean Stephenson (the "Debtor') filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 29, 2019 ("Petition Date"), Case No. 19-13565 MER.

2.      Trustee is the duly appointed chapter 7 trustee of Debtor's bankruptcy estate.

3.      On or about December 20, 2011, Debtor purchased and received possession of a 1965 Shelby 427 Cobra motor vehicle, VIN CSX4501 ("Cobra").

4.      On March 8, 2012, the State of Colorado issued the Certificate of Title for the Cobra. A true and correct copy of the Certificate of Title is attached hereto as <u>Exhibit 1</u>.

5.      The Cobra is titled in Debtor's name individually.

6.      Trustee is in possession of the Cobra's original Certificate of Title.

7.      Debtor used the Cobra as collateral for a $75,000 loan from Extraco Bank NA ("Extraco").

8.      Extraco's lien was noted on the Certificate of Title.

9.      Debtor paid off the Extraco loan and on June 2, 2016 Extraco released its lien against the Cobra.

10.     Mr. Mosing is the sole member and manager of Mosing Motorcars and has been since its inception in 2011.

11.     Mosing Motorcars is a Texas motor vehicle dealership that specializes in the purchase, sale and consignment of high-end sports cars and specialty 4x4s.

12.     Mosing Motorcars consists of a 10,000 square foot building including a 2,400 square foot showroom.

13.     Mosing Motorcars is a licensed automobile dealer in Texas.

14.     Mr. Mosing, individually, is not a licensed automobile dealer in Texas.

15.     Neither Mosing Motorcars nor Mr. Mosing have an automobile dealer license in any other states.

16.     Mosing Motorcars is a licensed dealer of Superformance automobiles and has been since either 2015 or 2016.  Superformance is a company that produces replicas and duplicates of cars that were built in the 1960s.

17.     Debtor operated his car dealership Legendary Motorsport, Inc. ("Legendary").

18.     Legendary was a licensed motor vehicle dealer in Texas and Colorado.

19.     427 Legends, LLC ("427 Legends"), of which Debtor was the sole member, was a

licensed Superformance dealer in Texas.

20.    427 Legends was the rebranded version of Legendary for the Texas market.

21.    In an email dated April 19, 2012, Debtor made a proposal to Mr. Mosing regarding the Cobra. A true and correct copy of the April 19, 2012 email is attached hereto as Exhibit 2.

22.    The final agreement between the parties was reduced to an "Agreement" dated May 8, 2012.  A true and correct copy of the Agreement is attached hereto as Exhibit 3.

23.    The Agreement is the only written agreement between Mr. Mosing and Debtor regarding the Cobra.

24.    Debtor never furnished a copy of the Certificate of Title to Mr. Mosing or Mosing Motorcars.

25.    The Agreement was executed at Mosing Motorcars in Austin, Texas.

26.    After execution of the Agreement Mr. Mosing personally wrote the $120,000 check payable to "427 Legends" including the notation in the memo line, and he signed the check.  A true and correct copy of the check is attached hereto as Exhibit 4.

27.    The check was payable to "427 Legends" at Debtor's direction.

28.    The memo line on the $120,000 check states it is "for 1 YR. CAPITAL LOAN."

29.    On June 5, 2019, Kirk Winterrowd, General Manager of Mosing Motorcars, executed a letter (the "June 5, 2019 Letter") stating that the $120,000 was borrowed and Debtor put the Cobra up as  collateral. A true and correct copy of the June 5, 2019 Letter is attached hereto as Exhibit 5.

30.    Specifically, the June 5, 2019 Letter states that "Per the attached agreement, let it be known that on May 8th, 2012, Trac Stephenson entered into an agreement with Jeff Mosing to borrow $120,000 and that Trac Stephenson put up as a collateral a 1965 Shelby Cobra 427 CSX

4

4501."

31.     Mr. Mosing has maintained and insured the Cobra, with an insured value at $120,000.00, since 2012.

32.     The June 5, 2019 letter is signed by Kirk Winterrowd ("Mr. Winterrowd") as General Manager of Mosing Motorcars

33.     Mr. Mosing drafted the June 5, 2019 letter with Mr. Winterrowd.

34.     Mr. Mosing approved the June 5, 2019 letter and authorized Mr. Winterrowd to sign it.

35.     Debtor made no payments to Defendants and Mr. Mosing never received the original Certificate of Title for the Cobra.

36.     On or around June 20, 2019, after Debtor's bankruptcy case was filed, Mr. Mosing completed paperwork to have the Texas Department of Motor Vehicles issue a Certificate of Title for the Cobra (the "DMV Application") in his name individually.  A true and correct copy of the DMV Application is attached hereto as Exhibit 6.

37.     Mr. Mosing, and not Mosing Motorcars, is listed as the applicant in the DMV Application.

38.     Mr. Mosing signed the DMV Application in three places.

39.     In the DMV Application, Mr. Mosing states that "The [Cobra] was given as payment for a loan."

40.     In the DMV Application, Mr. Mosing states that the current value of the Cobra is $150,000.

41.     Mr. Mosing did not submit the DMV Application to the Texas Department of Motor Vehicles.

42.    The Cobra has less than 1,000 miles.

43.    The Cobra is an authentic limited-edition carbon fiber body, which is an exact replica of the Cobras that Carol Shelby produced in the 1960s.

44.    Approximately five such vehicles were manufactured and, based upon the Cobra's VIN, it was either the first or second such vehicle manufactured.

45.    Both Debtor and Mr. Mosing testified that the MSO is a "collector's item."  A true and correct copy of the MSO is attached hereto as Exhibit 7.

46.    Debtor provided Mr. Mosing with the Cobra's MSO in accordance with the Agreement, bearing Carrol Shelby's original signature.

47.    Debtor delivered the Cobra to Mr. Mosing on a closed trailer.

48.    After the Petition Date, on June 5, 2019, Debtor filed amended Statement of Financial Affairs to indicate that he "sold" the Cobra to Mr. Mosing in 2012 for $120,000, "but is still listed as the owner on the certificate of title."

49.    The parties stipulate to the admission of Exhibits 1 through 7.

### III.    STATEMENT OF DISPUTED ISSUES

Disputed issues in this case include the following matters:

1.    Whether Defendants' purported lien interest in the Cobra is avoidable pursuant to 11 U.S.C. §§ 547(b) or 544 and may therefore be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550(a) and 551.

2.    Whether Defendants' purported ownership interest in the Cobra is avoidable pursuant to 11 U.S.C. §§ 547(b) or 544 and may therefore be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550(a) and 551.

3.    Whether Defendants may assert a constructive trust or other equitable interest over the Cobra for their benefit?

4.    If Defendants may assert a constructive trust or other equitable interest, whether Trustee's avoidance powers defeat Defendants' constructive trust or any other equitable interest.

6

5.     Whether Defendants' purported ownership interest in the Cobra is avoidable pursuant to 11 U.S.C. §§ 547(b) or 544 and may therefore be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550(a) and 551.

6.     Whether the Cobra is property of the estate under 11 U.S.C. 541(a)(1).

## IV.    STATEMENT OF POINTS OF LAW

**A.    Plaintiff's Points of Law:**

Avoidance Points of Law

11 U.S.C. §§ 544(a), 544(b), 547(b), 547(e)(2)(C), 547(f), 550(a) and 551

*Connolly v. Fiber Instrument Sales (In re Western Integrated Networks, LLC)*, 350 B.R. 628, at 4 (10th Cir. BAP 2006) ("It is axiomatic that a debtor with fewer assets than liabilities does not have the ability to pay all of its unsecured creditors in full in liquidation. There simply is not enough money to go around; it is a matter of mathematics.")

*In re Richards*, 275 B.R. 586 (Bankr. D. Colo. 2002) (adopting majority view and holding that trustee may avoid equitable interests such as a constructive trust)

11 U.S.C. § 541(a)

11 U.S.C. § 542(a)

Colorado Titling Points of Law

C.R.S. § 42-6-120(1)

*In re Moore*, 275 B.R. 390, 393 (Bankr. D. Colo. 2002) ("Under Colorado law, a security interest in a motor vehicle is *only* effective as a valid lien if it is recorded and is noted on the certificate of title, C.R.S. § 42–6–120(1)" (emphasis in original))

*First Nat. Bank of Ogallala, Neb. v. Chuck Lowen, Inc.*, 261 P.2d 158, 161 (Colo. 1953) (a purchaser without a certificate of title takes *subject to* all prior liens)

C.R.S. § 42-6-109(1)

C.R.S § 42-6-110

C.R.S. § 42-6-113(1) and (3)

Texas Titling Points of Law

Tex. Code § 501.111

*In re Clark Contracting Services, Inc.*, 399 B.R. 789, 798 (Bankr. W.D. Texas 2008) ("The Act expressly states that notation on the certificate of title equals perfection of the lien")

*U.S. v. 1977 Porsche Carrera 911*, 946 F.2d 30, 34 (5th Cir. 1991) (sale of a motor vehicle that does not comply with Texas law is void)

Tex. Code § 501.073

Tex. Code § 501.0721

Tex. Code § 501.025

Tex. Code § 501.017

Statute of Limitations Points of Law

Tex. Civ. Prac. and Rem. § 16.0004

*Seureau v. ExxonMobil Corp.*, 274 S.W.2nd 206, 229 (Tex. App. 2008) (holding that discovery rule for fraud claims does not apply when a reasonably prudent person could have discovered the cause of action)

**B.    Defendants' Points of Law:**

Contract Interpretation/Parole Evidence Points of Law

Colorado:

C.R.S. § 4-2-202

*Alley v. McMath*, 346 P.2d 304 (Colo. 1959)

*Christmas v. Cooley,* 158 Colo. 297, 301, 406 P.2d 333, 335 (1965)

*Northern Ins. Co. of New York v. Ekstrom,* 784 P.2d 320, 323 (Colo. 1989)

*KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769, 777 (Colo. 1985)

*Union Rural Elec. Ass'n v. Public Utils. Comm'n,* 661 P.2d 247 (Colo. 1983)

*Schmelzer v. Condit,* 69 Colo. 405, 195 P. 323 (1920)

*Regan v. Customcraft Homes, Inc.,* 170 Colo. 562, 463 P.2d 463 (1970)

*Hott v. Tillotson–Lewis Constr. Co.,* 682 P.2d 1220 (Colo. App. 1983)

*Cheyenne Mountain School Dist. No. 12 v. Thompson*, 861 P.2d 711 (Colo. 1993)

Texas:

*National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517 (Tex. 2003)

*Glover v. National Insurance Underwriters,* 545 S.W.2d 755, 761 (Tex. 1977)

*Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)

<u>*Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732 (Tex. 1981)</u>

*Universal Home Builders, Inc. v. Farmer,* 375 S.W.2d 737, 742 (Tex. Civ. App.—Tyler 1964, no writ)

*Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004 (1941)

<u>Property of the Estate Points of Law</u>

11 U.S.C. § 541(a)(1)

11 U.S.C. § 541(d)

*In re Kang*, No. 11-36325, 2013 WL 870223, at *2. (Bankr. S.D. Tex., Mar. 6, 2013)

*In re Matter of Quality Holstein Leasing,* 752 F.2d 1009, 1012 (5th Cir. 1985)

*Haber Oil Co., Inc. v. Swineheart (In re Haber Oil Co., Inc.)*, 12 F.3d 426

<u>Texas Titling Points of Law:</u>

Tex. Transp. Code § 501.071

Tex. Transp. Code § 501.073

Tex. Transp. Code § 501.005

*Vibbert v. PAR, Inc.*, 224 S.W.3d 317 (Tex. App.—El Paso 2006, no pet.)

*Tyler Car & Truck Center v. Empire Fire & Marine Insurance Co.*, 2 S.W.3d 482, 485 (Tex. App.—Tyler 1999, no writ)

*First Nat'l Bank of El Campo, Tex. v. Buss*, 143 S.W.3d 915, 920 (Tex. App.—Corpus Christi 2004, no pet.)

9

443

TEX. BUS. & COM. CODE § 2.410(b)

Avoidance Points of Law

11 U.S.C. §§ 542, 544, 547, 550, and 551

Constructive Trust Points of Law

11 U.S.C. § 541(d)

*In re Garberding*, 338 B.R. 463 (Bankr. D. Colo. 2005)

*See In re Kaiser Steel Corp.*, 87 B.R. 154, 159 (Bankr. D. Colo. 1988)

*In re Cyrus II Partnership*, 413 B.R. 609, 615 (Bankr. S.D. Tex. 2008)

*Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.*, 960 F.2d 366, 372 n.2 (3d Cir. 1992)

*Vineyard v. McKenzie* (*In re Quality Holstein Leasing*), 752 F.2d 1009 (5th Cir. 1985)

*City Nat'l Bank of Miami v. Gen. Coffee Corp.* (*In re Gen. Coffee Corp.*), 828 F.2d 699 (11th Cir. 1987).

*In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004).

*Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex. 1991)

*Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984)

*Hammett v. McIntire*, 365 S.W.2d 844, 847 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.)

*Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App.—Corpus Christi 2002, pet. denied)

*Medford v. Medford*, 68 S.W.3d 242, 248 (Tex. App.—Fort Worth 2002, no pet.)

## V.    ITEMIZATION OF DAMAGES

**A.    Plaintiff's Damages:**  Trustee seeks to avoid the transfers identified in the Complaint, preserve such transfers for the benefit of the Estate, and recover the Cobra or the value thereof, plus costs.

**B.    Defendants' Damages:** Defendants do not seek affirmative damages from Trustee. Rather, Defendants seek a declaration that Defendants are owners of the Cobra, plus costs. To the extent the Court rules against Defendants, Defendants intend to file a proof of claim pursuant to 11 U.S.C. § 502(h).

DATED this 16th day of August 2021.

WADSWORTH GARBER WARNER
CONRARDY, P.C.

*/s/ Aaron J. Conrardu*
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999 / Fax (303) 296-7600
aconrardy@wgwc-law.com
*Attorneys for Plaintiff*

CHAMBERLAIN HRDLICKA

*/s/ Jarrod B. Martin*
Jarrod B. Martin, #24070221 (Texas)
Reagan H. "Tres" Gibbs, III, #24083068 (Texas)
1200 Smith Street, Suite 1400
Houston, Texas 77002
(713) 356-1280 / Fax (713) 658-2553
jarrod.martin@chamberlainlaw.com
tres.gibbs@chamberlainlaw.com
*Attorneys for Defendants*

319164

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK ON BACK

## STATE OF COLORADO
### CERTIFICATE OF TITLE
**\*\*\*\*MOTOR VEHICLE\*\*\*\***

TITLE NUMBER
47E826370

VIN
CSX4501

YEAR
1965

MAKE
SHE

MODEL

BODY
CV

ODOMETER
340     A

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage; WARNING
    ODOMETER DISCREPANCY

MAIL TO

EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX  76528

CWT/CAP/SIZE
23

PREVIOUS TITLE
47E824155

FUEL
G

DATE PURCHASED
12/20/2011

OWNER
STEPHENSON TRAC D

DATE ACCEPTED
03/08/2012

DATE ISSUED
03/08/2012

---

FIRST LIENHOLDER
EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX 76528

DATE RCD
03/07/2012

FILE NUMBER
001201631

AMOUNT OF LIEN
75,000.00

LIEN EXTENDED TO     COUNTY

MATURITY DATE
03/07/2022

Signature below certifies under penalty of
perjury in the second degree the release of the
first lienholder's interest in the vehicle.
Lienholder's Name
*Extraco Bank NA*
*Sherry Mitchell  6-2-16*
Authorized Agent's Signature        Date

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY

MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
second lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature        Date

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY

MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
third lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature        Date

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN     LIEN EXTENDED TO     COUNTY     MATURITY DATE

Signature below certifies under penalty of
perjury in the second degree the release of the
fourth lienholder's interest in the vehicle.

Lienholder's Name

Authorized Agent's Signature        Date

---

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED,
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE
BARBARA BROHL

DATE DUPLICATE ISSUED

H8854186

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

REV. 1/18/10

VOID IF ALTERED

446

**TRANSFER OF OWNERSHIP/BUYER(S) REQUIREMENT**- Upon the sale or transfer of a motor vehicle the owner in whose name the certificate of title is issued shall execute a formal transfer of the vehicle. Within **60 days** the buyer shall present the certificate of title together with an application for title to an authorized agent pursuant to C.R.S. 42-6-110.

**TRANSFER OF OWNERSHIP/SELLER(S) REQUIREMENT**- When the owner of a motor vehicle transfers or assigns the certificate of title to a buyer, the registration of such vehicle shall expire and the seller shall remove the license plates pursuant to C.R.S. 42-3-115.

**ODOMETER CERTIFICATION** - Federal and state law requires the seller to declare the mileage of the motor vehicle and requires the buyer to acknowledge the mileage of the motor vehicle upon transfer of ownership. The seller and buyer are required to print and sign their name to acknowledge the mileage pursuant to 49 USC 327.

**THE SELLER(S) CERTIFIES, UNDER PENALTY OF PERJURY IN THE SECOND DEGREE, THAT THE SELLER(S) SIGNATURE(S) RELEASES AND TRANSFERS INTEREST IN THE VEHICLE AND THE ODOMETER READING AND DECLARATION ARE TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE.**

**NOTICE: ANY ALTERATION OR ERASURE MAY VOID THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW**

**ASSIGNMENT BY OWNER(S)**

| | | |
|---|---|---|
| Odometer Reading ____ No Tenths | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Signature Acknowledges Odometer Reading |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | Date of Sale | Buyer's Physical Address |
| Seller's Signature | Purchase Price | Buyer's City, State, ZIP |

**THE FOLLOWING REASSIGNMENT MAY ONLY BE USED BY LICENSED DEALERS.**

**1ST DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading ____ No Tenths | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**2ND DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading ____ No Tenths | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**3RD DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading ____ No Tenths | ☐ Actual Mileage<br>☐ Mileage in excess of Mechanical Limits<br>☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

Begin forwarded message:

**From:** CSXNUT <csxnut@yahoo.com>
**Subject: Shelby Cobra**
**Date:** April 19, 2012 at 7:24:17 PM CDT
**To:** Jeff Mosing <cajunairman@yahoo.com>

Hey Jeff,

Here is what I would like to work out if possible...

Purchase price of $120,000 with an agreement that I can purchase the Cobra back for up to a year or so.

If it takes 0-6 months, the buy-back price would be $130,000.
If it takes 6-9 months, the buy-back price would be $140,000.
If it takes 9-12 months, the buy-back price would be $150,000.

You would obviously take possession of the Cobra immediately, with the Original MSO.
The Cobra would stay on the Original MSO until our agreement ends.

I would ask that you not advertise it for sell but if you have a customer interested in a Cobra, we could offer to order a new Superformance or Genuine Shelby or even find them one which I could help with. You and I could split the profit on each Cobra ordered or Brokered (or whatever you feel is fair)

We could also order someone a GT40, the new Daytona Coupe or Corvette Grand Sport as well.

All orders would be through an existing Shelby/Superformance Dealer or directly through Shelby/Superformance themselves. Kirkham is also a great car which you could offer.

You would have to make sure that your business is not representing itself as a Dealer in any way however. Shelby American gets pretty upset about that.

But, if you have buyers, we can get the cars. That should not be a problem.

There is also money to be made on the Build-Out of the new cars. For example, we could get good prices from ROUSH, SHELBY, Performance Engineering, Keith Craft Engines & GM Performance Parts and leave the assembly to someone else.

If this interests you or if you have something else in mind, please let me know.

**MOSING 000007**



**EXHIBIT**

**A**
448

I would really like to do something right away... Things are moving really fast on my Network business. I am needing to Hem-ridge lots of cash to do it right!

Thanks Jeff

Trac Stephenson
512.755.9895

MOSING 000008

Agreement:

1965 Shelby 427 Cobra SC
CSX4501

May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013

Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.

Jeff Mosing

ERIC  BEVERDING
(WITNESS)

Trac Stephenson





05-09-12                    $120,000.00            05-09-12                    $120,000.00





05-09-12                    $120,000.00            05-09-12                    $120,000.00



Per the attached agreement, let it be known that on May 8th 2012, Trac Stephenson entered into an agreement with Jeff Mosing to borrow $120,000 and that Trac Stephenson put up as collateral a 1965 Shelby Cobra 427 CSX4501.

Per the attached agreement, Trac Stephenson may re-acquire said Cobra for a period of one year ending May 9th 2013 per the following:
$130,000: May 9th 2012 -November 9th 2012
$140,000: November 10th 2012 -February 9th 2013
$150,000: February 10th 20 13 -May 9th 2013

And per the attached agreement, Jeff Mosing is to hold the original MSO for the 1965 Shelby Cobra 427 CSX4501 and have possession of said Cobra during the agreement period.

If the agreement is not fulfilled by the dates set for in the agreement, Jeff Mosing is to retain possession and ownership of the 1965 Shelby Cobra 427 CSX4501.

As of this day, June 5, 2019, no payments have been made from Trac Stephenson to Jeff Mosing nor has the title for the 1965 Shelby Cobra 427 CSX4501 been sent to Jeff Mosing.

**Kirk Winterrowd**
**General Manager**
**Mosing Motorcars**

**2420 West Braker Lane Austin, Tx. 78758     (512) 821-9491www.mosingmotorcars.com**

Agreement:

1965 Shelby 427 Cobra SC
CSX4501

## May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year .ending May 9t: 2013.

Re--Acquisition Amounts:
$130,000: May 9th 2012 . November 9th 2012
$140,000: November  lo$^{th}$ 2012 . February 9th 2013
$150,000: February  lo$^{th}$ 2013 . May 9th 2013

Jeff Mosing to hold Original MSO &  Possession of Cobra during
the agreement period.

Jeff Mosing

Trac Stephenson

E2.J C     f-E-VE-l2D \"1
(. W l-nJE.S'   )



RECEIVED
JUN 24 2019

AUSTIN REGIONAL OFC

Texas Department of Motor Vehicles

## Law Enforcement Identification Number Inspection

This form is void if not submitted within 30 calendar days of inspection.

### Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX4501 | 1965 | SHEB | CP | CSX |

| Title/Document Number (if available) | License Plate State and Number (if any) |
|---|---|
| Manufacturer Certificate of Origin 0501 | |

### Owner/Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Bobby | | Mosing | |

| Address | City | State | Zip |
|---|---|---|---|
| 110 San Antonio St Apl 3100 | Austin | TX | 78701 |

| Email (optional) | Phone Number (optional) |
|---|---|

| Government Issued Photo ID Number or FEIN/EIN | Identification Type | State or Country | ID Expiration Date |
|---|---|---|---|
| REDACTED | Driver License | Texas | 2-13-2025 |

### Law Enforcement Auto Theft Inspection Report

This inspection covers (check ALL appropriate boxes):

- [x] Motor Vehicle
- [ ] Motorcycle Frame
- [ ] Motorcycle Motor
- [ ] Equipment
- [ ] Travel Trailer
- [ ] Trailer*
- [ ] Semitrailer*
- [ ] Vehicle part installed in owner/applicant's vehicle
- [ ] Vehicle part not installed in owner/applicant's vehicle**

* See "Trailer/Semitrailer Definitions" on page 2
** Describe part in "Remarks – Explanation of Inspection" section below

#### Inspection Result(s) – Check all that apply

- [ ] Manufacturer did not assign an identification number
- [ ] Vehicle assembled from parts and no identification number was ever affixed to body (motor vehicle) or frame (motorcycle, travel trailer, trailer, or semitrailer)
- [ ] Original manufacturer's identification number has been removed, changed, or obliterated (see "Important" on page 2)
- [ ] Unable to determine the original manufacturer's identification number
- [x] Found/determined the original manufacturer's identification number

#### Remarks – Explanation of Inspection

Upon inspection, provide an explanation of the results, including the original manufacturer's identification number if located/verified, and other applicable details

VIN verified as a Blue 1965 Shelby Cobra 427 model CSX4000 replica manufactured in 2004. Manufacturer applied Chassis Number CSX4501

| | Original manufacturer's identification number (if found) |
|---|---|
| | CSX 4501 |

### Auto Theft Investigator Certification – State law makes falsifying information a third degree felony

I personally inspected the vehicle, part, or equipment described above, and it is recorded results are true and accurate to the best of my knowledge. I certify I have received Texas Department of Motor Vehicles' authorized auto theft training and am employed with or assigned to (check applicable box to the right):

- [ ] Municipal Police Auto Theft Unit
- [x] County Sheriff's Auto Theft Unit
- [ ] Texas Department of Public Safety Criminal Investigations Division
- [x] Auto Burglary and Theft Prevention Authority Task Force
- [ ] National Insurance Crime Bureau

| Signature of Investigator | Carl Olavesen | 6-20-19 |
|---|---|---|
| | Printed Name (Same as Signature) | Date |

| 3479 | SCATTF Manor, Travis | 512-854-7409 |
|---|---|---|
| Investigator's Official ID Number | Agency Name and City/County | Phone Number |

### For Department Use Only

- [ ] TEX Assigned VIN
- [ ] Motor Number
- [ ] Reassigned Manufacturer's VIN
- [ ] Equipment
- [ ] Trailer
- [ ] Travel Trailer
- [ ] Component Part (Motor, Frame, or Body)

| Number Assigned | Decal Control Number | Date |
|---|---|---|

| Printed Name of Clerk | Signature of Clerk | Regional Service Center |
|---|---|---|

VTR-68-A Rev 09/17

Page 1 of 2

MOSING 000002

EXHIBIT

G

454



**Motor Vehicle Appraisal for Tax Collector
Hearing / Bonded Title**

Texas Department
of Motor Vehicles

## Information

This form may only be used to establish the value of a motor vehicle if the department is unable to establish the value by using the Standard Presumptive Value or from a national reference guide. Use of this form is strictly limited to establishing the value of a motor vehicle for use in a bonded title or tax assessor-collector hearing.

The appraiser must inspect the motor vehicle in person and provide all information requested in the "Appraiser Information" and "Appraisal Information" sections.

## Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX 4501 | 1965 | Shelby | 2 dr | Cobra |

## Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffrey | Louis | Mosing | |

| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78255 |

Email (optional): jeff@mosingmotorcars.com
Phone Number (optional): 512-771-0676

## Appraiser Information

Appraiser Type:
☐ Motor Vehicle Dealer    ☐ Insurance Adjuster

Motor Vehicle Dealer or Insurance License Number

Licensed Motor Vehicle Dealer or Insurance Company Name

| Appraiser's First Name | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Email | Phone Number |
|---|---|
| | |

## Appraisal Information

| Date of Appraisal | Vehicle Condition: | Appraised Value |
|---|---|---|
| | ☐ Complete Vehicle    ☐ Incomplete Vehicle | $ |

Comments

## Appraiser Certification – State law makes falsifying information a third degree felony

I, the above listed appraiser, certify I have personally inspected the above described vehicle, have provided a fair market appraised value for the vehicle, and all statements contained herein are true and correct to the best of my knowledge.

| Signature of Appraiser | Printed Name (Same as Signature) | Date |
|---|---|---|
| | | |

VTR-125 Rev 08/16    Form available online at www.TxDMV.gov    Page 1 of 1

**MOSING 000003**



## Bonded Title Application or Tax Collector
## Hearing Statement of Fact

Texas Department
of Motor Vehicles

### Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX4501 | 1965 | Shelby | 2 dr | Cobra |

| Vehicle Purchased or Obtained From (Name of Individual or Entity) | Odometer Reading (no tenths) | Purchase Date | Purchase Price |
|---|---|---|---|
| Trac Stephenson | 3509 | 5/9/2013 | $ 150,000 |

### Applicant(s) Information – Print name as it appears on photo identification

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffrey | Louis | Mosing | |

| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email (required if submitting this form by mail) | Phone Number (required if submitting this form by mail) |
|---|---|
| jeff@mosingmotorcars.com | 512-771-0676 |

### Application Explanation

Provide an explanation for requesting a bonded title or tax assessor collector hearing.

