IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-00642-GPG

TRACY DEAN STEPHENSON,

    Debtor.

M. STEPHEN PETERS, Chapter 7 Trustee

    Plaintiff-Appellant,

v.

JEFFREY MOSING, and
MOSING AUTOSPORT, LLC dba MOSING MOTORCARS,

    Defendants-Appellees.

## ORDER

    Plaintiff-Appellant M. Stephen Peters, Chapter 7 Trustee (Trustee), timely appeals a final order of the United States Bankruptcy Court for the District of Colorado entered on March 8, 2022 (D. 8-1 at 506-16). The Honorable Michael E. Romero, following a trial on the merits, held that (1) Mosing, a non-debtor, was the equitable owner of a 1965 Shelby 427 Cobra (the Cobra) and that under 11 U.S.C. § 541(d), the asset was not property of the bankruptcy estate and (2) Peters, the Chapter 7 trustee, could not recover the asset for the benefit of creditors. The Bankruptcy Court entered judgment in favor of (1) Mosing on Trustee's claims under §§ 542, 544, 547, and for determination of the bankruptcy estate's interest in the Cobra and (2) Mosing on his counterclaim for determination of a constructive trust in his favor in the Cobra, and that the Cobra

1

is not property of Stephenson's bankruptcy estate (*id.* at 515).  Trustee timely perfected his appeal pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1) and filed his Notice of Appeal on March 15, 2022.  Trustee argues that the Bankruptcy Court erred in both rulings and requests that the District Court enter an Order reversing the Final Order and Judgment, and further granting the Trustee's cross-motion for summary judgment as to each of the claims asserted in his Complaint.  Exercising jurisdiction under 28 U.S.C. § 158(a), the Court AFFIRMS the Bankruptcy Court for the following reasons.[1]

## I.  JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(a)(1), which permits "[t]he district courts of the United States . . . to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]."  The parties stipulate that this Court has jurisdiction to hear the appeal and this Court concurs.

## II.  STANDARD OF REVIEW

The District Court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.  Fed. R. Bankr. P. 8005.  This Court reviews the bankruptcy court's findings of fact under a clear-error standard.  *See WD Equip., LLC v. Cowen (In re Cowen)*, 849 F.3d 943, 947 (10th Cir. 2017).  This means that the Court is bound by the bankruptcy court's factual findings unless they are "without factual support in the record or if, after reviewing all of the evidence [the Court is] left with the definite and firm conviction that a

---

[1] After examining the parties' briefs and appellate record from the Bankruptcy Court's proceedings, the Court concludes that oral argument would not materially assist in the resolution of this appeal.

mistake has been made." *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1153 (10th Cir. 2007) (internal quotation omitted). The Court reviews the bankruptcy court's legal determinations de novo. *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir. 1987). For mixed questions of law and fact, the Court's review depends on the primary nature of the question presented—if the Court's review pertains to legal determinations, then it is de novo; however, the Court must still defer to the bankruptcy court's factual determinations. *Mosher v. Herrell (In re Mosher)*, 833 F. App'x 201, 202 (10th Cir. 2020) (citing *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018)).

Trustee presents four intertwined issues on appeal:

1. Whether the Bankruptcy Court erred when it characterized the transaction between Debtor and Defendants as a purchase of the Vehicle instead of a loan secured by the Vehicle.

2. Whether the Bankruptcy Court erred when it ruled that the Vehicle was not property of the bankruptcy estate.

3. Whether the Bankruptcy Court erred when it denied Trustee's claims under 11 U.S.C. §§ 544, 547, 550 and 551, which allege that Defendants' interest in the Vehicle (whether an interest by constructive trust or otherwise) is avoidable and may be recovered and preserved for the benefit of the bankruptcy estate.

4. Whether the Bankruptcy Court erred when it denied Trustee's claim that the Vehicle should be turned over pursuant to 11 U.S.C. § 542.

(D. 13 at 10).[2] Concerning the first issue, the Court reviews the Bankruptcy Court's factual findings for clear error. *In re C.W. Mining Co.*, 641 F.3d 1235, 1240 (10th Cir. 2011). For the

---

[2] The Appellees dispute Appellant's articulation of the statement of the issues and submit that the four issues are whether the Bankruptcy Court: (1) correctly characterized the Agreement as a sale rather than a loan; (2) correctly ruled the Cobra is not property of the bankruptcy estate; (3) correctly ruled that the Appellees' interest in the Cobra was unavoidable by the Appellant; and (4) correctly denied the Appellant's claim for turnover of the Cobra pursuant to 11 U.S.C. § 542 (D. 16 at 7). This Court finds this articulation of the issues to be relatively similar to the Appellant's and will analyze them accordingly.

remaining three issues—to the extent the Court needs to reach these issues—the Court reviews the Bankruptcy Court's determinations de novo with the presumption of correctness continuing to apply to any underlying findings of fact as these three issues are mixed questions of law and fact. *Stillwater Nat. Bank & Tr. Co. v. CIT Grp./Equip. Fin., Inc.*, 383 F.3d 1148, 1150 (10th Cir. 2004).