The car was given as payment for a loan

### Application Questions – An answer must be provided to ALL questions

| | | Yes | No |
|---|---|---|---|
| 1 | Do you live in Texas? | ☒ | ☐ |
| 2 | Are you military personnel stationed in Texas? | ☐ | ☒ |
| 3 | Was the vehicle last titled in Texas? If no, a *Law Enforcement Identification Number Inspection* (Form VTR-68-A) is required. | ☐ | ☒ |
| 4 | Is the vehicle you are attempting to title an abandoned vehicle? | ☐ | ☒ |
| 5 | Is the vehicle subject to storage or mechanic's charges? | ☐ | ☒ |
| 6 | Is the vehicle subject to any type of foreclosure lien? | ☐ | ☒ |
| 7 | Are you attempting to title a nonrepairable vehicle? | ☐ | ☒ |
| 8 | Is the vehicle you are attempting to title a salvage vehicle? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) is required. | ☐ | ☒ |
| 9 | Is the vehicle involved in any pending lawsuits or disputes of ownership? | ☐ | ☒ |
| 10 | Are you in legal possession of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 11 | Are you in legal control of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 12 | Was the vehicle manufactured for sale or distribution in the United States by a motor vehicle manufacturer? If no, proof of compliance with U.S. Department of Transportation safety requirements is required or evidence the vehicle is an assembled vehicle. If newly assembled, "Yes" is required for question 13. | ☒ | ☐ |
| 13 | Is the vehicle an assembled vehicle from new or used part(s) or a kit that has not been previously titled? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) and an ASE inspection on Form VTR-64 or VTR-852 are required. | ☐ | ☒ |
| 14 | Is the vehicle complete? A motor vehicle (such as a passenger car or pickup truck) must have a motor, body, and frame. A motorcycle must have a motor and frame. A trailer must have a bed, frame, and axle assembly. An incomplete motor vehicle will not be titled. | ☒ | ☐ |
| 15 | Is the vehicle 25 or more years old? If yes, what is the current value of the vehicle? $ 150,000 | ☒ | ☐ |

### Certification – State law makes falsifying information a third degree felony

I, the above listed applicant(s), certify physical inspection of the vehicle identification number (VIN) was made and corresponds to the VIN provided above, and all other information provided on this form is true and correct to the best of my knowledge.

| | | |
|---|---|---|
| Signature of Applicant | Printed Name (Same as Signature) Jeffrey Louis Mosing | Date |
| Signature of Additional Applicant (if any) | Printed Name (Same as Signature) | Date |

VTR-130-SOF Rev 09/17    Form available online at www.TxDMV.gov    Page 1 of 2

MOSING 000004



**Texas Department of Motor Vehicles**

## Application for
## Antique License Plate

| County Use Only |
| --- |
| License No _____ |
| Mo/Yr of Exp _____ |
| Date Issued _____ |

### Instructions

Submit the completed application; payment in the form of a personal check, money order, or cashier's check; and any required attachments to your local county tax assessor-collector's office. **Do not mail cash.** If you have not previously registered the vehicle in Texas, you must submit ownership evidence, proof of insurance if applicable, and the applicable fees before the license plate or plate tab can be issued.

If you order by mail, please contact your county tax assessor-collector's office in three weeks to verify your license plate is ready. Contact your county tax assessor-collector if you have any questions.

Vehicles at least 25 years old will be issued one Antique plate to be displayed on the rear of the vehicle for a five-year period. The fee is $50 if the vehicle was manufactured in 1921 or later; the fee is $40 if the vehicle was manufactured prior to 1921.

Instead of an Antique plate, the owner of an antique vehicle may use a license plate issued by this state that is the same year as the year model of the vehicle. The plate must have the original color scheme, and be in good, readable condition. If the original plate is approved by your local county tax assessor-collector's office, a plate tab with sticker will be issued to show the plate is valid.

Replicas of Texas license plates are not acceptable. Plates with an alpha-numeric pattern that are already in use, or qualifying license plates such as a Farm plate, Dealer plate, etc., will not be approved.

Proof of financial responsibility (insurance) is required at time of application, or a copy of the completed Texas Department of Public Safety (DPS) affidavit (DPS form SR-2).

### Applicant Information

| First Name | Middle Name | Last Name | Suffix | County |
| --- | --- | --- | --- | --- |
| Jeffrey | Louis | Mosing | | Travis |

| Address | City | State | ZIP |
| --- | --- | --- | --- |
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email | Phone Number |
| --- | --- |
| jeff@mosingmotorcars.com | 512-771-0676 |

### Vehicle Information

| Vehicle Identification Number | Current TX License Plate | Year | Make | Body Style | Empty Weight (lbs.) |
| --- | --- | --- | --- | --- | --- |
| CSX4501 | | 1965 | Shelby | 2dr | |

Vehicle Type  ☒ Antique Auto  ☐ Antique Truck  ☐ Antique Motorcycle  ☐ Antique Bus

### Certification – State law makes falsifying information a third degree felony.

I certify I am the owner of the above-described vehicle, and as statutorily required, I also certify the frame, body, and motor are at least 25 years old; the vehicle is a collector's item that will be used solely for exhibition, club activities, parades, and other functions of public interest; it is not a replica or aftermarket vehicle; will not be used for daily transportation except when routine maintenance is needed; and will not carry advertising.

X Signature _____ Date 6-20-19

Form VTR-54 Rev 1/2018            Form available online at www.TxDMV.gov            Page 1 of 1

MOSING 000005

# Application for Texas Title and/or Registration

| Applying for (please check one): | | | | **TAX OFFICE USE ONLY** | | |
|---|---|---|---|---|---|---|
| ☒ Title & Registration  ☐ Title Only  ☐ Registration Purposes Only  ☐ Nontitle Registration | | | | County _____ | | |
| For a corrected title or registration, check reason: | | | | Doc # _____ | | |
| ☐ Vehicle Description  ☐ Add/Remove Lien  ☐ Other: _____ | | | | ☐ SPV  ☐ Appraisal Value $ _____ | | |

| 1. Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style | 5. Model | 6. Major Color | 7. Minor Color |
|---|---|---|---|---|---|---|
| CSX4501 | 1965 | Shelby | 2dr. | Cobra | Blue | Silver |

| 8. Texas License Plate No. | 9. Odometer Reading (no tenths) | 10. This is the Actual Mileage unless the mileage is: | | 11. Empty Weight | 12. Carrying Capacity (if any) |
|---|---|---|---|---|---|
| | 3509 | ☐ Not Actual  ☐ Exceeds Mechanical Limits  ☐ Exempt | | | |

| 13. Applicant Type | | | | | 14. Applicant Photo ID Number or FEIN/EIN |
|---|---|---|---|---|---|
| ☒ Individual  ☐ Business  ☐ Government  ☐ Trust  ☐ Non-Profit | | | | | **REDACTED** |

| 15. ID Type  ☒ U.S. Driver License/ID Card (issued by: Texas ) | ☐ NATO ID | ☐ U.S. Dept. of State ID |
|---|---|---|
| ☐ Passport (issued by: _____ ) | ☐ U.S. Military ID | ☐ U.S. Dept. of Homeland Security ID |
| ☐ U.S. Citizenship & Immigration Services/DOJ ID | ☐ Other Military Status of Forces Photo ID | |

| 16. Applicant First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffrey | Louis | Mosing | |

| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 18. Applicant Mailing Address | City | State | Zip | 19. Owner County of Residence |
|---|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78755 | Travis |

| 20. Previous Owner Name (or Entity Name) | City | State | 21. Dealer GDN (if applicable) | 22. Unit No. (if applicable) |
|---|---|---|---|---|
| | | | | |

| 23. Renewal Recipient First Name (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 24. Renewal Notice Mailing Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 25. Applicant Phone Number (optional) | 26. Email (optional) | 27. Registration Renewal eReminder |
|---|---|---|
| 512-771-0676 | jeff@mosingmotorcars.com | ☐ Yes (Provide Email in #26) |

| 28. Vehicle Location Address (if different) | City | State | Zip |
|---|---|---|---|
| 8990 Research blvd | Austin | Texas | 78758 |

| 29. Multiple (Additional) Liens | 30. Electronic Title Request | 31. Certified/eTitle Lienholder ID Number (if any) | 32. First Lien Date (if any) |
|---|---|---|---|
| ☐ Yes (Attach Form VTR-267) | ☐ Yes (Cannot check #29) | | |

| 33. First Lienholder Name (if any) | Mailing Address | City | State | Zip |
|---|---|---|---|---|
| | | | | |

**34. Check only if applicable.**  **MOTOR VEHICLE TAX STATEMENT**

☐ I hold Motor Vehicle Retailer's (Rental) Permit No _____ and w/ll satisfy the minimum tax liability (V.A.T.  Tax Code §152  16[ ]

☐ I am a dealer or lessor and qualify to take the Fair Market Value Deduction  V.A.T.S., Tax Code, §152.002[c])  GDN or Lessor Number _____

| 35. Trade In (if any)  Year  Make  Vehicle Identification Number | 36. Additional Trade In( |
|---|---|
| ☐ Yes (Complete) | Yes |

**37.** Check only if applicable
- ☐ (a) Sales Price ($ 150,000 rebate has been deducted)  $ ___
- (b) Less Trade in Amount, described in Item 35 above  $ (___)
- (c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, described in Item 36 above  $ (___)
- (d) Taxable Amount (Item a minus Item b or tem c)  $ ___
- (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625)  $ ___
- (f) Late Tax Payment Penalty ☐ 5% or ☐ 10%  $ ___
- (g) Tax Paid to _____ STATE  $ ___
- (h) AMOUNT OF TAX AND PENALTY DUE  (Item e plus Item f minus Item g)  $ ___

**SALES AND USE TAX COMPUTATION**
- ☐ $90 New Resident Tax – (Previous State) _____
- ☐ $5 Even Trade Tax
- ☐ $10 Gift Tax – Use Comptroller Form 14-317
- ☐ $65 Rebuilt Salvage Fee
- ☐ 2.5% Emissions Fee (Diesel Vehicles 1996 and Older > 14 000 lbs ) ___
- ☐ 1% Emission Fee  Diesel Vehicles 1997 and Newer > 14,000 lbs )
- ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because _____
- ☐ $28 or $33 Application Fee for Texas Title  (Contact your county tax assessor-collector for the correct fee )

**CERTIFICATION – State law makes falsifying information a third degree felony**

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable).

| Signature(s) of Seller(s), Donor(s), or Trader(s) | Printed Name(s) (Same as Signature(s)) | Date |
|---|---|---|
| | Jeffrey Louis Mosing | |
| Signature of Applicant/Owner | Printed Name (Same as Signature) | Date |
| | | |
| Signature(s) of Additional Applicant(s)/Owner(s) | Printed Name(s) (Same as Signature(s)) | Date |

Form 130-U Rev 08/16 — Form available online at www TxDMV gov — Page 1 of 2

**MOSING 000006**

# Exhibit E



*SHELBY AUTOMOBILES, INC.*

STATEMENT OF ORIGIN
FOR A CSX4000 SERIES COMPONENT VEHICLE

The undersigned authorized representative of **Shelby Automobiles, Inc.** hereby certifies that the new CSX4000 Series Component Vehicle consisting of the parts and components listed on invoice, and described below, is the property of **Shelby Automobiles, Inc.** and has been transferred on the date hereof to the following purchaser:

Sanderson Sales and Marketing
4000 Whistler Drive
Plano, TX  75093

| | | | |
|---|---|---|---|
| Date: | July 21, 2004 | Invoice No.: | 0501 |
| Trade Name: | Shelby Cobra 427 | Series: | CSX4000 |
| Model Year: | 1965 | Body Type: | 2 Dr. Roadster |
| Chassis No.: | CSX4501 | | |

The CSX4000 Series Component Vehicle is sold by Shelby Automobiles, Inc. without engine or transmission.

**Shelby Automobiles, Inc.** further certifies that this was the first transfer of such new CSX4000 Series Component Vehicle in ordinary trade and commerce.

**Shelby Automobiles, Inc.**

By _____
(Authorized Representative)
6755 Speedway Boulevard
Las Vegas, Nevada  89115

**MOSING 000001**

**EXHIBIT**
B
460

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
| In re: | ) |  |
|  | ) | Case No. 19-13565 MER |
| TRACY DEAN STEPHENSON, | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JEFFREY MOSING and MOSING, | ) |  |
| AUTOSPORT, LLC dba MOSING | ) |  |
| MOTORCARS, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## PLAINTIFF'S LIST OF WITNESSES AND EXHIBITS

Plaintiff M. Stephen Peters, chapter 7 trustee (the "Trustee"), by and through undersigned counsel, hereby designates the following witnesses and exhibits for the trial scheduled for 9:30 a.m. on Friday, September 3, 2021, in Courtroom C, before the Honorable Michael E. Romero.

**Part 1** **Witnesses**

Trustee **will call** the following witnesses:

| Witness Name | Nature of Testimony |
|---|---|
| Jeffrey Mosing | Mr. Mosing is an individual defendant in this matter and the principal of Mosing Autosport, LLC dba Mosing Motorcars, as such, he will have testimony regarding Trustee's allegations in the Complaint and related matters. |
| Tracy Dean Stephenson | Mr. Stephenson is the debtor in the related administrative case and the transferor of the transfer Trustee seeks to recover. Accordingly, Mr. Stephenson will have testimony regarding Trustee's allegations in the Complaint and related matters. |

Trustee **may call** the following witnesses:

| Witness Name | Nature of Testimony |
|---|---|
| M. Stephen Peters, chapter 7 trustee | Mr. Peters is the plaintiff in the case and the chapter 7 trustee for the related administrative case.  Accordingly, Mr. Peters may have testimony regarding Trustee's allegations in the Complaint and related matters. |

Any witness designated as a may call or will call witness by any other party and any witness necessary for authentication, impeachment or rebuttal.

**Part 2** **Exhibits**

| Exhibit Number | Description | Offered (Yes/No) | Admitted (Yes/No) | Additional comments (electronic, video, paper, etc.) |
|---|---|---|---|---|
| 1 | Certificate of Title | | | |
| 2 | April 19, 2012 Email | | | |
| 3 | May 8, 2012 Agreement | | | |
| 4 | $120,000 Check | | | |
| 5 | June 15, 2019 Letter | | | |
| 6 | Texas DMV Documents | | | |
| 7 | Manufacturer's Statement of Origin | | | |
| 8 | Voluntary Petition (Docket No. 1) | | | |
| 9 | Amended Statement of Financial Affairs Docket No. 17) | | | |
| 10 | Amended Schedule A/B (Docket No. 18) | | | |
| 11 | Amended Schedule D (Docket No. 19) | | | |
| | Documents and things necessary for rebuttal or impeachment | | | |

**Part 3** **Signature**

DATED this 16th day of August 2021.

WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/ Aaron J. Conrardy
Aaron Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999; (303) 296-7600 (fax)
aconrardy@wgwc-law.com
Attorneys for Plaintiff M. Stephen Peters, chapter 7 trustee

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 16, 2021 I served by United States prepaid first-class mail, or electronically through CM/ECF where indicated, a copy of **TRUSTEE'S LIST OF WITNESSES AND EXHIBITS, and EXHIBITS 1-11,** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the Fed.R.Bankr.P. and the L.B.R. at the following addresses:

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

Jarrod Martin
Jarrod.martin@chamberlainlaw.com

/s/ Angela C. Garcia
Wadsworth Garber Warner Conrardy, P.C.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| **Debtor.** | § | **Case No. 19-13565** |
| | § | |
| | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars** | § | |

## JEFFREY MOSING AND MOSING AUTOSPORT, LLC'S WITNESS LIST

Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars file the following list of witnesses for the trial of this matter:

1. Tracy Dean Stephenson, Debtor

2. Jeffrey Mosing

Defendants reserve the right to call rebuttal witnesses to the extent necessary, including recalling any witnesses from their case-in-chief, as well as witnesses not included on this list. In addition, Defendants may call Trustee's witnesses adversely in their case-in-chief.

August 16, 2021                    Respectfully submitted,


                                   CHAMBERLAIN HRDLICKA

                                   By: /s/ Jarrod B. Martin
                                   Jarrod B. Martin
                                   Texas Bar No. 24070221
                                   1200 Smith Street, Suite 1400
                                   Houston, Texas 77002
                                   D: 713.356.1280
                                   F: 713.658.2553
                                   E: jarrod.martin@chamberlainlaw.com

                                   **Counsel for Jeffrey Mosing and Mosing
                                   Autosport, LLC dba Mosing Motorcars**

OF COUNSEL:
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
Chamberlain, Hrdlicka, White,
   Williams & Aughtry
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com


### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 16, 2021, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

                                   */s/ Jarrod B. Martin*
                                   Jarrod B. Martin

4193712.v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: §<br>§<br>Tracy Dean Stephenson, §<br>§<br>Debtor. §<br>————————————————— §<br>§<br>M. Stephen Peters, Chapter 7 Trustee §<br>§<br>Plaintiff. §<br>§<br>v. §<br>§<br>Jeffrey Mosing and Mosing Autosport, §<br>LLC *dba* Mosing Motorcars §| Chapter 7<br><br>Case No. 19-13565<br><br><br><br><br><br>Adversary No. 19-01211 |

## JEFFREY MOSING AND MOSING AUTOSPORT, LLC'S TRIAL EXHIBIT LIST

Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars file the

following list of exhibits for the trial of this matter:

| NO. | Date | DESCRIPTION | Offer | Obj. | DATE ADMIT | DATE N/ADM |
|---|---|---|---|---|---|---|
| 1. | 03/08/12 | Certificate of Title, Colorado | | | | |
| 2. | 04/19/12 | Email proposal from Tracy Stephenson to Jeff Mosing<br>*T. Stephenson Dep. Ex. 4* | | | | |
| 3. | 05/08/12 | Agreement | | | | |
| 4. | 05/08/12 | $120,000 Draft from Jeff Mosing to 427 Legends | | | | |
| 5. | 06/05/19 | Letter from Kirk Winterrowd | | | | |
| 6. | 06/20/19 | DMV Application | | | | |
| 7. | | Manufacturer's Statement of Origin | | | | |
| 8. | 2015 | Texas Liability Insurance Card<br>*J. Mosing Dep. Ex. E* | | | | |
| 9. | 2012 | 427 Legends – Bank Statement Ledger | | | | |
| 10. | 2019 | Amended Statement of Financial Affairs (Case No. 19-13565 MER (Doc. 17)) | | | | |

August 16, 2021                    Respectfully submitted,

                                   CHAMBERLAIN HRDLICKA

                                   By: /s/ Jarrod B. Martin
                                   Jarrod B. Martin
                                   Texas Bar No. 24070221
                                   1200 Smith Street, Suite 1400
                                   Houston, Texas 77002
                                   D: 713.356.1280
                                   F: 713.658.2553
                                   E: jarrod.martin@chamberlainlaw.com

                                   ***Counsel for Jeffrey Mosing and Mosing
                                   Autosport, LLC dba Mosing Motorcars***

OF COUNSEL:
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
Chamberlain, Hrdlicka, White,
     Williams & Aughtry
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 16, 2021, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

                                   /s/ Jarrod B. Martin
                                   Jarrod B. Martin

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |
| | § | |
| ———————————————— | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars** | § | |

### JEFFREY MOSING AND MOSING AUTOSPORT, LLC'S MOTION FOR LEAVE TO AMEND RESPONSE TO TRUSTEE'S REQUEST FOR ADMISSION NO. 3

Pursuant to Federal Rule of Bankruptcy Procedure 7036, Defendants Jeffrey Mosing and Mosing Autosport, LLC dba Mosing Motorcars ("**Defendants**") file this motion to amend their response to Trustee's request for admission no. 3 ("**Request No. 3**") as follows:

As the Court well knows, the Trustee here seeks to avoid the 2012 transaction in which Debtor exchanged a classic Shelby Cobra to Defendants for $120,000. As Mr. Mosing consistently testified during deposition, and the Agreement itself confirms, unless Debtor paid Mosing $120,000 within twelve months, Mosing would retain possession of the Cobra. The Agreement does not mention the terms "loan" or "purchase."[1] These facts are not in dispute.

On or around April 30, 2020, Defendants served their answers and objections to Trustee's

---

[1] *See* **Exhibit A**, May 12, 2012 Agreement.

request for admissions (and request for production and interrogatories). The following is admission request no. 3, and Defendants' response thereto:

> **REQUEST FOR ADMISSION NO. 3**
> Admit that pursuant to the Agreement, You loaned Debtor $120,000.
>
> **RESPONSE**: Defendants admit that $120,000 was loaned to the Debtor according to a repayment schedule. Otherwise, denied.

Rule 36(b), which applies to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7036, provides that a matter admitted is conclusively established unless the court, on motion, permits the admission to be amended. FED. R. CIV. P. 36(b). The court may permit such withdrawal or amendment "when [1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Id.; see Raiser v. Utah County,* 409 F.3d 1243 (10th Cir. 2005).

Regarding the first factor – presentation of merits or the action – "the test emphasizes the importance of having the action resolved on the merits, and *is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.*" *Raiser*, 409 F.3d at 1246 (emphasis added). In *Raiser*, the plaintiff failed to respond to admission requests and was deemed to concede core elements of their case, and the district court granted summary judgment based on the deemed admissions. *Id.* In vacating the summary judgment and remanding, the Tenth Circuit held than a failure to meet deadlines is required to deny a party relief from an admission. *Id.* In ruling on a motion to grant such relief, "*the court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than on the moving party's excuses for an erroneous admission.*" *Id.* (emphasis added).

Not unlike the plaintiff in *Raiser*, Defendants here seek to avoid the unduly harsh penalty of a core element deemed conclusively established by inadvertent or unartful response, rather than

the merits of the case. As the Court well knows, the parties hotly dispute whether the May 2012 transaction, underpinned by the contemporaneous written Agreement referenced in Request 3, should be characterized as a purchase or loan. Since answering initial written discovery and the above admission request, the parties deposed both Debtor Tracy Dean Stephenson and Jeff Mosing. As Mosing plainly testified when confronted with the word "borrow" in a letter drafted in 2019, over seven years after the Agreement, "as per the email I had from him. . . basically I bought the car and he had the option to buy it back."[2] When faced with Debtor's April 2012 email to Mosing, in which he postulated Mosing's "purchase" of the Cobra, and asked whether the deal changed from a purchase to a loan: "he (Debtor) wanted money. I wanted the car. I bought the car."[3]

The second Rule 36(b) factor requires the non-moving party to show it would be prejudiced by the withdrawal or amendment. FED. R. CIV. P. 36(b); *Raise*r, 409 F.3d at 1246. Mere inconvenience does not constitute prejudice for this purpose. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." *Bergemann v. United States,* 820 F.2d 1117, 1121 (10th Cir. 1987).[4] "The prejudice contemplated by Rule 36(b). . . relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses or the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Hadley,* 45 F.3d at 1348.

Here, the classic examples of potential prejudice for amending admissions do not exist. Mr. Mosing was examined at length on whether this transaction was a purchase or loan, and he will be available at trial for the Trustee to further examine. Therefore, modifying the answer will not

---

[2]  **Exhibit B**, Mosing Dep., at 34:8-20.
[3]  *Id.*
[4]  For instance, preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice. *See Kirtley v. Sovereign Life Ins. Co. (In re Durability Inc.*), 212 F.3d 551, 556 (10th Cir. 2000).

prejudice Trustee's rights in this matter because ultimately any issues will be determined by the
evidence and the facts, rather than poorly worded written discovery responses.

Accordingly, Defendants would like to amend their response to Request 3 as follows:

```
Defendants provided $120,000 to Debtor according
to  an  Agreement  with  a  repayment  schedule.
Otherwise, denied.
```

Defendants' counsel and Trustee's counsel have conferred on the relief sought by this
motion. Trustee opposes the relief sought herein and advises he will need an extension to conduct
additional discovery on this issue. Defendants disagree that this foreseeable and non-prejudicial
development warrants more discovery. However, should the Court be inclined to allow limited
additional discovery, Defendants will continue to work cooperatively and expeditiously with
Trustee as they have throughout this litigation.

WHEREFORE, Defendants pray that this motion be granted and they be allowed to amend
their response to Trustee's request for admission as set forth herein. A copy of Defendants' First
Amended Objections and Responses to Trustee's Requests for Admission is being filed
concurrently herewith.

Dated: August 18, 2021                    Respectfully submitted,

                                          CHAMBERLAIN, HRDLICKA, WHITE,
                                               WILLIAMS & AUGHTRY, P.C.

                                          By: /s/ Jarrod B. Martin
                                          Jarrod B. Martin
                                          Texas Bar No. 24070221
                                          1200 Smith Street, Suite 1400
                                          Houston, Texas 77002
                                          D: 713.356.1280
                                          F: 713.658.2553
                                          E: jarrod.martin@chamberlainlaw.com

                                          *Counsel for Jeffrey Mosing and Mosing
                                          Autosport, LLC dba Mosing Motorcars*

OF COUNSEL:
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
Chamberlain, Hrdlicka, White,
    Williams & Aughtry
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2021, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

# Exhibit A

Agreement:

1965 Shelby 427 Cobra SC
CSX4501

May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013

Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.

Jeff Mosing

Trac Stephenson

ERIC   BEVERDING
(WITNESS)

# Exhibit B

```
 1          Q.  We'll get back to that in a sec.
 2               So it says, "Per the attached agreement, let
 3     it be known that, on May 8, 2012, Trac Stephenson
 4     entered into an agreement with Jeff Mosing to borrow
 5     $120,000 and that Trac Stephenson put up as collateral a
 6     1965 Shelby Cobra 427 CSX4501."  And then it goes on to
 7     kind of summarize the terms.
 8               But here it says, "borrow $120,000."  So was
 9     this a loan or a purchase?
10          A.  As per the email that I had from him -- and
11     if you scroll down, you'll see it -- basically I bought
12     the car and he had an option to buy it back.
13          Q.  So that's kind of what I'm trying to figure
14     out.  Because the email, which is dated about a month
15     before the agreement, suggests that it was a purchase,
16     but this cover letter says it was a loan.  So did it
17     initially start out as a purchase in April and then you
18     guys decided it would be a loan in May?
19          A.  He wanted money.  I wanted the car.  I bought
20     the car.  He had the option to buy it back.
21          Q.  So it's your position that, even though this
22     letter says it's a loan, that it was a purchase of the
23     vehicle with a right to repurchase.  Is that your --
24          A.  Yeah.  He specifically requested that I don't
25     list it for sale, that he wanted to try to buy it back.
```

                                                    Page 34

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

In re:

§
§

Tracy Dean Stephenson,

§
§

**Chapter 7**

§

Debtor.

§
§

**Case No. 19-13565**

§
§

§

M. Stephen Peters, Chapter 7 Trustee,

§
§

Plaintiff

§
§

v.

§
§

**Adversary No. 19-01211**

§

Jeffrey Mosing and Mosing Autosport,

§

LLC *dba* Mosing Motorcars.

§

---

### ORDER GRANTING JEFFREY MOSING AND MOSING AUTOSPORT, LLC'S MOTION FOR LEAVE TO AMEND RESPONSE TO TRUSTEE'S REQUEST FOR ADMISSION NO. 3

---

This matter having come before the Court on *Jeffrey Mosing and Mosing Autosport, LLC's Motion for Leave to Amend Response to Trustee's Request for Admission No. 3* ("**Motion**"), the Court having reviewed the Motion and finding that the relief requested therein is appropriate. Accordingly, it is

**ORDERED** that the Motion is granted.

**DATED this _____ day of _____, 2021.**

BY THE COURT:

_____
**Michael E. Romero, Chief Judge**
**United States Bankruptcy Court**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |
| | § | |
| | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee,** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars.** | § | |

## ORDER GRANTING JEFFREY MOSING AND MOSING AUTOSPORT, LLC'S MOTION FOR LEAVE TO AMEND RESPONSE TO TRUSTEE'S REQUEST FOR ADMISSION NO. 3

This matter having come before the Court on *Jeffrey Mosing and Mosing Autosport, LLC's Motion for Leave to Amend Response to Trustee's Request for Admission No. 3* ("**Motion**"), the Court having reviewed the Motion and finding that the relief requested therein is appropriate. Accordingly, it is

**ORDERED** that the Motion is granted.

**DATED August 26, 2021.**

                              **BY THE COURT:**


                              _____
                              **Michael E. Romero, Chief Judge**
                              **United States Bankruptcy Court**

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

### CORRECTED Minutes of Proceeding

| September 3, 2021 | Honorable Michael E. Romero, Presiding |
| --- | --- |
| | Courtroom C |

| In re: | Case No. 19-13565 MER |
| --- | --- |
| TRACY DEAN STEPHENSON | |
| | Chapter 7 |
| Debtor. | |

| M. STEPHEN PETERS,<br>Chapter 7 Trustee | Adversary Proceeding No. 19-01211 MER |
| --- | --- |
| Plaintiff | |
| v. | |
| MOSING AUTOSPORT, LLC and<br>JEFFREY MOSING | |
| Defendants. | |

Appearances:

| Plaintiff | M. Stephen Peters | Counsel | Aaron Conrardy |
| --- | --- | --- | --- |
| Defendants | Mosing Autosport, LLC and Jeffrey Mosing | Counsel | Jarrod Martin and Reagan Gibbs |

Proceedings:

Trial

☒ Evidentiary Hearing
☒ Exhibits entered/admitted: 1-11.  Defendants' Exhibits A-G are duplicative of Trustee's Exhibits 1-7.
☒ Witnesses Sworn

Orders:

Trial held and concluded.  Plaintiff orally dismissed his third and fourth claims for relief on the record.  The parties shall file additional briefing with respect 8 Tex. Jur. 3d Automobiles § 203 and any related case law or other statutes on or before September 20, 2021, at which time the Court will take the matter under advisement.