### III. ANALYSIS

The facts of this case are relatively undisputed.[3] Stephenson purchased a 1965 Shelby 427 Cobra without financing on or about December 20, 2011. Stephenson received the manufacturer's statement of origin (MSO) for the Cobra at that time. On March 8, 2012, Stephenson presented the MSO to the Colorado Department of Motor Vehicles, which issued the Title. On a later date, Stephenson used the Cobra, along with real estate, to secure an obligation to Extraco Bank, which recorded its lien against the Cobra and took possession of the Title.

On April 19, 2012, Stephenson contacted Jeffrey Mosing (owner of Mosing Autosport, LLC) about the Cobra. The record reflects that Stephenson proposed an exchange of the car for $120,000 with the ability to re-acquire the Cobra for up to a year and with an escalating price depending on whether six, nine, or twelve months had elapsed ($130,000; $140,000; or $150,000, respectively). During this time, Stephenson asked Mosing not to sell the vehicle because he would "really like to do something right away . . . Things are moving really fast on my Network business. I am needing to Hem-ridge [sic] lots of cash to do it right!" (D. 8-1 at 527-28). On May 8, 2012, Stephenson and Mosing drew up the following document to memorialize their agreement:

---

[3] The Court relies upon the recitation of facts from Judge Romero's Order, which the parties do not dispute (sans the determination of whether the transfer of the Cobra to Mosing was a loan or a sale) (D. 8-1 at 506-16). The Bankruptcy Court also applied Texas law and definitions throughout the case. Property interests are created and defined by state law in bankruptcy proceedings. *See In re Taylor*, 133 F.3d 1336, 1341 (10th Cir. 1998). Neither party disputes that Texas law is applicable in this case or that Texas law governs this analysis.

4

> Agreement:
>
> 1965 Shelby 427 Cobra SC
> CSX4501
>
> May 8th 2012
>
> Amount: $120,000
>
> Agreement that Trac Stephenson may Re-Acquire Cobra for a Period of 1 Year ending May 9th 2013.
>
> Re-Acquisition Amounts:
> $130,000: May 9th 2012 - November 9th 2012
> $140,000: November 10th 2012 - February 9th 2013
> $150,000: February 10th 2013 - May 9th 2013
>
> Jeff Mosing to hold Original MSO & Possession of Cobra during the agreement period.
>
> *Jeff Mosing*
>
> *Trac Stephenson*
>
> ERIC BEVERDING
> (WITNESS)

(*Id*. at 450). Mosing wrote a check for $120,000, which was made out to 427 Legends (Stephenson's car business) at Stephenson's request. The memo line on the $120,000 check states "1 YR. CAPITAL LOAN."

5



(*Id.* at 451). On or about May 8, 2012, Mosing took possession of the Cobra and the MSO. Stephenson did not opt to re-acquire the Cobra from Mosing during the term of the Agreement. Since the transaction on May 8, 2012, Mosing has continued to possess the Cobra and the MSO, insured the vehicle, and maintained it (*see* D. 8-2 at 61).

On June 2, 2016, Stephenson paid off his obligation to Extraco Bank, received the Title back from Extraco Bank, but failed to forward the Title to Mosing. On April 29, 2019, Stephenson filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On June 5, 2019, Stephenson filed an Amended Statement of Financial Affairs identifying the Cobra as property he held or controlled but that was owned by someone else. Stephenson listed Mosing Motorcars as the owner of the Cobra and that "debtor sold vehicle to Jeff Mosing in or about 2012 for $120,000.00 but is still listed as the owner on the certificate of title."

Stephenson provided the Trustee with the Title after the Petition Date and the Trustee initiated the instant case in order to, among other things, have the Cobra turned over pursuant to § 542. Mosing filed a counterclaim for a determination of interests in the Cobra and requested that the Cobra be placed in a constructive trust with Mosing as the equitable owner. On March 8, 2022, the Bankruptcy Court entered its Order and Judgment finding that the Cobra was not property of

the bankruptcy estate and due to fraudulent conduct on the part of Stephenson, the Vehicle would be subject to a constructive trust in favor of Mosing.