BY THE COURT:
KENNETH S. GARDNER, CLERK


By: _____
                Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ——————————————————— | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S POST-TRIAL BRIEF

Plaintiff M. Stephen Peters, chapter 7 trustee ("Plaintiff"), by and through his undersigned counsel, Wadsworth Garber Warner Conrardy, P.C., submits this *Post-Trial Brief* and in support thereof, states as follows:

1.      On September 3, 2021, the Court held and concluded trial.  In Corrected Minutes of Proceeding (the "Minute Order"), the Court ordered parties to "file additional briefing with respect to 8 Tex. Jur. 3d Automobiles § 203 and any related case law or other statutes."  Docket No. 92.

2.      8 Tex. Jur. 3d Automobiles § 203 (July 2021 Update) provides as follows:

A "new motor vehicle" is a motor vehicle that has not been the subject of a retail sale regardless of the mileage of the vehicle. If a new motor vehicle has never been registered in Texas or elsewhere, it may be transferred any number of times by a proper endorsement of the manufacturer's certificate, as long as the vehicle remains in the hands of a distributor or dealer.

(footnotes omitted).

3.      8 Tex. Jur. 3d Automobiles § 203 goes on to observe that:

> So long as the vehicle is a new, unregistered vehicle, there may be repeated transfers of the vehicle, for example, from the manufacturer to a dealer, from dealer to dealer, and from a dealer to an owner, without the need to register the vehicle or apply for a certificate of title. All such sales are "first sales" for which a manufacturer's certificate is the only document that evidences title.

(footnotes omitted).

4.      Since the Cobra[1] was the sale of a used car "by an owner" instead of a dealer or distributor, it cannot be a "first sale" and therefore is a "subsequent sale." As a "subsequent sale", to be valid, Mr. Mosing must have received a certificate of title, which he did not. As explained in *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex. App. 1974):

> Our Supreme Court, in *Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 486 (1943) said:
>
>> []. . . Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to 'owner,' as defined in the Act, constitutes a 'first sale,' and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such 'first sale.[']
>
> Any sale of a vehicle prior to its registration is a 'first sale', and any sale thereafter is a 'subsequent sale'. This distinction is material because of the requirement in the Act that an application for a certificate of title is essential to the validity of a 'subsequent sale'. A sale To an 'owner' is a 'first sale'. A sale By an 'owner' is a 'subsequent' sale. *Continental Credit Corporation v. Norman*, 303 S.W.2d 449 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.).
>
> 'A sale By an owner without making application for a certificate of title before the sale is governed by the Certificate of Title Act and is void. Sections 27, 33. But a sale To an owner is governed by the rules governing ordinary sales of personal property'. *Continental Credit Corporation v. Norman*, supra (emphasis supplied). *See also Nicewarner v. Alston*, 228 S.W.2d 872 (Tex.Civ.App.—Amarillo 1950, writ ref'd n.r.e.).
>
> From the foregoing, we conclude that so long as the vehicle is a new, unregistered vehicle, there may be repeated transfers of the vehicle, such as from the manufacturer to dealer, from dealer to dealer, and from dealer to owner, without the need to register the vehicle or apply for a certificate of title. All such sales are

---

[1] Unless otherwise defined herein, all capitalized terms correspond with the meanings given them on the Joint Pretrial Statement. Docket. No. 83.

'first sales'. Under those circumstances, a manufacturer's certificate is the only document that evidences title. The manufacturer's certificate properly filled out is necessary only for the purposes of registering the vehicle and obtaining the initial certificate of title. After the vehicle is registered for the first time and the certificate of title is issued, title to the vehicle is then evidenced solely by the certificate of title, and all sales thereafter are 'subsequent sales', and in order to be valid, must be in compliance with . . . the Act.

*Apeco Corp.*, 506 S.W.2d 711, 715-716.

5.     The rule set forth in *Apeco* applies with equal force to motor vehicles that have been previously registered in another state.  In other words, if the motor vehicle has been registered in another state, it is considered a "subsequent sale" in Texas and may therefore only be transferred with a certificate of title.  *Drake Ins. Co. v. King*, 606 S.W.2d 812, 815 (Tex. 1980) ("Since the truck had been previously registered in another state, any sale in Texas would have been a subsequent sale.").  Consequently, "[o]ne who purchases a motor vehicle which has been imported into Texas, whether for sale or for use, has a duty to investigate and see that the seller has complied with the Texas Certificate of Title Act."  *Id.* at 817.; *see also State Highway Dept. v. Texas Automotive Dealers Ass'n*, 239 S.W.2d 662, 664-665 (sale outside of Texas can be a "first sale" resulting in motor vehicle becoming a "used car" when sold in Texas, which requires a certificate of title (i.e. importer's certificate) for the sale to be valid).

6.     Since neither Mr. Mosing nor Debtor were acting as dealers in the transaction, and the Cobra had been previously registered in Colorado, the transaction was a sale "by an owner" that was governed by the Certificate of Title Act and not by the laws of the sale of personal property.  Consequently, as a sale "by an owner", it was a "subsequent sale", which, to be valid, must be accompanied with a certificate of title.  The MSO, as a matter of law, cannot transfer title under these circumstances.  Therefore, the alleged sale was <u>void</u>.

WHEREFORE, Plaintiff respectfully requests the Court enter an order granting his First, Second, Fifth and Sixth Claims for Relief, and granting such other and further relief as the Court deems just.

Dated this 27th day of September 2021.

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999 / (303) 296-7600 FAX
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for Plaintiff M. Stephen Peters, chapter 7 trustee*

### CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of September 2021 I caused the foregoing *Plaitiff's Post-Trial Brief* to be served via United States first-class mail, postage prepaid, or electronically through CM/ECF where indicated, to the following:

Jarrod B. Martin
jarrod.martin@chamberlainlaw.com

Reagan H. Gibbs
tres.gibbs@chamberlainlaw.com

*/s/ Angela Garcia*
For Wadsworth Garber Warner Conrardy, P.C.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| Debtor. | § | **Case No. 19-13565** |
| | § | |
| | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC** *dba* **Mosing Motorcars** | § | |

## DEFENDANTS JEFFREY MOSING AND MOSING AUTOSPORT, LLC D/B/A MOSING MOTORCARS' POST-TRIAL BRIEF

Jarrod B. Martin
Reagan H. "Tres" Gibbs, III
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, P.C.
1200 Smith Street, Suite 1400
Houston, Texas 77002
Phone: 713.658.1818
Fax: 713.658.2553

***ATTORNEYS FOR DEFENDANTS***

## INTRODUCTION

Tracy "Trac" Stephenson ("**Debtor**" or "**Stephenson**") and Jeffrey Mosing's ("**Mosing**")

trial testimony established the following:

      i.     in 2012, Stephenson—who was in desperate need of cash—proposed an "agreement" relating to his 1965 Superformance Cobra with Mosing in exchange for compensation;

      ii.    at the time of the transaction, Stephenson knew the Cobra was already titled in Colorado and burdened with a prior lien; and

      iii.   While Stephenson did not remember if he told Mosing about the true status of the Cobra, had Mosing known the true status of the Cobra, he would not have tendered payment to Stephenson and taken possession.

Although the parties devoted ample time discussing the nature of the "agreement"—whether to

call it a sale, loan, or the alluded-to "pawn shop deal"—the conflicting documentary evidence and

testimony suggests the best approach is to simply rely on the Agreement itself.  The Agreement

suggests the transaction was a sale with a one-year buyback period, particularly with the context

of the proposal email Stephenson sent Mosing approximately three weeks before entering the

Agreement.

Regardless, the parties' respective characterization does not change the Agreement's

practical effect: Stephenson's reclamation of the Cobra depended on his performance or non-

performance of the repayment obligation within the defined timeframe.  Although Mosing's

subsequent notation that the $120,000 payment was "given as payment for a loan" suggests loan

in the sense that Stephenson had the ability to repay Mosing, it equally suggests sale because the

Cobra was *physically transferred* to Mosing.  Contrary to Trustee's insinuation, Mosing has not

changed his position.  Through such perspective, the evidence is undisputable that, for the last

eight years, Mosing *believed* he owned the Cobra.  Importantly, so did Stephenson.

After trial, the Court requested additional briefing on two issues.  First, the Trustee argued

2

that the constructive trust element of "unjust enrichment" is not met here, because the Trustee, acting on behalf of Debtor's bankruptcy estate, cannot possibly be "unjustly enriched" by recovering assets to the estate for the shared benefit of the unsecured creditors.  Discussed below, the purpose of the constructive trust is the rectify Debtor's fraud, which is imputed to the Trustee for the purpose of establishing the unjust enrichment element.

Next, the Court specifically requested briefing on Texas motor vehicle titling statutes and corresponding caselaw, which is provided below. On review, the statutes do not impact the outcome of this litigation, primarily because Debtor's fraud corrupted the titling process in this instance. However, Debtor, consistent with past practice, *could have* transferred the Cobra to Mosing under the Manufacturer's Statement of Origin, and the lack of Debtor's endorsement on the manufacturer's certificate ("**MSO**") does not invalidate the sale.  Of course, in this instance, the Cobra had already been titled in Colorado, so the Texas mechanism for titling and registering vehicles does not apply.

## ADMITTED TRIAL EXHIBITS

**Exhibit A** to this Post-Trial Brief identifies the exhibits admitted into evidence during the trial or pursuant to the parties' pretrial stipulation.

## RELEVANT FACTUAL BACKGROUND

I.    **DEBTOR AND MOSING CONNECT OVER THEIR ENTHUSIASM FOR SUPERFORMANCE CARS AND CONDUCT SEVERAL VEHICLE TRANSACTIONS**

Mosing's company, Mosing Motorcars, is an authorized dealer of cars in Texas.  Mosing moved to Austin, Texas in 2006 to better care for his child with special needs.[1] Originally from Lafayette, Louisiana, Mosing became interested in cars through his older brother, who let him

---

[1]  Citations to testimony in the trial transcript are formatted as follows: Witness, page:line.  Mosing, 33:3-25.

work on cars starting when he was five years old.[2]  Mosing was always into cars and knew he wanted to work around cars.[3]  Around the 2010 timeframe, Mosing became a licensed dealer and founded Mosing Autosports, where he buys and sells specialty cars and trucks.[4]

Around 2007 or 2008, Mosing (prior to founding Mosing Autosports) became interested in purchasing a Superformance GT40.[5]  Superformance is a company that builds exact replicas of classic cars, built new with chassis designed to mirror those of famous older cars.[6]  An internet search led Mosing to Stephenson, whose name was listed as the dealer in Texas for Superformance autos.   Both car enthusiasts—though Mosing and Debtor's relationship was primarily transactional—Mosing considered Debtor a friend.[7]

When Mosing purchased the GT40 in 2008, federal law did not allow Superformance vehicles to be delivered "complete," so it was delivered without the powertrain.[8]  When Debtor delivered the GT40, he also provided Mosing with the vehicle's MSO, similar to that at issue with the Cobra.[9]  After completion, Mosing presented the MSO to the Texas DMV, along with proof of insurance, and the DMV provided Mosing title.[10]

Mosing also purchased a pair of 1960s era Corvettes from Debtor.[11]  Unlike with the GT40, Debtor approached Mosing and told him he was trying to sell the pair of Corvettes, and Mosing agreed.[12]   The vehicles were transferred with titles.[13]   Finally, Mosing purchased another

---

[2]  *Id.*
[3]  *Id.*
[4]  *Id.*
[5]  Mosing, 13:25-14:10.
[6]  *Id*.
[7]  *Id*.
[8]  Mosing, 37:13-40:22.
[9]  Mosing, 36:14-38:5.
[10] *Id*.
[11] Mosing, 38:6-40:22.
[12] *Id*.
[13] *Id*.

Superformance vehicle from Debtor, a Shelby Daytona coupe, which, like the GT40 and the Cobra, was transferred with only the MSO.[14]

## II.  DEBTOR LEADS MOSING TO BELIEVE THE COBRA IS NOT TITLED

On April 19, 2012, Debtor emailed Mosing, offering him the Cobra for a "purchase" price of $120,000.[15]  Mosing understood Debtor's proposal to mean he would be buying the vehicle, with the understanding that Debtor had the ability to buy it back for the purchase price, with additional incremental payments.[16]  Debtor's proposal further states: "the Cobra would stay on the MSO until our agreement ends," which Mosing understood to mean that Mosing could not file for title with the DMV within that one-year period of the Agreement.[17]  Nothing in Debtor's proposal indicated to Mosing that the Cobra was titled or had a prior lien.[18]

Three weeks later, on or near May 8, 2012, Mosing and Debtor entered into the Agreement at Mosing's dealership in Austin, Texas.[19]  Debtor delivered the Cobra to Mosing by trailer with 340 miles on it and no license plates.[20]  The Agreement contains no material difference in terms from Debtor's April 19 proposal.[21]  Unbeknownst to Mosing, prior to receiving the April 2012 email proposal from Debtor, Debtor had already mailed the Cobra's title to Extraco Bank in Colorado.[22] Although Debtor admits if he were in Mosing's shoes, it would have been important for him to know if the Cobra had a prior lien, he did not disclose the existence of the prior lien to

---

[14] *Id.*
[15] Mosing, 42:9-45:9; **Exhibit B**.
[16] *Id.*
[17] *Id.*; **Exhibit B**.
[18] *Id.*; **Exhibit B**.
[19] Mosing, 15:21-16:22; 47:3-51:24; **Exhibit C**.
[20] *Id.*; Mosing, 19:23-20:16.
[21] *Id.*
[22] Stephenson, 79:16-82:6.

5

Mosing.[23]   When asked whether disclosing the title to Mosing just simply slipped his mind, Stephenson admitted it did not.[24]

The day Debtor delivered the Cobra and the parties signed the Agreement, Debtor told Mosing there was no title.[25]  Had Mosing known there was already a title issued on the Cobra with a lien, he would never have entered the Agreement.[26]   The existence of the MSO itself and lack of plates on the Cobra were strong indicators there was no title and the Cobra was unregistered. Even if the Cobra Agreement was a loan, the issue is the same – Mosing would not loan the Debtor $120,000 secured by a previously titled automobile without the title.

### III.   MOSING BECAME OWNER OF THE COBRA WITHOUT FURTHER ACTION

After Debtor failed to buy back the Cobra pursuant to the May 2013 deadline, Mosing considered the purchase complete.  Although Debtor attempted to hedge his testimony about whether the transaction was a sale with a right to buyback, he ultimately admitted he sold the Cobra to Mosing.[27]  When Debtor failed to repurchase the Cobra within the agreed time period, the ownership transferred to Mosing.[28]

Under the Agreement, Debtor had a year to purchase the car back, until May 9, 2013, which never occurred.[29]  Mosing still possesses the Cobra in his shop on Research Boulevard in Austin.[30] Mosing carried two levels of insurance on the Cobra and has maintained it since 2012.[31]  He has stored the Cobra in an acclimatized, secure location.[32]

---

[23] *Id.*
[24] Stephenson, 82:2-6.
[25] *Id.*
[26] *Id.*
[27] Stephenson, 83:2-85:8; Exhibit I, *Amended Statement of Financial Affairs* (Doc. 17).
[28] *Id.*
[29] *Id.*
[30] Mosing, 23:20-23.
[31] Mosing, 53:14-24.
[32] *Id.*

Although Debtor never endorsed the MSO over to Mosing, Debtor admitted he sold him the Cobra. Moreover, for Mosing's purposes, he possessed the Cobra *and* the MSO. He also believed the Cobra was not titled, so he had no concerns that Debtor had any remaining interest in the Cobra. "I've continued to insure the car to this day, since I've taken ownership of it . . . [t]hat's all I needed to do; the MSO is the only thing I would need to own the car."[33]

At its core, the relationship between Jeff Mosing and Trac Stephenson was transactional with a mutual respect for their shared interest. Years later, when Stephenson subsequently paid off the lien and obtained the title to the Cobra from Extraco, he did not ask Mosing to return the Cobra or otherwise attempt to repurchase the Cobra. He also failed to deliver the title to Mosing, although he acknowledges the car belongs to Mosing.

## ARGUMENT AND AUTHORITIES

The evidence at trial establishes by a preponderance of the evidence that Debtor induced Jeff Mosing to enter the Agreement under false pretenses, which led Mosing to accept the Cobra with an original MSO rather than the previously issued, but nondisclosed, legal title. Debtor told Mosing the Cobra was not titled, when only months earlier he titled it in Colorado and burdened it with a bank lien. Mosing tendered $120,000 to Debtor in exchange for the Cobra, in a transaction they both acknowledge resulted in a transfer of the vehicle to Mosing. Mosing accepted the Cobra and MSO, and believed he owned the Cobra as of May 13, 2013. Debtor's fraud created a constructive trust over the Cobra in Mosing's favor. In states that recognize constructive trusts, like Texas and Colorado, the unjust enrichment element is imputed to a bankruptcy trustee by virtue of the wrongful conduct of the Debtor.

The constructive trust means the Cobra is not property of the bankruptcy estate, and

---

[33] Mosing, 30:14-21.

Defendants are entitled to a declaration that Mosing is owner of the Cobra. Moreover, the Trustee's argument that the parties failed to properly transfer the previously-titled Cobra under Texas titling laws, and thus were unable to transfer the Cobra under an MSO fails, because Debtor's fraud gives way to Mosing's equitable interest in the Cobra.

## I.    MOSING'S CONSTRUCTIVE TRUST OVER THE COBRA SHIELDS IT FROM THE BANKRUPTCY ESTATE

### A.    Debtor defrauded Mosing

Debtor knew Mosing would not enter into the Agreement had he known the facts. Therefore, he purposefully did not disclose the Colorado title (or lien) and assured Mosing all he would need is the MSO. Mosing would never have entered the Agreement had he known the Cobra had a prior lien. If he had known the Cobra had a title, he would have asked for it. While Debtor denied telling Mosing the Cobra had no title, he admitted that is information that he himself would want to know and would consider important.

The Trustee's argument that Mosing did not do enough to protect himself from Debtor's fraud is unpersuasive. The Trustee conveniently highlights the fact that Mosing is a sophisticated motor vehicle dealer, purportedly to establish he "should have known better" when dealing with Debtor, but insists that this was not a dealer-to-dealer transaction when arguing that Debtor could not legally transfer the Cobra to Mosing by MSO. The Trustee cannot have it both ways. Regardless, while Mosing addresses Trustee's latter notion further below, the facts indicate the Debtor defrauded Mosing, and now the Trustee is using this fraud to further injustice.

In 2012, Mosing had indeed been a car enthusiast for several years, but he had only operated Mosing Motorcars for a year. Knowing full well that Mosing was a Superformance car enthusiast based on their past transactions, Debtor took advantage of Mosing's appreciation for Superformance vehicles, his generosity, their prior course of dealing, and his ability to finance the

transaction to further his interests.  Among the four vehicles Mosing obtained from Stephenson, two were transferred by MSO and two were transferred with titles.  As the Trustee continues to ignore, Mosing did not seek to title the Cobra because he had no reason to.  If he would have titled the Cobra, he would have needlessly and instantly depreciated it.  He did not intend to drive the Cobra around town or sell it, so in his mind, a title would impair the value of the vehicle.

First, the evidence shows Stephenson defrauded Mosing.  The evidence further shows Stephenson's motivation in entering the Agreement was a need for cash.  Stephenson, fully aware of the legal implications, admitted it would have been important to him to know if the Cobra had previously been titled.  He admitted it would have been important to him to know that the Cobra had a prior lien on it.  Yet, he did not disclose these important facts.  He simply needed the money and as a result "forgot" to tell Mosing there was a lien, instead sending him an original MSO – a sign the vehicle was not yet titled – just like in two previous instances where Mosing purchased a Superformance vehicle.

### B. Constructive trusts, and thus the property rights of Trustee, are determined by state law

Property that is held by a debtor subject to a constructive trust does not become part of the bankruptcy estate.[34]  "The party seeking imposition of a constructive trust bears the burden of establishing the trust requirements," and "the court looks to state law to determine whether a party has met this."[35]

Under § 541(d) of the Bankruptcy Code, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of

---

[34] *Hill v. Kinzler* (*In re Foster*), 275 F.3d 924, 926 (10th Cir. 2001).
[35] *In re Foster,* 275 F.3d at 926; *see also Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1117 (5th Cir. 1995).

the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."[36]   The Fifth Circuit has "consistently recognized that § 541(d) accords the beneficiary of a constructive trust, properly imposed under state law, the right to recover the trust property from the bankruptcy trustee or the debtor."[37]   As property subject to a constructive trust is   excluded   from   the   bankruptcy   estate,   it   cannot   be   recovered   through a § 547(b) action.[38]   Because § 541(d) excludes property subject to a constructive trust from the bankruptcy estate, the Fifth Circuit has also held that § 541(d) prevails against the trustee's strong-arm powers under § 544.[39]

Admittedly, the remedy of a constructive trust is a potent one in bankruptcy because it gives the successful claimant "priority over the defendant's unsecured creditors" to the extent of the property subject to the trust.[40]   While specific elements must certainly be shown in order for a plaintiff to be entitled to a constructive trust, it would be an incomplete statement of the law to say that a constructive trust is *merely* a remedy.   A constructive trust is, rather, "a device equity uses to right a wrong,"[41] and "an equitable tool in the court's power that can infer a fiduciary-like relationship within a transaction for the purpose of promoting justice."[42]

New York law treats a constructive trust as "fraud-rectifying," rather than "intent-

---

[36] 11 U.S.C. § 541(d).

[37] *Haber Oil Co. v. Swinehart* (*In re Haber Oil Co.*), 12 F.3d 426, 436 (5th Cir. 1985). A constructive trust, generally, "arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."

[38] *See In re Southmark Corp.*, 49 F.3d at 1117.

[39] *Sandoz v. Bennett* (*In re Emerald Oil Co.*), 807 F.2d 1234, 1238 (5th Cir. 1987); *In re Quality Holstein Leasing,* 752 F.2d at 1012–15; *see also Wisconsin v. Reese* (*In re Kennedy & Cohen, Inc.*), 612 F.2d 963, 966 (5th Cir.), *cert. denied,* 449 U.S. 833 (1980).

[40] Emily L. Sherwin, *Constructive Trusts in Bankruptcy,* 1989 U. Ill. L. Rev. 297, 301 (1989).

[41] *Lesikar v. Rappeport,* 33 S.W.3d 282, 303 (Tex. App.—Texarkana 2000, pet. denied).

[42] *Harris v. Sentry Title Co., Inc.,* 715 F.2d 941, 946 (5th Cir. 1983).

enforcing."[43]  Accordingly, a constructive trust should not be imposed merely to give effect to a prior agreement, but instead should be reserved for situations in which a party's misconduct gives rise to his unjust enrichment.[44]

As the Court knows well, the facts here provide substantial justification to impose a constructive trust over the Cobra in Mosing's favor.

### C.  The elements for a constructive trust are met, and Trustee steps into the shoes of Debtor for the purpose of establishing unjust enrichment

Under Texas law, which the parties acknowledge applies to this case, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.[45]  The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship.[46]  Texas law requires the following elements to impose a constructive trust: (1) breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res.[47]  After trial, the only element in dispute is whether a trust is warranted to prevent unjust enrichment.

Unjust enrichment is an equitable principle that recognizes situations where one party has received benefit at the expense of an innocent other person.[48]  The mere fact that one party has

---

[43] *Superintendent of Ins. for N.Y. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 217 (2d Cir. 2004).
[44] *Id.*
[45] *Ellisor v. Ellisor,* 630 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Lowther v. Lowther,* 578 S.W.2d 560, 562 (Tex. Civ. App.—Waco 1979, writ ref'd n r.e.); *see also Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc.* (*In re Monnig's Dep't Stores, Inc.*), 929 F.2d 197, 201 (5th Cir. 1991) (applying Texas law).
[46] *Meadows v. Bierschwale,* 516 S.W.2d 125, 128 (Tex. 1974); *Thigpen v. Locke,* 363 S.W.2d 247, 250–53 (Tex. 1962); *Grace v. Zimmerman,* 853 S.W.2d 92, 97 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Mims v. Beall,* 810 S.W.2d 876, 881 (Tex. App.—Texarkana 1991, no writ).
[47] *Mowbray v. Avery*, 76 S.W.3d 663 (Tex. App.—Corpus Christi 2002, no pet.).
[48] *In re Behring Intern, Inc*., 61 B.R. 896 (Bankr. N.D. Tex. 1986).

made a profit, though, is an insufficient ground to order restitution on a theory of unjust enrichment.[49] The profit must be 'unjust' under principles of equity.[50] The bankruptcy courts that have addressed constructive trusts—and specifically the unjust enrichment element—look to the potential unjust enrichment of the debtor, not the trustee.

In a case with similar, but importantly distinct, facts from Eastern District of New York, a debtor transferred a vehicle titled to him to his son, who was in possession when the debtor filed his Chapter 7 petition.[51] On the debtor's Schedule B, he included a 2004 Cadillac Escalade, but described it as "In Debtor's Son's possession," and valued his interest in the Vehicle as "$0.00."[52] In response to the trustee's adversary claim against the debtor's son for turnover of the Escalade under Code Sections 541 and 542, the son asserted that he and his father *had an agreement whereby the car would be titled in the debtor's name*, but that the son would make all payments on the Escalade and would maintain and insure it.[53] Therefore, the son argued, he held the vehicle subject to a constructive trust for his benefit.[54]

The court first acknowledged that New York law recognizes constructive trusts.[55] However, the court held the defendant-son did not allege the requisite unjust enrichment to support imposition of a constructive trust, because there was no allegation of misconduct, overreaching, or inequitable conduct against the Debtor.[56] Accordingly, the court held that the parties (debtor and his son) attempted to utilize a constructive trust as an "intent-enforcing," rather than a "fraud-

---

[49] *Id*. at 906.
[50] *Id*.
[51] *In re Balgobin*, 490 B.R. 13 (Bankr. E.D.N.Y. 2013).
[52] *Id*. at 16.
[53] *Id*. at 16-17.
[54] *Id*. at 18.
[55] *Id*. The elements in New York, similar to Texas, are: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209 (2nd Cir. 2004). (citations omitted).
[56] *Id*. at 24.

rectifying" remedy.[57] Importantly, particularly for purposes of this analysis, the court acknowledged that, were there unjust enrichment between the debtor and his son, thus satisfying each element under New York law, it would have imposed a constructive trust, even in the context of a bankruptcy where the trust claim was asserted against the non-enriched Trustee.[58] The court cited several bankruptcy cases where the Second Circuit and other jurisdictions have imposed a constructive trust against a bankruptcy estate *based on the pre-petition unjust conduct by the debtor relating to the property* upon which the constructive trust was sought to be imposed.[59] Thus, the analysis hinges on the pre-petition unjust conduct by the debtor, not the bankruptcy Trustee. Otherwise, imposition of a constructive trust against a bankruptcy estate would be essentially impossible.

Here, the Trustee argues that because he simply seeks to maximize the return for the estate, and took no part in the Agreement that led to this dispute, he cannot possibly be unjustly enriched. However, as discussed above, the purpose of the constructive trust is to rectify fraud, and unjust enrichment does not require a wrongful act by the Trustee, only the pre-petition

---

[57] *Id.* "There is no inequity in requiring the Defendant to surrender the Vehicle for the benefit of his father's creditors. The Defendant derived substantial benefit from the arrangement, as he could not have held title in his own name, and was only able to acquire his claimed interest in the Vehicle through the Debtor's representation to the seller and the financing company that the Debtor was the owner of the Vehicle. Moreover, keeping title in the Debtor's name caused the Vehicle to be shielded from the Defendant's creditors, and would have allowed him to disclaim legal responsibility for the Vehicle. It would be inequitable to allow the Defendant to reap these benefits, yet allow him to claim equitable ownership of the Vehicle now to shield it from his father's creditors."