On appeal, Trustee argues that the evidence "overwhelmingly demonstrates that the parties intended the transaction as a loan. Defendants only now characterize the transaction as a purchase in an underhanded attempt to avoid the consequences of the Bankruptcy Code and applicable state law" (D. 13 at 38). The Court appreciates Trustee's vigorous litigation for the sake of the bankruptcy estate's creditors, but ultimately the Court finds Trustee's arguments unavailing. Trustee's arguments are premised like a house of cards—if this Court finds that the Bankruptcy Court erred in finding that the Cobra was not a part of the bankruptcy estate because the transaction was a loan, then Trustee's remaining three arguments will likewise succeed and the Bankruptcy Court's judgment will require reversal. The opposite, however, is also true—if the Court finds that the Bankruptcy Court's determination regarding the ownership of the Cobra is not clearly erroneous because the transaction was a valid sale, then the vehicle is not a part of the bankruptcy estate and cannot be reached by the Trustee. Ultimately, the Court finds that the Bankruptcy Court's decision that the Cobra is not property of the bankruptcy estate was not clearly erroneous.

A court, under the clearly erroneous standard, cannot simply reject findings with which it does not agree:

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. In applying the clearly erroneous standard[,] appellate courts must consistently have in mind that their function is not to decide factual issues de novo.

7

*Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 859–60 (10th Cir. 2005) (internal quotations and citations omitted).

The record clearly indicates that the Agreement was a sale, that Stephenson had no interest in the Cobra, and that Stephenson did not own the Cobra when he initiated his Chapter 7 bankruptcy in 2019. The Court is not left with a firm conviction that a mistake was committed by the Bankruptcy Court and agrees with the Bankruptcy Court's factual determination. The key issue in making this determination is the fact that Stephenson noted in the Agreement that he could re-acquire the Cobra, that the price would increase beyond the $120,000 he initially exchanged with Mosing to re-acquire the vehicle, and the fact that Stephenson's ability to re-acquire the Cobra would expire after one year. Indeed, after May 9, 2013, Mosing could have sold the vehicle to a third party and Stephenson would have had little to no recourse. Furthermore, testimony at trial by Stephenson indicated that the transaction was a sale:

> Q Now, you considered this transaction a sale with a right to buy back, didn't you?
> A Initially, yes.
> Q What do you mean, initially?
> A That was my proposal initially, yes.
> Q And it was also your understanding when you filed this bankruptcy case, isn't it?
> A Could you repeat that specifically?
> Q Didn't you put in your statement of financial affairs that you sold this vehicle to Mr. Mosing?
> A I don't have that information in front of me.
> [. . .]
> Q Okay. Let's go to the relevant section. Do you see, under Part 9, Question 23, where it says, "Describe the property"?
> A Yes.
> Q It says, "1965 Shelby Mustang convertible. Debtor sold vehicle to Jeff Mosing." Do you see that?
> A I do.
> Q And that's a true statement, correct?

8

> A Specifically, it says, '65 Shelby Mustang convertible, so that's incorrect. My attorney had described it that way.
> Q But you see where he said, "The debtor sold the vehicle to Jeff Mosing", correct?
> A Yes, I do.
> [. . .]
> Q And the date on this is June 5, 2019, correct?
> A Yes.
> Q So as of June 5, 2019, your position was that you sold the vehicle to Mr. Mosing.
> A Yes.
> Q Okay. And that hasn't changed, has it?
> A No.
> Q Because it's your position, isn't it, that when you failed to repurchase the Cobra, that ownership transferred to Mr. Mosing, isn't it?
> A Yes.

(*Appellant App*. at 565-67; *see also* D. 19 at 9-10). The fact that Mosing retained the vehicle for himself is not dispositive and does not alter the analysis that the May 2012 agreement was a sale. Moreover, the fact that Stephenson had not transferred the title over to Mosing was not dispositive, but as the Bankruptcy Court noted, only went to Stephenson's credibility and his potential intent to defraud Mosing as Extraco Bank had a lien against and possession of the Title until June 2016. Thus, the Court does not find that the Bankruptcy Court erred in classifying the transaction as a sale rather than a loan.