[58] *Id.*

[59] *See, e.g., In re Fischer,* 2001 WL 1923359 (E.D.N.Y. Aug. 21, 2001) (finding triable issue of fact whether constructive trust should be imposed against real property held by the debtor as of the petition date, where the debtor was alleged to have defrauded plaintiffs pre-petition); *Goldberg v. Hilsen (In re Hilsen),* 119 B.R. 435, 439 (S.D.N.Y. 1990) (finding that constructive trust could be imposed against Chapter 7 debtor-husband's estate if his pre-petition purchase of an apartment in his own name "illegally usurped, by fraud or otherwise," his wife's right to purchase the property); *accord Howard's Appliance Corp.,* 874 F.2d 88, at 94–95 (2nd Cir. 1989) (holding that there was "unjust enrichment," required to impose a constructive trust under New Jersey law, where the debtor moved its inventory to a different state six months prior to the petition date without the plaintiff's knowledge, thereby preventing the plaintiff from perfecting its security interest in the inventory); *City Nat'l Bank of Miami v. Gen. Coffee Corp. (In re Gen. Coffee Corp.),* 828 F.2d 699 (11th Cir. 1987) (finding a constructive trust arose under Florida law at the time the debtor perpetrated a pre-petition fraud upon the plaintiff).

wrongdoing of the debtor.  Contrasted with the facts from *Balgobin*, here there was certainly no agreement that Stephenson would retain title to the vehicle because Stephenson led Mosing to believe there was no title. Moreover, the court noted the defendant-son (Mosing-equivalent) derived substantial benefit from his informal agreement with his father because he could not legally have title in his own name to begin with.[60]

Here, Mosing could have, and would have, obtained title if Debtor did not lead Mosing to believe the Cobra only had an MSO. Moreover, without this specific representation, Mosing never enters the Agreement. Stephenson enticed Mosing to enter a sales transaction for a motor vehicle with an agreed purchase price and a specific buyback date.[61]  In this situation, because of Mosing's history and previous motor vehicle transactions with Debtor, including those involving specialty Superformance vehicles such as that at issue here, Mosing reasonably believed that the Cobra was not titled when he took possession.[62]  Moreover, the estate has been unjustly enriched because Debtor received $120,000 pre-petition that he would not otherwise have received but for his fraud.  Without this $120,000, it is possible the estate's liabilities would be even larger in this case than they are.

## II.  DEBTOR'S FRAUD EXCUSES THE FAILURE TO OBTAIN TRANSFER OF THE NONDISCLOSED TITLE

### A.    Mosing was not required to comply with the Certificate of Title Act

Trustee's claim that his hypothetical judgment creditor status trumps Mosing's interest even in spite of Debtor's fraud is a red herring that must fail.  The Texas Jurisprudence section cited by Trustee does not invalidate or mitigate Debtor's fraud, thus the result of the constructive

---

[60] *See Balgobin*, 490 B.R. at 24.
[61] *See* Exhibit D.
[62] Mosing, 51:20-53:21.

trust remains the same.[63]   The Trustee cites to the formal process of selling vehicles in Texas and the interplay between certificates of title and MSOs in an attempt to nullify the practical effect of the parties' Agreement.   The Trustee's arguments at trial were that Debtor neither endorsed the certificate of title nor the MSO to Mosing. The MSO indicates an original owner – and a non-titled vehicle – which adds value to a collectible like the Cobra. You would not expect an endorsement on an MSO until such time as it was titled. For example, Mosing purchased two previous Superformance automobiles and in neither case was the MSO signed.

These provisions do not apply to Mosing, and the Trustee's insinuation that any failure from Mosing somehow invalidates the parties' Agreement is not supported by the relevant statutes or caselaw.   The Texas Transportation Code defines an "owner" to be claiming a right to a motor vehicle that has been subject to a "first sale."[64]   However, a "first sale" requires the registration and titling of the vehicle.[65]   Here, although Mosing intended to take possession of the Cobra with the belief it had not been previously registered or titled, as the Court knows, that did not occur. Mosing did not obtain title because he did not believe there was a title.  If Mosing knew there was a title, this transaction would have been classified as a "first sale" and Mosing would have been required to obtain the title.[66]

Trustee relies on *Apeco Corp.* to support his position that the transfer to Mosing failed in its execution.[67]   In *Apeco*, a mobile home manufacturer who transferred one of its units to a dealer before receiving payment brought suit to recover possession of that mobile home, after the dealer

---

[63] *See* Tex. Jur. 3d Automobiles § 204 (2021).
[64] TEX. TRANSP. CODE ANN. § 501.002(19).
[65] *Id*. § 501.002(8).
[66] *See Apeco Corp. v. Bishop Mobile Homes, Inc*., 506 S.W.2d 711 (Tex. App.—Corpus Christi 1974, no writ).
[67] *Id.*

subsequently sold the mobile home to a buyer in the ordinary course of business. [68] In denying the manufacturer's claim, the court held the manufacturer delivered the vehicle to the dealer with full knowledge the dealer would likely sell it before the manufacturer was paid.[69]   The Trustee highlighted the following passage during closing argument:

> The manufacturer's certificate properly filled out is necessary only for the purposes of registering the vehicle and obtaining the initial certificate of title. After the vehicle is registered for the first time and the certificate of title is issued, title to the vehicle is then evidenced solely by the certificate of title, and all sales thereafter are 'subsequent sales', and in order to be valid, must be in compliance with Sections 27, 33 and 51 of the Act.[70]

Again, by arguing that Cobra's MSO is meaningless to transfer its title to Mosing due to its Colorado title, Trustee again overlooks the practical effect of Debtor's fraud.  As he testified, Mosing would have asked for the title had he known it existed.  Furthermore, Stephenson's fraud renders the fact that the MSO was unexecuted wholly moot.  On one hand, the Trustee argues Stephenson failed to endorse the MSO to Mosing, but on the other acknowledges the certificate of titled had already been issued, thus nullifying the effect of the MSO under the Certificate of Title Act.  Moreover, by the statute's plain language, the MSO is *necessary only for the purposes of registering the vehicle and obtaining the initial certificate of title*.[71]   Here, Mosing was not interested in registering or titling the Cobra, as he wanted to preserve its value and avoid unnecessary taxes.  Moreover, that Stephenson failed to endorse the MSO over to Mosing is not surprising, as Stephenson had a year to reacquire the Cobra from the time he delivered it to Mosing in Austin pursuant to the Agreement.

---

[68] *Id*.
[69] *Id*.
[70] *Id.* at 716.
[71] *Id*.

16

In contrast with the facts of *Apeco Corp.*, in which the interest of a subsequent purchaser of a mobile home defeated the manufacturer's claim, Mosing never intended to sell the Cobra here. To be certain, while the Act does require presentment of a manufacturer's certificate, properly executed and filled out, showing each previous transfer of the vehicle as a condition precedent to the right to receive a certificate of title from the State Highway Department, *there is no provision in that Section, or elsewhere in the Act, to the effect that a 'first sale' shall be invalid unless the manufacturer's certificate is transferred and delivered at the time the vehicle is purchased.*[72]

Accordingly, the Court held the ultimate purchaser of the mobile home was not required to request or demand a certificate of title or a manufacturer's certificate at the time of purchase of the mobile home in order for title to pass to him, and *the consummation of the sale without demanding a manufacturer's certificate and without first applying for a certificate or title was not in violation of any provision on the Certificate of Title Act.*[73]

*Apeco* supports Mosing's position that he did not need to actively secure a title or MSO to consummate the sale and a signed MSO was not necessary in order for title to pass to him.

### B.    Debtor operated as a dealer when he transferred the Cobra to Mosing

To the extent the Trustee argues that Debtor could not legally transfer the Cobra to Mosing under an MSO because they were both "owners" as that term is defined by the Certificate of Title Act, that position must fail.

Under the Texas Transportation Code, "dealer" means a person who regularly and actively buys, sells, or exchanges vehicles at an established and permanent location.[74]   The term includes

---

[72] *Id.* at 716 (emphasis added).
[73] *Id.* (emphasis added); *see also Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 486 (1943) ("[T]he transfer of the manufacturer's certificate is not essential to the validity of the sale.").
[74] TEX. TRANSP. CODE ANN. § 501.002(3).

17

a franchised motor vehicle dealer, an independent motor vehicle dealer, an independent mobility motor vehicle dealer, and a wholesale motor vehicle dealer.[75]  A sale to an 'owner' as defined by § 4 is still a first sale and is governed by the rules governing ordinary sales of personal property.[76]

When Mosing originally wanted to buy the Superformance GT40 in 2008, Debtor was listed online as the Texas Superformance dealer.  He operated a business known as "427 Legends," a nod to Shelby Cobras.  The Trustee has attempted to seize on the requirement that the manufacturer's certificate must be completed in order to register the vehicle and obtain the initial certificate of title.[77]  However, Mosing was under no obligation to obtain the endorsement as he paid consideration for the Cobra and retained possession.  He did not attempt to sell the Cobra, which may have required further action.  The Trustee challenged Mosing on whether Mosing "sat on his rights" with regard to the Cobra and therefore must bear the pain of Debtor's subsequent misfortune and bankruptcy. In this case, Mosing lived in Texas. Debtor lived in Texas. The Agreement was signed in Texas. The Cobra was located in Texas. Why would Mosing question the lack of title, given (i) a representation by Debtor that there was no title; and (ii) being provided an original MSO, similarly to two of the prior purchases?

The fact that Mosing did not need to pursue Debtor after the one-year option period expired, supports Mosing's good faith belief the transaction was complete after Debtor failed to repurchase the Cobra.  Moreover, Mosing had legitimate business and tax reasons for not obtaining title the vehicle after 2013.  Certainly, the Court can safely assume Mosing would have done more than

---

[75] Id.

[76] See Motor Inv. Co., 174 S.W.2d at 484. Nicewarner v. Alston, 228 S.W.2d 872, 874–875 (Tex. Civ. App.—Amarillo 1950, no writ).

[77] TEX. TRANSP. CODE ANN. § 501.002(19), (25). "A Texas county assessor-collector may not issue a title receipt on the first sale of a motor vehicle, however, unless the applicant for the title provides an application for a title and a manufacturer's certificate in a manner prescribed by the Department of Motor Vehicles. After the vehicle is registered for the first time and the certificate of title is issued, title to the vehicle is evidenced solely by the certificate of title, and any future sales are subsequent sales."

18

simply continue to maintain, insure, and store a vehicle he believed he owed, had he known of the prior lien.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants Jeffrey Mosing and Mosing Autosports, LLC d/b/a Mosing Motorcars respectfully request that the Court enter judgment in Defendants' favor on all of Plaintiffs' remaining claims and declare Defendants as the owners of the property at issue in this lawsuit.

September 27, 2021

Respectfully submitted,

CHAMBERLAIN HRDLICKA

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

***Counsel for Jeffrey Mosing and Mosing
Autosport, LLC dba Mosing Motorcars***

OF COUNSEL:
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2021, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Tracy Dean Stephenson,** | § | **Chapter 7** |
| | § | |
| **Debtor.** | § | **Case No. 19-13565** |
| | § | |
| | § | |
| | § | |
| **M. Stephen Peters, Chapter 7 Trustee** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **v.** | § | **Adversary No. 19-01211** |
| | § | |
| **Jeffrey Mosing and Mosing Autosport,** | § | |
| **LLC *dba* Mosing Motorcars** | § | |

---

### DEFENDANTS JEFFREY MOSING AND MOSING AUTOSPORT, LLC D/B/A MOSING MOTORCARS' EXHIBITS TO POST-TRIAL BRIEF

---

### Admitted Trial Exhibits

- Plaintiff's 1 through 11.

### Exhibits B and C

- See Trial Transcript for pages referenced.

### Exhibit I

- Plaintiff's 9.

Respectfully submitted,

**CHAMBERLAIN HRDLICKA**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
***Counsel for Jeffrey Mosing and Mosing
Autosport, LLC dba Mosing Motorcars***

**OF COUNSEL:**
Reagan H. "Tres" Gibbs, III
Texas Bar No. 24083068
CHAMBERLAIN, HRDLICKA, WHITE,
   WILLIAMS & AUGHTRY
1200 Smith, Suite 1400
Houston, Texas  77002
D: (713) 654-9615
F: (713) 658-2553
E: tres.gibbs@chamberlainlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2021, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>TRACY DEAN STEPHENSON<br><br>   Debtor. | Case No. 19-13565 MER<br><br>Chapter 7 |
| M. STEPHEN PETERS,<br><br>    Plaintiff<br><br>v.<br><br>JEFFREY MOSING and MOSING<br>AUTOSPORT, LLC,<br><br>    Defendants. | Adversary No. 19-1211 MER |

### <u>ORDER</u>

Admittedly, removing assets titled in the name of the debtor from the reach of his creditors seems to fly in the face of the bankruptcy process. However, where a non-debtor is the equitable owner of such property, the Code[1] provides such asset is not property of the bankruptcy estate.[2]  The matter before the Court pits against each other the conflicting interests created by this section of the Code:  a Chapter 7 trustee attempting to recover a valuable asset for the benefit of creditors, and a non-debtor asserting an equitable ownership interest in property he has possessed for nearly ten years.

### BACKGROUND

The underlying facts of this matter are, for the most part, undisputed.  Debtor Tracy Stephenson ("**Stephenson**") purchased a 1965 Shelby 427 Cobra (the "**Cobra**") on or about December 20, 2011.[3]  The Cobra was purchased out-right, without

---

[1] Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] 11 U.S.C. § 541(d).

[3] Exh. 1 (the "**Title**").

financing, and Stephenson received the manufacturer's statement of origin[4] for the Cobra at that time.[5]  Stephenson later presented the MSO, along with other required paperwork, to the Colorado Department of Motor Vehicles, which issued the Title on or about March 8, 2012.[6]

At or near the same time as the issuance of the Title, Stephenson used the Cobra, along with some pieces of real estate, to secure an obligation to Extraco Bank, N.A. ("**Extraco**").[7]  Extraco recorded its lien against the Cobra, and Extraco was in possession of the Title.[8]

Just over one month later, on April 19, 2012, Stephenson contacted Jeffrey Mosing, owner of Mosing Autosport, LLC.[9]  Stephenson offered a purchase price of $120,000 for the Cobra with an agreement he could purchase it back for up to a year, with the buy-back amount varying based on timing.[10]  Stephenson advised Mosing he could take possession of the Cobra and MSO immediately, and "[t]he Cobra would stay on the [MSO] until our agreement ends."[11]  Stephenson told Mosing "I would really like to do something right away…  Things are moving really fast on my Network business. I am needing to Hem-ridge [sic] lots of cash to do it right!"[12]

The parties memorialized their agreement on May 8, 2012.[13]  The Agreement is a scant, one-page document, signed by Mosing, Stephenson, and Eric Beverding, the then-manager of Mosing Autosport, LLC.[14]  The Agreement provides as follows:

---

[4] Texas law defines a "manufacturer's statement of origin" as "a certificate on a form prescribed by the department showing the original transfer of a new motor vehicle from the manufacturer to the original purchaser."  Tex. Occupations Code § 2301.002(20),  "So long as the vehicle is a new, unregistered vehicle, there may be repeated transfers of the vehicle, for example, from the manufacturer to a dealer, from dealer to dealer, and from a dealer to an owner, without the need to register the vehicle or apply for a certificate of title."  8 Tex. Jur. 3d Automobiles § 203 (2021) (citing *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex. Civ. App. 1974)).

[5] Exh. 7 (the "**MSO**").

[6] *See* ECF No. 94 ("**Transcript**") at 67:11-17.  *See also* Title.

[7] Transcript at 69:1-5.

[8] Title; Transcript at 69:8

[9] Exh. 2.  Jeffrey Mosing and Mosing Autosports, LLC will collectively be referred to as "**Mosing**" in this Order.

[10] *Id.* at p. 1.

[11] *Id.*

[12] *Id.* at p. 2.

[13] Exh. 3 (the "**Agreement**").

[14] *Id.*

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 – November 9th 2012
$140,000: November 10th 2012 – February 9th 2013
$150,000: February 10th 2013 – May 9th 2013

Jeff Mosing to hold Original MSO & Possession of Cobra during the agreement period.[15]

Mosing wrote a check for $120,000 pursuant to the Agreement, made out to 427 Legends, Stephenson's car business, at Stephenson's direction.[16]  In the memo line of the Check Mosing wrote "1 Yr. Capital Loan."[17]  Mosing took possession of the Cobra and the MSO at that time.  Stephenson did not opt to "re-acquire" the Cobra from Mosing during the term of the Agreement, and Mosing has continuously been in possession of both the Cobra and the MSO, operating under the assumption he was the owner of the Cobra.

Stephenson paid off his obligation to Extraco on or about June 2, 2016, and Extraco released its lien.[18]  Stephenson received the Title back from Extraco shortly thereafter, but he did not forward the Title to Mosing.[19]

Stephenson filed a voluntary petition under Chapter 7 of the Code[20] on April 29, 2019 (the "**Petition Date**").[21]  M. Stephen Peters is the duly appointed Chapter 7 trustee of Stephenson's bankruptcy estate (the "**Trustee**").  Although he originally did not include any mention of the Cobra or a secured claim of Mosing on his schedules or Statement of Financial Affairs,[22] Stephenson filed an Amended Statement of Financial Affairs on June 5, 2019 identifying the Cobra as property he held or controlled but owned by someone else.[23]  Specifically, he lists Mosing Motorcars as the owner of the

---

[15] *Id.*

[16] Exh. 4 (the "**Check**").

[17] *Id.*

[18] Title; Transcript at 69:9-19.

[19] Transcript at 70:2-5.

[20] Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[21] Exh. 8.

[22] *Id.*

[23] Exh. 9 at p. 8.

Cobra and states "debtor sold vehicle to Jeff Mosing in or about 2012 for $120,000.00 but is still listed as the owner on the certificate of title."[24]  Stephenson provided the Trustee with the Title after the Petition Date.

The same day Stephenson filed his Amended Statement of Financial Affairs, and likely not due to coincidence, Mosing authorized a statement to be drafted identifying the Agreement and stating Stephenson "borrow[ed]" $120,000 and "put up as collateral" the Cobra.[25]  The statement also says Mosing would "retain possession and ownership" of the Cobra if Stephenson did not pay to re-acquire it during the term of the Agreement.[26]  Weeks later Mosing completed an application for the issuance of a certificate of title from the Texas Department of Motor Vehicles stating the Cobra "was given as payment for a loan," but the application was never filed.[27]

The Trustee initiated the instant proceeding against Mosing on August 7, 2019, seeking to avoid the transfer of any interest in the Cobra from Stephenson to Mosing pursuant to §§ 547 or 544, for turnover of the Cobra pursuant to § 542, and for a determination of interests in the Cobra.[28]  Mosing likewise asserted a counterclaim for a determination of interests in the Cobra, requesting the Court declare a constructive trust in the Cobra, with Mosing as the equitable owner.[29]  According to Mosing, Stephenson induced him to enter into the Agreement through fraud by failing to disclose the Title and misleading him to believe he was the owner of the Cobra by virtue of possession of the MSO alone.

## ANALYSIS

### A.    Trustee's Claim for Relief Under § 547

At the outset, the Court will consider the Trustee's first claim for relief, to avoid Stephenson's transfer of a security interest or an ownership interest in the Cobra pursuant to § 547.  To establish a claim under § 547(b), Trustee must prove all the following elements:

(1) the debtor transferred an interest in property,

(2) to or for the benefit of a creditor,

---

[24] *Id.*

[25] Exh. 5.

[26] *Id.*

[27] Exh. 6.

[28] *See* ECF No. 23 (Amended Complaint).  At trial, the Trustee voluntarily dismissed the third and fourth claims for relief, leaving only the first, second, fifth and sixth claims for relief identified herein.

[29] ECF No. 42.

(3) for or on account of an antecedent debt owed by the debtor before such transfer was made,

(4) made while the debtor was insolvent,

(5) made on or within 90 days before the date of the filing of the petition, or within one year of the filing of the petition if such creditor is an insider, and (6) that enables such creditor to receive more than the creditor would receive in a case under Chapter 7 of the Bankruptcy Code.[30]

As stated by the Trustee at trial, this claim is premised on the Trustee's position the Agreement was a loan, which would satisfy the "antecedent debt" requirement. Based on the evidence at trial, however, the Court concludes the Agreement was intended as a sale between the parties. The email communications prior to the Agreement discuss a "**purchase** price" and various "**buy-back**" prices,[31] clearly indicating Mosing was purchasing the Cobra, and Stephenson only had the right to then purchase the Cobra back from him at a later time. Additionally, the Agreement itself states Stephenson could "Re-Acquire" the Cobra, further evidencing his relinquishment of ownership to Mosing.[32]

The Court acknowledges Mosing wrote "one year capital loan" in the memo line of the Check,[33] and he authorized statements regarding Stephenson "borrowing" funds[34] and the Cobra being payment for a loan.[35] However, the Court does not place significant weight on these statements, particularly when the only one directly authored by Mosing is the memo line on the Check, which, as stated by Mosing at trial, could have simply been left blank.[36] In the Court's view, the language used in the email prior to the Agreement and in the Agreement itself are controlling. Additionally, the parties involved in the Agreement both agree the transaction was a sale. At trial Mosing described the Agreement as follows: "It was a purchase agreement between [Stephenson] and I, and he had the opportunity to purchase the car back after – within that one-year period. If not, [Stephenson] also admitted after that fact that I was the owner of the car."[37] He further explained the reason he agreed to the one-year buyback

---

[30] *Weinman v. Alternative Revenue Systems, Inc. (In re Stevens)*, 552 B.R. 773, 775 (Bankr. D. Colo. 2016) (citing *Jobin v. McKay (In re M & L Business Mach. Co., Inc)*., 155 B.R. 531, 534 (Bankr. D. Colo.1993)).

[31] Exh. 2 at p. 1.

[32] Agreement.

[33] Check.

[34] Exh. 5.

[35] Exh. 6.

[36] Transcript at 55:23-25.

[37] *Id.* at 21:2-5.

period was only because he considered Stephenson a friend.[38]  Stephenson likewise testified he considered the transaction to be a sale.[39]  Accordingly, because he did not establish an antecedent debt, the Trustee's first claim for relief must fail and the Court will enter judgment in favor of Mosing on the same.

## B.    Trustee's Other Claims for Relief and Mosing's Counterclaim

The Court next turns to the Trustee's other remaining claims for relief and Mosing's counterclaim, which are all premised on a determination of Mosing's interest in the Cobra.  With respect to the Trustee's second claim for relief under § 544, the Court previously held, as a matter of law, to the extent Mosing is able to establish a "beneficial ownership and economic interest in" the Cobra that would prevail under Texas law, the Trustee is not able to avoid such interest using his strong-arm powers under § 544.[40] "To provide otherwise would eliminate the purpose and effect of § 541(d), which specifically excludes beneficial interests not held by the Debtor from property of the estate."[41]

Likewise, Trustee's fifth claim for relief is for turnover of property of the estate pursuant to § 542.  To the extent Stephenson holds only bare title to the Cobra, turnover is not warranted.  Finally, Trustee's sixth claim for relief is for a determination of the estate's interest in the Cobra.  Similarly, Mosing's counterclaim is a request for declaratory judgment the estate's interest in the Cobra is limited to bare legal title.  As such, the focus of the Court's inquiry for the remainder of this Order is on Mosing's interest in the Cobra.

### 1.    Whether Imposition of a Constructive Trust in Mosing's Favor is Appropriate

To determine Mosing's interest in the Cobra, the Court must look to state law.[42] Specifically, Mosing asserts a constructive trust should be imposed on the Cobra in his favor due to Stephenson's fraud.  Under Texas law, a constructive trust is used as "'an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.'"[43]  In order to succeed on his counterclaim, Mosing must show "1) breach of an informal relationship of special trust or confidence arising prior to the

---

[38] *Id.* at 26:25-27:2.

[39] *Id.* at 83:2-4.

[40] *See* ECF No. 70 ("**MSJ Order**") (citing *In re Richards*, 275 B.R. 586, 590 (Bankr. D. Colo. 2002); *In re Garberding*, 338 B.R. 463 (Bankr. D. Colo. 2005)).

[41] MSJ Order at pp. 9-10.

[42] *See Ogden v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (quoting *Butner v. U.S.*, 440 U.S. 48, 55 (1979); *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir. 1998)) ("For the purposes of most bankruptcy proceedings, '[p]roperty interests are created and defined by state law.'").

[43] *Southmark Corp.*, 49 F.3d at 1118 (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)).

511

transaction in question, or actual fraud; 2) unjust enrichment of the wrongdoer; [and] (3) tracing to an identifiable res."[44]

There is no question the third element of an identifiable res is met here, insofar as the Cobra is the only property involved.  With respect to the first element, the evidence presented at trial sufficiently establishes Stephenson's fraudulent conduct.  The communication from Stephenson to Mosing prior to the Agreement does not mention anything about a certificate of title for the Cobra, and Mosing testified Stephenson specifically told him there was no title.[45]  Mosing also testified there were no discussions about a lien on the Cobra, and he would "absolutely" not have entered into the transaction had he known about a lien on the Title.[46]  Stephenson, on the other hand, testified he "[didn't] recall specific discussions relating to the title," but denied telling Mosing there was no title.[47]  Stephenson also testified he didn't recall discussing any liens on the Cobra.[48]

The Court finds Stephenson's testimony falls far short of credible.  The following testimony from Stephenson is particularly illuminating:

Q:  Would it be important to you to know whether there was a lien on a vehicle before you purchased it?
A:  Yes.
Q:  And yet, in this correspondence to Mr. Mosing, you did not disclose the existence of this lien.
A:  Correct.
Q:  Did it just slip your mind?
A:  No.[49]

Additionally, despite stating he "didn't recall" discussions with Mosing about the Title, Stephenson also testified he didn't disclose the existence of the Title because he intended to exercise the one-year buyback.[50]  Based on the foregoing, the Court finds Stephenson acted with fraudulent intent in inducing Mosing into the Agreement.  Stephenson was aware of the importance of disclosing a lien on the Cobra to Mosing, and yet he purposely failed to do so.  The Court can likewise deduce the reason Stephenson failed to disclose the existence of the Title was because the Title evidenced the lien and wasn't in his possession at the time.  To disclose one would be to disclose

---

[44] *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex. App. 2002).

[45] Transcript at 49:1.

[46] *Id.* at 49:24-25; 51:20-21.

[47] *Id.* at 72:12-16.

[48] *Id.* at 72:24-73:1.

[49] *Id.* at 81:24-82:6.

[50] *Id.* at 85:15-17.

the other, and the existence of the lien would have obliterated his chances of selling the Cobra for the funds he stated he needed "right away."[51]

Moreover, Stephenson's fraudulent conduct with respect to the Agreement is even more apparent to the Court in light of the parties' past dealings. Prior to the Agreement, Mosing purchased four other vehicles from Stephenson. Specifically, Mosing previously purchased a Superformance GT40 and Cobra Daytona from Stephenson, which were delivered with only a manufacturer's statement of origin.[52] Mosing also purchased two Corvettes which were transferred with certificates of title.[53] Accordingly, because of previous business relationship between Mosing and Stephenson, wherein Stephenson provided the appropriate ownership documents upon the sale of a vehicle, the Court concludes Stephenson's misrepresentations and omissions regarding the Cobra were intentional and fraudulent.

The Court also finds Mosing established the second element required for imposition of a constructive trust, unjust enrichment. Texas law describes unjust enrichment as "where a person has obtained a benefit from another due to fraud, duress or taking of undue advantage."[54] When considering the imposition of a constructive trust in the bankruptcy context, courts have considered the unjust enrichment element with respect to the debtor's fraudulent conduct, and not as to the bankruptcy trustee, who had no involvement in the transaction.[55] To be sure, under Texas law it is the "unjust enrichment of the wrongdoer" which is to be considered.[56] As such, it is clear from the evidence presented Stephenson was unjustly enriched by the Agreement, wherein he received the $120,000 from Mosing based on his misrepresentations and omissions regarding the Cobra's certificate of title and the existence of a lien.

The Court recognizes imposition of a constructive trust over property that would otherwise be property of the bankruptcy estate is generally disfavored, save for a showing of "unique and egregious circumstances."[57] However, the Court finds the circumstances of this situation clearly and unequivocally establish that the imposition of a constructive trust is appropriate. As stated above, both parties testified they believed the Agreement to be a sale, with only Stephenson's fraud precluding technical consummation of the transfer of legal ownership. Imposition of a constructive trust only

---

[51] *See id.* at 71:6-7.  *See also* Exh. 2 at p. 2.

[52] *See* Transcript at 37:7-38:2-11; 40:14.

[53] *Id.* at 40:16-20.

[54] *Mowbray*, 76 S.W.3d at 679 (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

[55] *See In re Balgobin*, 490 B.R. 13 (Bankr. E.D.N.Y. 2013).

[56] *Continental Casualty Co. v. Kellogg (In re Chanel Finance, Inc.)*, 102 B.R. 549, 551 (Bankr. N.D. Tex. 1988).

[57] *In re Builders Capital and Services, Inc.*, 317 B.R. 603, 612 (Bankr. W.D.N.Y. 2004).

513

furthers the actual intent of the parties at the time of the Agreement and prevents the unjust enrichment of Stephenson based on his fraudulent conduct.  As such, the Court finds imposition of a constructive trust over the Cobra in Mosing's favor is appropriate.

> 2.    *Whether the Failure to Comply with the Texas Certificate of Title Act Precludes Mosing's Ownership Interest*

The Court turns next to Trustee's arguments the Texas Certificate of Title Act ("**TCTA**") still requires the Court find the Cobra is property of the bankruptcy estate. Under the TCTA, "a motor vehicle may not be the subject of a subsequent sale unless the owner designated on the title submits a transfer of ownership of the title."[58]  Only in a "first sale" is a manufacturer's certificate of origin sufficient to establish title.[59]  The TCTA also states "[a] sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied."[60]  Based on these provisions, the Trustee argues the transaction is void and Mosing can have no valid ownership interest in the Cobra.

As explained at length in the Court's MSJ Order, however, "[t]he name on the certificate of title is not conclusive of ownership.  Evidence of the name in which an automobile is registered only raises a presumption of ownership."[61]  Additionally, Chapters 1 through 9 of the Texas Business and Commerce Code, which include Texas's adoption of the UCC, control over conflicting provisions of the TCTA,[62] and "[u]nder the UCC, title to a motor vehicle passes to the buyer upon delivery or possession even though a certificate of title will be delivered later and the names on the certificate of title are not changed."[63]  "[N]oncompliance with the [TCTA] does not override the clear showing of a valid and complete transfer of ownership of an automobile."[64]

Both parties testified they agreed the Agreement was a sale.  Additionally, Mosing's actions since the Agreement clearly demonstrate a complete transfer of ownership of the Cobra.  Mosing has insured and stored the Cobra since taking possession and has performed periodic maintenance on it.[65]  Although he did not take further action regarding establishing his ownership of the Cobra prior to the Petition

---

[58] Tex. Transp. Code § 501.071.

[59] *See* 8 Tex. Jur. 3d Automobiles § 203; Tex. Transp. Code § 501.025.

[60] Tex. Transp. Code § 501.073.

[61] *Vibbert v. PAR. Inc.*, 224 S.W.3d 317, 321 (citing *Tyler Car & Truck Center v. Empire Fire & Marine Insurance Co.*, 2 S.W.3d 482, 485 (Tex. App. 1999); *Minter v. Joplin*, 535 S.W.2d 737, 738 (Tex. Civ. App. 1976)).

[62] *Id.* (citing Tex. Transp. Code § 501.005).

[63] *Id.* (citing *First Nat. Bank of El Camp, TX v. Buss*, 143 S.W.3d 915, 920 (Tex. App. 2004)).

[64] *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch*, 7 S.W.3d 191, 197 (Tex.App.-Tyler 1999).

[65] Transcript at 53:17-24.

Date, *i.e.* by applying for a certificate of title, the Court does not find the evidence to be dispositive. Mosing credibly testified he did not attempt to obtain a certificate of title for the Cobra because he believed the MSO was sufficient to establish his ownership,[66] and he explained in his experience it would be a stronger selling point for any future purchaser to only receive the MSO as opposed to a certificate of title, making the Cobra more marketable.[67] Based on this testimony, the Court finds upon the delivery of the Cobra, Mosing became the rightful owner thereof, and the Cobra is not property of the bankruptcy estate.[68] As such, the Trustee's remaining claims must fail, and judgment in Mosing's favor is warranted.

## **CONCLUSION**

The evidence received in this case establishes fraudulent conduct on the part of Stephenson, resulting in an undoubtedly unwelcome surprise to Mosing years after the fact. While the Court appreciates the Trustee's efforts to identify and liquidate assets of the estate for payment of creditors, the Court finds the Cobra is subject to a constructive trust in favor of Mosing, with Stephenson holding only bare legal title, and thus the Cobra is not property of the bankruptcy estate.

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED judgment shall enter in favor of Mosing on the Trustee's claims under §§ 542, 544, 547, and for determination of the estate's interest in the Cobra.

IT IS FURTHER ORDERED judgment shall enter in favor of Mosing on his counterclaim for determination of a constructive trust in his favor in the Cobra and that the Cobra is not property of Stephenson's bankruptcy estate.

Dated March 8, 2022                            BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[66] *Id.* at 30:17-31:10.

[67] *Id.* at 54:24-55:7.

[68] Additionally, the Court notes failure to comply with TCTA likewise does not preclude the Court's imposition of a constructive trust over the Cobra, thereby removing it from the bankruptcy estate. *See In re Primera Energy, LLC,* 579 B.R. 75 (Bankr. W.D. Tex. 2017) (in relevant part, imposing a constructive trust on a vehicle).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | |
| TRACY DEAN STEPHENSON | Case No. 19-13565 MER |
| Debtor. | Chapter 7 |
| M. STEPHEN PETERS, Chapter 7 Trustee | Adversary No. 19-1211 MER |
| Plaintiff | |
| v. | |
| JEFFREY MOSING and MOSING AUTOSPORT, LLC | |
| Defendants | |

## JUDGMENT

Pursuant to and in accordance with the Order entered by the Honorable Michael E. Romero, United States Bankruptcy Judge, on March 8, 2022,

IT IS ORDERED AND ADJUDGED as follows:

Judgment is entered in favor of the Defendants on the Plaintiff's claims under §§ 542, 544, 547, and for determination of the estate's interest in the 1965 Shelby 427 Cobra.

Judgment is entered in favor of the Defendants on the counterclaim for determination of a constructive trust and that the 1965 Shelby 427 Cobra is not property of the bankruptcy estate.

Dated: March 8, 2022

FOR THE COURT:
KENNETH S. GARDNER, CLERK

Deputy Clerk

APPROVED AS TO FORM:

Michael E. Romero, Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                    )

                           )

TRACY DEAN STEPHENSON,  )    Case No. 19-13565 MER

                           )    Chapter 7

        Debtor.          )

_____)

                           )

M. STEPHEN PETERS,       )    Adv. Proc. No. 19-01211 MER

chapter 7 trustee,           )

                           )

          Plaintiff,   )

v.                         )

                           )

JEFFREY MOSING and MOSING  )

AUTOSPORT, LLC dba MOSING   )

MOTORCARS.             )

                           )

         Defendants.  )

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):  M. Stephen Peters, Chapter 7 Trustee

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

        For appeals in an adversary proceeding.      For appeals in a bankruptcy case and not in an adversary proceeding.

        X Plaintiff

        ˜  Defendant                    ˜  Debtor

        ˜  Other (describe) _____     ˜  Creditor

                                           ˜Trustee

                                         ˜  Other (describe)

                                         _____

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: Order denying Motions for Summary Judgment (Docket No. 70) and Order and Judgment following trial (Docket Nos. 100 and 101).

2. State the date on which the judgment, order, or decree was entered: March 25, 2021 and March 8, 2022, respectively.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Defendant Jeffrey Mosing

    Attorney: Jarrod B. Martin
    Reagan H. Gibbs, III
    Chamberlain Hrdlicka
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    (713) 658-1818

2. Party: Defendant Mosing Autosport, LLC dba Mosing Motorcars

    Attorney: Jarrod B. Martin
    Reagan H. Gibbs, III
    Chamberlain Hrdlicka
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    (713) 658-1818

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

    X Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Dated this 15th day of March 2022.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999
aconrardy@wgwc-law.com
lriley@wgwc-law.com
*Attorneys for M. Stephen Peters, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I do hereby certify that on March 15, 2022, I served a true and correct copy of the **NOTICE OF APPEAL AND STATEMENT OF ELECTION** via United States mail, postage prepaid thereon, or electronically, to those persons listed below:

Jarrod Martin
Jarrod.martin@chamberlainlaw.com

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

*/s/ Angela Garcia*
For Wadsworth Garber Warner Conrardy, P.C.

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE TRACY DEAN STEPHENSON, | USDC Case No. 22-CV-00642 MSK |
| Debtor. | Bankruptcy Case No. 19-13565 MER |
| | Adv. Proc. No. 19-01211 MER |
| M. STEPHEN PETERS, chapter 7 trustee | |
| Appellant, | |
| v. | |
| JEFFREY MOSING and MOSING AUTOSPORT, LLC dba MOSING MOTORCARS | |
| Appellees. | |

### DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

Appellant M. Stephen Peters, Chapter 7 Trustee, pursuant to Federal Rule of Bankruptcy Procedure 8009(a), hereby designates the following items to be included in the record on appeal:

1.    First Amended Complaint filed on January 3, 2020 at Docket No. 23 in Adv. Proc. No. 19-01211 MER.

2.    Amended Answer to First Amended Complaint and Counterclaim filed on June 11, 2020 at Docket No. 42 in Adv. Proc. No. 19-01211 MER.

3.    Answer to Amended Counterclaim and Affirmative Defenses filed on June 11, 2020 at Docket No. 43 in Adv. Proc. No. 19-01211 MER.

4.    Defendants Jeffrey Mosing and Mosing Autosport, LLC d/b/a Mosing Motorcars' Amended Motion for Summary Judgment, with exhibits, filed on October 21, 2022 at Docket No. 60 in Adv. Proc. No. 19-01211 MER.

5.    Plaintiff's Response to Defendants' Amended Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment and Memorandum of Law in Support Thereof, with exhibits, filed on October 29, 2020 at Docket No. 61 in Adv. Proc. No. 19-01211 MER.

6.    Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment filed on November 5, 2020 at Docket No. 63 in Adv. Proc. No. 19-01211 MER.

7.    Defendants' Objection and Response to Plaintiff's Cross-Motion for Summary Judgment filed on November 12, 2020 at Docket No. 64 in Adv. Proc. No. 19-01211 MER.

8.    Plaintiff's Reply in Support of Cross-Motion for Summary Judgment filed on November 19, 2020 at Docket No. 65 in Adv. Proc. No. 19-01211 MER.

9.    Order Granting Motion to Deem Cross-Motion for Summary Judgment as Timely Filed filed on November 25, 2020 at Docket No. 67 in Adv. Proc. No. 19-01211 MER.

10.    Notice of Hearing filed on November 25, 2020 at Docket No. 68 in Adv. Proc. No. 19-01211 MER.

11.    Minutes of Proceeding filed on December 15, 2020 at Docket No. 69 in Adv. Proc. No. 19-01211 MER.

12.    Transcript for December 15, 2020 hearing (ordered on March 29, 2022).

13.    Order filed on March 25, 2021 at Docket No. 70 in Adv. Proc. No. 19-01211 MER.

14.    Order Granting Unopposed Motion to Vacate and Reschedule Trial filed on July 28, 2021 at Docket No. 80 in Adv. Proc. No. 19-01211 MER.

15.    Joint Pretrial Statement, with exhibits, filed on August 16, 2021 at Docket No. 83 in Adv. Proc. No. 19-01211 MER.

16.    Plaintiff's List of Witnesses and Exhibits filed on August 16, 2021 at Docket No. 84 in Adv. Proc. No. 19-01211 MER.

17.    Jeffrey Mosing and Mosing Autosport, LLC's Witness List filed on August 16, 2021 at Docket No. 85 in Adv. Proc. No. 19-01211 MER.

18.    Jeffrey Mosing and Mosing Autosport, LLC's Trial Exhibit List filed on August 16, 2021 at Docket No. 86 in Adv. Proc. No. 19-01211 MER.

19.    Jeffrey Mosing and Mosing Autosport, LLC's Motion for Leave to Amend Response to Trustee's Request for Admission No. 3 filed on August 18, 2021 at Docket No. 87 in Adv. Proc. No. 19-01211 MER.

20.    Order Granting Jeffrey Mosing and Mosing Autosport, LLC's Motion for Leave to Amend Response to Trustee's Request for Admission No. 3 filed on August 26, 2021 at Docket No. 89 in Adv. Proc. No. 19-01211 MER.

21.    CORRECTED Minutes of Proceeding filed on September 3, 2021 at Docket No. 92 in Adv. Proc. No. 19-01211 MER

22.    Exhibits 1-11 admitted at trial (attached).

23.    Transcript of September 3, 2021 trial (ordered on March 29, 2022).

24.   Plaintiff's Post-Trial Brief filed on September 27, 2021, at Docket No. 97 in Adv. Proc. No. 19-01211 MER.

25.   Defendants Jeffrey Mosing and Mosing Autorsport, LLC d/b/a Mosing Motorcars' Post-Trial Brief filed on September 27, 2021 at Docket No. 98 in Adv. Proc. No. 19-01211 MER.

26.   Defendants Jeffrey Mosing and Mosing Autorsport, LLC d/b/a Mosing Motorcars' Exhibits to Post-Trial Brief filed on September 27, 2021 at Docket No. 99 in Adv. Proc. No. 19-01211 MER.

27.   Order filed on March 8, 2022 at Docket No. 100 in Adv. Proc. No. 19-01211 MER.

28.   Judgment filed on March 8, 2022 at Docket No. 101 in Adv. Proc. No. 19-01211 MER.

29.   Notice of Appeal and Statement of Election filed on March 15, 2022 at Docket No. 102 in Adv. Proc. No. 19-01211 MER.

Dated this 29th day of March 2022.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999
aconrardy@wgwc-law.com
*Attorneys for Appellant M. Stephen Peters,*
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of March 2022, I served a true and correct copy of the **Designation of Items to be Included in the Record on Appeal** via United States mail, postage prepaid thereon, or electronically through CM/ECF, to those persons listed below:

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

Jarrod Martin
Jarrod.martin@chamberlainlaw.com

/s/ Angela C. Garcia
For Wadsworth Garber Warner Conrardy, P.C.

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

319164

## STATE OF COLORADO
## CERTIFICATE OF TITLE
### ****MOTOR VEHICLE****

TITLE NUMBER
47E826370

| | | | | |
|---|---|---|---|---|
| VIN CSX4501 | YEAR 1965 | MAKE SHE | MODEL | BODY CV |

ODOMETER
340    A

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage; WARNING ODOMETER DISCREPANCY

MAIL TO
EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX  76528

CWT/CAP/SIZE
23

PREVIOUS TITLE
47E824155

FUEL
G

DATE PURCHASED
12/20/2011

OWNER
STEPHENSON TRAC D

DATE ACCEPTED
03/08/2012

DATE ISSUED
03/08/2012

FIRST LIENHOLDER
EXTRACO BANK NA
PO BOX 719
GATESVILLE    TX  76528

DATE RCD
03/07/2012

FILE NUMBER
001201631

AMOUNT OF LIEN
75,000.00

LIEN EXTENDED TO    COUNTY

MATURITY DATE
03/07/2022

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle.
Lienholder's Name
*Extraco Bank NA*

Authorized Agent's Signature    Date
*Sherry Mitchell  6-2-16*

SECOND LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY    MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the second lienholder's interest in the vehicle.
Lienholder's Name

Authorized Agent's Signature    Date

THIRD LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY    MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the third lienholder's interest in the vehicle.
Lienholder's Name

Authorized Agent's Signature    Date

FOURTH LIENHOLDER

DATE RCD

FILE NUMBER

AMOUNT OF LIEN    LIEN EXTENDED TO    COUNTY    MATURITY DATE

Signature below certifies under penalty of perjury in the second degree the release of the fourth lienholder's interest in the vehicle.
Lienholder's Name

Authorized Agent's Signature    Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED, SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE    DATE DUPLICATE ISSUED
BARBARA BROHL

H8854186

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

REV. 1/18/10

VOID IF ALTERED

525

**TRANSFER OF OWNERSHIP/BUYER(S) REQUIREMENT**- Upon the sale or transfer of a motor vehicle the owner in whose name the certificate of title is issued shall execute a formal transfer of the vehicle. Within **60 days** the buyer shall present the certificate of title together with an application for title to an authorized agent pursuant to C.R.S. 42-6-110.

**TRANSFER OF OWNERSHIP/SELLER(S) REQUIREMENT**- When the owner of a motor vehicle transfers or assigns the certificate of title to a buyer, the registration of such vehicle shall expire and the seller shall remove the license plates pursuant to C.R.S. 42-3-115.

**ODOMETER CERTIFICATION** - Federal and state law requires the seller to declare the mileage of the motor vehicle and requires the buyer to acknowledge the mileage of the motor vehicle upon transfer of ownership. The seller and buyer are required to print and sign their name to acknowledge the mileage pursuant to 49 USC 327.

**THE SELLER(S) CERTIFIES, UNDER PENALTY OF PERJURY IN THE SECOND DEGREE, THAT THE SELLER(S) SIGNATURE(S) RELEASES AND TRANSFERS INTEREST IN THE VEHICLE AND THE ODOMETER READING AND DECLARATION ARE TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE.**

**NOTICE: ANY ALTERATION OR ERASURE MAY VOID THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW**

**ASSIGNMENT BY OWNER(S)**

| | | |
|---|---|---|
| Odometer Reading — No Tenths | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Signature Acknowledges Odometer Reading |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | Buyer's Hand Printed Name |
| Seller's Hand Printed Name(s) | Date of Sale | Buyer's Physical Address |
| Seller's Signature | Purchase Price | Buyer's City, State, ZIP |

**THE FOLLOWING REASSIGNMENT MAY ONLY BE USED BY LICENSED DEALERS.**

**1ST DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading — No Tenths | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**2ND DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading — No Tenths | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**3RD DEALER REASSIGNMENT**

| | | |
|---|---|---|
| Odometer Reading — No Tenths | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| Selling Dealer Name | License Number | Buyer's Signature Acknowledges Odometer Reading |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

NO ADDITIONAL REASSIGNMENTS PERMITTED/Last Assignee must obtain title in their name(s)

Begin forwarded message:

**From:** CSXNUT <csxnut@yahoo.com>
**Subject: Shelby Cobra**
**Date:** April 19, 2012 at 7:24:17 PM CDT
**To:** Jeff Mosing <cajunairman@yahoo.com>

Hey Jeff,

Here is what I would like to work out if possible...

Purchase price of $120,000 with an agreement that I can purchase the Cobra back for up to a year or so.

If it takes 0-6 months, the buy-back price would be $130,000.
If it takes 6-9 months, the buy-back price would be $140,000.
If it takes 9-12 months, the buy-back price would be $150,000.

You would obviously take possession of the Cobra immediately, with the Original MSO.
The Cobra would stay on the Original MSO until our agreement ends.

I would ask that you not advertise it for sell but if you have a customer interested in a Cobra, we could offer to order a new Superformance or Genuine Shelby or even find them one which I could help with. You and I could split the profit on each Cobra ordered or Brokered (or whatever you feel is fair)

We could also order someone a GT40, the new Daytona Coupe or Corvette Grand Sport as well.

All orders would be through an existing Shelby/Superformance Dealer or directly through Shelby/Superformance themselves. Kirkham is also a great car which you could offer.

You would have to make sure that your business is not representing itself as a Dealer in any way however. Shelby American gets pretty upset about that.

But, if you have buyers, we can get the cars. That should not be a problem.

There is also money to be made on the Build-Out of the new cars. For example, we could get good prices from ROUSH, SHELBY, Performance Engineering, Keith Craft Engines & GM Performance Parts and leave the assembly to someone else.

If this interests you or if you have something else in mind, please let me know.

**MOSING 000007**



EXHIBIT

A

I would really like to do something right away... Things are moving really fast on my Network business. I am needing to Hem-ridge lots of cash to do it right!

Thanks Jeff

Trac Stephenson
512.755.9895

**MOSING 000008**

Agreement:

1965 Shelby 427 Cobra SC
CSX4501


May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year ending May 9th 2013.

Re-Acquisition Amounts:
$130,000: May 9th 2012 - November 9th 2012
$140,000: November 10th 2012 - February 9th 2013
$150,000: February 10th 2013 - May 9th 2013


Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.


Jeff Mosing

Trac Stephenson

ERIC  BEVERDING
( WITNESS )



05-09-12                           $120,000.00



05-09-12                           $120,000.00



05-09-12                           $120,000.00         05-09-12                           $120,000.00

COPY OF ORIGINAL          Item Count: 1    Amount Total: $120,000.00          COPY OF ORIGINAL



Per the attached agreement, let it be known that on May 8th 2012, Trac Stephenson entered into an agreement with Jeff Mosing to borrow $120,000 and that Trac Stephenson put up as collateral a 1965 Shelby Cobra 427 CSX4501.

Per the attached agreement, Trac Stephenson may re-acquire said Cobra for a period of one year ending May 9th 2013 per the following:
$130,000: May 9th 2012 -November 9th 2012
$140,000: November 10th 2012 -February 9th 2013
$150,000: February 10th 20 13 -May 9th 2013

And per the attached agreement, Jeff Mosing is to hold the original MSO for the 1965 Shelby Cobra 427 CSX4501 and have possession of said Cobra during the agreement period.

If the agreement is not fulfilled by the dates set for in the agreement, Jeff Mosing is to retain possession and ownership of the 1965 Shelby Cobra 427 CSX4501.

As of this day, June 5, 2019, no payments have been made from Trac Stephenson to Jeff Mosing nor has the title for the 1965 Shelby Cobra 427 CSX4501 been sent to Jeff Mosing.

**Kirk Winterrowd**
**General Manager**
**Mosing Motorcars**

**2420 West Braker Lane Austin, Tx. 78758    (512) 821-9491www.mosingmotorcars.com**

Agreement:

1965 Shelby 427 Cobra SC
CSX4501


## May 8th 2012

Amount: $120,000

Agreement that Trac Stephenson may Re-Acquire Cobra for a
Period of 1 Year .ending May 9th 2013.

Re--Acquisition Amounts:
$130,000: May 9th 2012 . November 9th 2012
$140,000: November 1o$^{th}$ 2012 . February 9th 2013
$150,000: February 1o$^{th}$ 2013 . May 9th 2013


Jeff Mosing to hold Original MSO & Possession of Cobra during
the agreement period.

Jeff Mosing

Trac Stephenson

E2J C    f-EVE-I2D \"1
(. W l-nJE.S'  )

RECEIVED

JUN 24 2019

AUSTIN REGIONAL OFC



Texas Department
of Motor Vehicles

## Law Enforcement Identification Number
## Inspection

This form is void if not submitted within 30 calendar days of inspection.

### Vehicle Information

| Vehicle Identification Number | | | | | | |
|---|---|---|---|---|---|---|
| CSX4501 | | Year 1965 | Make SHFB | Body Style CP | Model CSX | |
| Title/Document Number (if available) Manufacture Certificate of Origin 050: | | License Plate State and Number (if any) | | | | |

### Owner/Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name Mosing | Suffix (if any) |
|---|---|---|---|
| Address 110 San Antonio St Apt 3300 | City Austin | State TX | Zip 78701 |
| Email (optional) | Phone Number (optional) | | |
| Government Issued Photo ID Number or FEIN/EIN REDACTED | Identification Type Driver License | State or Country Texas | ID Expiration Date 2-13-2025 |

### Law Enforcement Auto Theft Inspection Report

This inspection covers (check ALL appropriate boxes):

- ☑ Motor Vehicle
- ☐ Motorcycle Frame
- ☐ Motorcycle Motor
- ☐ Equipment
- ☐ Travel Trailer
- ☐ Trailer*
- ☐ Semitrailer*
- ☐ Vehicle part installed in owner/applicant's vehicle
- ☐ Vehicle part not installed in owner/applicant's vehicle**

  * See "Trailer/Semitrailer Definitions" on page 2
  ** Describe part in "Remarks – Explanation of Inspection" section below

#### Inspection Result(s) – Check all that apply

- ☐ Manufacturer did not assign an identification number
- ☐ Vehicle assembled from parts and no identification number was ever affixed to body (motor vehicle) or frame (motorcycle, travel trailer, trailer, or semitrailer)
- ☐ Original manufacturer's identification number has been removed, changed, or obliterated (see "Important" on page 2)
- ☐ Unable to determine the original manufacturer's identification number
- ☑ Found/determined the original manufacturer's identification number

#### Remarks – Explanation of Inspection

Upon inspection, provide an explanation of the results, including the original manufacturer's identification number if located/verified, and other applicable details

VIN verified as a Blw 1965 Shelby Cobra 427 model CSX4000 replica manufactured in 2004. Manufacturer applied Chassis Number CSX4501

Original manufacturer's identification number (if found) CSX 4501

### Auto Theft Investigator Certification – State law makes falsifying information a third degree felony

I personally inspected the vehicle, part, or equipment described above, and the recorded results are true and accurate to the best of my knowledge. I certify I have received Texas Department of Motor Vehicles' authorized auto theft training and am employed with or assigned to (check applicable box to the right):

- ☐ Municipal Police Auto Theft Unit
- ☑ County Sheriff's Auto Theft Unit
- ☐ Texas Department of Public Safety Criminal Investigations Division
- ☑ Auto Burglary and Theft Prevention Authority Task Force
- ☐ National Insurance Crime Bureau

| | Carl Olavesen | 6-20-19 |
|---|---|---|
| Signature of Investigator | Printed Name (Same as Signature) | Date |

| 3479 | SCATTF Manor, Travis | 512-854-7409 |
|---|---|---|
| Investigator's Official ID Number | Agency Name and City/County | Phone Number |

### For Department Use Only

- ☐ TEX Assigned VIN
- ☐ Motor Number
- ☐ Reassigned Manufacturer's VIN
- ☐ Equipment
- ☐ Trailer
- ☐ Travel Trailer
- ☐ Component Part (Motor, Frame, or Body)

| Number Assigned | Decal Control Number | Date |
|---|---|---|
| Printed Name of Clerk | Signature of Clerk | Regional Service Center |

VTR-68-A Rev 09/17

Page 1 of 2

MOSING 000002

**EXHIBIT**

G



Texas Department
of Motor Vehicles

# Motor Vehicle Appraisal for Tax Collector
## Hearing / Bonded Title

## Information

This form may only be used to establish the value of a motor vehicle if the department is unable to establish the value by using the Standard Presumptive Value or from a national reference guide. Use of this form is strictly limited to establishing the value of a motor vehicle for use in a bonded title or tax assessor-collector hearing.

The appraiser must inspect the motor vehicle in person and provide all information requested in the "Appraiser Information" and "Appraisal Information" sections.

## Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX 4501 | 1965 | Shelby | 2dr | Cobra |

## Applicant Information

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffrey | Louis | Mosing | |

| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email (optional) | Phone Number (optional) |
|---|---|
| jeff@mosingmotorcars.com | 512-771-0676 |

## Appraiser Information

Appraiser Type:
☐ Motor Vehicle Dealer    ☐ Insurance Adjuster

Motor Vehicle Dealer or Insurance License Number

Licensed Motor Vehicle Dealer or Insurance Company Name

| Appraiser's First Name | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Email | Phone Number |
|---|---|
| | |

## Appraisal Information

| Date of Appraisal | Vehicle Condition: | | Appraised Value |
|---|---|---|---|
| | ☐ Complete Vehicle    ☐ Incomplete Vehicle | | $ |

Comments

## Appraiser Certification – State law makes falsifying information a third degree felony

I, the above listed appraiser, certify I have personally inspected the above described vehicle, have provided a fair market appraised value for the vehicle, and all statements contained herein are true and correct to the best of my knowledge.

| Signature of Appraiser | Printed Name (Same as Signature) | Date |
|---|---|---|
| | | |

VTR-125 Rev 08/16    Form available online at www.TxDMV.gov    Page 1 of 1

MOSING 000003



**Bonded Title Application or Tax Collector**
**Hearing Statement of Fact**

Texas Department
of Motor Vehicles

## Vehicle Information

| Vehicle Identification Number | Year | Make | Body Style | Model |
|---|---|---|---|---|
| CSX4501 | 1965 | Shelby | 2 dr | Cobra |

| Vehicle Purchased or Obtained From (Name of Individual or Entity) | Odometer Reading (no tenths) | Purchase Date | Purchase Price |
|---|---|---|---|
| Trac Stephenson | 3509 | 5/9/2013 | $ 150,000 |

## Applicant(s) Information – Print name as it appears on photo identification

| First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| Jeffvey | Louis | Mosing | |

| Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| Address | City | State | Zip |
|---|---|---|---|
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email (required if submitting this form by mail) | Phone Number (required if submitting this form by mail) |
|---|---|
| jeff@mosingmotorcars.com | 512-771-0676 |

## Application Explanation

Provide an explanation for requesting a bonded title or tax assessor-collector hearing.

The car was given as payment for a loan

## Application Questions – An answer must be provided to ALL questions

| | | Yes | No |
|---|---|---|---|
| 1 | Do you live in Texas? | ☒ | ☐ |
| 2 | Are you military personnel stationed in Texas? | ☐ | ☒ |
| 3 | Was the vehicle last titled in Texas? If no, a *Law Enforcement Identification Number Inspection* (Form VTR-68-A) is required. | ☐ | ☒ |
| 4 | Is the vehicle you are attempting to title an abandoned vehicle? | ☐ | ☒ |
| 5 | Is the vehicle subject to storage or mechanic's charges? | ☐ | ☒ |
| 6 | Is the vehicle subject to any type of foreclosure lien? | ☐ | ☒ |
| 7 | Is the vehicle you are attempting to title a nonrepairable vehicle? | ☐ | ☒ |
| 8 | Is the vehicle you are attempting to title a salvage vehicle? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) is required. | ☐ | ☒ |
| 9 | Is the vehicle involved in any pending lawsuits or disputes of ownership? | ☐ | ☒ |
| 10. | Are you in legal possession of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 11 | Are you in legal control of the vehicle? If no, provide the physical location of the vehicle and short explanation. | ☒ | ☐ |
| 12. | Was the vehicle manufactured for sale or distribution in the United States by a motor vehicle manufacturer? If no, proof of compliance with U.S. Department of Transportation safety requirements is required or evidence the vehicle is an assembled vehicle. If newly assembled, "Yes" is required for question 13. | ☒ | ☐ |
| 13 | Is the vehicle an assembled vehicle from new or used part(s) or a kit that has not been previously titled? If yes, a *Rebuilt Vehicle Statement* (Form VTR-61) and an ASE inspection on Form VTR-64 or VTR-852 are required. | ☐ | ☒ |
| 14. | Is the vehicle complete? A motor vehicle (such as a passenger car or pickup truck) must have a motor, body, and frame. A motorcycle must have a motor and frame. A trailer must have a bed, frame, and axle assembly. An incomplete motor vehicle will not be titled. | ☒ | ☐ |
| 15. | Is the vehicle 25 or more years old? If yes, what is the current value of the vehicle? $  150,000 | ☒ | ☐ |

## Certification – State law makes falsifying information a third degree felony

I, the above listed applicant(s), certify physical inspection of the vehicle identification number (VIN) was made and corresponds to the VIN provided above, and all other information provided on this form is true and correct to the best of my knowledge.

| Signature of Applicant | Printed Name (Same as Signature) | Date |
|---|---|---|
| | Jeffrey Louis Mosing | |

| Signature of Additional Applicant (if any) | Printed Name (Same as Signature) | Date |
|---|---|---|
| | | |

VTR-130-SOF Rev 09/17          Form available online at www.TxDMV.gov          Page 1 of 2

**MOSING 000004**



**Texas Department of Motor Vehicles**

## Application for
## Antique License Plate

| County Use Only |
| --- |
| License No _____ |
| Mo/Yr of Exp _____ |
| Date Issued _____ |

### Instructions

Submit the completed application; payment in the form of a personal check, money order, or cashier's check; and any required attachments to your local county tax assessor-collector's office. **Do not mail cash.** If you have not previously registered the vehicle in Texas, you must submit ownership evidence, proof of insurance if applicable, and the applicable fees before the license plate or plate tab can be issued.

If you order by mail, please contact your county tax assessor-collector's office in three weeks to verify your license plate is ready. Contact your county tax assessor-collector if you have any questions.

Vehicles at least 25 years old will be issued one Antique plate to be displayed on the rear of the vehicle for a five-year period. The fee is $50 if the vehicle was manufactured in 1921 or later; the fee is $40 if the vehicle was manufactured prior to 1921.

Instead of an Antique plate, the owner of an antique vehicle may use a license plate issued by this state that is the same year as the year model of the vehicle. The plate must have the original color scheme, and be in good, readable condition. If the original plate is approved by your local county tax assessor-collector's office, a plate tab with sticker will be issued to show the plate is valid.

Replicas of Texas license plates are not acceptable. Plates with an alpha-numeric pattern that are already in use, or qualifying license plates such as a Farm plate, Dealer plate, etc., will not be approved.

Proof of financial responsibility (insurance) is required at time of application, or a copy of the completed Texas Department of Public Safety (DPS) affidavit (DPS form SR-2).

### Applicant Information

| First Name | Middle Name | Last Name | Suffix | County |
| --- | --- | --- | --- | --- |
| Jeffrey | Louis | Mosing | | Travis |

| Address | City | State | ZIP |
| --- | --- | --- | --- |
| P.O. Box 26534 | Austin | Texas | 78755 |

| Email | Phone Number |
| --- | --- |
| jeff@mosingmotorcars.com | 512-771-0676 |

### Vehicle Information

| Vehicle Identification Number | Current TX License Plate | Year | Make | Body Style | Empty Weight (lbs.) |
| --- | --- | --- | --- | --- | --- |
| CSX450 | | 1965 | Shelby | 2dr | |

Vehicle Type  ☑ Antique Auto  ☐ Antique Truck  ☐ Antique Motorcycle  ☐ Antique Bus

### Certification – State law makes falsifying information a third degree felony.

I certify I am the owner of the above-described vehicle, and as statutorily required, I also certify the frame, body, and motor are at least 25 years old; the vehicle is a collector's item that will be used solely for exhibition, club activities, parades, and other functions of public interest; it is not a replica or aftermarket vehicle; will not be used for daily transportation except when routine maintenance is needed; and will not carry advertising.

X _Jeffrey Louis Mosing_     Date _6-20-19_
Signature

MOSING 000005

# Application for Texas Title and/or Registration

| Applying for (please check one): ☒ Title & Registration ☐ Title Only ☐ Registration Purposes Only ☐ Nontitle Registration | TAX OFFICE USE ONLY |
|---|---|

For a corrected title or registration, check reason:
☐ Vehicle Description  ☐ Add/Remove Lien  ☐ Other:

| County | |
| Doc # | |
| ☐ SPV ☐ Appraisal Value $ | |

| 1. Vehicle Identification Number CSX4501 | 2. Year 1965 | 3. Make Shelby | 4. Body Style 2dr. | 5. Model Cobra | 6. Major Color Blue | 7. Minor Color Silver |
|---|---|---|---|---|---|---|

| 8. Texas License Plate No. | 9. Odometer Reading (no tenths) 3509 | 10. This is the Actual Mileage unless the mileage is: ☐ Not Actual ☐ Exceeds Mechanical Limits ☐ Exempt | 11. Empty Weight | 12. Carrying Capacity (if any) |
|---|---|---|---|---|

| 13. Applicant Type ☒ Individual ☐ Business ☐ Government ☐ Trust ☐ Non-Profit | 14. Applicant Photo ID Number or FEIN/EIN **REDACTED** |
|---|---|

15. ID Type ☒ U.S. Driver License/ID Card (issued by: Texas )  ☐ NATO ID  ☐ U.S. Dept. of State ID
☐ Passport (issued by: )  ☐ U.S. Military ID  ☐ U.S. Dept. of Homeland Security ID
☐ U.S. Citizenship & Immigration Services/DOJ ID  ☐ Other Military Status of Forces Photo ID

| 16. Applicant First Name (or Entity Name) Jeffrey | Middle Name Louis | Last Name Mosing | Suffix (if any) |
|---|---|---|---|

| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|

| 18. Applicant Mailing Address P.O. Box 26534 | City Austin | State Texas | Zip 78755 | 19. Owner County of Residence Travis |
|---|---|---|---|---|

| 20. Previous Owner Name (or Entity Name) | City | State | 21. Dealer GDN (if applicable) | 22. Unit No. (if applicable) |
|---|---|---|---|---|

| 23. Renewal Recipient First Name (or Entity Name) (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|

| 24. Renewal Notice Mailing Address (if different) | City | State | Zip |
|---|---|---|---|

| 25. Applicant Phone Number (optional) 512-771-0676 | 26. Email (optional) jeff@mosingmotorcars.com | 27. Registration Renewal eReminder ☐ Yes (Provide Email in #26) |
|---|---|---|

| 28. Vehicle Location Address (if different) 8990 Research blvd | City Austin | State Texas | Zip 78758 |
|---|---|---|---|

| 29. Multiple (Additional) Liens ☐ Yes (Attach Form VTR-267) | 30. Electronic Title Request ☐ Yes (Cannot check #29) | 31. Certified/eTitle Lienholder ID Number (if any) | 32. First Lien Date (if any) |
|---|---|---|---|

| 33. First Lienholder Name (if any) | Mailing Address | City | State | Zip |
|---|---|---|---|---|

34. Check only if applicable.
☐ I hold Motor Vehicle Retailer's (Rental) Permit No _____ and will satisfy the minimum tax liability (V.A.T. Tax Code §152.161[ ])
☐ I am a dealer or lessor and qualify to take the Fair Market Value Deduction V.A.T.S., Tax Code, §152.002[c]) GDN or Lessor Number _____

**MOTOR VEHICLE TAX STATEMENT**

| 35. Trade In (if any) | Year | Make | Vehicle Identification Number | 36. Additional Trade In( ☐ Yes |
|---|---|---|---|---|
| ☐ Yes (Complete) | | | | |

37. Check only if applicable.
☐ (a) Sales Price ($ 150,000 rebate has been deducted)  $ _____
(b) Less Trade in Amount, described in Item 35 above  $ _____
(c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, described in Item 35 above  $ _____
(d) Taxable Amount (Item a minus Item b or tem c)  $ _____
(e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625)  $ _____
(f) Late Tax Payment Penalty ☐ 5% or ☐ 10%  $ _____
(g) Tax Paid to _____ STATE  $ _____
(h) AMOUNT OF TAX AND PENALTY DUE (Item e plus Item f minus Item g)  $ _____

**SALES AND USE TAX COMPUTATION**
☐ $90 New Resident Tax – (Previous State) _____
☐ $5 Even Trade Tax
☐ $10 Gift Tax – Use Comptroller Form 14-317
☐ $65 Rebuilt Salvage Fee
☐ 2.5% Emissions Fee (Diesel vehicles 1996 and Older > 14,000 lbs )_____
☐ 1% Emissions Fee Diesel Vehicles 1997 and Newer > 14,000 lbs )_____
☐ Exempt prior claimed under the Motor Vehicle Sales and Use Tax Law because _____
☐ $28 or $33 Application Fee for Texas Title
(Contact your county tax assessor-collector for the correct fee )

**CERTIFICATION – State law makes falsifying information a third degree felony**

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable).

| Signature(s) of Seller(s), Donor(s), or Trader(s) | Printed Name(s) (Same as Signature(s)) Jeffrey Louis Mosing | Date |
|---|---|---|
| Signature of Applicant/Owner | Printed Name (Same as Signature) | Date |
| Signature(s) of Additional Applicant(s)/Owner(s) | Printed Name(s) (Same as Signature(s)) | Date |

Form 130-U Rev 08/16    Form available online at www TxDMV gov    Page 1 of 2

MOSING 000006



*SHELBY AUTOMOBILES, INC.*

STATEMENT OF ORIGIN
FOR A CSX4000 SERIES COMPONENT VEHICLE

The undersigned authorized representative of **Shelby Automobiles, Inc.** hereby certifies that the new CSX4000 Series Component Vehicle consisting of the parts and components listed on invoice, and described below, is the property of **Shelby Automobiles, Inc.** and has been transferred on the date hereof to the following purchaser:

Sanderson Sales and Marketing
4000 Whistler Drive
Plano, TX 75093

| | | | |
|---|---|---|---|
| Date: | July 21, 2004 | Invoice No.: | 0501 |
| Trade Name: | Shelby Cobra 427 | Series: | CSX4000 |
| Model Year: | 1965 | Body Type: | 2 Dr. Roadster |
| Chassis No.: | CSX4501 | | |

The CSX4000 Series Component Vehicle is sold by Shelby Automobiles, Inc. without engine or transmission.

**Shelby Automobiles, Inc.** further certifies that this was the first transfer of such new CSX4000 Series Component Vehicle in ordinary trade and commerce.

Shelby Automobiles, Inc.

By _____
(Authorized Representative)
6755 Speedway Boulevard
Las Vegas, Nevada 89115

**MOSING 000001**

**EXHIBIT**
B
538

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF COLORADO

Case number *(if known)* _____

Chapter you are filing under:
- ☑ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

12/17

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Tracy**<br>First name<br><br>**Dean**<br>Middle name<br><br>**Stephenson**<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | **Trac Stephenson**<br>**Trac D Stephenson** | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-0093** | |

Debtor 1    **Tracy Dean Stephenson**

Case number *(if known)* _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**4.** Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years

☐ I have not used any business name or EINs.

**MEM  Stix Framing, LLC**
**ODS  Build1x, Inc.**
**FODS  buildPAL Inc.**
**FMEM  Boom Crane Service, LLC**
**FODS  Quality Build Team, Inc.**
**FMEM  Quality Build Pros, LLC**
**FMEM  Pay1x Payments, LLC**
**FMEM  Quality Panel Solutions, LLC**

☐ I have not used any business name or EINs.

Include trade names and *doing business as* names

Business name(s)

**82-1159133**
**82-1562532**
**47-4209698**
**47-5451998**
**47-4683787**
**46-5491044**
**83-3416869**
**47-4678717**

EINs

Business name(s)

EINs

**5.** Where you live

**1770 Chestnut Place #412**
**Denver, CO 80202**
Number, Street, City, State & ZIP Code

**Denver**
County

If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

If Debtor 2 lives at a different address:

Number, Street, City, State & ZIP Code

County

If Debtor 2's mailing address is different from yours, fill it in here.  Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** Why you are choosing *this district* to file for bankruptcy

*Check one:*

☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

Debtor 1    **Tracy Dean Stephenson**                                    Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

☑ Chapter 7
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

**8.** **How you will pay the fee**

☑ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

☑ No.
☐ Yes.

| | | | | | |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No
☐ Yes.

| | | | | | |
|---|---|---|---|---|---|
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11.** **Do you rent your residence?**

☐ No.    Go to line 12.

☑ Yes.   Has your landlord obtained an eviction judgment against you?

   ☑ No. Go to line 12.

   ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | |

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

☑ No.   Go to Part 4.

☐ Yes.   Name and location of business

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

_____
Name of business, if any

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐  Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐  Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐  Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐  Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐  None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).*

☑ No.   I am not filing under Chapter 11.

☐ No.   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No.

☐ Yes.   What is the hazard? _____

If immediate attention is needed, why is it needed? _____

Where is the property? _____

_____
Number, Street, City, State & Zip Code

---

Debtor 1    **Tracy Dean Stephenson**                          Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---------|-------------------------------------------------------------------|

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* |
|---|---|---|

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

**16. What kind of debts do you have?**

16a. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.

☐ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☑ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts

**17. Are you filing under Chapter 7?**

☐ No. I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☑ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☑ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**19. How much do you estimate your assets to be worth?**

☐ $0 - $50,000
☐ $50,001 - $100,000
☑ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☑ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Tracy Dean Stephenson**

**Tracy Dean Stephenson**
Signature of Debtor 1

Signature of Debtor 2

Executed on   **April 29, 2019**
         MM / DD / YYYY

Executed on
         MM / DD / YYYY

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | |

---

| For your attorney, if you are represented by one | I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about elig bility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect. |
| :--- | :--- |
| **If you are not represented by an attorney, you do not need to file this page.** | |

| **/s/ Todd R. Wagner** | Date | **April 29, 2019** |
| Signature of Attorney for Debtor | | MM / DD / YYYY |

**Todd R. Wagner 33998**
Printed name

**Wagner Law Office, P.C.**
Firm name

**3969 East Arapahoe Road**
**Suite 200**
**Centennial, CO 80122**
Number, Street, City, State & ZIP Code

| Contact phone | **303-996-0149** | Email address | **todd@wagnerlawofficepc.com** |

**33998 CO**
Bar number & State

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name  Middle Name  Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name  Middle Name  Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy                4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Give Details About Your Marital Status and Where You Lived Before

**1.   What is your current marital status?**

☐ Married
☒ Not married

**2.   During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
☒ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| **2916 Breezy Lane**<br>**Littleton, CO 80128** | From-To:<br>**2016 - 2018** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1<br>From-To: |
| **110 Amethyst**<br>**Horseshoe Bay, TX 78657** | From-To:<br>**2012 - 2016** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1<br>From-To: |

**3.   Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☐ No
☒ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2   Explain the Sources of Your Income

**4.   Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☒ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

Debtor 1    **Tracy Dean Stephenson**                                                    Case number *(if known)*

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | $0.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For last calendar year:**<br>(January 1 to December 31, 2018 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **Unknown** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2017 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **Unknown** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ■ No
    ☐ Yes. Fill in the details.

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

    ■ No.  **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

    ■ No.  Go to line 7.
    ☐ Yes  List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

    ☐ Yes.  **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

    ☐ No.  Go to line 7.
    ☐ Yes  List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

| Debtor 1 | Tracy Dean Stephenson | Case number *(if known)* |
|----------|------------------------|--------------------------|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|----------------------------|------------------|-------------------|----------------------|-------------------------|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|----------------------------|------------------|-------------------|----------------------|-------------------------------------------------|

### Part 4:  Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|------------------------|--------------------|-----------------|--------------------|
| BRJ Group LLC v. Trac Stephenson 2018CV31433 | Money Demand / Breach of Contract | District Court, Arapahoe County Arapahoe County Justice Center 7325 S. Potomac St. Englewood, CO 80112 | ■ Pending ☐ On appeal ☐ Concluded |
| Pinnacol Assurance v. Quality Build Pros Ltd and Tracy Stephenson et. al. Unknown | Money Demand / Breach of Contract | District Court, Denver, Colorado | ☐ Pending ☐ On appeal ■ Concluded |
| In re the Marriage of:  Tracy Stephenson and Megan Stephenson 2018DR604 | Motion for Contempt / Failure to Pay Maintenance | District Court, Douglas County, Colorado | ■ Pending ☐ On appeal ☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☐ No. Go to line 11.
■ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property Explain what happened | Date | Value of the property |
|---------------------------|---------------------------------------------|------|-----------------------|

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | |

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|
| **Harley Davidson Financial<br>Attn: Bankruptcy<br>Po Box 22048<br>Carson City, NV 89721** | **2018 Harley Davidson**<br><br>■ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized or levied. | 3/2019 | $15,000.00 |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No
☐ Yes

## Part 5:  List Certain Gifts and Contributions

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No
☐ Yes. Fill in the details for each gift or contr bution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

## Part 6:  List Certain Losses

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

| Debtor 1 | **Tracy Dean Stephenson** | Case number (*if known*) |
|---|---|---|

| **Part 7:** | **List Certain Payments or Transfers** |
|---|---|

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you
consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Wagner Law Office, P.C.<br>3969 East Arapahoe Road<br>Suite 200<br>Centennial, CO 80122<br>todd@wagnerlawofficepc.com | Attorney Fees | April, 2019 | $1,500.00 |
| Allen Credit and Debt Counseling Agency<br>PO Box 195<br>Wessington, SD 57381<br>acdcas.com | Credit Counseling Classes | April, 2019 | $20.00 |

17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who
promised to help you deal with your creditors or to make payments to your creditors?
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property
transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not
include gifts and transfers that you have already listed on this statement.

☐ No
■ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Troy Stephenson<br>695 Ancient Oaks Drive<br>Marble Falls, TX 78654<br><br>Debtor's brother | Sale of real property located at 110 Amethyst, Horseshoe Bay, TX 78657 | Value received: Lien satisfied (no equity / home was in foreclosure) | 4/8/2019 |
| EchoPark Automotive Centennial<br>10401 E Arapahoe Rd<br>Centennial, CO 80111<br><br>No relationship | 2016 Jeep Wrangler | Value received: Lien satisfied and reciept of $21.00 (estimated) cash proceeds | 6/2018 |

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | |
|---|---|---|---|

| Person Who Received Transfer Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| **Phil Long Ford of Denver**<br>**7887 W Tufts Ave**<br>**Littleton, CO 80123**<br><br>**No relationship** | **2017 Toyota Tundra** | **Value received:  Lien satisfied and negative equity "rolled" into subsequent vehicle purchase** | 6/2018 |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
   Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**   Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes. Fill in the details.

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* |
|---|---|---|---|

toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

- ■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

- ■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

- ■ No
- ☐ Yes. Fill in the details.

| Name of site<br>Address *(Number, Street, City, State and ZIP Code)* | Governmental unit<br>Address *(Number, Street, City, State and ZIP Code)* | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. Have you notified any governmental unit of any release of hazardous material?

- ■ No
- ☐ Yes. Fill in the details.

| Name of site<br>Address *(Number, Street, City, State and ZIP Code)* | Governmental unit<br>Address *(Number, Street, City, State and ZIP Code)* | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

- ■ No
- ☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address *(Number, Street, City, State and ZIP Code)* | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:**   **Give Details About Your Business or Connections to Any Business**

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

- ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
- ■ A member of a limited liability company (LLC) or limited liability partnership (LLP)
- ☐ A partner in a partnership
- ■ An officer, director, or managing executive of a corporation
- ■ An owner of at least 5% of the voting or equity securities of a corporation

- ☐ No. None of the above applies. Go to Part 12.
- ■ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>*(Number, Street, City, State and ZIP Code)* | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **Stix Framing, LLC<br>200 S. Wilcox #132<br>Castle Rock, CO 80104** | **Construction**<br><br>**Alisha Brink** | EIN:   **82-1159133**<br><br>From-To   **4//12/2017 - 10/2018** |
| **Build1x, Inc<br>200 S. Wilcox Street, Suite  132<br>Castle Rock, CO 80104** | **Software Company**<br><br>**Alisha Brink** | EIN:   **82-1562532**<br><br>From-To   **5/15/2017 - Present** |

Debtor 1    **Tracy Dean Stephenson**                  Case number *(if known)*

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business / Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|
| Quality Build Team, Inc. 11757 W Ken Caryl Ave, Ste 202 Littleton, CO 80127 | Construction / Alisha Brink | EIN: 47-4683787 From-To 8/2015 - 5/2016 |
| Quality Build Pros, LLC 1107 FM 1431, Suite 202 Marble Falls, TX 78654 | Construction / Alisha Brink | EIN: 46-5491044 From-To 4/25/2014 - 5/1/2016 |
| Pay1x Payments, LLC 1550 Larimer Street, #220 Denver, CO 80202 | (does not operate) / Alisha Brink | EIN: 83-3416869 From-To Does not operate |
| Quality Panel Systems, LLC 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127 | Construction / Alisha Brink | EIN: 47-4678717 From-To 7/31/2015 - 5/1/2016 |
| buildPAL, Inc 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127 | Software Business / Alisha Brink | EIN: 47-4209698 From-To 6/8/2015 - 10/1/2016 |
| Boom Crane Service, LLC 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127 | Crane Service Company / Alisha Brink | EIN: 47-5451998 From-To 10/29/2015 - 5/1/2016 |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**
☐ **Yes. Fill in the details below.**

| Name Address (Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

**Part 12:**   Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Tracy Dean Stephenson**
**Tracy Dean Stephenson**                       **Signature of Debtor 2**
**Signature of Debtor 1**

Date    **April 29, 2019**                   Date

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Fill in this information to identify your case:**

| Debtor 1 | **Tracy Dean Stephenson** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information                12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

Part 1:   **Summarize Your Assets**

| | | | **Your assets** Value of what you own |
|---|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B) | | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B......................................... | $ | 60,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B............................... | $ | 82,456.50 |
| | 1c. Copy line 63, Total of all property on Schedule A/B......................................... | $ | 142,456.50 |

Part 2:   **Summarize Your Liabilities**

| | | | **Your liabilities** Amount you owe |
|---|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | | |
| | 2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $ | 160,876.24 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | | |
| | 3a. Copy  the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................... | $ | 35,000.00 |
| | 3b. Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... | $ | 1,578,747.65 |
| | **Your total liabilities** | $ | 1,774,623.89 |

Part 3:   **Summarize Your Income and Expenses**

| | | | |
|---|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I) Copy your combined monthly income from line 12 of *Schedule I*............................................................... | $ | 0.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J) Copy your monthly expenses from line 22c of *Schedule J*......................................................................... | $ | 5,784.70 |

Part 4:   **Answer These Questions for Administrative and Statistical Records**

6.   **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐   No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

■   Yes

7.   **What kind of debt do you have?**

☐   **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

■   **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum          Summary of Your Assets and Liabilities and Certain Statistical Information                          page 1 of 2

Debtor 1    **Tracy Dean Stephenson**                                    Case number *(if known)*

8.  **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form
    122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.                                          $ _____

9.  **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | | Total claim |
|---|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ | 15,000.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ | 20,000.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ | 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ | 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ | 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ | 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ | 35,000.00 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Fill in this information to identify your case and this filing: | | |
|---|---|---|

| Debtor 1 | **Tracy Dean Stephenson** | |
|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | |
|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **DISTRICT OF COLORADO**

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| | | |
|---|---|---|
| 1.1 | | |

**107 Still Meadow Drive (Lot 3026)**
Street address, if available, or other description

**Kingsland**     **TX**     **78639-0000**
City          State     Z P Code

**Burnet**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☑ Land
☑ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**(vacant land)**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$60,000.00** | **$60,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................................=>**   | **$60,000.00** |

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | |

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Ford** | Who has an interest in the property? Check one | Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Secured by Property.* |
| | Model: | **F150 Raptor** | ■ Debtor 1 only | |
| | Year: | **2018** | ☐ Debtor 2 only | |
| | Approximate mileage: | **27000** | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** / **Current value of the portion you own?** |
| | Other information: | | ☐ At least one of the debtors and another | |
| | Location: 1770 Chestnut Place #412, Denver CO 80202 | | ☐ Check if this is community property (see instructions) | $59,400.00 / $59,400.00 |

| 3.2 | Make: | **AM General** | Who has an interest in the property? Check one | Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Secured by Property.* |
| | Model: | **Humvee** | ■ Debtor 1 only | |
| | Year: | **1985** | ☐ Debtor 2 only | |
| | Approximate mileage: | **3,570** | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** / **Current value of the portion you own?** |
| | Other information: | | ☐ At least one of the debtors and another | |
| | Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654 | | ☐ Check if this is community property (see instructions) | $12,000.00 / $12,000.00 |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| 4.1 | Make: | **Chris Craft** | Who has an interest in the property? Check one | Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Secured by Property.* |
| | Model: | **230 Boat (no trailer)** | ■ Debtor 1 only | |
| | Year: | **1997** | ☐ Debtor 2 only | |
| | | | ☐ Debtor 1 and Debtor 2 only | **Current value of the entire property?** / **Current value of the portion you own?** |
| | Other information: | | ☐ At least one of the debtors and another | |
| | Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654 | | ☐ Check if this is community property (see instructions) | $8,000.00 / $8,000.00 |

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................................=>** $79,400.00

**Part 3:** Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items? — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

| 1 Bed, Loveseat, 2 Chairs, Kitchen Appliances, 2 TV Stands, 2 End Tables
Location: 1770 Chestnut Place #412, Denver CO 80202 | $300.00 |

Debtor 1    **Tracy Dean Stephenson**                                      Case number *(if known)*

**7.  Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
                 including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes.  Describe.....

| | |
|---|---|
| 2 T.V.'s, 2 Computers, Printer, Cell Phone<br>Location: 1770 Chestnut Place #412, Denver CO 80202 | $250.00 |

**8.  Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
                 other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes.  Describe.....

**9.  Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
                 musical instruments
   ☑ No
   ☐ Yes.  Describe.....

**10.  Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☑ No
   ☐ Yes.  Describe.....

**11.  Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ☑ Yes.  Describe.....

| | |
|---|---|
| Used Clothing<br>Location: 1770 Chestnut Place #412, Denver CO 80202 | $100.00 |

**12.  Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ☑ Yes.  Describe.....

| | |
|---|---|
| Bracelet; necklace | $800.00 |

**13.  Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☑ No
   ☐ Yes.  Describe.....

**14.  Any other personal and household items you did not already list, including any health aids you did not list**
   ☑ No
   ☐ Yes.  Give specific information.....

15.  **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
     for Part 3. Write that number here** ..............................................................................

| |
|---|
| **$1,450.00** |

**Part 4:    Describe Your Financial Assets**

**Do you own or have any legal or equitable interest in any of the following?**                    **Current value of the
                                                                                                    portion you own?**
                                                                                                    Do not deduct secured
                                                                                                    claims or exemptions.

Official Form 106A/B                              Schedule A/B: Property                                          page 3

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | |

**16. Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
- ■ No
- ☐ Yes.........................................................................................................................

**17. Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
- ☐ No
- ■ Yes........................      Institution name:

| | 17.1. | **Checking** | **Bank of America** | **$0.00** |
| | 17.2. | **Checking** | **FirsTier Bank** | **$0.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
- ■ No
- ☐ Yes.................      Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
- ☐ No
- ■ Yes.  Give specific information about them...................

| | Name of entity: | % of ownership: | | |
| --- | --- | --- | --- | --- |
| | **Build1x, Inc.** | **100** | % | **$0.00** |
| | **Stix Framing, LLC** | **100** | % | **$0.00** |
| | **Pay1x Payments, LLC** | **100** | % | **$0.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
- ■ No
- ☐ Yes. Give specific information about them
      Issuer name:

**21. Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
- ■ No
- ☐ Yes. List each account separately.
      Type of account:      Institution name:

**22. Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
- ☐ No
- ■ Yes. ....................      Institution name or individual:

| | **Rental deposit** | **The Holland Group** | **$1,606.50** |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
- ■ No
- ☐ Yes............      Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | |
|---|---|---|---|

26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes............       Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

☑ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
   benefits; unpaid loans you made to someone else

☑ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No
☐ Yes. Name the insurance company of each policy and list its value.

   Company name:                    Beneficiary:                    Surrender or refund
                                                                    value:

**32. Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
   someone has died.

☑ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No
☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
☑ No

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                          Best Case Bankruptcy

Debtor 1   **Tracy Dean Stephenson**                                    Case number *(if known)*_____

☐ Yes.  Give specific information..

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**.................................................................................................... | **$1,606.50**

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37.  **Do you own or have any legal or equitable interest in any business-related property?**
■ No. Go to Part 6.
☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
| | If you own or have an interest in farmland, list it in Part 1. |

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
■ No. Go to Part 7.
☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
■ No
☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................... | **$0.00**

| Part 8: | List the Totals of Each Part of this Form |

55.  **Part 1: Total real estate, line 2** ................................................................................. | **$60,000.00**
56.  **Part 2: Total vehicles, line 5** | $79,400.00
57.  **Part 3: Total personal and household items, line 15** | $1,450.00
58.  **Part 4: Total financial assets, line 36** | $1,606.50
59.  **Part 5: Total business-related property, line 45** | $0.00
60.  **Part 6: Total farm- and fishing-related property, line 52** | $0.00
61.  **Part 7: Total other property not listed, line 54** | + | $0.00

62.  **Total personal property.** Add lines 56 through 61... | $82,456.50 | Copy personal property total | $82,456.50

63.  **Total of all property on Schedule A/B**. Add line 55 + line 62 | | | $142,456.50

---

Official Form 106A/B                         Schedule A/B: Property                              page 6

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                         Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **1 Bed, Loveseat, 2 Chairs, Kitchen Appliances, 2 TV Stands, 2 End Tables**<br>**Location: 1770 Chestnut Place #412, Denver CO 80202**<br>Line from *Schedule A/B*: **6.1** | $300.00 | ■       $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. § 13-54-102(1)(e)** |
| **2 T.V.'s, 2 Computers, Printer, Cell Phone**<br>**Location: 1770 Chestnut Place #412, Denver CO 80202**<br>Line from *Schedule A/B*: **7.1** | $250.00 | ■       $250.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. § 13-54-102(1)(e)** |
| **Used Clothing**<br>**Location: 1770 Chestnut Place #412, Denver CO 80202**<br>Line from *Schedule A/B*: **11.1** | $100.00 | ■       $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. § 13-54-102(1)(a)** |
| **Checking: Bank of America**<br>Line from *Schedule A/B*: **17.1** | $0.00 | ■       75%<br>☐ 100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. §§ 13-54-104(2)(a), 5-5-105, 5-5-106** |

Debtor 1    **Tracy Dean Stephenson**                                    Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Checking: FirsTier Bank**<br>Line from *Schedule A/B*: **17.2** | **$0.00** | ■            **75%**<br>☐    100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. §§ 13-54-104(2)(a), 5-5-105, 5-5-106** |
| **Rental deposit: The Holland Group**<br>Line from *Schedule A/B*: **22.1** | **$1,606.50** | ■         **$1,606.50**<br>☐    100% of fair market value, up to any applicable statutory limit | **Colo. Rev. Stat. § 13-54-102(1)(r)** |

3.  **Are you claiming a homestead exemption of more than $170,350?**
    (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■   No

    ☐   Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

         ☐   No

         ☐   Yes

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:**    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list he claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1**   **Arrowhead Bank** | Describe the property that secures the claim: | $19,214.24 | $12,000.00 | $7,214.24 |
| Creditor's Name | **(Multiple Asset Collateral Loan)**<br>**1985 AM General Humvee 3,570 miles**<br>**Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654**<br><br>**1997 Chris Craft 230 Boat (no trailer)**<br>**Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654** | | | |

**PO Box 8767**
**5700 W. FM 2147**
**Horseshoe Bay, TX 78657**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Secured - Vehicle**

Date debt was incurred _____    Last 4 digits of account number _____

---

| Debtor 1 | **Tracy Dean Stephenson** | | | Case number *(if known)* | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.2 | **Ford Motor Credit Company** | Describe the property that secures the claim: | **$74,612.00** | **$59,400.00** | **$15,212.00** |

Creditor's Name

**PO Box 105704
Atlanta, GA 30348-5704**

Number, Street, City, State & Zip Code

**2018 Ford F150 Raptor 27000 miles
Location: 1770 Chestnut Place #412,
Denver CO 80202**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Secured - Vehicle**

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    **Opened 06/18  Last Active 03/19**    Last 4 digits of account number    **4676**

| 2.3 | **Robert and Joanne James** | Describe the property that secures the claim: | **$66,000.00** | **$60,000.00** | **$6,000.00** |

Creditor's Name

**2708 Crestwood Lane
Highland Village, TX 75077**

Number, Street, City, State & Zip Code

**107 Still Meadow Drive (Lot 3026)
Kingsland, TX 78639  Burnet County
(vacant land)**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **First Mortgage - Investment Property (Business Debt)**

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    **8/2016**    Last 4 digits of account number

| Debtor 1 | **Tracy Dean Stephenson** | | | Case number (if known) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.4 | **Sterling Jewelers/Jared** | Describe the property that secures the claim: | **$1,050.00** | **$800.00** | **$250.00** |
|---|---|---|---|---|---|

Creditor's Name

**Attn: Bankruptcy
375 Ghent Rd
Akron, OH 44333**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a
community debt

Describe the property that secures the claim:

**Bracelet; necklace**

**As of the date you file, the claim is:** Check all that apply.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.

- ■ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)   **Purchase Money Security**

| | **Opened 06/16  Last Active 12/25/16** | | | |
|---|---|---|---|---|
| Date debt was incurred | | Last 4 digits of account number | **1972** | |

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$160,876.24** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$160,876.24** |

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |
|---|---|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐

Name, Number, Street, City, State & Zip Code
**Ford Credit
PO Box 542000
Omaha, NE 68154**

On which line in Part 1 did you enter the creditor?   **2.2**

Last 4 digits of account number ___

☐

Name, Number, Street, City, State & Zip Code
**Lincoln Automotive Financial Service
Attn: Bankruptcy
Po Box 542000
Omaha, NE 68154**

On which line in Part 1 did you enter the creditor?   **2.2**

Last 4 digits of account number ___

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1.  **Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.

■ Yes.

2.  **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

|  | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|
| 2.1 | **Internal Revenue Service** | | | |
| | Priority Creditor's Name | | | |

| 2.1 | **Internal Revenue Service**<br>Priority Creditor's Name<br><br>**Ogden, UT 84201-0025**<br>Number Street City State Zip Code | Last 4 digits of account number ___ ___ ___ ___ | **$20,000.00** | **$20,000.00** | **$0.00** |
|---|---|---|---|---|---|

When was the debt incurred? _____

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
■ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**Federal Income Taxes**

| 2.2 | **Megan Stephenson**<br>Priority Creditor's Name<br>**108 Oakwood Drive**<br>**Marble Falls, TX 78654**<br>Number Street City State Zip Code | Last 4 digits of account number ___ ___ ___ ___ | **$15,000.00** | **$15,000.00** | **$0.00** |
|---|---|---|---|---|---|

When was the debt incurred? _____

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

■ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**Domestic Support Owed**

Debtor 1  **Tracy Dean Stephenson**                                    Case number (if known) _____

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |

**3.**  **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have no hing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

**4.**  **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  |  | Total claim |
|---|---|---|---|

| 4.1 | **American Builders Insurance** | Last 4 digits of account number _____ | **$25,000.00** |

Nonpriority Creditor's Name
**PO Box 723099**
**Atlanta, GA 31139**

When was the debt incurred? _____

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only                      ☐ Contingent

☐ Debtor 2 only                      ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only         ☐ Disputed

☐ At least one of the debtors and ano her    **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community**     ☐ Student loans
**debt**

                                     ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**       report as priority claims

■ No                                 ☐ Debts to pension or profit-sharing plans, and other similar debts

                                     ■ Other. Specify  **Breach of Contract**
☐ Yes                                           **(Business Debt)** _____


| 4.2 | **Beck, Jonson and Nolan PC** | Last 4 digits of account number _____ | **$2,490.60** |

Nonpriority Creditor's Name
**2911 Turtle Creek Blvd, Suite 1100**
**Dallas, TX 75219**

When was the debt incurred? _____

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only                      ☐ Contingent

☐ Debtor 2 only                      ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only         ☐ Disputed

☐ At least one of the debtors and ano her    **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community**     ☐ Student loans
**debt**

                                     ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**       report as priority claims

■ No                                 ☐ Debts to pension or profit-sharing plans, and other similar debts

                                     ■ Other. Specify  **Breach of Contract**
☐ Yes                                           **(Business Debt)** _____

Debtor 1  **Tracy Dean Stephenson**                                    Case number (if known) _____

| 4.3 | **Best Buy** | | Last 4 digits of account number _____ | **$6,463.00** |

Nonpriority Creditor's Name
**PO Box 6497**
**Sioux Falls, SD 57117**
Number Street City State Zip Code

**When was the debt incurred?** _____

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and an her
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Charge Account**

---

| 4.4 | **Bob James** | | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name
**2708 Crestwood lane**
**Lewisville, TX 75077**
Number Street City State Zip Code

**When was the debt incurred?** _____

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and an her
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Breach of Contract (Business Debt)**

---

| 4.5 | **BRJ Group** | | Last 4 digits of account number _____ | **$125,000.00** |

Nonpriority Creditor's Name
**12625 E. Euclid Drive**
**Centennial, CO 80111**
Number Street City State Zip Code

**When was the debt incurred?** _____

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and an her
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  **Breach of Contract (Business Debt)**

---

Debtor 1    **Tracy Dean Stephenson**                                   Case number *(if known)*_____

| 4.6 | **Capital One** | Last 4 digits of account number | **0410** | **$2,367.00** |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 30285**
**Salt Lake City, UT 84130**
Number Street City State Zip Code

**When was the debt incurred?**    **Opened 11/15  Last Active 01/19**

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

☑ No
☐ Yes

☑ Other. Specify    **Credit Card**

| 4.7 | **Capital One** | Last 4 digits of account number | **7947** | **$2,367.56** |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 30285**
**Salt Lake City, UT 84130**
Number Street City State Zip Code

**When was the debt incurred?**    **Opened 10/30/13  Last Active 6/02/17**

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

☑ No
☐ Yes

☑ Other. Specify    **Credit Card**

| 4.8 | **Capital Stack** | Last 4 digits of account number | | **$274,000.00** |

Nonpriority Creditor's Name

**11 Broadway, Suite 814**
**New York, NY 10004**
Number Street City State Zip Code

**When was the debt incurred?**

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

☑ No
☐ Yes

☑ Other. Specify    **Breach of Contract (Business Debt)**

| Debtor 1 | **Tracy Dean Stephenson** | | Case number (if known) | |

---

| 4.9 | **Chase Card Services** | Last 4 digits of account number | **0557** | **$9,281.00** |

Nonpriority Creditor's Name

**Attn: Bankruptcy**
**Po Box 15298**
**Wilmington, DE 19850**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?    **Opened 11/16  Last Active 01/19**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.10 | **Citibank** | Last 4 digits of account number | **4326** | **$11,583.00** |

Nonpriority Creditor's Name

**Attn: Recovery/Centralized**
**Bankruptcy**
**Po Box 790034**
**St Louis, MO 63179**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?    **Opened 12/08  Last Active 11/23/18**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

| 4.11 | **Citibank North America** | Last 4 digits of account number | **2000** | **$6,659.00** |

Nonpriority Creditor's Name

**Citibank Corp/Centralized**
**Bankruptcy**
**Po Box 790034**
**St Louis, MO 63179**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?    **Opened 09/16  Last Active 11/18**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Credit Card**

---

Debtor 1    **Tracy Dean Stephenson**

Case number *(if known)*

| 4.1 2 | **Clyde Watters** | | Last 4 digits of account number | | | $350,000.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**309 Crane Drive**
**Marble Falls, TX 78654**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and no her

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Breach of Contract (Business Debt)**

---

| 4.1 3 | **Comcast Business** | | Last 4 digits of account number | | | $5,000.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**9602 S. 300 W, Suite B**
**Sandy, UT 84070**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and no her

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Breach of Contract (Business Debt)**

---

| 4.1 4 | **Comenitybank/Jared** | | Last 4 digits of account number | **6905** | | $1,050.00 |
|---|---|---|---|---|---|---|

Nonpriority Creditor's Name

**Attn:  Bankruptcy Dept**
**Po Box 182125**
**Columbus, OH 43218**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and no her

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**    **Opened 06/16  Last Active 03/19**

**As of the date you file, the claim is: Check all that apply**

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Charge Account**

---

Debtor 1    **Tracy Dean Stephenson**    Case number *(if known)*

| 4.15 | **David Archer & Associates** | Last 4 digits of account number | $1,500.00 |

Nonpriority Creditor's Name
**105 N. Wilcox Street,
Castle Rock, CO 80104**

When was the debt incurred?

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and one her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify    **Breach of Contract (Business Debt)**

---

| 4.16 | **Firstier Bank** | Last 4 digits of account number    1218 | $10,006.00 |

Nonpriority Creditor's Name

**120 Wilcox Street
Castle Rock, CO 80104**

When was the debt incurred?    **Opened 12/18  Last Active 1/16/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and one her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify    **Line of Credit**

---

| 4.17 | **Greeley Liquor Warehouse** | Last 4 digits of account number | **Unknown** |

Nonpriority Creditor's Name
**1020 28th Avenue, Unit 107A
Greeley, CO 80634**

When was the debt incurred?

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and one her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

**Is the claim subject to offset?**

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes

■ Other. Specify    **Goods**

---

Debtor 1 **Tracy Dean Stephenson**　　　　　　　Case number (if known) _____

---

| 4.18 | **Growth Legal** | Last 4 digits of account number _____ | **$12,000.00** |

Nonpriority Creditor's Name
**1888 Sherman Street, Suite 200**
**Denver, CO 80203**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and an her
■ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
□ Yes

□ Contingent
□ Unliquidated
□ Disputed

**Type of NONPRIORITY unsecured claim:**

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Breach of Contract (Business Debt)**

---

| 4.19 | **H&E Equipment Services** | Last 4 digits of account number _____ | **$56,000.00** |

Nonpriority Creditor's Name
**7500 Pecue Lane**
**Baton Rouge, LA 70809**
Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

□ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
□ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
□ Yes

□ Contingent
□ Unliquidated
□ Disputed

**Type of NONPRIORITY unsecured claim:**

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Breach of Contract (Business Debt)**

---

| 4.20 | **Harley Davidson Financial** | Last 4 digits of account number 3467 | **$14,600.00** |

Nonpriority Creditor's Name
**Attn: Bankruptcy**
**Po Box 22048**
**Carson City, NV 89721**
Number Street City State Zip Code

When was the debt incurred? **Opened 04/16  Last Active 11/18**

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and an her
■ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
□ Yes

□ Contingent
□ Unliquidated
□ Disputed

**Type of NONPRIORITY unsecured claim:**

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Unsecured deficiency - Repossession**

---

Debtor 1 **Tracy Dean Stephenson**    Case number (if known) _____

| 4.2 1 | **Hier & Company, Inc.** | Last 4 digits of account number _____ | **$4,895.00** |

Nonpriority Creditor's Name

**823 S. Perry Street #120**
**Castle Rock, CO 80104**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and ano her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ No

☐ Yes

☐ Other. Specify    **Breach of Contract (Business Debt)**

---

| 4.2 2 | **Holland Partner Group** | Last 4 digits of account number _____ | **$40,880.00** |

Nonpriority Creditor's Name

**1770 Chestnut Place**
**Denver, CO 80202**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and ano her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ No

☐ Yes

☐ Other. Specify    **Breach of Contract (Business Debt)**

---

| 4.2 3 | **IREA** | Last 4 digits of account number _____ | **$532.01** |

Nonpriority Creditor's Name

**5496 N US Highway 85**
**Sedalia, CO 80135**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☐ Contingent

☐ Debtor 2 only

☐ Unliquidated

☐ Debtor 1 and Debtor 2 only

☐ Disputed

☐ At least one of the debtors and ano her

**Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community debt**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

**Is the claim subject to offset?**

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ No

☐ Yes

☐ Other. Specify    **Services**

---

Debtor 1  **Tracy Dean Stephenson**                                    Case number (if known) _____

| 4.2 4 | **Jeff Mosing** | Last 4 digits of account number _____ | **$50,000.00** |

Nonpriority Creditor's Name
**2420 W. Braker Lane**
**Austin, TX 78758**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and ano her

□ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No

□ Yes

As of the date you file, the claim is: Check all that apply

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Breach of Contract (Business Debt)**

---

| 4.2 5 | **Jim Grdina** | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name
**16000 N. 80th Street, Suite C**
**Scottsdale, AZ 85260**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and ano her

□ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No

□ Yes

As of the date you file, the claim is: Check all that apply

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Breach of Contract (Business Debt)**

---

| 4.2 6 | **Joe Stephenson** | Last 4 digits of account number _____ | **$55,000.00** |

Nonpriority Creditor's Name
**200 S. Wilcox Street, #401**
**Castle Rock, CO 80104-5000**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and ano her

□ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No

□ Yes

As of the date you file, the claim is: Check all that apply

□ Contingent
□ Unliquidated
□ Disputed

Type of NONPRIORITY unsecured claim:

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Breach of Contract (Business Debt)**

---

Debtor 1 **Tracy Dean Stephenson**                                   Case number *(if known)*

<table>
<tr>
<td>4.2<br>7</td>
<td>**Kilpatrick Townsend**<br>Nonpriority Creditor's Name<br>**Dept 34542**<br>**PO Box 39000**<br>**San Francisco, CA 94139**<br>Number Street City State Zip Code</td>
<td>Last 4 digits of account number _____<br><br>When was the debt incurred? _____</td>
<td>**$7,571.00**</td>
</tr>
</table>

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Breach of Contract (Business Debt)**

---

<table>
<tr>
<td>4.2<br>8</td>
<td>**Mark Hoyt**<br>Nonpriority Creditor's Name<br>**4008 Nordland Trail**<br>**Castle Rock, CO 80109**<br>Number Street City State Zip Code</td>
<td>Last 4 digits of account number _____<br><br>When was the debt incurred? _____</td>
<td>**Unknown**</td>
</tr>
</table>

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Breach of Contract (Business Debt)**

---

<table>
<tr>
<td>4.2<br>9</td>
<td>**Maureen Waltenbaugh**<br>Nonpriority Creditor's Name<br>**124 Marion**<br>**Meadowlakes, TX 78764**<br>Number Street City State Zip Code</td>
<td>Last 4 digits of account number _____<br><br>When was the debt incurred? _____</td>
<td>**Unknown**</td>
</tr>
</table>

Who incurred the debt? Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

☐ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify **Breach of Contract (Business Debt)**

---

Debtor 1    **Tracy Dean Stephenson** _____    Case number (if known) _____

---

| 4.3 0 | **Miller, Egan Molter and Nelson** | Last 4 digits of account number _____ | **$14,371.50** |
|---|---|---|---|

Nonpriority Creditor's Name
**2911 Turtle Creek Blvd, Suite 1100**
**Dallas, TX 75219**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify    **Breach of Contract**
**(Business Debt)**

---

| 4.3 1 | **Opteamix, LLC** | Last 4 digits of account number _____ | **$101,755.50** |
|---|---|---|---|

Nonpriority Creditor's Name
**9200 E. Mineral Avenue**
**Englewood, CO 80112**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify    **Breach of Contract**
**(Business Debt)**

---

| 4.3 2 | **Paul Gore** | Last 4 digits of account number _____ | **$86,708.90** |
|---|---|---|---|

Nonpriority Creditor's Name
**819 Chicago Street**
**Dalhart, TX 79022**

When was the debt incurred? _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

■ No
☐ Yes

■ Other. Specify    **Breach of Contract**
**(Business Debt)**

---

Official Form 106 E/F          **Schedule E/F: Creditors Who Have Unsecured Claims**          Page 12 of 17

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    **Tracy Dean Stephenson**                                    Case number (if known) _____

| 4.3 3 | **Paypal** | Last 4 digits of account number _____ | **Unknown** |

Nonpriority Creditor's Name
**2211 N. First Street**
**San Jose, CA 95131**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
■ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Charge Account**

**Is the claim subject to offset?**
■ No
☐ Yes

---

| 4.3 4 | **Paypal Credit** | Last 4 digits of account number _____ | **$13,000.00** |

Nonpriority Creditor's Name
**PO Box 105658**
**Atlanta, GA 30304**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Charge Account**

**Is the claim subject to offset?**
■ No
☐ Yes

---

| 4.3 5 | **Perry Street Holdings** | Last 4 digits of account number _____ | **$18,581.24** |

Nonpriority Creditor's Name
**2278 Manatt Court, Unit C11**
**Gardner, CO 81040**
Number Street City State Zip Code

When was the debt incurred? _____

Who incurred the debt? Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **Breach of Contract (Business Debt)**

**Is the claim subject to offset?**
■ No
☐ Yes

---

Debtor 1   **Tracy Dean Stephenson**

Case number (if known) _____

| 4.3 6 | **Pinnacol Assurance** | | Last 4 digits of account number _____ | | $31,257.48 |

Nonpriority Creditor's Name

**7501 E. Lowry Blvd.**
**Denver, CO 80230**

Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify     **Breach of Contract**
                     **(Business Debt)**

---

| 4.3 7 | **Ron Robinson** | | Last 4 digits of account number _____ | | $16,637.50 |

Nonpriority Creditor's Name

**1155 Kelly Johnson Blvd, Suite 111**
**Colorado Springs, CO 80920**

Number Street City State Zip Code

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify     **Breach of Contract**
                     **(Business Debt)**

---

| 4.3 8 | **Security State Bank And Trust** | | Last 4 digits of account number   1941 | | $43,308.00 |

Nonpriority Creditor's Name

**201 W Main St**
**Fredericksburg, TX 78624**

Number Street City State Zip Code

When was the debt incurred?   **Opened 02/11  Last Active 10/29/18**

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify     **Breach of Contract**
                     **(Business Debt)**

---

Debtor 1   **Tracy Dean Stephenson**          Case number *(if known)*

| 4.3 9 | **Sunstate Equipment** | | $1,902.36 |
|---|---|---|---|

Nonpriority Creditor's Name

**5552 East Washington**
**Phoenix, AZ 85034**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Breach of Contract (Business Debt)**

---

| 4.4 0 | **Tim Heller** | | $25,000.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**10622 Wintersweet Place**
**Parker, CO 80134**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify   **Breach of Contract (Business Debt)**

---

| 4.4 1 | **Todd Mitchem** | | $5,000.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**22516 Sunset Drive**
**Golden, CO 80401**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Breach of Contract (Business Debt)**

---

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | |

---

<table>
<tr>
<td>4.4<br>2</td>
<td><b>Wayne Ruegge CPA PC</b></td>
<td>Last 4 digits of account number</td>
<td style="text-align:right">$1,080.00</td>
</tr>
</table>

Nonpriority Creditor's Name
**7501 Village Square Drive, Suite 103**
**Castle Pines, CO 80108**
Number Street City State Zip Code

Who incurred the debt? Check one.

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and ano her
■ Check if this claim is for a community debt
Is the claim subject to offset?

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

■ No

☐ Yes

■ Other. Specify    **Breach of Contract**
**(Business Debt)**

---

<table>
<tr>
<td>4.4<br>3</td>
<td><b>Yellowstone Capital</b></td>
<td>Last 4 digits of account number</td>
<td style="text-align:right">$145,900.00</td>
</tr>
</table>

Nonpriority Creditor's Name
**30 Broad Street, Suite 1462**
**New York, NY 10004**
Number Street City State Zip Code

Who incurred the debt? Check one.

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim is for a community debt
Is the claim subject to offset?

☐ Contingent
☐ Unliquidated
☐ Disputed

Type of NONPRIORITY unsecured claim:
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

■ No

☐ Yes

■ Other. Specify    **Breach of Contract**
**(Business Debt)**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**Internal Revenue Service**
**P.O. Box 21125**
**Philadelphia, PA 19114**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of *(Check one):*
■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Internal Revenue Service**
**PO Box 7346**
**Philadelphia, PA 19101-7346**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of *(Check one):*
■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Internal Revenue Service**
**1999 Broadway, MS 5012 DEN**
**Denver, CO 80202-3025**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of *(Check one):*
■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Internal Revenue Service**
**1999 Broadway**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.1** of *(Check one):*
■ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

---

Debtor 1  **Tracy Dean Stephenson**                                    Case number (if known) _____

**Stop 5012DEN**
**Denver, CO 80202**

Last 4 digits of account number _____

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Thomas Nolan** | Line **4.2** of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims |
| **300 Union Blvd, Suite 300** | ■ Part 2: Creditors with Nonpriority Unsecured Claims |
| **Denver, CO 80228** | |

Last 4 digits of account number _____

---

**Part 4:**  Add the Amounts for Each Type of Unsecured Claim

6.  **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

| | | | | | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ | **15,000.00** |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ | **20,000.00** |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ | **0.00** |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ | **0.00** |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | **35,000.00** |

| | | | | | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ | **0.00** |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ | **0.00** |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ | **0.00** |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | **1,578,747.65** |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | **1,578,747.65** |

| **Fill in this information to identify your case:** | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number | |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
| Name, Number, Street, City, State and ZIP Code | |
|---|---|
| 2.1  **The Holland Group**<br>**1770 Chestnut Place**<br>**Denver, CO 80202** | **Residential Lease - Expires 7/2020** |

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 (Spouse if, filing) | |
| | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

☐ No
☑ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No. Go to line 3.
☑ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

    ☐ No
    ☑ Yes.

        In which community state or territory did you live? **-NONE-** . Fill in the name and current address of that person.

        _____
        Name of your spouse, former spouse, or legal equivalent
        Number, Street, City, State & Zip Code

**3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| Column 1: **Your codebtor** Name, Number, Street, State and Z P Code | Column 2: **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| 3.1    **Build1x, Inc** <br> **200 S. Wilcox Street #132** <br> **Castle Rock, CO 80104** | ☐ Schedule D, line _____ <br> ☑ Schedule E/F, line **4.30** <br> ☐ Schedule G _____ <br> **Miller, Egan Molter and Nelson** |
| 3.2    **Build1x, Inc** <br> **200 S. Wilcox Street #132** <br> **Castle Rock, CO 80104** | ☐ Schedule D, line _____ <br> ☑ Schedule E/F, line **4.31** <br> ☐ Schedule G _____ <br> **Opteamix, LLC** |

Debtor 1   **Tracy Dean Stephenson**       Case number *(if known)* _____

     **Additional Page to List More Codebtors**

| Column 1: **Your codebtor** | Column 2: **The creditor to whom you owe the debt** <br> Check all schedules that apply: |
|---|---|
| 3.3   **Stix Framing LLC** <br> **200 S. Wilcox #132** <br> **Castle Rock, CO 80104** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line __4.8__ <br> ☐ Schedule G _____ <br> **Capital Stack** |
| 3.4   **Stix Framing LLC** <br> **200 S. Wilcox #132** <br> **Castle Rock, CO 80104** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line __4.43__ <br> ☐ Schedule G _____ <br> **Yellowstone Capital** |
| 3.5   **Stix Framing LLC** <br> **200 S. Wilcox #132** <br> **Castle Rock, CO 80104** | ☐ Schedule D, line _____ <br> ■ Schedule E/F, line __4.19__ <br> ☐ Schedule G _____ <br> **H&E Equipment Services** |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income
12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Employment**

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | **How long employed there?** | | |

**Part 2:    Give Details About Monthly Income**

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | | $ N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ | N/A |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $ 0.00 | | $ N/A |

Case:19-13565-MER   Doc#:11   Filed:04/29/22   Entered:04/29/22 15:23:55   Page 50 of
58

Debtor 1   **Tracy Dean Stephenson**                                  Case number (*if known*) _____

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 0.00 | $ N/A |
| 5. | **List all payroll deductions:** | | | |
| | 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | $ N/A |
| | 5b. **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A |
| | 5c. **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A |
| | 5d. **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| | 5e. **Insurance** | 5e. | $ 0.00 | $ N/A |
| | 5f. **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| | 5g. **Union dues** | 5g. | $ 0.00 | $ N/A |
| | 5h. **Other deductions.** Specify: _____ | 5h.+ | $ 0.00 | + $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | $ N/A |
| 8. | **List all other income regularly received:** | | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ N/A |
| | 8b. **Interest and dividends** | 8b. | $ 0.00 | $ N/A |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| | 8d. **Unemployment compensation** | 8d. | $ 0.00 | $ N/A |
| | 8e. **Social Security** | 8e. | $ 0.00 | $ N/A |
| | 8f. **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ N/A |
| | 8g. **Pension or retirement income** | 8g. | $ 0.00 | $ N/A |
| | 8h. **Other monthly income.** Specify: _____ | 8h.+ | $ 0.00 | + $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 0.00 | $ N/A |
| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 0.00 + $ N/A = | $ 0.00 |

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____   11.  +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies

12.  $ 0.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☐ No.
■ Yes. Explain:   **Debtor anticipates earning income within the year after filing.**

Official Form 106I                      **Schedule I: Your Income**                      page 2

Fill in this information to identify your case:

Debtor 1     **Tracy Dean Stephenson**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:     DISTRICT OF COLORADO

Case number
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter
   13 expenses as of the following date:

   _____
   MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:     Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**     ■ No

   Do not list Debtor 1 and
   Debtor 2.          ☐ Yes.     Fill out this information for
                                 each dependent..............

   Do not state the
   dependents names.

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**     ■ No ☐ Yes

### Part 2:     Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J,* check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | Your expenses |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.          4. $          2,550.00

   **If not included in line 4:**

   | | | | |
   |---|---|---|---|
   | 4a. | Real estate taxes | 4a. $ | 0.00 |
   | 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 25.00 |
   | 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 50.00 |
   | 4d. | Homeowner's association or condominium dues | 4d. $ | 0.00 |

5. **Additional mortgage payments for your residence,** such as home equity loans          5. $          0.00

Debtor 1   **Tracy Dean Stephenson**                                    Case number (if known)

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. $ | 150.00 |
| | 6b. | Water, sewer, garbage collection | 6b. $ | 0.00 |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | 120.00 |
| | 6d. | Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | | 7. $ | 400.00 |
| 8. | **Childcare and children's education costs** | | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | 50.00 |
| 10. | **Personal care products and services** | | 10. $ | 50.00 |
| 11. | **Medical and dental expenses** | | 11. $ | 50.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | 12. $ | 300.00 |
| | Do not include car payments. | | | |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | 50.00 |
| 14. | **Charitable contributions and religious donations** | | 14. $ | 5.00 |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | 0.00 |
| | 15b. | Health insurance | 15b. $ | 0.00 |
| | 15c. | Vehicle insurance | 15c. $ | 345.70 |
| | 15d. | Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | | |
| | Specify: **Vehicle Registration Tax** | 16. $ | 25.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | 1,514.00 |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c. | Other. Specify: | 17c. $ | 0.00 |
| | 17d. | Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as** **deducted from your pay on line 5,** *Schedule I, Your Income* (Official Form 106I). | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** | 19. $ | 0.00 |
| | Specify: | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | |
| | 20a. | Mortgages on other property | 20a. $ | 0.00 |
| | 20b. | Real estate taxes | 20b. $ | 0.00 |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify: **Miscellaneous/emergency** | 21. +$ | 100.00 |

| | | | |
|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | 5,784.70 |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 5,784.70 |

| | | | |
|---|---|---|---|
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 0.00 |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 5,784.70 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | -5,784.70 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.
☐ Yes.       Explain here:

**Fill in this information to identify your case:**

Debtor 1     **Tracy Dean Stephenson**
         First Name       Middle Name       Last Name

Debtor 2
(Spouse if, filing)    First Name       Middle Name       Last Name

United States Bankruptcy Court for the:    DISTRICT OF COLORADO

Case number
(if known)

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

**Sign Below**

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X **/s/ Tracy Dean Stephenson**        X _____
   **Tracy Dean Stephenson**               Signature of Debtor 2
   Signature of Debtor 1

   Date   **April 29, 2019**           Date

Official Form 106Dec       **Declaration About an Individual Debtor's Schedules**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

# Notice Required by 11 U.S.C. § 342(b) for
# Individuals Filing for Bankruptcy (Form 2010)

**This notice is for you if:**

**You are an individual filing for bankruptcy,** and

**Your debts are primarily consumer debts.**
*Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $75 | administrative fee |
| + $15 | trustee surcharge |
| $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

**Chapter 11: Reorganization**

|   |   |   |
|---|---:|---|
|   | $1,167 | filing fee |
| + | $550 | administrative fee |
|   | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Chapter 12: Repayment plan for family farmers or fishermen

|   |       |                    |
|---|-------|--------------------|
|   | $200  | filing fee         |
| + | $75   | administrative fee |
|   | $275  | total fee          |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   |       |                    |
|---|-------|--------------------|
|   | $235  | filing fee         |
| + | $75   | administrative fee |
|   | $310  | total fee          |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                                                         Best Case Bankruptcy

<table>
<tr><td>

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

</td></tr>
</table>

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html .

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCredit AndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

# United States Bankruptcy Court
### District of Colorado

In re    __Tracy Dean Stephenson__                          Case No. _____

                                      Debtor(s)                  Chapter     __7__ _____


# VERIFICATION OF CREDITOR MATRIX


The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.


Date:    __April 29, 2019__ _____        __/s/ Tracy Dean Stephenson__ _____

                                                       __Tracy Dean Stephenson__
                                                       Signature of Debtor

Case 19-13565 MER    Doc#:19-9    Filed:08/03/21    Entered:06/03/19 03:07:23    Page 1 of 11

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Tracy Dean Stephenson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO |
| Case number (if known) | **19-13565** |

■ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:     Give Details About Your Marital Status and Where You Lived Before**

1.    **What is your current marital status?**

☐ Married
■ Not married

2.    **During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
■ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| **2916 Breezy Lane** **Littleton, CO 80128** | From-To: **8/2016 - 11/2018** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |
| **7170 S Newcombe Street** **Littleton, CO 80127** | From-To: **6/2014 - 8/2016** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |
| **110 Amethyst** **Horseshoe Bay, TX 78657** | From-To: **2012 - 6/2014** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |

3.    **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☐ No
■ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | 19-13565 |
|---|---|---|---|

---

| **Part 2** | **Explain the Sources of Your Income** |
|---|---|

**4.    Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐  No
■  Yes. Fill in the details.

|  | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
|  | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | $0.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For last calendar year:**<br>(January 1 to December 31, 2018 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **Unknown** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2017 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **Unknown** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

**5.    Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

■  No
☐  Yes. Fill in the details.

|  | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
|  | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

---

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

**6.    Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

■  No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

■  No.    Go to line 7.

☐  Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

---

**Statement of Financial Affairs for Individuals Filing for Bankruptcy**

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | 19-13565 |
|---|---|---|---|

☐ **Yes. Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.  Go to line 7.
☐ Yes  List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
|  |  |  |  |  |

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

☐ No
■ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| **Megan Stephenson**<br>**108 Oakwood Drive**<br>**Marble Falls, TX 78654** | **10/22/2018;**<br>**12/19/2018;**<br>**1/7/2019; 1/7/2019;**<br>**2/8/2019 and**<br>**2/14/2019** | **$3,514.80** | **$15,000.00** | **Domestic Support Obligation** |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|
|  |  |  |  |  |

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **BRJ Group LLC v. Trac Stephenson**<br>**2018CV31433** | **Money Demand / Breach of Contract** | **District Court, Arapahoe County**<br>**Arapahoe County Justice Center**<br>**7325 S. Potomac St.**<br>**Englewood, CO 80112** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Pinnacol Assurance v. Quality Build Pros Ltd and Tracy Stephenson et. al.**<br>**Unknown** | **Money Demand / Breach of Contract** | **District Court, Denver, Colorado** | ☐ Pending<br>☐ On appeal<br>■ Concluded |

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | 19-13565 |
|---|---|---|---|

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **In re the Marriage of:  Tracy Stephenson and Megan Stephenson**<br>**2018DR604** | **Motion for Contempt / Failure to Pay Maintenance** | **District Court, Douglas County, Colorado** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

   ☐ No. Go to line 11.
   ■ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|
| **Harley Davidson Financial**<br>**Attn: Bankruptcy**<br>**Po Box 22048**<br>**Carson City, NV 89721** | **2018 Harley Davidson**<br><br>■ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br><br>☐ Property was attached, seized or levied. | **3/2019** | **$15,000.00** |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
   ■ No
   ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
   ■ No
   ☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---|---|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
   ■ No
   ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
   ■ No
   ☐ Yes. Fill in the details for each gift or contr bution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | **19-13565** |
|---|---|---|---|

---

**Part 6:    List Certain Losses**

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?

■ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

---

**Part 7:    List Certain Payments or Transfers**

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Wagner Law Office, P.C.<br>3969 East Arapahoe Road<br>Suite 200<br>Centennial, CO 80122<br>todd@wagnerlawofficepc.com | Attorney Fees | April, 2019 | $1,500.00 |
| Allen Credit and Debt Counseling Agency<br>PO Box 195<br>Wessington, SD 57381<br>acdcas.com | Credit Counseling Classes | April, 2019 | $20.00 |

---

17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☐ No
☑ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Troy Stephenson<br>695 Ancient Oaks Drive<br>Marble Falls, TX 78654<br><br>Debtor's brother | Sale of real property located at 110 Amethyst, Horseshoe Bay, TX 78657 | Value received:  Lien satisfied (no equity / home was in foreclosure) | 4/8/2019 |

---

Official Form 107                    **Statement of Financial Affairs for Individuals Filing for Bankruptcy**                    page **5**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1  **Tracy Dean Stephenson**                                      Case number (*if known*)  **19-13565**

| Person Who Received Transfer Address | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| **EchoPark Automotive Centennial** **10401 E Arapahoe Rd** **Centennial, CO 80111** No relationship | **2016 Jeep Wrangler** | Value received: Lien satisfied and reciept of $21.00 (estimated) cash proceeds | 6/2018 |
| **Phil Long Ford of Denver** **7887 W Tufts Ave** **Littleton, CO 80123** No relationship | **2017 Toyota Tundra** | Value received:  Lien satisfied and negative equity "rolled" into subsequent vehicle purchase | 6/2018 |
| **Unknown consumer** No relationship | **Various hand tools; framing nails** | $1,000.00 | October 4, 2018 |
| **Unknown consumer (via eBay)** No relationship | **Iraq Currency** | $5,000.00 | November 23, 2018 |
| **Unknown consumer (via eBay)** No relationship | **Iraq Currency** | $3,000.00 | November 26, 2018 |
| **Unknown consumer (via eBay)** No relationship | **Iraq Currency** | $2,000.00 | November 26, 2018 |
| **Unknown consumer (via garage sale)** No relationship | **Office desks; chairs; miscellaneous furniture; miscellaneous decorations and memorabilia** | $2,575.00 | December 10, 2018 |
| **Steve Sanderson** No relationship / Acquaintence | **Iraq Currency** | $1,700.00 | December 11, 2018 |
| **Larry Hill (via Facebook Marketplace)** No relationship | **Carroll Shelby memorabilia** | $1,350.00 | December 24, 2018 |
| **Doug Jensen (via Facebook Marketplace)** No relationship | **Carroll Shelby memorabilia** | $370.00 | December 24, 2018 |
| **Steve Sanderson** No relationship / Acquaintence | **Iraq Currency** | $850.00 | December 27, 2018 |

Official Form 107                              **Statement of Financial Affairs for Individuals Filing for Bankruptcy**                              page **6**

| Debtor 1 | **Tracy Dean Stephenson** | | Case number (*if known*) | **19-13565** |
|---|---|---|---|---|

| Person Who Received Transfer Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| **Mark Gozion**<br><br>No relationship | **Iraq Currency** | **$6,060.00** | **December 28, 2018** |
| **Robert Hauk (via Facebook Marketplace)**<br><br>No relationship | **Carroll Shelby memorabilia** | **$600.00** | **January 7, 2019** |
| **Mark Logan**<br><br>No relationship / Acquaintence | **Carroll Shelby memorabilia (guitar headstock)** | **$500.00** | **January 8, 2019** |
| **Unknown consumer (via FB Marketplace)**<br><br>No relationship | **Carroll Shelby memorabilia (die-cast cars)** | **$1,027.00** | **January 11, 2019** |
| **Uknown consumer (via FB Marketplace)**<br><br>No relationship | **Carroll Shelby memorabilia (guitar headstocks)** | **$1,000.00** | **January 11, 2019** |
| **Clinton Dunn**<br><br>Debtor's brother-in-law | **Carroll Shelby memorabilia** | **$500.00** | **January 11, 2019** |
| **Mark Gozion (via FB Marketplace)**<br><br>No relationship | **Iraq Currency** | **$3,200.00** | **January 18, 2019** |
| **Amr Amawi (via eBay)**<br><br>No relationship | **Carroll Shelby memorabilia** | **$931.80** | **April 28, 2019** |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| Debtor 1 | **Tracy Dean Stephenson** | | Case number (*if known*) | **19-13565** |
|---|---|---|---|---|

| Part 8: | List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

20. Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
■ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| **Firstier Bank**<br>**120 S. Wilcox Street**<br>**Castle Rock, CO 80104** | XXXX- | ■ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other___ | **Closed in March, 2019 by bank due to inactivity and negative balance** | **$0.00** |

21. Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

| Part 9: | Identify Property You Hold or Control for Someone Else |
|---|---|

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

☐ No
■ Yes. Fill in the details.

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|
| **Mosing Motorcars**<br>**c/o Jeff Mosing**<br>**2420 W. Braker Lane**<br>**Austin, TX 78758** | **2420 W. Braker Lane**<br>**Austin, TX 78758** | **1965 Shelby Mustang Convertible (debtor sold vehicle to Jeff Mosing in or about 2012 for $120,000.00 but is still listed as the owner on the certificate of title)** | **Unknown** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

Debtor 1  **Tracy Dean Stephenson**                                    Case number *(if known)*  **19-13565**

| Part 10: | Give Details About Environmental Information |

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24.  Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

■ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25.  Have you notified any governmental unit of any release of hazardous material?

■ **No**
☐ **Yes. Fill in the details.**

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26.  Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

■ **No**
☐ **Yes. Fill in the details.**

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

| Part 11: | Give Details About Your Business or Connections to Any Business |

27.  Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

■ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

■ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ **No. None of the above applies.**  Go to Part 12.

■ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **Stix Framing, LLC**<br>**200 S. Wilcox #132**<br>**Castle Rock, CO 80104** | **Construction**<br><br>**Alisha Brink** | **EIN:**      82-1159133<br><br>**From-To**  4//2017 - 10/2018 |

Debtor 1    **Tracy Dean Stephenson**                                   Case number *(if known)*    **19-13565**

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business  Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN.  Dates business existed |
|---|---|---|
| **Build1x, Inc 200 S. Wilcox Street, Suite 132 Castle Rock, CO 80104** | **Software Company**  **Alisha Brink** | EIN: **82-1562532**  From-To **5/15/2017 - Present** |
| **Quality Build Team, Inc. 11757 W Ken Caryl Ave, Ste 202 Littleton, CO 80127** | **Construction**  **Alisha Brink** | EIN: **47-4683787**  From-To **8/2015 - 5/2016** |
| **Quality Build Pros, LLC 1107 FM 1431, Suite 202 Marble Falls, TX 78654** | **Construction**  **Alisha Brink** | EIN: **46-5491044**  From-To **4/25/2014 - 5/1/2016** |
| **Pay1x Payments, LLC 1550 Larimer Street, #220 Denver, CO 80202** | **(does not operate)**  **Alisha Brink** | EIN: **83-3416869**  From-To **Does not operate** |
| **Quality Panel Systems, LLC 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127** | **Construction**  **Alisha Brink** | EIN: **47-4678717**  From-To **7/31/2015 - 5/1/2016** |
| **buildPAL, Inc 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127** | **Software Business**  **Alisha Brink** | EIN: **47-4209698**  From-To **6/8/2015 - 10/1/2016** |
| **Boom Crane Service, LLC 11757 W. Ken Caryl Avenue, Suite 202 Littleton, CO 80127** | **Crane Service Company**  **Alisha Brink** | EIN: **47-5451998**  From-To **10/29/2015 - 5/1/2016** |

28.  **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☑  **No**
☐  **Yes. Fill in the details below.**

| Name Address (Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

**Part 12:**  **Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Tracy Dean Stephenson**
**Tracy Dean Stephenson**                              **Signature of Debtor 2**
Signature of Debtor 1

Date    **June  5, 2019**                              Date

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
☑ **No**
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

| Debtor 1 | **Tracy Dean Stephenson** | Case number (*if known*) | **19-13565** |

■ No

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | **Tracy Dean Stephenson** | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF COLORADO | |
| Case number | **19-13565** | |

■ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes.  Where is the property?

| 1.1 | **What is the property?** Check all that apply | |
|---|---|---|
| **107 Still Meadow Drive (Lot 3026)** | ☐ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| **Kingsland**   **TX**   **78639-0000** | ☐ Land | Current value of the entire property?   Current value of the portion you own? |
| City   State   Z P Code | ■ Investment property | **$60,000.00**   **$60,000.00** |
| | ☐ Timeshare | |
| | ☐ Other _____ | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| **Burnet** | **Who has an interest in the property?** Check one | |
| County | ■ Debtor 1 only | |
| | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ **Check if this is community property** (see instructions) |
| | ☐ At least one of the debtors and another | |
| | Other information you wish to add about this item, such as local property identification number: | |
| | **(vacant land)** | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here............................................................................=>**

| | **$60,000.00** |
|---|---|

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

| Debtor 1 | Tracy Dean Stephenson | | Case number *(if known)* | 19-13565 |
|---|---|---|---|---|

**3.  Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

**3.1**

| Make: | **Ford** |
|---|---|
| Model: | **F150 Raptor** |
| Year: | **2018** |
| Approximate mileage: | **27000** |

Other information:

Location: 1770 Chestnut Place #412, Denver CO 80202

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $59,400.00 | $59,400.00 |

**3.2**

| Make: | **AM General** |
|---|---|
| Model: | **Humvee** |
| Year: | **1985** |
| Approximate mileage: | **3,570** |

Other information:

Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $12,000.00 | $12,000.00 |

**4.  Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

**4.1**

| Make: | **Chris Craft** |
|---|---|
| Model: | **230 Boat (no trailer)** |
| Year: | **1997** |

Other information:

Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemp ions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $8,000.00 | $8,000.00 |

**5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................=>**

$79,400.00

**Part 3:  Describe Your Personal and  Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**6.  Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
■ Yes.  Describe.....

1 Bed, Loveseat, 2 Chairs, Kitchen Appliances, 2 TV Stands, 2 End Tables
Location: 1770 Chestnut Place #412, Denver CO 80202

$300.00

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | 19-13565 |

**7. Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

■ Yes. Describe.....

| 2 T.V.'s, 2 Computers, Printer, Cell Phone<br>Location: 1770 Chestnut Place #412, Denver CO 80202 | $250.00 |

**8. Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes. Describe.....

**9. Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No

☐ Yes. Describe.....

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes. Describe.....

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

■ Yes. Describe.....

| Used Clothing<br>Location: 1770 Chestnut Place #412, Denver CO 80202 | $100.00 |

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

■ Yes. Describe.....

| Bracelet; necklace | $800.00 |

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

■ No

☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

■ No

☐ Yes. Give specific information.....

| 15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................ | $1,450.00 |

**Part 4:   Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

| Debtor 1 | **Tracy Dean Stephenson** | Case number *(if known)* | 19-13565 |
|---|---|---|---|

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

■ No

☐ Yes.......................................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes........................

Institution name:

| | | | |
|---|---|---|---|
| 17.1. | **Checking** | **Bank of America** | **$0.00** |
| 17.2. | **Checking** | **FirsTier Bank** | **$0.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☐ No

■ Yes..................

Institution or issuer name:

| | |
|---|---|
| **Carroll Shelby International, Inc.**<br>**(100,000 shares of common stock held by Debtor in the form of a**<br>**hard copy certificate)** | **$0.00** |

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No

■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **Build1x, Inc.** | **100** | % | **$0.00** |
| **Stix Framing, LLC** | **100** | % | **$0.00** |
| **Pay1x Payments, LLC** | **100** | % | **$0.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them
Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No

☐ Yes. List each account separately.
Type of account:          Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☐ No

■ Yes. ....................

Institution name or individual:

| | | |
|---|---|---|
| **Rental deposit** | **The Holland Group** | **$1,606.50** |

| Debtor 1 | **Tracy Dean Stephenson** | | Case number *(if known)* | 19-13565 |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............         Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............         Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

**28. Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |

**32. Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes.  Describe each claim.........

Debtor 1  **Tracy Dean Stephenson**                                    Case number *(if known)*  19-13565

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No

☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**

☐ No

■ Yes.  Give specific information..

| | |
|---|---|
| Manufacturer's Statement of Origin / Certificate of Title (Rights to request contruction/purchase of Shelby Daytona Coupe , CSX 2604) | $30,000.00 |

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................    $31,606.50

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes.  Go to line 38.

**Part 6:**   Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

**Part 7:**   Describe All Property You Own or Have an Interest in That You Did Not List Above

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

**54.** Add the dollar value of all of your entries from Part 7. Write that number here  ....................................    $0.00

**Part 8:**   List the Totals of Each Part of this Form

**55.**  Part 1: Total real estate, line 2  ............................................................................................................    $60,000.00

**56.**  Part 2: Total vehicles, line 5                                              $79,400.00

**57.**  Part 3: Total personal and household items, line 15                     $1,450.00

**58.**  Part 4: Total financial assets, line 36                                 $31,606.50

**59.**  Part 5: Total business-related property, line 45                        $0.00

**60.**  Part 6: Total farm- and fishing-related property, line 52               $0.00

**61.**  Part 7: Total other property not listed, line 54               +        $0.00

**62.**  **Total personal property.** Add lines 56 through 61...         $112,456.50     Copy personal property total      $112,456.50

**63.**  **Total of all property on Schedule A/B.** Add line 55 + line 62                                                    $172,456.50

**Fill in this information to identify your case:**

Debtor 1    **Tracy Dean Stephenson**
First Name        Middle Name        Last Name

Debtor 2
(Spouse if, filing)    First Name        Middle Name        Last Name

United States Bankruptcy Court for the:    DISTRICT OF COLORADO

Case number    **19-13565**
(if known)

�" Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list he claims in alphabetical order according to the creditor's name. | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim | **Column C** Unsecured portion If any |
|---|---|---|---|
| **2.1  Arrowhead Bank** <br> Creditor's Name | $19,214.24 | $12,000.00 | $7,214.24 |

Describe the property that secures the claim:

**(Multiple Asset Collateral Loan)**
**1985 AM General Humvee 3,570 miles**
**Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654**

**1997 Chris Craft 230 Boat (no trailer)**
**Location: 695 Ancient Oaks Drive, Marble Falls, TX 78654**

**PO Box 8767**
**5700 W. FM 2147**
**Horseshoe Bay, TX 78657**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Secured - Vehicle**

Date debt was incurred _____    Last 4 digits of account number _____

| Debtor 1 | **Tracy Dean Stephenson** | | | Case number (if known) | **19-13565** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.2 | **Ford Motor Credit Company** | Describe the property that secures the claim: | $74,612.00 | $59,400.00 | $15,212.00 |
|---|---|---|---|---|---|

Creditor's Name

**2018 Ford F150 Raptor 27000 miles Location: 1770 Chestnut Place #412, Denver CO 80202**

**PO Box 105704**
**Atlanta, GA 30348-5704**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ An agreement you made (such as mortgage or secured car loan)

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Secured - Vehicle**

| Date debt was incurred | **Opened 06/18  Last Active 03/19** | Last 4 digits of account number | **4676** |
|---|---|---|---|

| 2.3 | **Robert and Joanne James** | Describe the property that secures the claim: | $66,000.00 | $60,000.00 | $6,000.00 |
|---|---|---|---|---|---|

Creditor's Name

**107 Still Meadow Drive (Lot 3026) Kingsland, TX 78639  Burnet County (vacant land)**

**2708 Crestwood Lane**
**Highland Village, TX 75077**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ An agreement you made (such as mortgage or secured car loan)

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **First Mortgage - Investment Property (Business Debt)**

| Date debt was incurred | **8/2016** | Last 4 digits of account number | |
|---|---|---|---|

| Debtor 1 | **Tracy Dean Stephenson** | | | Case number (if known) | **19-13565** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| 2.4 | **Security State Bank And Trust** | | | | $43,308.00 | $30,000.00 | $13,308.00 |
|---|---|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**

**Manufacturer's Statement of Origin / Certificate of Title (Rights to request contruction/purchase of Shelby Daytona Coupe , CSX 2604)**

**201 W Main St**
**Fredericksburg, TX 78624**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Opened 02/11 Last Active 10/29/18**
Date debt was incurred

Last 4 digits of account number **1941**

| 2.5 | **Sterling Jewelers/Jared** | | | | $1,050.00 | $800.00 | $250.00 |
|---|---|---|---|---|---|---|---|

Creditor's Name

**Describe the property that secures the claim:**

**Bracelet; necklace**

**Attn: Bankruptcy**
**375 Ghent Rd**
**Akron, OH 44333**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset) **Purchase Money Security**

**Opened 06/16 Last Active 12/25/16**
Date debt was incurred

Last 4 digits of account number **1972**

| | | |
|---|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | | **$204,184.24** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | | **$204,184.24** |

**Part 2:**  **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

| Debtor 1 | **Tracy Dean Stephenson** | Case number (if known) | **19-13565** |
|---|---|---|---|
| | First Name   Middle Name   Last Name | | |

☐ Name, Number, Street, City, State & Zip Code
**Ford Credit
PO Box 542000
Omaha, NE 68154**

On which line in Part 1 did you enter the creditor? __2.2__

Last 4 digits of account number ___

☐ Name, Number, Street, City, State & Zip Code
**Lincoln Automotive Financial Service
Attn: Bankruptcy
Po Box 542000
Omaha, NE 68154**

On which line in Part 1 did you enter the creditor? __2.2__

Last 4 digits of account number ___

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE TRACY DEAN STEPHENSON, | USDC Case No. 22-CV-00642 MSK |
| Debtor. | Bankruptcy Case No. 19-13565 MER |
| | Adv. Proc. No. 19-01211 MER |
| M. STEPHEN PETERS, chapter 7 trustee | |
| Appellant, | |
| v. | |
| JEFFREY MOSING and MOSING AUTOSPORT, LLC dba MOSING MOTORCARS | |
| Appellees. | |

### STATEMENT OF ISSUES TO BE PRESENTED

Appellant M. Stephen Peters, Chapter 7 Trustee ("Trustee") pursuant to Federal Rule of Bankruptcy Procedure 8009(a), hereby states the issues to be presented on appeal:

1.    Whether the bankruptcy court erred when it ruled that Appellees had a constructive trust in the 1965 Shelby 427 Cobra.

2.    Whether the bankruptcy court erred when it ruled that the 1965 Shelby 427 Cobra was not property of the bankruptcy estate.

3.    Whether the bankruptcy court erred when it characterized the transaction between Debtor and Appellees as a purchase of the 1965 Shelby 427 Cobra instead of a loan secured by the 1965 Shelby 427 Cobra.

4.      Whether the bankruptcy court erred when it denied Trustee's claims under 11 U.S.C. §§ 544, 547, 550 and 551 that Appellees' interest in the 1965 Shelby 427 Cobra (whether it be an interest by constructive trust or otherwise) is avoidable and may be recovered and preserved for the benefit of the bankruptcy estate?

5.      Whether the bankruptcy court erred when it denied Trustee's claim that the 1965 Shelby 427 Cobra should be turned over pursuant to 11 U.S.C. § 542.

Dated this 29th day of March 2022.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ Aaron J. Conrardy*
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
(303) 296-1999
aconrardy@wgwc-law.com
*Attorneys for Appellant M. Stephen Peters,*
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 29th day of March 2022, I served a true and correct copy of the **Statement of Issues to be Presented** via United States mail, postage prepaid thereon, or electronically through CM/ECF, to those persons listed below:

Reagan H. Gibbs
Tres.gibbs@chamberlainlaw.com

Jarrod Martin
Jarrod.martin@chamberlainlaw.com

*/s/ Angela C. Garcia*
For Wadsworth Garber Warner Conrardy, P.C.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | USDC Case No. 22-CV-00642 MSK |
| TRACY DEAN STEPHENSON, | ) | Case No. 19-13565 MER |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, | ) | Adv. Proc. No. 19-01211 MER |
| chapter 7 trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| JEFFREY MOSING and MOSING | ) | |
| AUTOSPORT, LLC dba MOSING | ) | |
| MOTORCARS. | ) | |
| | ) | |
| Appellees. | ) | |

---

### NOTICE OF ORDERING OF TRANSCRIPTS

---

M. Stephen Peters, Appellant and chapter 7 trustee, by and through undersigned counsel, hereby gives notice that he has ordered transcripts of hearings held in Adversary Case No. 19-01211 MER on December 15, 2020 and September 3, 2021, which will be included in the record on appeal once received.

Dated this 29th day of March, 2022.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/Aaron J. Conrardy*
Aaron J. Conrardy, #40030
2580 W. Main St., Ste. 200
Littleton, CO 80120
(303) 296-1999 /Fax: (303) 296-7600
aconrardy@wgwc-law.com

**Certificate of Service**

I hereby certify that on this 29th day of March, 2022, a complete copy of the forgoing was served via CM/ECF on the following parties:

Jarrod Barclay Martin
Jarrod.martin@mhllp.com

Reagan H. Gibbs, III
Tres.gibbs@chamberlainlaw.com

/s/Angela Garcia
Paralegal