Trustee argues that even if the transaction was a sale and not a loan, the Bankruptcy Court erred when it ruled that the Vehicle was not property of the bankruptcy estate. Specifically, Trustee argues that it was a "subsequent sale that was void because it was not accompanied by a certificate of title as required under Texas law" (D. 13 at 38-42). The Bankruptcy Court noted that:

> As explained at length in the Court's MSJ Order, however, "[t]he name on the certificate of title is not conclusive of ownership. Evidence of the name in which an automobile is registered only raises a presumption of ownership." Additionally, Chapters 1 through 9 of the Texas Business and Commerce Code, which include Texas's adoption of the UCC, control over

9

> conflicting provisions of the [Texas Certificate of Title Act (TCTA)], and "[u]nder the UCC, title to a motor vehicle passes to the buyer upon delivery or possession even though a certificate of title will be delivered later and the names on the certificate of title are not changed." "[N]oncompliance with the [TCTA] does not override the clear showing of a valid and complete transfer of ownership of an automobile.
>
> Both parties testified they agreed the Agreement was a sale. Additionally, Mosing's actions since the Agreement clearly demonstrate a complete transfer of ownership of the Cobra. Mosing has insured and stored the Cobra since taking possession and has performed periodic maintenance on it. Although he did not take further action regarding establishing his ownership of the Cobra prior to the Petition Date, i.e. by applying for a certificate of title, the Court does not find the evidence to be dispositive. Mosing credibly testified he did not attempt to obtain a certificate of title for the Cobra because he believed the MSO was sufficient to establish his ownership, and he explained in his experience it would be a stronger selling point for any future purchaser to only receive the MSO as opposed to a certificate of title, making the Cobra more marketable. Based on this testimony, the Court finds upon the delivery of the Cobra, Mosing became the rightful owner thereof, and the Cobra is not property of the bankruptcy estate. As such, the Trustee's remaining claims must fail, and judgment in Mosing's favor is warranted.

(D. 8-1 at 514-15). Indeed, one Texas Court of Appeals has clarified:

> A sale in violation of the Act is void. Title does not pass until the requirements of the Act are satisfied. However, non-compliance with the Act does not override a clear showing of valid and complete transfer of ownership. Despite the express language of section 501.073, the sale of a vehicle without the transfer of a title certificate is valid "as between the parties, when the purposes of the Certificate of Title Act are not defeated, although the Act declares that the non-transfer of such certificates renders the sale void.

*First Nat. Bank of El Campo, TX v. Buss*, 143 S.W.3d 915, 919 (Tex. App. 2004). That Texas court further found that "a third party's perfected security interest is not interrupted when a purported buyer attempts to purchase an automobile without receiving title as required to complete a sale under the Act . . . The sale may be valid as between the buying and selling parties, but the purchaser only takes an equitable possessory interest and a right to acquire such right, title, and

10

interest as the seller possesses." *Id.* at 922. The Bankruptcy Court, determining that Mosing had an equitable possessory interest in the Cobra, then determined that a constructive trust should be imposed on the Cobra in Mosing's favor due to Stephenson's fraud.

Trustee argues on appeal, citing only *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711, 716 (Tex. Civ. App. 1974), that "[a]fter the vehicle is registered for the first time and the certificate of title is issued, title to the vehicle is then evidenced solely by the certificate of title, and all sales thereafter are 'subsequent sales', and in order to be valid, must be in compliance with Sections 27, 33 and 51 of the [Certificate of Title Act]" (D. 13 at 40-41). However, *Buss* conclusively held in 2004 that "the Texas Business and Commerce Code, not the Texas Certificate of Title Act, determines the legal effect of the transactions at issue." 143 S.W.3d at 924. Thus, the sale was not void as Trustee contends.

Ultimately, the Court does not find that the Bankruptcy Court erred in concluding that Mosing was a buyer in the ordinary course of business and, despite the lack of Title, had purchased the Cobra in 2012. *See In re Garberding*, 338 B.R. 463, 469 (Bankr. D. Colo. 2005) ("[B]ecause of the Debtor's absence of actual ownership interest in the Mercedes, the Mercedes is not property of the Debtor/Defendant's estate."). Because Mosing is the rightful owner of the Cobra, the sale was not void, and the vehicle is not property of the bankruptcy estate, the Court declines to review Trustee's remaining arguments on appeal.[4]

---

[4] Trustee argues that a "thorough review of the record, arguments, and rulings in this case gives rise to a sneaking suspicion that the Bankruptcy Court strained to reach what it believed to be an equitable outcome for Defendants in this case" (D. 13 at 52). The Court has thoroughly reviewed the briefing and Record and disagrees. Trustee fails to show that the Bankruptcy Court clearly erred in concluding that the 2012 transaction was a sale rather than a loan. Accordingly, the remainder of Trustee's "interrelated" arguments must also fail.

11

## IV. CONCLUSION

Accordingly, the Bankruptcy Court's March 8, 2022, Order is AFFIRMED (D. 9).

DATED March 31, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge